UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NO. 3:22-CR-88 DJH |
| | ) |
| | ) |
| QUADRANT MAGNETICS, LLC, et al. | ) |

**QUADRANT MAGNETICS' MEMORANDUM IN SUPPORT OF MOTION FOR
ISSUANCE OF RULE 17(C) SUBPOENAS DUCES TECUM**

Quadrant Magnetics LLC (hereinafter referred to as "Quadrant"), pursuant to Rule 17(c)(1) of the Federal Rules of Criminal Procedure and Rule 17.2(c) of the Joint Local Rules of Criminal Practice ("Local Rules"), respectfully requests the issuance of subpoenas *duces tecum* directed to General Dynamics and GE Aviation for certain corporate records related to the government's allegations against Quadrant and the other defendants. In support of its request, Quadrant submits the following for the Court's consideration.

## BACKGROUND

The government, in a ten count indictment issued on August 17, 2022 ("Indictment") has alleged, among other things, that Quadrant and its three employees provided magnets to "U.S. Company 1" (GE Aviation) and "U.S. Company 2" (General Dynamics) in violation of federal law. On May 8, 2023, Quadrant submitted a letter to the government requesting any and all documents in its possession regarding Quadrants' magnets sold to General Dynamics and GE Aviation, as well as an opportunity to visit the General Dynamics and GE Aviation facilities in order to view how its magnets were used in certain products and other relevant equipment. (5/8/2023 Supplemental Discovery Request Letter from QM to Government at 1–4). In a letter dated June 9, 2023, the government responded to Quadrant's requests only by noting that it "is not obligated to acquire items exclusively possessed or controlled by other parties." (6/9/2023

Government Response Letter at 2). It is clear that as participants in the transactions underlying the charges in the Indictment, General Dynamics and GE Aviation possess relevant documents and records reflecting the parties' knowledge and intent at the time the magnets were ordered and delivered.[1] In order to ensure that this important evidence is available for use at the upcoming trial, Quadrant requests the issuance of Rule 17(c) subpoenas, with pretrial return dates, to General Dynamics and GE Aviation.

## PROPOSED SUBPOENA CATEGORIES

Quadrant seeks a handful of narrow categories of evidence from General Dynamics and GE Aviation that is critical for the preparation of Quadrant's defense. Specifically, Quadrant requests Rule 17(c) subpoenas issued to General Dynamics and GE Aviation for the following information:

1. <u>General Dynamics</u>: To General Dynamics Corporation, c/o Gregory S. Gallopoulos, Senior Vice President, General Counsel and Secretary, 11011 Sunset Hills Road, Reston, VA 20190: Any documents, records and correspondence from January 1, 2012–present, unless otherwise indicated, related to:

    a. Internal communications at General Dynamics regarding Quadrant's compliance with the Defense Federal Acquisition Regulation Supplement (DFARS) 225.252-7009 ("DFARS specialty metals clause") and International Traffic in Arms

---

[1] Unlike Quadrant, neither General Dynamics nor GE Aviation have been criminally indicted for their role in the Indictment's subject transactions. However, on July 28, 2022, the government executed a civil settlement agreement with GE Aviation to resolve allegations that the company's General Converter Units (GCUs) failed to comply with the DFARS specialty metals clause because they used Quadrant's magnets, which were made in China. Notably, the government has elected to criminally charge Quadrant for conspiracy and wire fraud based on the same allegations at issue in the GE settlement and factually similar allegations concerning parts sold to the government by General Dynamics that also used Quadrant's magnets.

2

  Regulations (ITAR) 22 U.S.C. § 2778, and any internal investigations at General Dynamics concerning Quadrant or its magnets;

b. Internal communications at General Dynamics regarding the country of origin of Quadrant's magnets, and the location of smelting, machining, or magnetizing;

c. Internal communications at General Dynamics regarding Quadrant's procedure for reviewing, storing, and sharing General Dynamics' technical drawings and data, and restrictions on exporting or disclosure of such data;

d. Communications, records, and contracts between General Dynamics and any other company or branch of the United States military or government reflecting the requirements for compliance with the DFARS specialty metals clause or ITAR for the following part numbers:

  i. PN 1500P-1002 (submarine periscope)

  ii. PN 10500B-1022 (infrared imaging system)

  iii. PN 6000U-1002 (multispectral targeting system)

  iv. PN 100101 (infrared Imaging System)

  v. PN 3730D-1012 (F-16 Radar)

  vi. PN 030-052317-01 (chemical agent detector).

