UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                                          CRIMINAL ACTION NO. 3:22-CR-00088-DJH
*Filed Electronically*

QUADRANT MAGNETICS LLC, ET AL.                                                        DEFENDANT

### RESPONSE TO QUADRANT MAGNETICS' MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS DUCES TECUM

Defendant Quadrant Magnetics LLC (QM) moved this court to issue two overly broad subpoena duces tecum pursuant to Fed. R. Crim. P. 17(c) to General Dynamics (GD) and General Electric Aviation Systems (GEAS). (DN 40). QM fails to meet its burden because the information sought is inadmissible, non-evidentiary, and sought almost exclusively for the purpose of a discovery fishing expedition for impeachment evidence. The United States objects the motion including the request for communications between the United States Attorney/DOJ and GD and GEAS. Therefore, QM's motion should be denied or in the alternative significantly revised to exclude objectionable requests.

### Background

QM, and its president, Phil Pascoe, vice president, Scott Tubbs, and accounting manager, Monica Pascoe were charged on August 17, 2022, with violations of Title 18, United States Code, Section 371 (Conspiracy), Title 18, United States Code, Section 1343 (Wire Fraud), Title 22, United States Code, Section 2778(b)(2) and (c) (Export of Technical Data Without a License); and Title 18, United States Code, Section 554 (Smuggling). See (DN 1, Indictment).

QM and its officers sent over 70 emails each containing a technical data diagram for to employees at X-Mag, a manufacturing facility in China, to produce magnets for GEAS and GD. Each of the technical data transmissions from Pascoe included the owner of both QM and X-Mag, and a Chinese citizen, Hang "Cody" Sun, as a carbon copy recipient. Each technical data diagram contained an ITAR warning clearly indicating the information was not to be exported outside the United States without a license from the State Department or provided to non-U.S. Persons.

All of QM's purchase orders to X-Mag requested that the magnets be supplied magnetized. The regulation, DFARS, prohibits manufacture of the magnets in China for use in military items. In addition, the ITAR regulations prohibit the transmission of technical data without a license to China. QM nor any of its employees or owners possessed a licensee. In August 2017, QM and its employees were undoubtedly made aware of ITAR and DFAR regulations regarding release of technical data associated with GEAS and magnets used in the Navy's F-18 fighter jet. After August 2017, QM and its employees continued to illegally export technical data belonging to GD to X-Mag in China. They also continued to provide Chinese manufactured magnets to GD until the execution of a federal search warrant on October 30, 2018. Unlike other entities, QM and its employees have engaged in long-term and large-scale illegal export of technical data with ITAR warnings to China to the financial benefit of X-Mag and QM, and to the detriment of the national security interests of the United States. Now, QM, by counsel, who also represent Hang "Cody" Sun individually, have moved for the Court to issue a Rule 17 subpoena to GEAS and GD requesting authority to issue unduly burdensome and overly broad subpoenas to two of the victims in this case.

Consistent with its obligation under Fed. R. Crim. P. 16, the United States has provided significant discovery to QM in this matter, including materials obtained from subpoenas issued to

GD and GEAS and a search warrant executed at GEAS[1]. In an abundance of caution the United States has issued information received from GEAS and GD. Most of the information had been previously produced. However, the United States, although not required to, is also disclosing communications from counsel for GD and GEAS to the United States accompanying the information they provided to the United States. Furthermore, the United States consulted with both companies prior to filing the response, GD indicated that they would be providing additional information to the United States. The Untied States will review information and produce information in compliance with Rule 16.

## **Standard for a Rule 17(c) Subpoena**

The party moving for a Rule 17(c) subpoena must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700, 94 S. Ct. 3090, 3103, 41 L. Ed. 2d 1039 (1974); *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990). Pretrial production under subpoena is limited to those documents which are relevant, specifically designated and admissible. *United States v. Lang*, 766 F.Supp. 389 (D. Md. 1991).

Rule 17(c) is not intended to be used as a discovery device or a fishing expedition. See *United States v. Sheppard*, No. 5:17-CR-26-TBR, 2021 WL 2152520, at *1 (W.D. Ky. May 26, 2021); *United States v. Lawson*, No. CRIM 08-21-DCR, 2009 WL 42893, at *1 (E.D. Ky. Jan. 5,

---

[1] Quadrant misleadingly claims that in response to Quadrant's letter requesting civil-type discovery well outside the requirements of Rule 16, the United States responded by only stating it is not obligated to acquire items possessed or controlled by third-parties. Of course Rule 16 does not require this. However, Quadrant's memorandum fails to include that in discovery the United States has provided voluminous material it received from GD and GEAS.

