UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| *UNITED STATES OF AMERICA*, | ) | |
| | ) | |
| *v.* | ) | CASE NO. 3:22-CR-88 DJH |
| | ) | |
| | ) | |
| *QUADRANT MAGNETICS, LLC, et al.* | ) | |

**QUADRANT MAGNETICS' REPLY IN FURTHER SUPPORT OF QUADRANTS'
MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS DUCES TECUM**

Quadrant Magnetics LLC (hereinafter referred to as "Quadrant"), pursuant Rule 47.1 of the Joint Local Rules of Criminal Practice ("Local Rules"), hereby replies to the United States' Opposition to Quadrant's Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum ("Opposition").

**I.    Background:  The Company's Requests**

On May 8, 2023, Quadrant submitted a letter to the government requesting documents in its possession regarding Quadrant's magnets sold to General Dynamics and GE Aviation (now GE Aerospace). (5/8/2023 Supplemental Discovery Request Letter from QM to Government at 1–4, attached hereto as **Exhibit 1**).  These requests were based, in part, on the government's description of GE Aviation and General Dynamics as "victims" of Quadrant's purported conduct and its allegation that Quadrant misrepresented and concealed from GE Aviation and General Dynamics the country of origin of its magnets.  (DN 1 at 5).  The government, in a letter dated June 9, 2023, denied the company's requests (attached hereto as **Exhibit 2**).

In response, on August 16, 2023, the company filed a motion requesting Rule 17(c) subpoenas to be issued to GE Aviation and General Dynamics seeking a handful of narrow categories of evidence that are critical for the preparation of Quadrant's defense.  The government,

after receiving Quadrant's motion for the Rule 17(c) subpoenas, immediately contacted GE Aviation and General Dynamics and asked them to produce to the government the responsive evidence sought by Quadrant in its Rule 17(c) application so that it could control the information Quadrant receives. The government then filed objections to the company's request for the Rule 17(c) subpoenas claiming, remarkably, that the "information sought is inadmissible, non-evidentiary, and sought almost exclusively for the purpose of a discovery fishing expedition for impeachment evidence." (DN 42 at 1). It is clear that the company's alleged "fishing expedition" has hooked a big one, and we respectfully request that the Court authorize the Rule 17(c) subpoenas to GE Aviation and General Dynamics.[1]

## II. The Government Conceded Relevance by Demanding the Same Documents From GE Aviation and General Dynamics After Receiving Quadrant's Motion for the Rule 17(c) Subpoenas.

Despite its claim that Quadrant's Rule 17(c) subpoenas seek only irrelevant and inadmissible evidence, the government, after receiving the motion for the Rule 17(c) subpoenas, demanded from GE Aviation and General Dynamics the same evidence requested by Quadrant. The government then later produced a limited set of those documents to Quadrant. Included in this limited production were GE Aviation's and General Dynamics' internal and external communications. For example, the government provided letters from GE Aviation counsel to the Department of State Office of Defense Trade Controls Compliance, Boeing, and Northrup Grumman describing issues with magnet sourcing, a Commodity Jurisdiction Determination for P/N FP240181P1, several contracts and invoices between Boeing and GE Aviation, dozens of checks from General Dynamics to Quadrant, five spreadsheets detailing GE Aviation orders from

---

[1] In its Opposition, the government alleged that the company violated the ITAR when it transferred certain drawings to "the owner of both QM and X-Mag, and a Chinese citizen, Hang "Cody" Sun, as a carbon copy recipient." (DN 42 at 2). As the government must know, Mr. Sun is a lawful permanent resident (he was issued a Green Card in 2015) and therefore the ITAR restrictions do not apply to him. *See* EAR Part 772 and ITAR § 120.62.

Quadrant and other suppliers, a Boeing Statement of Work for GE Aviation, and two Generator Converter Unit presentations.  We believe there is additional relevant evidence in the possession of GE Aviation and General Dynamics and request that Quadrant be permitted to receive such information directly from the companies in response to its Rule 17(c) subpoenas rather than allowing the government to filter this critical evidence before producing a portion of it.  This type of filtering process implemented by the government is illegitimate and not part of the Rule 17(c) protocol.[2]

Despite securing and producing many of the relevant documents that the company requested in its Rule 17(c) requests, the government now takes the contrary position that these same requests to GE Aviation and General Dynamics seek only irrelevant and inadmissible evidence and are fishing expeditions.  In its letter denying Quadrant's supplemental discovery requests, the government stated that it is "not obligated to acquire items exclusively possessed or controlled by other parties." (Ex. 2 at 2).  Thus, Quadrant was forced to seek two Rule 17(c) subpoenas from the Court compelling the information from General Dynamics and GE Aviation. Only after facing the possibility of the Court authorizing the Rule 17(c) subpoenas did the government request the records from GE Aviation and General Dynamics. The government's conduct proves that Quadrant's Rule 17(c) subpoenas only seek relevant and admissible evidence. The Court should reject such gamesmanship and authorize the Rule 17(c) subpoenas.

