# EXHIBIT 3

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of Defense Contract Management Agency (DCMA) (collectively, the "United States") and GE Aviation Systems, LLC (GEAS) (hereafter, the United States and GEAS are collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.  GEAS manufactures Generator Control Units used in aircraft, including those used in military platforms such as the F-18 Super Hornet. These Generator Control Units (GCUs) are manufactured in GEAS's Vandalia, Ohio, plant.

B.  The United States contends that GEAS submitted or caused to be submitted claims for payment on contracts with the Department of Defense for military aircraft containing GEAS manufactured GCUs.

C.  The United States contends that it has certain civil claims against GEAS for conduct occurring during the period from November 1, 2014 through October 31, 2017. Specifically, the United States contends that GEAS used Chinese manufactured samarium-cobalt magnets in GCUs installed in Department of Defense equipment that did not comply with 48 C.F.R. 252.225-7009, which, absent an exception, requires specialty metals used in military platforms to be melted and produced in the United States or a qualifying country. The magnets, identified as GEAS Part Nos. 36B and FP24, were provided by a GEAS supplier Quadrant Magnets, LLC and were manufactured in China. That conduct is referred to below as the "Covered Conduct."

1

D.  The United States acknowledges that on August 21, 2017, GEAS disclosed to it that GEAS Part No. FP24 did not comply with 48 C.F.R. 252.225-7009.

E.  This Settlement Agreement is neither an admission of any allegation or liability by GEAS nor a concession by the United States that its claims are not well founded.

F.  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Within ten (10) days following the Effective Date of this Agreement, GEAS shall pay to the United States TWO-HUNDRED THIRTY-SEVEN THOUSAND EIGHTY-SEVEN DOLLARS AND 07/100 CENTS ($237,087.07) (the "Settlement Amount"), of which $158,058.04 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Kentucky.

2. Subject to the exceptions in Paragraph 3 (concerning reserved claims) below, and upon the United States' receipt of the relevant Settlement Amount, the United States releases GEAS from civil monetary claims the United States has for the Covered Conduct only under the common law theory of unjust enrichment.

3. Notwithstanding the releases given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services, other than the Covered Conduct;

    h. Any liability for failure to deliver goods or services due; and

    i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

4. GEAS waives and shall not assert any defenses GEAS may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

5. GEAS fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that GEAS has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

6. GEAS agrees to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of GEAS, its present or former officers, directors, employees, shareholders, and agents in connection with:

    i. the matters covered by this Agreement;

    ii. the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    iii. GEAS's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    iv. the negotiation and performance of this Agreement; and

    v. the payment GEAS makes to the United States pursuant to this Agreement

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by GEAS, and GEAS shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Within 90 days of the Effective Date of this Agreement, GEAS shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by GEAS or any of its subsidiaries or affiliates from the United States. GEAS agrees that the United States, at a minimum, shall be entitled to recoup from GEAS any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on

previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine GEAS's books and records and to disagree with any calculations submitted by GEAS or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by GEAS, or the effect of any such Unallowable Costs on the amount of such payments.

7. This Agreement is intended to be for the benefit of the Parties only.

8. Each Party shall bear their own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

9. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

10. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Western District of Kentucky. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

11. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

12. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

13. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

14. This Agreement is binding on GEAS's successors, transferees, heirs, and assigns.

15. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

16. This Agreement is effective on the date of signature of the last signatory to this Agreement (the "Effective Date"). Digital and electronic transmissions and signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

MICHAEL A. BENNETT
United States Attorney, WDKY

DATED: _____    BY: _____
Benjamin S. Schecter
Assistant United States Attorney

**GE AVIATION SYSTEMS, LLC**

July 28, 2022
DATED: _____    BY: _____
Peter B. Hutt II
COVINGTON & BURLING, LLP
Co-Counsel for GE Aviation Systems, LLC

DATED: July 28, 2022   BY: _____
Brian Butler
STITES & HARBISON, PLLC
Co-Counsel for GE Aviation Systems, LLC

6