UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FILED
JAMES J. VILT, JR. - CLERK
OCT 18 2023
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES OF AMERICA

v.

PHIL PASCOE
SCOTT TUBBS
MONICA PASCOE
QUADRANT MAGNETICS LLC

SUPERSEDING INDICTMENT

NO.   3:22-CR-00088-DJH
18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 554
18 U.S.C. § 981
18 U.S.C. § 1001
18 U.S.C. § 1343
22 U.S.C. § 401
22 U.S.C. § 2778

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

A.   **DEFENDANTS AND RELEVANT ENTITIES**

At all times relevant to this Indictment:

1.   **QUADRANT MAGNETICS LLC** ("QM"), operated in Louisville, Kentucky, is a supplier of rare earth samarium-cobalt magnets and neodymium-iron-boron magnets for aviation systems and other military items supplied to the United States Department of Defense ("DOD").

2.   Chinese Company 1 manufactures rare earth samarium-cobalt or neodymium-iron-boron-magnets.   US Companies 1 and 2 ordered and purchased magnets from **QUADRANT MANETICS LLC** located in Louisville, Kentucky.   **QUADRANT MAGNETICS LLC** requested quotes from **CHINESE COMPANY 1** who shipped sintered and magnetized magnets to **QUADRANT MAGNETICS LLC** from China.   **QUADRANT MAGNETICS LLC** received the magnets in the United States and re-packaged them in **QUADRANT MAGNETICS LLC** shipping containers with **QUADRANT MAGNETICS LLC** labeling.   **QUADRANT**

MAGETICS LLC then shipped the magnets to US Company 1 and 2 who included them in military end use items.

3. **PHIL PASCOE** was the Vice President of Operations at **QUADRANT MAGNETICS LLC**. In October 2018, **PHIL PASCOE** was promoted to President.

4. **SCOTT TUBBS** was Vice President of Sales and Marketing for **QUADRANT MAGNETICS LLC**.

5. **MONICA PASCOE** was the accounting manager for **QUADRANT MAGNETICS LLC**.

6. From on or about January 1, 2012, and continuing thereafter until on or about December 2018, **QUADRANT MAGNETICS LLC** exported approximately 70 drawings containing export-controlled technical data to Chinese Company 1 without a license as required by law and in violation of the law, specifically the International Traffic in Arms Regulations ("ITAR"). The technical data drawings were the property of U.S. Company 1 and U.S. Company 2 and related to end-use items for aviation, submarine, radar, tank, motors, missiles, infrared and thermal imaging targeting systems, and fire control systems for DOD.

7. **QUADRANT MAGNETICS LLC** imported rare earth magnets that were smelted and magnetized in China by Chinese Company 1. **QUADRANT MAGNETICS LLC** then sold these magnets to U.S. Company 1 and 2 which included them in components sold to the DOD for use in the F-16, the F-18, and other defense assets in violation of the law, specifically the Defense Federal Acquisition Regulations Supplement ("DFARS").

A. **DEFENSE FEDERAL ACQUISITION REGULATION SUPPLEMENT**

8. DFARS sets forth specific acquisition regulations that DOD government acquisition officials and those contractors doing business with DOD must follow in the procurement process

of goods and services. The DFARS requirements, including the specialty metals clause, apply to subcontractors, such as **QUADRANT MAGNETICS LLC**. According to the specialty metals clause in DFARS 225.252-7009, specialty metals including samarium-cobalt magnets and neodymium-iron-boron, procured by DOD and used in defense articles, must be smelted in the United States or a "qualifying country," or smelted anywhere but incorporated into an article that is manufactured in a qualifying country. The specialty metals clause allows a qualifying country to manufacture parts from metal that was smelted anywhere, provided it meets specifications, but a United States company can only use metal that was smelted in the United States or a qualifying country. China was not a qualifying country for the purpose of the specialty metals clause of the DFARS.

B. <u>LAWS RESTRICTING THE EXPORT OF DEFENSE ARTICLES</u>

9. The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), authorizes the President of the United States to control the export of "defense articles" by designating certain items as defense articles and promulgating regulations for the export of such articles.

10. Defense articles that were subject to such licensing requirements were designated on the United States Munitions List ("USML"), 22 C.F.R. § 121.1, as set forth in the ITAR, 22 C.F.R. parts 120-130.

11. The AECA and the ITAR require a person to apply for and obtain an export license from the U.S. Department of State's Directorate of Defense Trade Controls ("DDTC") before exporting defense articles, by any means, including transfers of technical data, from the United States. 22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 120.1, 120.17.

