UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Plaintiff, |
| v. | Criminal Action No. 3:22-cr-88-DJH-4 |
| QUADRANT MAGNETICS, LLC | Defendant. |

\* \* \* \* \*

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Quadrant Magnetics, LLC's motion for issuance of subpoenas duces tecum pursuant to Federal Rule of Criminal Procedure 17(c). (Docket No. 40) The target of the requested subpoenas, General Electric Aviation, timely responded and moved to quash the subpoenas, characterizing the requests as impermissible fishing expeditions. (D.N. 44) After careful consideration, the Court will deny Quadrant's motion for Rule 17(c) subpoenas for the reasons stated below.

I.

Quadrant and several of its officers were indicted on multiple felony charges based upon allegations that the company misrepresented the origin of its magnets and shared schematics of military equipment with Chinese business partners.[1] (D.N. 1) Quadrant requested seven broad categories of evidence from the government (D.N. 45-1); after the government declined the request (D.N. 45-2), Quadrant filed the instant motion for subpoenas duces tecum compelling the production of eleven categories of documents. (D.N. 40) The request was opposed by the United States (D.N. 42) and GE Aviation, with the latter moving to quash the subpoenas. (D.N. 44)

---

[1] The grand jury recently returned a superseding indictment that supplemented the factual basis of the original charges but did not add new charges or defendants to the action. (D.N. 49)

1

## II.

Quadrant's motion is brought pursuant to Rule 17(c), which states that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates . . . in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). A court may quash or modify the subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

"Rule 16 is the primary means of discovery in criminal cases." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013). "Rule 17(c), by contrast, implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor,'" not to discover unknown information. *Id.*; *see id.* at 494. Although Rule 17(c) subpoenas may reach material not discoverable under the limited discovery rights contained in Rule 16, "Rule 17(c) is not meant to provide an additional way to secure pretrial discovery," but rather to "'expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.'" *Id.* at 493-94 (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

To prove that its intention is not to use Rule 17(c) as a discovery device, and therefore obtain a subpoena, Quadrant must show

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974); *see also Llanez-Garcia*, 735 F.3d at 494 (noting that "[t]o contain the danger that criminal defendants might misuse Rule 17(c) to expand the scope of discovery, the Court in United States v. Nixon held that a defendant could subpoena materials using a Rule 17(c) subpoena only if four conditions are met" and proceeding to apply

the standard set forth in *Nixon*). To meet this test, Quadrant "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity" as to each request. *Nixon*, 418 U.S. at 700. It fails to satisfy at least one of these prerequisites: specificity.

Of the *Nixon* requirements, "[s]pecificity is the most difficult hurdle to overcome." *United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) (citation omitted). The Supreme Court's analysis in *Nixon* demonstrates the high bar that movants must meet. *Nixon* involved the Watergate special prosecutor's subpoena requests for the White House tapes, specifically "certain tapes and documents relating to precisely identified conversations and meetings between the President and others." *Nixon*, 418 U.S. 683. In support of his motion, the special prosecutor "offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time" for many of the conversations, and for all of the tapes, he provided "the identity of the participants and the time and place of the conversations." *Id.* at 700. The special prosecutor was not attempting to discover whether conversations had occurred and what the contents of those conversations were; rather, he was requesting the records from precise, known conversations and offered testimony to support a "rational inference" as to the contents of those conversations. *See id.*

As the analysis in *Nixon* shows, the specificity requirement calls for "more than the title of a document and conjecture as to its contents." *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992); *see also United States v. Warren*, 782 F. App'x 466, 472-73 (holding that a request based on speculation as to the contents of specific emails amounted to a fishing expedition). It is not enough for a movant to "demonstrate why he wants to look into the material." *Arditti*, 955 F.2d at 346. Instead, the movant must "set forth what the subpoena's materials contain," and a court will not issue a subpoena if it must "speculate as to the specific nature of their contents." *Id.*; *see also*

*United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006) (holding that movant failed to clear the specificity hurdle because he "conceded that he did not know the precise nature of the information sought by the subpoena"); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) ("*Nixon* mandates that the party requesting the information identify the item sought and what the item contains."); *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000) (finding the specificity requirement not met where movant sought records that might contain exculpatory information and "stated why he wants to listen to the transmissions, but [could not] set forth what the subpoenaed materials contain" (citing *Arditti*, 955 F.2d 331)). Thus, even a request for a subpoena of "specific emails" constitutes an impermissible "fishing expedition" where the movant does not establish what the emails contain. *Warren*, 782 F. App'x at 472.

In short, Rule 17(c) may be used to obtain known evidence in preparation for trial, not to discover the existence or contents of potentially exculpatory documents. *See id.*; *see also Llanez-Garcia*, 735 F.3d at 493-94 (noting that Rule 17(c) may not be used as a discovery tool); *Arditti*, 955 F.2d at 345-46. And Quadrant's motion bears the hallmarks of a discovery request seeking potential information, rather than specific, known evidence as required by Rule 17(c) and *Nixon*. Quadrant requests eleven categories of documents, none of which contains even the insufficient showings of the "title of a document" or "conjecture as to its contents." *Arditti*, 955 F.2d at 345; *see also Warren*, 782 F. App'x at 472 (holding that a request listing precise emails and speculating that they included exculpatory financial statements failed the specific requirement). The requests use general and alternative language that demonstrates Quadrant's lack of knowledge as to the existence, let alone contents, of the requested documents. (*See, e.g.* D.N.40, PageID.138 (requesting "*[a]ny* written *or* recorded statements, communications, complaints, documents, reports, forms *or* comparable records, *regarding* the quality, performance, *or* defects in Quadrant's

4

magnets, *including but not limited to* internal communications." (emphasis added))) In its reply brief, Quadrant emphasizes that it is seeking "potentially exculpatory information" that "will show . . . if Quadrant knew that the magnets were subject to [Defense Federal Acquisition Regulation Supplement] and [International Traffic in Arms Regulations]," at one point stating that "[a]lthough GE Aviation does not make these parts, it may nonetheless have information regarding them." (D.N. 45, PageID.219) Such speculative requests cannot clear the specificity hurdle established in *Nixon*. *See Warren*, 782 F. App'x at 472; *Bueno*, 443 F.3d at 1026; *Morris*, 287 F.3d at 991; *Arditti*, 955 F.2d at 345. Because Quadrant's motion amounts to a "fishing expedition," it must be denied. *See Nixon*, 418 U.S. at 700; *see also Llanez-Garcia*, 735 F.3d at 495.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Quadrant's motion for issuance of Rule 17(c) subpoenas duces tecum (D.N. 40) is **DENIED**.

(2) GE Aviation's motion to quash the requested subpoenas (D.N. 44) is **DENIED** as moot.

October 27, 2023

*[signature]*

**David J. Hale, Judge**
**United States District Court**