UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-CR-88 DJH |
| | ) | |
| QUADRANT MAGNETICS LLC, et al. | ) | |

**DEFENDANTS' MOTION TO DISMISS
LEGALLY INSUFFICIENT CONSPIRACY ALLEGATIONS**

Defendants Quadrant Magnetics LLC ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") respectfully move the Court under Federal Rule of Criminal Procedure 12(b)(3) to dismiss the conspiracy-object and overt-act allegations in Count 1 (Conspiracy), ¶¶ 16(d) and 18(a)–(b), of the Superseding Indictment, ECF 49. These parts of Count 1 are legally insufficient.

Count 1 alleges a conspiracy: its objects, manner and means, and furthering overt acts. One of the conspiratorial objects, supposedly, was to make a false statement on a matter within the government's jurisdiction, in violation of 18 U.S.C. § 1001. The accompanying overt acts, purportedly, were two reports about Quadrant's magnets that misrepresented where the magnets were magnetized. But these reports were to GIDEP, the Government–Industry Data Exchange Program (pronounced *GUY-Depp*). GIDEP is a Canadian–U.S. clearinghouse for participating private companies and government agencies. U.S. government participants in GIDEP gain no jurisdiction— no "power to exercise authority," *United States v. Rodgers*, 466 U.S. 475, 479 (1984)—by virtue of their membership. Rather, the GIDEP database is simply useful to its users: private companies, the Canadian government, and some U.S. government entities. Consequently, a GIDEP report is not a matter within the federal government's jurisdiction and cannot violate § 1001.

## BACKGROUND

The government has charged Defendants with one count of conspiracy in connection with their alleged violation of U.S. export laws.

The government alleges that one object of the conspiracy was to violate 18 U.S.C. § 1001(a)(2) and (3) by knowingly and willfully making a materially false statement and making and using a false writing or document knowing it to contain a materially false statement. *See* ECF 49 ¶ 16(d). The government did not bring a substantive count for a violation of § 1001.

As overt acts in furtherance of the conspiracy, the government points to two GIDEP reports created and caused-to-be-created by Mr. Pascoe and Mr. Tubbs on August 25, 2017. *See id.* ¶¶ 18(a), (b). These reports were two "Problem Advisories" submitted to GIDEP by GE Aviation (i.e., "U.S. Company 1"), a private entity not criminally charged in this matter.[1] According to the government, a GIDEP problem advisory "reports a problem with the manufacturing process to members of the GIDEP program." *Id.* ¶ 18(a). The government alleges that the problem advisories contained false statements concerning where Quadrant's magnets were magnetized.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) authorizes a defendant to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Under Rule 12, a defendant may move to dismiss defects in the indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v); *see United States v. Jones*, 542 F.2d 661, 664–65 (6th Cir. 1976). "[D]istrict courts may make preliminary findings of fact

---

[1] The 2017 form is attached as Exhibit 1. *See* GIDEP, OPERATIONS MANUAL, ch. 7 at 16 (Sept. 2009; rev. Mar. 2015), https://web.archive.org/web/20220810233928/https://www.gidep.org/about/opman-ual/chap07r_mar2015.pdf (last visited Nov. 27, 2023). The current version of the form is available at https://www.gidep.org/assets/files/GIDEP_Form-NC-01-2022.pdf (last visited Nov. 16, 2023).

necessary to decide questions of law presented by pretrial motions so long as the trial court's con-

clusions do not invade the province of the ultimate finder of fact." *United States v. Levin*, 973 F.2d

463, 467 (6th Cir. 1992). The defense is "capable of determination if trial of the facts surrounding

the commission of the alleged offense would be of no assistance in determining the validity of the

defense." *Jones*, 542 F.2d at 665 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969))

(cleaned up); *see United States v. Hatfield*, No. 6:22-cr-7-CHB-2 et al., 2023 U.S. Dist. LEXIS

78022, at *16 (E.D. Ky. May 4, 2023); *see also United States v. Kane*, No. 2:13-cr-250, 2013 U.S.