e. Communications between General Dynamics and any other company or branch of the United States military or government regarding Quadrant's compliance with the DFARS specialty metals clause or ITAR;

f. Communications, documents, forms, or drawings exchanged between General Dynamics and Quadrant regarding any magnets subject to the DFARS specialty

metals clause or ITAR from January 1, 2000–present, including but not limited to regarding:

   i. The country of origin of Quadrant's magnets and the location of smelting, machining, and magnetizing;

   ii. Quadrant's procedure for reviewing, storing, and sharing General Dynamics' technical drawings and data, and restrictions on exporting or disclosure of such data.

g. Any written or recorded statements, communications, complaints, documents, reports, forms, or comparable records, regarding the quality, performance, or defects in Quadrant's magnets, including but not limited to internal communications at General Dynamics, and communications between General Dynamics and other companies or any branch of the United States military or government;

h. Any records, statements, communications, documents, reports, forms, or other comparable record, related to General Dynamics' sourcing and procurement of magnets for the part numbers listed in d(i)-(vi);

i. Communications between General Dynamics and government or law enforcement agencies or their respective lawyers or agents, including notes, transcriptions, recordings, or memoranda regarding any investigation of Quadrant or its magnets;

j. Information related General Dynamics' policies, procedures, and training regarding compliance with the DFARS specialty metals clause or ITAR, including the disclosure, storage, transmission and export of technical data and drawings, and

       communicating and monitoring the compliance of General Dynamics' subcontractors with these policies.

   k. Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's decision not to criminally prosecute GE Aviation or General Dynamics for failure to comply with the DFARS specialty metals clause or ITAR.

2. <u>GE Aviation (now GE Aerospace)</u>: To GE Aerospace, c/o John T. Martinez, Vice President and General Counsel, 1 Neumann Way, Cincinnati, Ohio, 45215: Any documents, records and correspondence from January 1, 2012–present, unless otherwise indicated, related to:

   a. Internal communications at GE Aviation regarding Quadrant's compliance with the Defense Federal Acquisition Regulation Supplement (DFARS) 225.252-7009 ("DFARS specialty metals clause") and International Traffic in Arms Regulations (ITAR) 22 U.S.C. § 2778, and any internal investigations at GE Aviation concerning Quadrant or its magnets;

   b. Internal communications at GE Aviation regarding the country of origin of Quadrant's magnets, and the location of smelting, machining, or magnetizing;

   c. Internal communications at GE Aviation regarding Quadrant's procedure for reviewing, storing, and sharing GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data;

   d. Communications, records, and contracts between GE Aviation and any other company or branch of the United States military or government relating to the requirements for compliance with the DFARS specialty metals clause or ITAR for the following part numbers:

      i.    PN 1500P-1002 (submarine periscope)

      ii.    PN 10500B-1022 (infrared imaging system)

      iii.    PN 6000U-1002 (multispectral targeting system)

      iv.    PN 100101 (infrared Imaging System)

      v.    PN 3730D-1012 (F-16 Radar)

      vi.    PN 030-052317-01(chemical agent detector).

e. Communications between GE Aviation and any other company or branch of the United States military or government regarding Quadrant's compliance with the DFARS specialty metals clause or ITAR, as well as any waivers of these requirements;

f. Communications, documents, forms, or drawings exchanged between GE Aviation and Quadrant regarding any magnets subject to the DFARS specialty metals clause or ITAR from January 1, 2000–present, including but not limited to regarding:

      i.    The country of origin of Quadrant's magnets and the location of smelting, machining, and magnetizing;

      ii.    Quadrant's procedure for reviewing, storing, and sharing GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data.

g. Any written or recorded statements, communications, complaints, documents, reports, forms, or comparable records, regarding the quality, performance, or defects in Quadrant's magnets, including but not limited to internal