2009) ("Rule 17(c) subpoenas are not a substitute for Rule 16 discovery. They must be specific, not a fishing expedition."); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 71 S. Ct. 675, 95 L. Ed. 879 (1951) (Rule 17 subpoena directed at Government attorneys to produce materials relevant to allegations or charges contained in indictment, regardless of whether such materials might constitute evidence with respect to guilt or innocence of any of defendants, such clause was not intended to produce evidentiary materials but was merely fishing expedition to see what might turn up, and clause was therefore invalid.); *United States v. Burger*, 773 F. Supp. 1419, 1424 (D. Kan. 1991) ("The court notes that Rule 17(c) of the Federal Rules of Criminal Procedure is not intended to be used as a discovery device."). Additionally, the need for evidence that will be used for impeachment does not justify the issuance of a Rule 17(c) subpoena. *Sheppard*, 2021 WL 2152520, at *2 ("Nixon held that 'the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.'").

**Argument**

QM fails to meet many of the standards for the motion for early production of Rule 17(c) subpoenas. In addition, it also failed to put forth sufficient information and argument to meet the standard for a Rule 17 subpoena. The Court should deny the motion as many of the requests do not meet the standards of relevance, admissibility, among others, and the requests are almost exclusively fishing expeditions for impeachment evidence. According to discussions with GD, they informed the United States that they will provide additional information to the United States in the following weeks. The United States will review the information and comply with Rule 16.

The United States will list the information requested and respond to each request below:

**General Dynamics Subpoena[2]**

---

[2] The proposed subpoena is not addressed to the proper party. The subpoena sould be addressed to General Dynamics Motion Control LLC,, San Diego, CA.

4

Quadrant Magnetics LLC seeks a Rule 17(c) subpoena be issued to General Dynamics Corporation ("GD") for multiple categories of documents:

*a. Internal communications at General Dynamics regarding Quadrant's compliance with the Defense Federal Acquisition Regulation Supplement (DFARS) 225.252-7009 ("DFARS specialty metals clause") and International Traffic in Arms Regulations (ITAR) 22 U.S.C. § 2778, and any internal investigations at General Dynamics concerning Quadrant or its magnets;*

U.S. Response:  Internal communications regarding a defendant's compliance with federal law is irrelevant, inadmissible, and not evidentiary.  Any GD internal investigation would have occurred after they were notified by the United States and would be inadmissible pursuant to FRE 407 (remedial measures).  QM fails to specifically prove how these communications would be admissible at trial and would only be used, assuming they exist, to impeach witnesses. Internal investigation files, such as the ones sought here, are not "a proper subject for a Rule 17(c) subpoena." *United States v. Frantz*, No. 1:19CR489, 2020 WL 1187363, at *1 (N.D. Ohio Mar. 12, 2020) (citing *United States v. Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009); *see also United States v. Hills*, 2018 WL 3036195, at *3 (N.D. Ohio June 19, 2018).

*b. Internal communications at General Dynamics regarding the country of origin of Quadrant's magnets, and the location of smelting, machining, or magnetizing;*

U.S. Response:   Again, QM seeks internal communications which are not evidentiary.  The communications would not be admissible at trial.  And simply constitute a patently improper fishing expedition for impeachment evidence.

*c. Internal communications at General Dynamics regarding Quadrant's procedure for reviewing, storing, and sharing General Dynamics' technical drawings and data, and restrictions on exporting or disclosure of such data;*

U.S. Response:  QM seeks information from an outside corporation about QM's own procedure for reviewing, storing, and sharing GD's technical data and restrictions on the disclosure of such data.  This request from QM is for its own procedures and policy which is something that QM would possess and or have provided to GD.   Government Regulations such as DFARS and ITAR control the disclosure of the data, not General Dynamics and certainly not any internal policies of QM.  This request is not relevant, and the information is "otherwise procurable" from QM's own information.    Subpoena duces tecum is not available to secure information where defendant has such information and seeks only confirmation thereof.  *United States v. Schine*, 16 F.R.D. 514, 515 (W.D.N.Y.1955).