## III.  The Government Overstates the Impact of Impeachment Evidence on Rule 17(c) Subpoena Requests.

The mere possibility that the information sought could be used to impeach government

---

[2] The government claims that it is "unduly burdensome" for GE Aviation and General Dynamics to collect and produce the responsive records to Quadrant in response to the Rule 17(c) subpoenas.  This is not so.  Neither company claimed it was unduly burdensome when they collected and produced records in response to the government's demands for similar records.

witnesses does not make Quadrant's Rule 17(c) subpoena requests improper.  In its Opposition, the government asserts that "Quadrant is improperly seeking impeachment evidence using Rule 17 subpoenas." (DN 42 at 11). This is not the case. Although Rule 17 subpoenas should not *exclusively* seek impeachment evidence, a Rule 17(c) subpoena is not improper simply because some information may be used to impeach a witness. *See United States v. Nixon*, 418 U.S. 683, 701–702 (1974) (finding that a Rule 17(c) subpoena request that included possible impeachment evidence was acceptable because there were other valid potential evidentiary uses for the same material);[3] *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (noting that *Nixon* allowed a subpoena for potential impeachment evidence); *United States v. Holihan*, 248 F.Supp.2d 179, 183 (W.D.N.Y. 2003) (although evidence sought only for impeachment is not subject to Rule 17(c) production, a defendant may subpoena information that is relevant aside from impeachment purposes).  Here, Quadrant seeks relevant evidence that is integral to rebutting the government's allegations that it willfully exported technical data and concealed that its magnets originated in China.  Quadrant's motion for Rule 17(c) subpoenas should not be denied because some of the evidence may incidentally be used for impeachment.

## IV.    The Requested Records Contain Evidence Exculpatory to Quadrant.

The government ignores the clear relevance of information about whether Quadrant acted

---

[3] In *United States v. Nixon*, the Supreme Court addressed a motion by government prosecutors, not a criminal defendant, seeking a Rule 17(c) subpoena and established a 4-part test to evaluate such a request.  Also, in *Nixon,* prosecutors served a Rule 17(c) subpoena because the grand jury had returned its indictment and the prosecutors were forbidden from using grand jury subpoenas to bolster its evidence for trial.  *Nixon* did not address the situation where a defendant, like Quadrant, was seeking documents from a third party, although it did express, in a footnote, that it "need not decide whether a lower standard exists" in cases where "the subpoena duces tecum is issued to third parties rather than to government prosecutors." *Nixon*, 418 U.S. at 700 n.12.  Criminal defendants, unlike government prosecutors, do not have an alternative means of issuing subpoenas duces tecum, and thus, courts can be more willing to authorize such subpoenas.  *See, e.g., United States v. Tucker,* 249 F.R.D. 58, 63 (S.D.N.Y. 2008) ("It is [ ] fair to ask whether it makes sense to require a defendant seeking to obtain material from a non-party by means of a Rule 17(c) subpoena to meet the [admissibility] standard" as opposed to the lesser  materiality standard.); *United States v. Smith*, No. 19-cr-00669, 2020 WL 4934990, at *3-4 (N.D. Ill. Aug. 23, 2020) (questioning appropriateness of *Nixon* admissibility standard but quashing subpoena for CFTC documents on deliberative process grounds).

deceptively or willfully. In attacking relevance, the government states "At bottom, these are communications between an [sic] alleged victims and the Government." (DN 42 at 11). Contrary to this mischaracterization, evidence that addresses whether the companies knew of the magnets' origins (and thus whether Quadrant misled them) bears directly on the government's allegations that Quadrant willfully violated ITAR and deceived GE Aviation and General Dynamics. The government also entered into a False Claims Act Settlement (attached hereto as **Exhibit 3**) with GE Aviation regarding Quadrant's magnets, so the government cannot describe GE Aviation as a mere victim after previously bargaining over GE Aviation's culpability in this matter.

The government's Rule 407 argument is similarly misplaced. Rule 407 states that remedial measures are not admissible for several particular purposes such as proving culpability. Fed. R. Evid. 407. Quadrant does not seek to use the fact that companies carried out investigations to prove culpability; it seeks internal communications indicating that the alleged "victims" were aware of the magnets' origins, and thus were not deceived or misled by Quadrant. These communications directly relate to the elements of the criminal charges the government must prove beyond a reasonable doubt, namely "willfulness" and, by extension, "deceptiveness."