12. Defense articles on the USML include "technical data," that is, information "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles." 22 C.F.R. § 120.10(a)(1).

13. DDTC has determined that the following items were technical data directly related to defense articles described in Category XX (Submersible Vessels and Related Articles) and Category XII (Fire Control, Laser, Imaging, and Guidance Equipment) of the USML and required a license or other approval prior to export from the United States:

   a. The ITAR controlled U.S. Company 2's magnet technical data for Part Number ("PN") 1500P-1002 under Category XX(d) of the USML during the period from January 1, 2009, through at least June 23, 2021.

   b. The ITAR controlled U.S. Company 2's magnet technical data for PN 10500B-1022 under Category XII(f) of the USML during the period from January 1, 2009, through at least July 1, 2021;

   c. The ITAR controlled U.S. Company 2's magnet technical data for PN 6000U-1002 under Category XII(f) of the USML during the period during the period from January 1, 2009, through at least July 1, 2021;

   d. The ITAR controlled U.S. Company 2's magnet technical data for PN 100101 controlled under Category XII(f) of the USML during the period from January 1, 2009, through at least July 1, 2021; and

   e. The ITAR controlled U.S. Company 2's magnet technical data for PN 3730D-1012 controlled under Category XII(f) of the USML during the period from January 1, 2009, through June 17, 2021.

14.  Persons engaged in the export of defense articles must be registered with the DDTC and must apply for and receive a valid license or other approval to export the defense article, including technical data, from the United States. 22 C.F.R. § 123.1(a). Such license application must identify the specific defense articles to be exported, the foreign consignee, and the end-user, among other information.

The Grand Jury charges:

## COUNT 1
*(Conspiracy)*

**A.   THE CONSPIRACY AND ITS OBJECTS**

15.  The Grand Jury re-alleges and incorporates here paragraphs 1 through 14 of the Introductory Allegations of this Superseding Indictment.

16.  From on or about January 1, 2012, and continuing thereafter until on or about December 2018, in the Western District of Kentucky, and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS, MONICA PASCOE,** and **QUADRANT MAGNETICS LLC**, together with others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other to:

   a.   knowingly and willfully export from the United States to China, and to non-U.S. persons, defense articles, specifically technical data covered by the USML, without first obtaining a valid license and other approval for such export from the U.S. Department of State, in violation of 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(4);

   b.   fraudulently and knowingly export from the United States any merchandise, article and object contrary to any law or regulation of the United States, in violation of 18 U.S.C. § 554;

    c.    fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county of origin, in violation of 18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009.

    d.    knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation; and make and use a false writing or document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry; in violation of 18 U.S.C. § 1001(a)(2) and (3).

**B.**    **MANNER AND MEANS OF THE CONSPIRACY**

17.    The object of the conspiracy was to be accomplished in substance as follows:

    a.    On behalf of **QUADRANT MAGNETICS LLC**, defendants **PHIL PASCOE** and **SCOTT TUBBS** ordered magnets containing rare earth minerals, such as samarium-cobalt and neodymium-iron-boron, for U.S. Company 1 and U.S. Company 2, both of which were defense contractors and provided defense articles and services to the DOD;

    b.    Defendants **PHIL PASCOE, SCOTT TUBBS,** and **MONICA PASCOE** through **QUADRANT MAGNETICS LLC**, obtained ITAR-controlled technical data from U.S. Company 1 and U.S. Company 2;

    c.    Defendants **PHIL PASCOE** and **SCOTT TUBBS** transmitted via email ITAR-controlled technical data to China, to Chinese Company 1, and to non-U.S. persons located in and outside of the United States;

    d.    Defendants **PHIL PASCOE, SCOTT TUBBS,** and **MONICA PASCOE** imported magnets smelted in China using ITAR-controlled data provided to Chinese Company 1 to fulfill orders for U.S. Company 1 and U.S. Company 2, which were

incorporating the magnets into aviation systems and other military items for DOD. Defendants repackaged the magnets before shipping them to U.S. Company 1 and U.S. Company 2; and

e. Defendants **PHIL PASCOE** and **SCOTT TUBBS** misrepresented and concealed from U.S. Company 1 and U.S. Company 2 the country of origin of the magnets.