Dist. LEXIS 154248, at *7 (D. Nev. Oct. 28, 2013) ("To resolve questions of law . . . the court

may admit evidence and take judicial notice of facts proffered by the parties.") (citing WRIGHT &

LEIPOLD, FEDERAL PRACTICE & PROCEDURE: CRIMINAL 4TH § 194).

District courts may dismiss an indictment's allegations of overt acts and objects of a con-

spiracy. *See Miller v. United States*, 47 F.2d 120, 121 (9th Cir. 1931) ("[O]vert acts . . . are divisible

parts of the indictment and, as such, may be removed from the case by a motion to dismiss.");

*United States v. Parris*, 88 F. Supp. 2d 555, 561 n.11 (E.D. Va. 2000) ("There is no doubt that

courts may dismiss objects of a charged conspiracy in advance of, or even during, a trial without

dismissing the entire conspiracy count." (citing *United States v. Conley*, 37 F.3d 970, 975 (3d Cir.

1994) (noting that district court had dismissed an object of the conspiracy in pretrial proceedings

without discussing propriety of district court's action)); *United States v. Apex Distrib. Co.*, 148 F.

Supp. 365, 370 (D.R.I. 1957) (dismissing object of the conspiracy alleging 18 U.S.C. § 1001 vio-

lation as legally insufficient).

Overt acts or objects of a conspiracy are legally insufficient if they fail to state an offense.

*See* Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Rankin*, 929 F.3d 399, 404 (6th Cir. 2019);

*Apex Distrib.*, 148 F. Supp. at 370. An overt act or object of the conspiracy fails to state an offense

if the factual allegations against a defendant fall beyond the scope of the relevant federal statute as a matter of statutory interpretation. *See United States v. Holmes*, 111 F.3d 463, 465 (6th Cir. 1997) (noting that whether indictment sufficiently alleged defendant's conduct fell under 18 U.S.C. § 1001 was "a matter of statutory interpretation [and thus] a question of law"); *United States v. Borland*, 309 F. Supp. 280, 284 (D. Del. 1970) ("Since the allegations of Count I do not charge the defendants with any offense which [the federal statute] was intended to cover, the first object of the conspiracy . . . charging the commission of such a crime must be stricken."). When a defendant brings a Rule 12(b) motion arguing that its alleged misrepresentations to an entity "can never be proscribed" by 18 U.S.C. § 1001, the defendant raises "a matter of law that the court will address before [trial]." *See, e.g.*, *United States v. Litvak*, No. 3:13-CR-19, 2013 WL 5740891, at *6 (D. Conn. Oct. 21, 2013) (evaluating whether, as a matter of law, defendant's alleged misrepresentations fell within the scope of § 1001).

## ARGUMENT AND AUTHORITIES

The Court should dismiss the overt-act and object-of-the conspiracy allegations concerning an alleged violation of 18 U.S.C. § 1001. A violation can occur only if a defendant:

> [I]n any matter *within the jurisdiction of the executive, legislative, or judicial branch* of the Government of the United States[] knowingly and willfully . . . makes any *materially* false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any *materially* false, fictitious, or fraudulent statement or entry[.]

18 U.S.C. § 1001(a)(2)–(3) (emphasis added). Defendants' conduct as alleged in the indictment, even if assumed to be true, does not constitute a § 1001 violation as a matter of law. First, misrepresentations in GIDEP problem advisories can never constitute a § 1001 violation because GIDEP problem advisories are not a "matter within the jurisdiction" of the United States. GIDEP merely collects information. Neither GIDEP nor any other agency gains any sort of power by virtue of

that information collection. Second, it follows that misrepresentations to GIDEP are not material as a matter of law. They are not capable of influencing a branch of government or agency's decision or function within the meaning of § 1001 because there is no decision to be made. For these reasons, the Court should dismiss the overt acts and objects of the conspiracy concerning a 18 U.S.C. § 1001 violation as legally insufficient.

## I. Alleged misrepresentations in problem advisories submitted to GIDEP are not a matter within the "jurisdiction" of any branch or agency of the United States.