6

      communications at GE Aviation, and communications between GE Aviation and other companies or any branch of the United States military or government;

h. Any records, statements, communications, documents, reports, forms, or other comparable record, related to GE Aviation's sourcing and procurement of magnets for the part numbers listed in d(i)-(vi);

i. Communications between GE Aviation and government or law enforcement agencies or their respective lawyers, including notes, transcriptions, recordings, or memoranda regarding any investigation of Quadrant or its magnets;

j. Information related GE Aviation's policies, procedures, and training regarding compliance with the DFARS specialty metals clause or ITAR, including the disclosure, storage, transmission and export of technical data and drawings, and communicating and monitoring the compliance of GE Aviation's subcontractors with these policies.

k. Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's settlement with GE Aviation, including but not limited to communications between the government and GE Aviation concerning the terms of the settlement, culpable conduct and implicated part numbers, calculation of settlement figures, the subcontractors and products that were related to the terms of settlement, as well as internal government communications regarding the settlement and the government's decision not to criminally prosecute GE Aviation for failure to comply with the DFARS specialty metals clause or ITAR.

* * *

Because these categories of documents are likely to contain exculpatory material related to the government's charges against Quadrant for allegedly exporting GE Aviation and General Dynamics' technical data in violation of the ITAR and concealed and misrepresented the country of origin of its magnets from these third party companies, a pretrial Rule 17(c) subpoena to General Dynamics and GE Aviation for the above noted documents and records is an appropriate and necessary means of gathering this information.

## ARGUMENT

Rule 17(c) "implements a criminal defendant's constitutional right to have compulsory process for obtaining witnesses in his defense by providing a means to subpoena witnesses and documents for trial or a hearing." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013). To obtain a pretrial Rule 17(c) subpoena, a defendant must show that its request clears "three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). The Sixth Circuit has adopted the Nixon formulation for non-party subpoenas. *See, e.g., United States v. Justice*, 14 F. App'x 426, 433 (6th Cir. 2001). A subpoena may be issued before trial where

> it is shown that: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable, with due diligence, in advance of trial; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) the application was made in good faith and is not a general fishing expedition.

*United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1989). Here, the requested subpoena fulfills these requirements because it seeks specific exculpatory material that is directly relevant to this case, and which the government has not provided in response to Quadrant's request.

### I.     The Documents Requested From General Dynamics and GE Aviation Are Evidentiary & Relevant

*First*, the subpoena is clearly relevant to the government's allegations. Courts analyzing this requirement typically look to Federal Rule of Evidence 401 and ask "whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (citing Fed. R. Evid. 401). The government alleges that Quadrant intended to violate ITAR by exporting technical drawings belonging to General Dynamics and GE Aviation to China, and that Quadrant fraudulently concealed its magnets' country of origin. The subpoenas are aimed at procuring relevant information directly related to these allegations, particularly documents and communications that would provide insight into the circumstances surrounding General Dynamics' and GE Aviation's magnet orders and the parties' understanding of the terms at the time.

*Second*, the requested documents are likely to be admissible at trial. Because "it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents," courts have held that "if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied." *See United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995). As a general rule, "exculpatory evidence in the possession of third parties is subject to a subpoena duces tecum." *United States v. King*, 194 F.R.D. 569, 573 (E.D. Va. 2000).

As discussed, the requested subpoenas seek exculpatory material related to the governments' allegations that Quadrant intended to violate ITAR and conceal China as the country of origin for its magnets. The documents obtained through these subpoenas will certainly be

9

relevant exhibits at trial, including documents and communications showing that Quadrant did not willfully export technical data or conceal that its magnets originated in China.

*Third*, the defense's request is specific. A defendant is not required to describe documents by name in a Rule 17(c) subpoena. *See, e.g.*, *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989) ("exquisite specificity" is not required). Rather, since, "in some instances it may be impossible to 'describe fully' the documents," the *Nixon* requirement can "be satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (citing *Nixon*, 418 U.S. at 700). The requested subpoena is targeted specifically at limited categories of information not already addressed in the government's subpoenas which are highly likely to yield relevant and admissible evidence. Under these circumstances, and given the government's failure to produce these documents during its own investigation, the requests are proper under Rule 17(c).

*Finally*, there is a clear need for pretrial production in this case. Pretrial production is appropriate where "the party cannot properly prepare for trial without such production and inspection in advance of trial and . . . the failure to obtain such inspection may tend unreasonably to delay the trial." *Nixon*, 418 U.S. at 699. Considering the potentially critical nature of the requested documents, the government's failure to subpoena or produce them, the potential that the responsive documents will be complex and take substantial time to process, and the likelihood that review of the documents will lead to additional investigation, delaying production would serve only to delay the trial with no apparent offsetting benefit.