*d. Communications, records, and contracts between General Dynamics and*

5

*any other company or branch of the United States military or government reflecting the requirements for compliance with the DFARS specialty metals clause or ITAR for the following part numbers:*
*i. PN 1500P-1002 (submarine periscope)*
*ii. PN 10500B-1022 (infrared imaging system)*
*iii. PN 6000U-1002 (multispectral targeting system)*
*iv. PN 100101 (infrared Imaging System)*
*v. PN 3730D-1012 (F-16 Radar)*
*vi. PN 030-052317-01(chemical agent detector).*

U.S. Response:  This information seeks communications for the purpose of impeachment.  QM fails to explain relevance, admissibility, and evidentiary value of the information sought.

*e. Communications between General Dynamics and any other company or branch of the United States military or government regarding Quadrant's compliance with the DFARS specialty metals clause or ITAR;*

U.S. Response:  This information seeks communications for the purpose of impeachment.  QM fails to explain relevance, admissibility, and evidentiary value of the information sought.

*f. Communications, documents, forms, or drawings exchanged between General Dynamics and Quadrant regarding any magnets subject to the DFARS specialty metals clause or ITAR from the years January 1, 2000–present, including but not limited to regarding:*

U.S. Response:  This information would be in the possession of QM since it is asking for information exchanged by Quadrant to GD.

*i. The country of origin of Quadrant's magnets and the location of smelting, machining, and magnetizing;*
*ii. Quadrant's procedure for reviewing, storing, and sharing General Dynamics' technical drawings and data, and restrictions on exporting or disclosure of such data.*

U.S. Response:  QM again is seeking information from another corporation about its own procedure for handling restricted information.  This information would obviously be otherwise procurable by QM, if it existed, and the proof it was provided to GD would also be possessed by QM.

*g. Any written or recorded statements, communications, complaints, documents, reports, forms, or comparable records, regarding the quality, performance, or defects in Quadrant's magnets, including but not limited to internal communications at General Dynamics, and communications between*

6

*General Dynamics and other companies or any branch of the United States military or government;*

U.S. Response: QM fails to articulate the relevance and admissibility of this. It is not at issue as it relates to the criminal charges.

*h. Any records, statements, communications, documents, reports, forms, or other comparable record, related to General Dynamics' sourcing and procurement of magnets for the part numbers listed in d(i)-(vi);*
*i. Communications between General Dynamics and government or law enforcement agencies or their respective lawyers or agents, including notes, transcriptions, recordings, or memoranda regarding any investigation of Quadrant or its magnets;*

U.S. Response: This information is not obtainable with a Rule 17 subpoena. It is overly broad and not specific. QM fails meet its burden as to why this information is evidentiary and admissible other than for the possible purpose of impeachment. This request is designed to subvert Rule 16 and the Jencks Act.

*j. Information related General Dynamics' policies, procedures, and training regarding compliance with the DFARS specialty metals clause or ITAR, including the disclosure, storage, transmission and export of technical data and drawings, and communicating and monitoring the compliance of General Dynamics' subcontractors with these policies.*

U.S. Response: QM fails to prove the relevance of GD's policies, procedures and training to QM's prosecution as a defendant. Only QM's policy and procedures are relevant to its prosecution not that of another uncharged entity. Such information is not admissible or relevant.

*k. Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's decision not to criminally prosecute GE Aviation or General Dynamics for failure to comply with the DFARS specialty metals clause or ITAR.*

US Response: QM provides no explanation as to how this information is relevant to QM's charge. This is likely because the request is not relevant to QM's charges.

**Subpoena to GE Aviation (now GE Aerospace)**

*a. Internal communications at GE Aviation regarding Quadrant's compliance with the Defense Federal Acquisition Regulation Supplement (DFARS) 225.252-7009 ("DFARS specialty metals clause") and International Traffic in Arms Regulations (ITAR) 22 U.S.C. § 2778, and any internal investigations at GE Aviation concerning Quadrant or its magnets;*

7

U.S. Response: Internal communications regarding QM's compliance with federal law is irrelevant, inadmissible, and not evidentiary. Any GEAS internal investigation would be inadmissible pursuant to FRE 407 (remedial measures). QM fails to specifically prove how these communications would be admissible at trial and would only be used, assuming they exist, to impeach witnesses. Internal investigation files, such as the ones sought here, are not "a proper subject for a Rule 17(c) subpoena." *Frantz*, 2020 WL 1187363, at *1 (citations omitted).

*b. Internal communications at GE Aviation regarding the country of origin of Quadrant's magnets, and the location of smelting, machining, or magnetizing;*

U.S. Response: Again, QM seeks internal communications which are not evidentiary. The communications would not be admissible at trial. And simply constitute a fishing expedition for impeachment evidence.