The government must prove that Quadrant *willfully* exported defense articles without a license in violation of ITAR. 22 U.S.C. § 2778(c). Most criminal prohibitions require only proof that the crime was committed "knowingly," meaning that the defendant knew of the acts that made the action illegal, even if the defendant did not know the act was illegal. *See United States v. Burden*, 934 F.3d 675, 690 (D.C. Cir. 2019). A more culpable state of mind is required, however, for conduct that is done "willfully:" "The jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191–93, 118 S. Ct. 1939, 1944–46, 141 L. Ed. 2d 197 (1998).

Moreover, "[n]egligent conduct, or conduct by mistake or accident, or with a good faith belief that the conduct was lawful, is not sufficient to constitute willfulness." *United States v. Roth*, 628 F.3d 827, 835 (6th Cir. 2011).

Courts rely on two categories of evidence as sufficient proof of willfulness in ITAR cases: (1) evidence that the defendant had prior training or was otherwise informed that exporting the defense articles was illegal, and (2) evidence that a defendant acted deceptively to conceal the true nature of the export. *See Roth*, 628 F.3d at 837 (affirming that defendant willfully violated ITAR because university officials informed him that the data at issue was export controlled and instructed him to take nothing concerning the project to China); *United States v. Bishop*, 740 F.3d 927, 935–36 (4th Cir. 2014) (finding that the defendant's deceptive actions indicated his awareness that his actions in exporting defense articles was illegal).

In its subpoena requests, Quadrant seeks internal company records from GE Aviation and General Dynamics that will demonstrate that Quadrant did not willfully export technical data or deceptively conceal that its magnets originated in China. Such exculpatory material can only be uncovered through records relating to General Dynamics' and GE Aviation's internal communications and understanding of the Quadrant orders and county of origin, smelting and magnetization. Quadrant is not on a fishing expedition. It is working to procure documents that it cannot otherwise procure to defend against the government's specific allegations from its case in chief.

## V.    Quadrant's Subpoena Requests Satisfy the *Nixon* Factors.

Quadrant's subpoena requests satisfy the *Nixon* factors, and the government mischaracterizes or misunderstands Quadrant's requests. The government attacks the relevance of the information sought and mischaracterizes the requests as a fishing expedition. Each of these

requests seeks information that is relevant, admissible, and specific to the government's allegations regardless of any value for impeachment purposes.

### Subpoena Requests

a. *Internal communications at [General Dynamics, GE Aviation] regarding Quadrant's compliance with the Defense Federal Acquisition Regulation Supplement (DFARS) 225.252-7009 ("DFARS specialty metals clause") and International Traffic in Arms Regulations (ITAR) 22 U.S.C. § 2778, and any internal investigations at General Dynamics concerning Quadrant or its magnets;*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness. General Dynamics and GE Aviation's understanding of Quadrant's, and their own, compliance with federal requirements will demonstrate that Quadrant did not act deceptively or attempt to mislead them.

b. *Internal communications at [General Dynamics, GE Aviation] regarding the country of origin of Quadrant's magnets, and the location of smelting, machining, or magnetizing;*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged intent to deceive or mislead General Dynamics and GE Aviation. This information will demonstrate that Quadrant did not act deceptively because General Dynamics and GE Aviation knew or suspected the country of origin for Quadrant's magnets.

c. *Internal communications at [General Dynamics, GE Aviation] regarding Quadrant's procedure for reviewing, storing, and sharing General Dynamics and GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data;*

**Quadrant Reply**: Quadrant is not seeking information about its own internal procedures. Quadrant seeks information from General Dynamics' and GE Aviation's communications about Quadrant's internal procedures that further show General Dynamics' and GE Aviation's knowledge of Quadrant's procedure and establish that they were not deceived.

d. *Communications, records, and contracts between [General Dynamics, GE Aviation] and any other company or branch of the United States military or government relating to the requirements for compliance with the DFARS specialty metals clause or ITAR for the following part numbers:*
  - i. *PN 1500P-1002 (submarine periscope)*
  - ii. *PN 10500B-1022 (infrared imaging system)*
  - iii. *PN 6000U-1002 (multispectral targeting system)*
  - iv. *PN 100101 (infrared Imaging System)*
  - v. *PN 3730D-1012 (F-16 Radar)*
  - vi. *PN 030-052317-01(chemical agent detector).*

7

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness. This information will demonstrate what knowledge, if any, the U.S. government, General Dynamics, and GE Aviation had about whether these specific parts were subject to ITAR, which will reveal exculpatory information about any alleged deception as well as Quadrant's alleged willfulness. Although GE Aviation does not make these parts, it may nonetheless have information regarding them.