C. **OVERT ACTS**

18. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants **PHIL PASCOE, SCOTT TUBBS**, and **MONICA PASCOE**, and others known and unknown to the Grand Jury, committed various overt acts within the Western District of Kentucky, and elsewhere, including, but not limited to, the following:

### PN 36B423718P1

a. On August 25, 2017, **PHIL PASCOE** and **SCOTT TUBBS**, created and caused the creation of a Government-Industry Data Exchange Program ("GIDEP") Problem Advisory for Magnet PMG Rotor for PN 36B423718P1, a part number for the generator convertor unit for the Navy F-18. A GIDEP Problem Advisory reports a problem with the manufacturing process to members of the GIDEP program that include U.S. Government agencies, including U.S. Army, Navy, and Air Force. The GIDEP falsely claimed the magnets were magnetized by **QUADRANT MAGNETICS LLC** in Louisville, Kentucky, before shipping to U.S. Company 1. In truth, the magnets were smelted and magnetized in China.

### PN FP24018

b. On August 25, 2017, **SCOTT TUBBS** and **PHIL PASCOE**, created and caused the creation of a GIDEP Problem Advisory for Magnet PMG Rotor for PN FP24018 used

7

for the Generator Convertor Unit ("GCU") for U.S. Company 1 sold to the Navy for the F-18. The GIDEP falsely claimed the magnets were magnetized by **QUADRANT MAGNETICS LLC** in Louisville, Kentucky, before shipping to U.S. Company 1. In truth, the magnets were smelted and magnetized in China by Chinese Company 1.

PN 1500P-1002

c.      On or about January 10, 2018, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 1500P-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person.

PN 10500B-1022

d.      On or about December 19, 2017, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 10500B-1022 to a Chinese Company 1 employee, J.G., a non-U.S. person, requesting an updated quote for PN 10500B-1022.

e.      On or about December 20, 2017, **MONICA PASCOE** processed a purchase order ("PO") sent by a U.S. Company 2 employee containing a PO to **QUADRANT MAGNETICS LLC** for PN 10500B-1022. The PO and email all contained ITAR export control warnings. The PO contained a warning:

> Export/Import—U.S. export Law as contained with the [ITAR] and [EAR] is applicable to all technical information submitted with/during this P.O./RFQ. This technical information is not to be placed in the public domain, exported from the U.S., or given to any foreign person in the U.S. without the prior specific written authorization of [U.S. Company 2] and the U.S. [D.O.S.].

f.      On December 20, 2017, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 10500B-1022 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 14893 for PN 10500B-1022 to be supplied magnetized.

g.  On January 15, 2018, Chinese Company 1 employee, E.Y., a non-U.S. person, emailed **PHIL PASCOE** with a shipping update showing 250 units for PN 10500B-1022 to be shipped on January 17, 2018, from China.

### PN 6000U-1002

h.  On August 16, 2017, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 14797 for 50 units of PN 6000U-1002 to be supplied magnetized.

i.  On January 31, 2018, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 14926 for 50 units of PN 6000U-1002 to be supplied magnetized.

j.  On March 19, 2018, Chinese Company 1 employee E.Y., a non-U.S. person, emailed **PHIL PASCOE**, with a shipping update regarding PN 6000U-1002 from China.

k.  On April 10, 2018, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, requesting an updated quote.

l.  On June 7, 2018, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15036 for 250 units of PN 6000U-1002 to be supplied magnetized.

m.  On July 9, 2018, Chinese Company 1 employee, A.C., a non-U.S. person, emailed **MONICA PASCOE** and **PHIL PASCOE**, with a shipping update regarding PN 6000U-1002 and PN 030-049420-01 asking if Chinese Company 1 can ship some of the parts by sea from China to the United States.

n.    On October 25, 2018, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15156 for 500 units of PN 6000U-1002 to be supplied magnetized.

### PN 100101

o.    On November 20, 2017, **PHIL PASCOE** emailed ITAR-controlled technical data for PN to Chinese Company 1 Employee, J.G., a non-U.S. person, releasing PO 14875 for 325 units of PN 100101 to be supplied magnetized.

p.    On or about March 14, 2018, **MONICA PASCOE** processed a PO sent by a U.S. Company 2 employee containing a PO to **QUADRANT MAGNETICS LLC** for PN 100101. The PO contained ITAR export control warnings.

q.    On April 16, 2018, Chinese Company 1 employee, E.Y., emailed **PHIL PASCOE** and **MONICA PASCOE**. This email updated shipping notification for PO 14970 and showed 100 units of PN 100101 Rev B being shipped via FEDEX on April 17, 2018, from China.