### A. The government does not have § 1001 "jurisdiction" unless it has "power to exercise authority" in the situation.

The Supreme Court has instructed that "jurisdiction [under § 1001] is satisfied if the federal government 'has power to exercise authority in a particular situation'" in which the false statement arose. *United States v. Wellman*, 26 F.4th 339, 350–51 (6th Cir. 2022) (quoting *Rodgers*, 466 U.S. at 479). For a federal agency to have power to exercise authority in a particular situation, the false statement at issue must relate to the "authorized functions of an agency or department" rather than "matters peripheral to the business of that body." *Rodgers*, 466 U.S. at 479; *United States v. Brennan*, 452 F. Supp. 3d 225, 231 (E.D. Pa. 2020) ("Section 1001's 'jurisdiction' element asks whether the federal entity in question was engaged in an 'authorized function' when it received the statement.") (citing *Rodgers*, 466 U.S. at 479–81).

More specifically, the Sixth Circuit has reiterated that the false statement "must be *directly related* to an authorized function of the federal agency. Otherwise, the scope of section 1001 jurisdiction would be virtually limitless." *United States v. Holmes*, 111 F.3d 463, 466 (6th Cir. 1997) (emphasis added) (quoting *United States v. Facchini*, 874 F.2d 638, 642 (9th Cir. 1989) (en banc)); *United States v. Ford*, 639 F.3d 718, 721 (6th Cir. 2011). A false statement is not directly related to an authorized function of an agency if that agency is not given statutory power to act on the

misrepresentations. *See, e.g.*, *Facchini*, 874 F.2d at 642 (noting that, although federal government had statutory authority to access information contained in false statements, such statements were "*peripheral*" to the agency's monitoring function because the agency was not authorized by statute to act in response to false statements). Because the false statement must be directly related to an agency's authorized function or power to act, "*mere access to [the false statement] is not enough to establish jurisdiction.*" *Holmes*, 111 F.3d at 466 (quoting *Facchini*, 874 F.2d at 642) (emphasis added and internal quotations omitted); *see United States v. Holmstrom*, 242 F. App'x 397, 399 (9th Cir. 2007) (affirming dismissal of indictment for lack of agency jurisdiction, finding that Department of Energy's general contractual monitoring and investigatory authority was insufficient to confer jurisdiction over false statements submitted by an employee to a private company even though the company had a direct contractual relationship with the agency and used federal funds).

### B. The government has no "power to exercise authority" in regard to a GIDEP problem advisory.

Here, the alleged misrepresentations contained in GIDEP problem advisories do not fall within the jurisdiction of any United States branch or agency under § 1001. Indeed, we have not found a *single case* where a court has blessed a § 1001 charge (or a conspiracy charge predicated on it) based on a misrepresentation to GIDEP. The novelty of this theory, and why it should fail, is apparent when we understand what GIDEP is.

GIDEP defines itself as "a community for a common good. GIDEP is a program established to allow members of the government and the associated industry supply chain to collaborate and share information that would otherwise be unavailable across such a large and disparate community."[2] "The information in GIDEP is unclassified and predominantly technical documents,

---

[2] DEF. STANDARDIZATION PROGRAM OFFICE, DEP'T OF DEF., SD-25: GOVERNMENT-INDUSTRY DATA EXCHANGE PROGRAM (GIDEP) OPERATING POLICIES AND PROCEDURES 2 (Nov. 2023) [hereinafter *GIDEP Policy Manual*], https://www.gidep.org/assets/files/SD-25_GIDEP_Policies_and_Procedures.pdf (last

notices, and reports . . . . The community saves GIDEP reports in a database and makes them available to members."[3] Problem advisories are one such report.[4] GIDEP describes its membership as follows: "The GIDEP community continues to evolve and grow; it includes the U.S. DoD, federal agencies and departments, state and local government agencies and entities, the Canadian government, industry members, and supporting supply chain organizations."[5] This helps explain why GIDEP's website suffix is not "dot-gov," but "dot-org."