## II. The Documents Requested From General Dynamics and GE Aviation Are Not Otherwise Procurable

The documents sought by Quadrant's requested subpoenas are not "otherwise procurable." *Hughes*, 895 F.2d at 1146. The majority of the requested communications and documents are

business records sought from private entities which are not subject to FOIA requests or similar requests without a court order. Moreover, Quadrant's requests go beyond the government's discovery productions in this case. As such, there are no other means for Quadrant to procure the evidence sought by the proposed subpoenas, which is needed to properly prepare defenses at trial related to the substantive allegations in the government's Indictment.

### III. The Documents Requested From General Dynamics and GE Aviation Are Necessary For Defendants To Prepare For Trial

As detailed *supra*, the requested documents go to the heart of the government's case against Quadrant and its three employees as well as the elements of the crimes that must be proven beyond a reasonable doubt. This evidence is critical to Quadrant's arguments that they lacked the requisite knowledge and intent necessary to commit, or engage in a conspiracy to commit ITAR offenses or mislead General Dynamics, GE Aviation, or the government. Count One of the Indictment alleges that Defendants engaged in a conspiracy to violate ITAR; 18 U.S.C. § 554 (smuggling statute); 18 U.S.C. § 1343 (wire fraud statute) and the DFARS specialty metals clause; and 18 U.S.C. § 1001 (false statements statute). Counts Two, Three, and Four for wire fraud allege that Defendants used wire communications to conceal and misrepresent the country of origin of the manufacture, smelting, and magnetization of magnets produced for General Dynamics, in violation of the DFARS. Counts Five, Six, Seven, and Eight, the substantive ITAR counts, allege that Defendants exported defense articles, *i.e.*, General Dynamics' technical drawings, without the necessary license from the State Department. Count X similarly alleges that Defendants fraudulently exported technical data in violation of United States law. The evidence Defendants seek is integral to rebutting such allegations. Further, the government has interviewed employees at these facilities. If called at trial, these witnesses will provide testimony to support the government's

allegations. These documents will be critical to Defendants' ability to effectively cross examine these witnesses and rebut the allegations laid out in the Indictment.

IV. **The Documents Requested From General Dynamics and GE Aviation Are Not A Fishing Expedition**

The proposed subpoenas comply with the requirements that evidence be sought in good faith and not for the purposes of a "fishing expedition." *See United States v. Llanzez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013) (quoting *Nixon*, 418 U.S. at 699). A document request is generally sufficient if "it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." *U.S. v. Bell*, 336 F.R.D. 148, 152 (E.D. Mich. 2020) (internal citations omitted).

Here, the time period for the requested records covers either the same period as the relevant time periods in the government's Indictment. These requests are confined to the allegations raised in the Indictment and have been narrowly tailored to those documents necessary to present a defense. Although there are a number of proposed categories of documents, this is merely a function of the number of counts in the Indictment. Accordingly, Quadrants proposed subpoenas are specifically tailored to obtain admissible evidence that is crucial to the company's defense.

In order to facilitate the most efficient production of the documents, Quadrant requests that the subpoenas command the recipients to return responsive documents directly to defense counsel, rather than to the clerk's office. Courts have permitted this procedure under Rule 17(c), noting that "the plain language of Rule 17(c) does not place an absolute requirement on parties to direct subpoenaed entities to return items to the Court." *Khouj v. Darui*, 248 F.R.D. 729, 731 (D.D.C. 2008). Quadrant has no objection to sharing any documents received in response to the subpoenas with the government. Should the Court disagree with that approach, however, Quadrant

12

alternatively requests that the subpoena be issued with a command to return responsive documents to the Office of the Clerk of this Court.

## CONCLUSION

For the foregoing reasons, Quadrant respectfully requests that the Court, pursuant to Fed. R. Crim. P. 17(c), order the issuance of subpoenas duces tecum to General Dynamics and GE Aviation for the enumerated requests in defendant's Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum.

Dated: August 16, 2023                                  Respectfully submitted,

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2023, I electronically filed the foregoing via the Court's CM/ECF system and caused a copy of the same to be served upon the registered attorneys of record for the United States.

/s/ *John Brownlee*