*c. Internal communications at GE Aviation regarding Quadrant's procedure for reviewing, storing, and sharing GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data;*

U.S. Response: QM seeks information from an outside corporation about QM's own procedure for reviewing, storing, and sharing GEAS' technical data and restrictions on the disclosure of such data. This request from QM is for its own procedures and policy which is something that Quadrant would possess and or have provided to GEAS. Government regulations such as DFARS and ITAR control the disclosure of the data not GEAS. This request is not relevant, and the information is otherwise obtainable from QM's own information.

*d. Communications, records, and contracts between GE Aviation and any other company or branch of the United States military or government relating to the requirements for compliance with the DFARS specialty metals clause or ITAR for the following part numbers:*
*i. PN 1500P-1002 (submarine periscope)*
*ii. PN 10500B-1022 (infrared imaging system)*
*iii. PN 6000U-1002 (multispectral targeting system)*
*iv. PN 100101 (infrared Imaging System)*
*v. PN 3730D-1012 (F-16 Radar)*
*vi. PN 030-052317-01(chemical agent detector).*

U.S. Response: QM fails to explain relevance and admissibility. This request is irrelevant. In addition, GEAS does not even make these parts.

*e. Communications between GE Aviation and any other company or branch of the United States military or government regarding Quadrant's compliance with the DFARS specialty metals clause or ITAR, as well as any waivers of these requirements;*

U.S. Response: Same response as that described *supra* under subsections a and b.

*f. Communications, documents, forms, or drawings exchanged between GE Aviation and Quadrant regarding any magnets subject to the DFARS specialty metals clause or ITAR from January 1, 2000–present, including but not limited to regarding:*
*i. The country of origin of Quadrant's magnets and the location of*
*smelting, machining, and magnetizing;*

U.S. Response: Again, QM seeks internal communications which are not evidentiary. The communications would not be admissible at trial. And simply constitute a fishing expedition for impeachment evidence.

*ii. Quadrant's procedure for reviewing, storing, and sharing GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data.*

US Response: QM would have its own procedures in its possession and thus they are "otherwise procurable."

*g. Any written or recorded statements, communications, complaints, documents, reports, forms, or comparable records, regarding the quality, performance, or defects in Quadrant's magnets, including but not limited to internal communications at GE Aviation, and communications between GE Aviation and other companies or any branch of the United States military or government;*

U.S. Response: This information seeks communications for the purpose of impeachment. QM fails to explain relevance, admissibility, and evidentiary value of the information sought.

*h. Any records, statements, communications, documents, reports, forms, or other comparable record, related to GE Aviation's sourcing and procurement of magnets for the part numbers listed in d(i)-(vi);*

U.S. Response: Irrelevant. GEAS does not make these parts.

*i. Communications between GE Aviation and government or law enforcement agencies or their respective lawyers, including notes, transcriptions, recordings, or memoranda regarding any investigation of Quadrant or its magnets;*

U.S. Response: This information is not obtainable with a Rule 17 subpoena. QM fails meet its burden as to why this information is evidentiary and admissible other than for the possible purpose of impeachment. This request is designed to subvert Rule 16 and the Jencks Act.

*j. Information related GE Aviation's policies, procedures, and training regarding compliance with the DFARS specialty metals clause or ITAR, including the disclosure, storage, transmission and export of technical data and drawings, and communicating and monitoring the compliance of GE Aviation's subcontractors with these policies.*

U.S. Response:  QM fails to prove the relevance of an GEAS's policies, procedures and training in QM's prosecution as a defendant.  Only QM's policy and procedure are relevant to its prosecution not that of another uncharged entity.  Such information is not admissible and irrelevant.

*k. Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's settlement with GE Aviation, including but not limited to communications between the government and GE Aviation concerning the terms of the settlement, culpable conduct and implicated part numbers, calculation of settlement figures, the subcontractors and products that were related to the terms of settlement, as well as internal government communications regarding the settlement and the government's decision not to criminally prosecute GE Aviation for failure to comply with the DFARS specialty metals clause or ITAR.*

U.S. Response:   Obviously, this request is not relevant.   QM provides no explanation as to how this information is relevant to QM's charge.  This is likely because the request is indeed not relevant to QM's charges.