e. *Communications between [General Dynamics, GE Aviation] and any other company or branch of the United States military or government regarding Quadrant's compliance with the DFARS specialty metals clause or ITAR, as well as any waivers of these requirements;*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness. The exculpatory information is relevant to establish whether General Dynamics, GE Aviation, Quadrant, and the government knew that the magnets at issue were subject to ITAR and thus whether Quadrant acted deceptively or willfully.

f. *Communications, documents, forms, or drawings exchanged between [General Dynamics, GE Aviation] and Quadrant regarding any magnets subject to the DFARS specialty metals clause or ITAR from January 1, 2000–present, including but not limited to regarding:*

    i. *The country of origin of Quadrant's magnets and the location of smelting, machining, and magnetizing;*
    ii. *Quadrant's procedure for reviewing, storing, and sharing General Dynamics and GE Aviation's technical drawings and data, and restrictions on exporting or disclosure of such data.*

**Quadrant Reply**: This limited request seeks exculpatory information about Quadrant's alleged willfulness that is not in Quadrant's possession. This information will show when General Dynamics and GE Aviation became aware of the country of origin for Quadrant's magnets and if Quadrant knew that the magnets were subject to DFARS or ITAR. This is potentially exculpatory information relating to whether Quadrant acted deceptively or willfully.

g. *Any written or recorded statements, communications, complaints, documents, reports, forms, or comparable records, regarding the quality, performance, or defects in Quadrant's magnets, including but not limited to internal communications at [General Dynamics, GE Aviation], and communications between [General Dynamics, GE Aviation] and other companies or any branch of the United States military or government;*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness, knowledge, and intent. The government purportedly sent Quadrant's magnets to an FBI lab for testing.  Although the company believes the government's report is inadmissible, it seeks the internal and external communications surrounding the allegation to prepare for trial and to avoid delay.

8

h. *Any records, statements, communications, documents, reports, forms, or other comparable record, related to [General Dynamics', GE Aviation's] sourcing and procurement of magnets for the part numbers listed in d(i)-(vi);*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness and allegations of deception and efforts to mislead.

i. *Communications between [General Dynamics, GE Aviation] and government or law enforcement agencies or their respective lawyers or agents, including notes, transcriptions, recordings, or memoranda regarding any investigation of Quadrant or its magnets;*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged willfulness and alleged deceptiveness. It also seeks any allegations advanced by the government against Quadrant and/or General Dynamics and GE Aviation.

j. *Information related [General Dynamics', GE Aviation's] policies, procedures, and training regarding compliance with the DFARS specialty metals clause or ITAR, including the disclosure, storage, transmission and export of technical data and drawings, and communicating and monitoring the compliance of General Dynamics' subcontractors with these policies.*

**Quadrant Reply**: This request seeks exculpatory information about Quadrant's alleged knowledge that its magnets were subject to DFARS or ITAR and whether it acted deceptively.

k. *Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's decision not to criminally prosecute GE Aviation or General Dynamics for failure to comply with the DFARS specialty metals clause or ITAR;*

*Any written or recorded statements, communications, complaints, documents, reports, forms, or other comparable record, concerning the government's settlement with GE Aviation, including but not limited to communications between the government and GE Aviation concerning the terms of the settlement, culpable conduct and implicated part numbers, calculation of settlement figures, the subcontractors and products that were related to the terms of settlement, as well as internal government communications regarding the settlement and the government's decision not to criminally prosecute GE Aviation for failure to comply with the DFARS specialty metals clause or ITAR.*

**Quadrant Reply**: The request seeks internal and external communications about Quadrant's alleged willfulness and it seeks relevant information about General Dynamics' understanding of why the government did or did not prosecute General Dynamics for any alleged ITAR violations. This request also is relevant because it demonstrates the evidence the government relied on to determine if General Dynamics acted willfully in violation of the ITAR.

The request is relevant because it seeks information relied upon by the government when forgoing criminal prosecution of GE Aviation.  This exculpatory information applies to Quadrant, as Quadrant supplied the magnets at issue.

## VI.    Conclusion

Quadrant respectfully requests that the Court, pursuant to Fed. R. Crim. P. 17(c), order the issuance of subpoenas duces tecum to General Dynamics and GE Aviation for the enumerated requests in defendant's Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum.  In addition, Quadrant requests that the Court set a hearing to allow Quadrant to argue the merits of its requests.

Dated: September 13, 2023                          Respectfully submitted,

 

 

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2023, I filed the foregoing with the Case Manager of this court via electronic mail for entry on the sealed docket, and I served a copy of the same upon the attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*

11