### PN 3730D-1012

r.    On December 12, 2016, **PHIL PASCOE** emailed ITAR-controlled technical data for PN 3730D-1012 to Chinese Company 1 employee, J.G., a non-U.S. person, with a request for quote. Technical data for the part was attached to the email. The technical data contained an ITAR warning.

s.    On or about On January 15, 2018, **MONICA PASCOE** processed a request for quote for PN 3730D-1012 emailed by a U.S. Company 2 employee.

t.    On February 5, 2018, Chinese Company 1 employee, E.Y., emailed **PHIL PASCOE** and **MONICA PASCOE**. This email updated shipping notification for PO

14907 and showed 360 units for PN 3730D-1012 being shipped via FEDEX on February 6, 2018, from China.

u. On March 12, 2018, **PHIL PASCOE** emailed **SCOTT TUBBS** a spreadsheet created by **MONICA PASCOE** dated March 12, 2018, titled "SmCo [samarium cobalt] itar DPAS review.xlsx." The spreadsheet indicated part numbers for U.S. Company 2 and indicated that a part had an "ITAR print." PN 10500B-1022, PN 100101, PN 6000U-1002 was highlighted on the spreadsheet with "ITAR prints."

v. **PHIL PASCOE** and **SCOTT TUBBS** instructed **QUADRANT MAGNETICS LLC** employees to conceal the country of origin from U.S. Company 2.

All in violation of Title 18, United States Code, Section 371.

The Grand Jury further charges:

COUNTS 2-4
(*Wire Fraud*)

19. The Paragraphs 1 through 18 of this Superseding Indictment are incorporated herein as if set forth in full.

20. On or about and between August 2017 to November 2018 on the dates set forth below, in the Western District of Kentucky and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS, MONICA PASCOE** and **QUADRANT MAGNETICS LLC,** aided and abetted by each other and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, to wit: **PHIL PASCOE, SCOTT TUBBS, MONICA PASCOE** and **QUADRANT MAGNETICS LLC,** executed and attempted to execute a scheme to defraud U.S. Company 2 and DOD by concealing and misrepresenting, the

country of origin of the manufacture, smelting, and magnetization of magnets produced for U.S. Company 2 and DOD, in violation of the DFARS, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing the scheme to defraud, from the Western District of Kentucky to outside of Kentucky, as set forth below:

| Count | Date | Description |
| --- | --- | --- |
| 2 | June 7, 2018 | **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15036 for 250 units of PN 6000U-1002 to be supplied magnetized. |
| 3 | April 16, 2018 | Chinese Company 1 employee, E.Y., emailed **PHIL PASCOE** and **MONICA PASCOE**. This email updated shipping notification for PO 14970 and showed 100 units of PN 100101 Rev B being shipped via FEDEX on April 17, 2018 from China. |
| 4 | October 25, 2018 | **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15156 for 500 units of PN 6000U-1002 to be supplied magnetized. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

The Grand Jury further charges:

## COUNT 5
*(Exporting Technical Data Without a License)*

21. Paragraphs 1 through 20 of this Superseding Indictment are incorporated herein as if set forth in full.

22. On or about January 10, 2018, in Jefferson County, in the Western District of Kentucky, and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS,** and **QUADRANT MAGNETICS LLC,** each aided and abetted by each other and others known and unknown to the grand jury, did knowingly and willfully export and attempt to export to China, defense articles,

designated as "Submersible Vessels and Related Articles" in Category XX(d) of the USML, namely technical data contained in the drawings attached to emails for PN 1500P-1002 for U.S. Company 2 magnet technical data for end use in a submarine periscope without having first obtained from the U.S. Department of State DDTC, a license for such export.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, and Title 18, United States Code, Section 2.

The Grand Jury further charges:

## COUNT 6
*(Exporting Technical Data Without a License)*

23. Paragraphs 1 through 22 of this Superseding Indictment are incorporated herein as if set forth in full.

24. On or about January 15, 2018, in Jefferson County, in the Western District of Kentucky, and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS,** and **QUADRANT MAGNETICS LLC**, each aided and abetted by each other and others known and unknown to the grand jury, did knowingly and willfully export and attempt to export to China, defense articles, designated as "Fire Control, Laser, Imaging, and Guidance Equipment (f) Technical data . . . and defense services" in Category XII(f) of the USML, namely technical data contained in the drawings attached to emails for PN 10500B-1022 for U.S. Company 2 magnet technical data for end use in an infrared imaging system without having first obtained from the United States Department of State DDTC, a license for such export.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, and Title 18, United States Code, Section 2.