GIDEP likens itself to a library. The GIDEP librarian "does not manage the contents of reports." It is "without ownership of the information" and readers must "form their own opinions."[6]

---

visited Nov. 16, 2023). The Court may properly take judicial notice of GIDEP's website and policy manual because they are not subject to reasonable dispute in that the information is capable of accurate and ready determination by resort to sources "whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005); *see* Fed. R. Evid. 201(b); *see also Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.") (quoting *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)) (internal quotations omitted); *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-00825, 2019 WL 5386484, at *5–6 (W.D. Ky. Oct. 21, 2019) (noting "[i]t is indeed proper to take judicial notice of a document publicly available on the Internet" and taking judicial notice of "information contained" on websites) (citations omitted); *Kane*, 2013 WL 5797619, at *8–11 (taking judicial notice of organization's website, which was offered as evidence of statute's jurisdictional element, in making preliminary findings of fact on motion to dismiss indictment); *Pagonis v. Norvel*, No. 2:15-CV-0206, 2015 U.S. Dist. LEXIS 99795, at *8 (N.D. Tex. July 30, 2015) ("The Court takes judicial notice that, as shown in the United States Government Manual, the OGIS . . . is a division of the National Archives and, among other functions, it reviews and helps mediate Freedom of Information Act disputes."). Additionally, Defendants do not use this information to question the truth or evidentiary value of the indictment's allegations. *See United States v. Neill*, No. 2:21-cr-00004, 2021 WL 3912796, at *2 (M.D. Tenn. Sept. 1, 2021) (citations omitted).

[3] *GIDEP Policy Manual* at 10.

[4] *See id.* at 10 (information includes "[f]ailure experience information"), 50 (problem advisories listed as a type of failure experience document).

[5] *Id.* at 29.

[6] *Id.* at 10.

## 6.2  GIDEP Reports

The community provides information to GIDEP, which shares this information via a web-based platform. As a repository for the information, GIDEP does not manage the contents of reports. In this way, GIDEP is like a library since both are repositories without ownership of the information and require the member or reader to form their own opinions. Refer to Figure 4.

**Figure 4. GIDEP as a Library Analogy**

| GIDEP | Library |
|---|---|
| GIDEP provides a repository for the information and enables access; members must form their own assessments based on a collection of information, not simply on the existence of a GIDEP report. | A library doesn't validate or own the content of the books within; it simply houses the books and allow those with a library card to choose the book they wish to read and form their own opinions. |

Nothing in GIDEP's policy manual gives it any express power to do anything with this information. For instance, nothing therein suggests GIDEP itself has the power or obligation to report a problem advisory to a government agency in general or in particular. GIDEP simply superintends the information to ensure its accessibility, proper formatting, and the like for those private parties, Canadian agencies, and federal, state, and local U.S. agencies that participate in the GIDEP community. Likewise, GIDEP has no power to take any action against a member that violates its terms and conditions of participation[7] beyond, we suppose, revoking its membership. And those terms and conditions say nothing about certifying the accuracy or truthfulness of documents submitted to GIDEP, much less under penalty of perjury. While GIDEP is funded and administered by the U.S. Department of Defense, that fact alone does not demonstrate that GIDEP's administrators have any power to act upon the contents of a GIDEP report. Or to put it another way, GIDEP's administrators are not authorized to do anything differently whether a particular GIDEP report is accurate or not.

---

[7] *See id.* at 69.

We have discussed GIDEP's policy manual because there is so little in positive law or substantive regulation describing GIDEP—itself a troubling fact when GIDEP is so central to a novel theory of prosecution. Congress has never treated GIDEP as anything more than the "library" it describes itself as. No act of Congress specifically created or authorized GIDEP. *See United States v. Herberman*, 583 F.2d 222, 226 (5th Cir. 1978) ("In order to determine when a matter comes 'within the jurisdiction' of an agency or department of the United States it is necessary to examine, in addition to § 1001, the statute governing the particular transaction with a department or agency of the United States."). According to our research, congressional acts have mentioned GIDEP just three times, each in a large annual appropriations act, and only as an optional or one of many information clearinghouses: (1) in 2003, Congress required the Department of Defense to issue a report on tracking defective safety-critical parts, including whether agencies and contractors should be required to use GIDEP;[8] (2) in NASA's 2010 authorization act, Congress required *NASA* (not private parties) to maintain a database on counterfeit parts, which included as one piece of database information "[GIDEP] reports and other public or private sector database notifications";[9] and (3) in the 2011 National Defense Authorization Act, Congress required Department of Defense contractors to report counterfeit electronic parts "to appropriate Government authorities and to [GIDEP] (or a similar program designated by the Secretary [of Defense])."[10] The

---

[8] *See* Department of Defense Appropriations Act, 2004, Pub. L. No. 108-87, § 8143, 117 Stat. 1054, 1108 (2003).