**I.     The documents requested from GD and GEA are not evidentiary and relevant.**

QM broadly claims in its motion that the requested subpoenas are aimed at procuring relevant information directly related to the charges, particularly documents and communications that would provide insight into the circumstances surrounding General Dynamics' and GE Aviation's magnet orders and the parties' understanding of the terms at the time.  (DN 40 at 9). Although QM asserts the categories are narrow in its memorandum, the information sought is in reality very broad. As demonstrated above, QM makes multiple broad requests that lack specificity as to the information sought.  In addition, QM broadly asserts that the information is "likely" to contain exculpatory material without explaining its guess.  In other words, a fishing expedition.

In a circular argument, QM argues the documents in question are "likely" to be admissible at trial because they are relevant. (DN 40 at 9). To subpoena materials under Rule 17, "[t]he materials ... must themselves be admissible at trial." *Skelos*, 2018 WL 2254538, at *2 (quotation and brackets omitted). "[I]t is not enough that they contain information which *could* be admissible." *Id*. *United States v. Turner*, No. 4:19-CR-00026-JHM, 2021 WL 2806219, at *2 (W.D. Ky. July 6, 2021)(Italics added).

QM's subpoena requests crumble under the first *Nixon* factor: it cannot establish that the information is relevant and admissible. *See Nixon*, 418 U.S. at 699. The challenged part of QM's Rule 17(c) subpoenas seek "all documents" and "all communications" between the GEAS and GD and the government agencies involved in investigating and prosecuting this case. At bottom, these are communications between an alleged victims and the Government. The relevance of these communications and documents are not apparent in a case concerning QM's and its employees' unlawful actions. *See United States v. Turner*, No. 4:19-CR-00026-JHM, 2021 WL 2806219, at *2 (W.D. Ky. July 6, 2021).

II. **QM is improperly seeking otherwise procurable impeachment evidence.**

Quadrant is improperly seeking impeachment evidence using Rule 17 subpoenas. QM claims the documents requested from GD and GEAS are necessary to prepare for trial. Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial. *United States v. Nixon*, 94 S.Ct. 3090, 418 U.S. 683, 41 L.Ed.2d 1039 (1974). QM however in its memorandum, acknowledges that it is seeking impeachment evidence:

> The evidence Defendants seek is integral to rebutting such allegations. Further, the government has interviewed employees at these facilities. If called at trial, these witnesses will provide testimony to support the government's allegations. These documents will be critical to Defendants' <u>ability to effectively cross examine these witnesses and rebut the allegations laid out in the Indictment</u>.

11

(DN 40, Defendant's Memorandum in Support, at 11-12).

The "need for evidence to impeach witnesses is insufficient to require advance production under Rule 17(c)." *United States v. Louis Trauth Dairy, Inc.*, 162 F.R.D. 297, 300 (S.D. Ohio 1995) (Rule 17(c) subpoena power not available to compel production of documents relating to antitrust litigation to show competitor engaged in prior misconduct) (citing *Nixon*, 418 U.S. 701); *see United States v. Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009) (subpoenas directed to government agencies concerning the criminal activities of potential government witnesses not a proper subject of Rule 17(c) because they sought general impeachment evidence) (collecting authority); *United States v. Hughes*, 895 F.2d 1135, 1145–56 (6th Cir. 1990) (holding that district court properly quashed Rule 17(c) subpoena seeking documents to impeach government witness). Even if Rule 17(c) were a proper vehicle for obtaining impeachment evidence, Fed. R. Evid. 608(b) would forbid defense counsel from impeaching a witness with extrinsic evidence (other than a criminal conviction) regarding credibility. *See, e.g., United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990).

Other circuits and district courts decline to permit use of Rule 17 subpoenas to obtain impeachment evidence in advance of trial. *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (holding trial court erred in denying nonparty witness' motion to quash subpoena duces tecum for pretrial production of documents, since only evidentiary use that defendants were able to advance was that statements and transcribed interviews of witnesses could be used for impeachment purposes); *Louis Trauth Dairy, Inc.*, 162 F.R.D. at 300) (Defendants in antitrust prosecution could not use subpoena to obtain advance production of documents from unindicted alleged co-conspirator concerning its settlement negotiations with state and federal government, where defendants intended to collect materials for purpose of impeaching testimony of co-