The Grand Jury further charges:

## COUNT 7
*(Exporting Technical Data Without a License)*

25. Paragraphs 1 through 24 of this Superseding Indictment are incorporated herein as if set forth in full.

26. Beginning on an unknown date, but a least from August 16, 2017, and continuing through on or about October 25, 2018, in Jefferson County, in the Western District of Kentucky, and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS,** and **QUADRANT MAGNETICS LLC,** each aided and abetted by each other and others known and unknown to the grand jury, did knowingly and willfully export and attempt to export to China, defense articles, designated as "Fire Control, Laser, Imaging, and Guidance Equipment (f) Technical data . . . and defense services" in Category XII(f) of the USML, namely technical data contained in the drawings attached to emails for PN 6000U-1002 for U.S. Company 2 magnet technical data for end use in a multi-spectral targeting system without having first obtained from the U.S. Department of State DDTC, a license for such export.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, and Title 18, United States Code, Section 2.

The Grand Jury further charges:

## COUNT 8
*(Exporting Technical Data Without a License)*

27.    Paragraphs 1 through 26 of this Superseding Indictment are incorporated herein as if set forth in full.

28.    On or about November 20, 2017, in Jefferson County, in the Western District of Kentucky, and elsewhere, the defendants, **PHIL PASCOE, SCOTT TUBBS,** and **QUADRANT MAGNETICS LLC**, each aided and abetted by each other and others known and unknown to the grand jury, did knowingly and willfully export and attempt to export to China, defense articles, designated as "Fire Control, Laser, Imaging, and Guidance Equipment (f) Technical data . . . and defense services" in Category XII(f) of the USML, namely technical data contained in the drawings attached to emails for PN 100101 for U.S. Company 2 magnet technical data for end use in infrared imaging system without having first obtained from the U.S. Department of State DDTC, a license for such export.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, and Title 18, United States Code, Section 2.

The Grand Jury further charges:

## COUNT 9
*(Smuggling Goods from the United States)*

29.    Paragraphs 1 through 28 of this Superseding Indictment are incorporated herein as if set forth in full.

30. Beginning on an unknown date, but a least from August 16, 2017, and continuing through on or about October 25, 2018, in the Western District of Kentucky, the defendants, **PHIL PASCOE**, **SCOTT TUBBS**, and **QUADRANT MAGNETICS LLC**, aided and abetted by each other and others known and unknown to the Grand Jury, did willfully, knowingly, and fraudulently export, send, facilitate, and attempt to export and send technical data contained in the drawings attached to emails for PN 6000U-1002 for U.S. Company 2 magnet technical data for end use in a multi-spectral targeting system, from the United States, contrary to the ITAR and the AECA, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, a law and regulation of the United States.

In violation of Title 18, United States Code, Sections 554 and 2.

## NOTICE OF FORFEITURE

31. As a result of committing a violation of Title 18, United States Code, Sections 371, 554 and 1343, and Title 22, United States Code, Section 2778, as alleged in this Superseding Indictment, the defendants shall forfeit to the United States any and all property, real and personal, that constitutes or is derived, directly and indirectly, from proceeds obtained as a result of these offenses, including but not limited to a money judgment in the amount of $1,332,515.25 for the proceeds of these offenses.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.

32. As a result of committing a violation of Title 22, United States Code, Section 2778, the defendants shall forfeit to the United States any arms or munitions of war or other article exported or shipped in violation of law and any vessel, vehicle, or aircraft containing the same which has been used in exporting or attempting to export such arms or munitions of war or other articles. Additionally, the defendants shall forfeit any commodity (other than arms or munitions of war) or technology which was intended to or was exported in violation of laws, and any vessel, vehicle, or aircraft containing the same or which has been used in exporting or attempting to export such articles.

Pursuant to Title 21, United States Code, Section 853, Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants (substitute assets) up to the value of the above-described forfeitable property.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461.

A TRUE BILL.

███████████████

*Michael A. Bennett* (signature)

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

MAB:JDJ

UNITED STATES OF AMERICA v. **PHIL PASCOE, SCOTT TUBBS, MONICA PASCOE, AND QUADRANT MAGNETICS, LLC**

## PENALTIES

Counts 1:  NM 5 yrs./$250,000/both/NM 3 yrs. Supervised Release.
Count 2-4:  NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release
Counts 5-8:  NM 20 yrs./$1,000,000/both/NM 3 yrs. Supervised Release.
Count 9: NM 10 yrs./$250,000/both/NM 3 yrs. Supervised Release.
Corporate Penalty:  $1,000,000 (per count)
Notice of Forfeiture

## NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

   If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made **payable to the Clerk, U.S. District Court** and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.