[9] National Aeronautics and Space Administration Authorization Act of 2010, Pub. L. No. 111-267, § 1206(b)(2)(F), 124 Stat. 2805, 2843 (2010) (codified at 42 U.S.C. § 18444(b)(2)(F)).

[10] National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 818(c)(4), 125 Stat. 1298, 1495 (2011) (codified at 10 U.S.C. ch. 223 note (Detection and Avoidance of Counterfeit Electronic Parts)). This law was implemented through final rules promulgated in 2014 at 48 C.F.R. §§ 246.870–.870.3 and 252.246-7007 requiring reporting of counterfeit and suspect counterfeit electronic parts (not at issue here), and in 2019 at 48 C.F.R. §§ 46.317 and 52.246-26, which also require reporting of certain major or critical nonconforming parts (post-dating the problem advisories here). Additionally, GIDEP offers a sample clause for agencies to require contractors to participate in GIDEP based on a Navy Sea Systems Command template, but it is unclear to us whether and how broadly that clause has been adopted by other

common thread in all these extremely limited congressional references is that GIDEP is, or may be, a generally useful information source to the government, and nothing more.

Likewise, no federal agency, by virtue of being a member of GIDEP—just like a Canadian member, a state or local government member, or a private member—thereby gains any new powers. GIDEP membership does not grant any agency "power to exercise authority in a particular situation." *Rodgers*, 466 U.S. at 479; *see also Holmes*, 111 F.3d at 466 (no § 1001 jurisdiction where the federal government lacks "any authority to act"). All that members can do, on account of their GIDEP membership, is access the information therein.

Nor can the government point to its contracting authority as an alternative basis for jurisdiction. Federal agencies certainly may consider GIDEP reports in their contracting activities, and the government may present a parade of horribles if GIDEP reports were systemically unreliable. But that policy argument is not the test for § 1001 jurisdiction. The government's "mere access to information," *Holmes*, 111 F.3d at 466, no matter how useful that information may be, does not mean that the information becomes a "matter within the jurisdiction" of the government. A GIDEP problem advisory is not "directly related" to any one contract or procurement program, especially when considering GIDEP's broad audience. *Id.* Indeed, apart from and in contrast to government contractors' mandatory reporting of counterfeit electronic parts, there is no statutory or regulatory connection between private contractors' voluntary reports to GIDEP and any particular government program at all. Rather, problem advisories describe an issue with a particular part, regardless of who uses it or why, private or public, American or Canadian. Indeed, GIDEP does not accept "[c]ontracts and amendments to contracts" or "[c]lassified, proprietary, or sensitive documents

---

entities. *See* GIDEP, IMPLEMENTING POLICY GUIDANCE 5, https://www.gidep.org/content/about-gidep (last visited Nov. 17, 2023). In any event, a contractor's required participation in GIDEP does not transform statements made to GIDEP into government authority to act upon those statements.

without a release letter,"[11] and there is no box on the problem advisory form to connect the report to a particular contract. The information submitted in GIDEP problem advisories—and agency use of such information, if any—is at best peripheral to that agency's contracting or other authority. *See Rodgers*, 466 U.S. at 479. To find otherwise would expand § 1001's scope to be "virtually limitless," for it would give U.S. federal agencies jurisdiction over any statement in any database they have access to—along with private parties, state and local governments, and the Canadians— and find useful for one purpose or another. *See Holmes*, 111 F.3d at 466.

That overexpansion of federal criminal law is especially problematic in the context of GIDEP. Again, GIDEP is an information clearinghouse that benefits from industry participants' voluntary disclosure of issues in their supply chains. According to the superseding indictment, a company or an individual can be criminally prosecuted for a single false statement in one of these voluntary reports. This will inevitably chill voluntary participation in GIDEP. And without that participation, GIDEP will dry up.

## II.  Misrepresentations in a GIDEP problem advisory are not material as a matter of law because there is no decision to be made.