12

conspirator witness); *United States v. Cuthbertson*, 651 F.2d 189, 196 (3rd Cir. 1981) *certiorari denied* 102 S.Ct. 604, 454 U.S. 1056, 70 L.Ed.2d 594 (holding where defendants had not demonstrated any potential evidentiary use of materials, which were submitted by television network to district court for in camera review, at defendants' trial other than for purposes of impeachment, and where on their face the materials, which consisted of transcripts and audiotapes of three interviews with two persons whose names appeared on government witness list, were simply hearsay, materials did not qualify as exculpatory evidence retrievable by subpoena under this rule which reaches only evidentiary materials); *United States v. Jasper*, 2003 WL 1107526, *2 (S.D.N.Y. 2003) (finding defendant charged with embezzling funds from credit union was not entitled to subpoena personnel records from credit union, even if some of personnel files sought were those of potential government witnesses, where files were not in government's possession, and defendant failed to show that files contained admissible evidence, or would be used for anything other than impeachment purposes); *United States v. Holihan*, 248 F.Supp.2d 179, 183 (W.D.N.Y.2003) (finding evidence sought only to impeach a government witness is not subject to production by a third party in response to a subpoena for documentary evidence); *United States v. Cherry*, 876 F.Supp. 547, 553 (S.D.N.Y. 1995) (finding the fact that use of documents sought in subpoena would be limited to impeachment does not compel finding that they are evidentiary, and thus may be subpoenaed under rule providing for subpoena for books, papers, documents or other objects); *United States v. Rothman*, 179 F.Supp. 935, 937 (W.D.Pa.1959).

### III.     Quadrant's Rule 17 subpoenas are an impermissible fishing expedition.

The United States objects to QM's request as a fishing expedition. QM fails to meet this burden for all categories of information sought.   QM's only support for the relevancy and admissibility of these two sets of communications is the conclusory statement that they "likely to

13

contain exculpatory material related to the government's charges" (DN 40 at 8). Conclusory statements regarding relevancy and admissibility does not satisfy the *Nixon* requirement. *See United States v. Peavler*, No. 3:15-CR-14-GFVT-REW, 2017 WL 1018304, at *4 (E.D. Ky. Mar. 10, 2017) (quashing Rule 17(c) subpoena to outside attorney for communications with Government relating to a civil investigation of represented company that occurred after relevant time period of conduct that was the subject of a criminal action); *United States v. Burger*, 773 F. Supp. 1419 (D. Kan. 1991) (denying motion for Rule 17(c) subpoena since "[d]efendants' conclusory statements that the documents may be relevant and admissible are insufficient."); *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir.1981), cert. denied, 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982). I

In almost every category, QM seeks "communications" without specifically indicating the identity of people communicating. In essence, QM is seeking to force GEAS and GD to execute a broad search on QM's behalf. This would be the definition of a fishing expedition. QM's attempt to obtain government communications and information regarding a civil settlement or decisions whether or not to prosecute is also the very definition of a fishing expedition that runs counter to Rule 17(c).

Regarding admissibility, QM claims that such communications would be exculpatory and "likely" admissible. Simply because a company may make and keep correspondence, does not automatically make them admissible because the records are hearsay. *See United States v. Daneshvar*, 925 F.3d 766 (6th Cir. 2019) ("It would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then ergo all those emails are business records falling with the ambit of business record exception to hearsay rule. Fed. R. Evid. 803(6)(B)."). QM's conclusory statement that requested documents might be relevant and

admissible are insufficient to show relevancy, admissibility and specificity required to issue a Rule 17(c) subpoena.

## Conclusion

Plainly put, QM is attempting to obtain discovery more akin to that in a civil lawsuit. Rule 17(c) subpoenas should not be used as discovery devices. That is exactly what QM is trying to do in this case. Therefore, the United States requests that Court deny the motion in its entirety.

In the alternative, should the Court grant the motion, the United States requests that to the extent possible, the overly broad subpoena requests be narrowed to actually comply with the relevancy and specificity standards required by Rule 17(c).

Finally, if any form of the subpoena is granted, the United States requests that it be provided a copy of any information QM obtains.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

 s/*Joshua Judd*
Joshua Judd
Christopher C. Tieke
Assistant U.S. Attorneys
717 West Broadway
Louisville, Kentucky 40202
PH: (502) 582-5911

15

## CERTIFICATE OF SERVICE

      I hereby certify that on August 30, 2023, I filed the foregoing by ECF which will send a notice of electronic filing to all counsel of record.

                                          s/*Joshua Judd*
                                          Joshua Judd
                                          Christopher C. Tieke
                                          Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                          CRIMINAL ACTION NO. 3:22-CR-00088-DJH

QUADRANT MAGNETICS LLC, ET AL.                                                     DEFENDANT

**PROPOSED ORDER**

The defendant Quadrant Magnetics LLC's motion for a Fed. R. Crim. P. 17(c) subpoena is **DENIED**.