Misrepresentations fall within the scope of § 1001 only if they are material. *See* 18 U.S.C. § 1001(a); *United States v. Gaudin*, 515 U.S. 506, 509 (1995). To be material, the misrepresentation must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Gaudin*, 515 U.S. at 509 (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)) (brackets in original); *see, e.g.*, *Weinstock v. United States*, 231 F.2d 699, 703 (D.C. Cir. 1956) (noting that, for a false statement to be material, "it must have some weight in the process of reaching a decision"). In other words, the statement must

---

[11] *GIDEP Policy Manual* at 44.

be capable of affecting or influencing a "decision or function within the jurisdiction of a governmental agency," *United States v. Dedhia*, 134 F.3d 802, 806 (6th Cir. 1998), "under some set of foreseeable circumstances," *Facchini*, 874 F.2d at 643.

Materiality is different from relevance; information presented to the government may be relevant to a government function or decision, but still ultimately immaterial. *See United States v. Johnson*, 19 F.4th 248, 259 (3d Cir. 2021) (citing *United States v. Rigas*, 490 F.3d 208, 234 (2d Cir. 2007)). Additionally, if there "is no decision to be made" based on the alleged misrepresentations, the misrepresentations are immaterial. *See, e.g.*, *United States v. Camick*, 796 F.3d 1206, 1219 (10th Cir. 2015) (finding statements contained in provisional patent application immaterial because the Patent and Trademark Office would not review the application in determining whether to grant a patent).

Here, any misrepresentation in problem advisories cannot be material as a matter of law because there is no decision to be made regarding them. As explained above, there is no government decision at issue because GIDEP has no decisionmaking power when it comes to the contents of the documents it receives. To the contrary, GIDEP *disavows* any such authority. GIDEP "does not manage the contents of reports," is "without ownership of the information," and cautions that readers must "form their own opinions."[12]

Likewise, GIDEP membership does not confer any power on any federal agency to make decisions. GIDEP cloaks them with no new authority. Federal agencies may use the information however they like, but the information has no direct relationship to any particular decision before the government. *Cf., e.g.*, *Dedhia*, 134 F.3d at 806 (false statements influenced INS investigation into whether marriage was a sham, which impacted defendant's immigration status); *United States*

---

[12] *GIDEP Policy Manual* at 10.

*v. Odunze*, 278 F. App'x 567, 571 (6th Cir. 2008) (false statements that defendant was carrying less cash had the capacity to assuage DHS's suspicions that defendant was smuggling cash). A government agency's passive receipt of information in GIDEP advisories does not require that government agency to make decisions pursuant to that agency's role or purpose. *See Dedhia*, 134 F.3d at 806 (function or decision to be made must be within that agency's jurisdiction under § 1001).

As there is no decision to be made regarding problem advisories, misrepresentations in problem advisories are not material. The overt acts and object of the conspiracy should be dismissed based on immateriality as well.

## CONCLUSION

For the reasons stated herein, Defendants respectfully ask the Court to dismiss the object-of-the-conspiracy and overt-act allegations in Count 1, ¶¶ 16(d) and 18(a)–(b), of the Superseding Indictment pursuant to Rule 12(b)(3) as legally insufficient.

Dated: November 28, 2023

By:     */s/ John Brownlee*     

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

*/s/ Kent Wicker*     
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn*     
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox*     
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**(LOUISVILLE DIVISION)**

| | |
|---|---|
| *United States of America* | |
| *v.* | Case No. 3:22-CR88-DJH |
| *Phil Pascoe,*<br>*Scott Tubbs,*<br>*Monica Pascoe,*<br>*and Quadrant Magnetics LLC* | |

## **[PROPOSED] ORDER**

Upon consideration of Defendants Quadrant Magnetics LLC, Phil Pascoe, Scott Tubbs, and Monica Pascoe's Motion to Dismiss Legally Insufficient Conspiracy Allegations, it is hereby **ORDERED** that the Motion is **GRANTED**. Paragraphs 16(d) and 18(a)–(b) of the Superseding Indictment, ECF 49, are dismissed.

**IT IS SO ORDERED.**

Dated:_____                    _____
                                                                    United States District Judge