UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** | |
| v. | No. 3:22-CR-88-DJH |
| **Quadrant Magnetics LLC et al.** | |

DEFENDANTS' MOTION TO DISMISS LEGALLY INSUFFICIENT
SMUGGLING ALLEGATIONS

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") respectfully move the Court under Federal Rule of Criminal Procedure 12(b)(3) to dismiss Count 9 (Smuggling), ¶¶ 29–30, of the Second Superseding Indictment, ECF 73. Count 9 is legally insufficient.

Count 9 of the Indictment alleges a violation of 18 U.S.C. § 554, which prohibits unlawfully exporting or sending out of the United States "any merchandise, article, or object." But according to the indictment, no "merchandise, article, or object" was sent. Instead, an *email* was sent. No court has extended § 554 to mere intangible information. And for good reason. The text of § 554 clearly pertains only to *tangible* objects. That point is confirmed by § 554's structure, legislative history, and policy. Under no set of facts can § 554 criminalize the conduct alleged in Count 9, so Count 9 must be dismissed.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) authorizes a defendant to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Under Rule 12, a defendant may move to dismiss defects in the indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v); *see United States v. Jones*, 542

F.2d 661, 664–65 (6th Cir. 1976). A count in the indictment fails to state an offense if the factual allegations against a defendant fall beyond the scope of the relevant federal statute as a matter of statutory interpretation. *United States v. McDaniels*, No. CR 5:20-103-DCR, 2021 WL 1343506, at *2 (E.D. Ky. Apr. 9, 2021) (Citing *United States v. Miller*, 734 F.3d 530, 539 (6th Cir. 2013)).

## ARGUMENT AND AUTHORITIES

Section 554 is captioned "smuggling goods from the United States." As the caption suggests, this provision is confined to smuggling *goods* from the United States. A violation can occur only if a defendant:

> [F]raudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States[.]

18 U.S.C. § 554(a).

An email is not a tangible object. It is information transmitted over a computer network via electrical signals. Thus an email is not an "object." Nor is it "merchandise," defined by analogy to the customs statutes as "goods, wares, and chattels of every description." 19 U.S.C. § 1401(c). That is broad enough to encompass virtually anything you can touch, but not things you cannot.

That leaves whether an email is an "article." It is not. An article is "[a]n individual thing or element of a class; a particular object or item." *American Heritage Dictionary of the English Language* (5th ed. 2022). That denotes tangibility. And even if the meaning of "article" were ambiguous in the abstract, it is not in context. The Supreme Court has held that throwing an illegally undersized fish overboard was not criminalized by a statute concerned with document destruction, even if the statute technically seemed to criminalize the spoliation of any "tangible object." *See Yates v. United States*, 574 U.S. 528 (2015). The same statutory clues that led the Supreme Court

2

to its conclusion in *Yates* lead to the conclusion here that an "article" is not so broad as to encompass intangible information like an email. *See id.* at 539–50. Section 554's caption mentions "goods," not "information." Congress placed Section 554 in criminal code chapter 27, for customs offenses, and not, e.g., chapter 37 for espionage. Section 554 was enacted as part of the Reducing Crime and Terrorism at America's Seaports Act of 2005, which was concerned with *shipping*, not the internet. *See* Pub. L. No. 109-177, tit. III, 120 Stat. 192, 233–42. The use of the word "article" conforms with Congress's century-old practice of using the word "article" to mean a tangible item regulated in its import or export, both in the military and civilian context. *See, e.g.*, 7 U.S.C. § 7712, 10 U.S.C. § 7543, 19 U.S.C. § 1304, 22 U.S.C. § 2321j; *Kaiser Aluminum & Chem. Corp. v. U. S. Consumer Prod. Safety Comm'n*, 574 F.2d 178, 180 (3d Cir. 1978) (defining article as "a noun denoting any material thing"). That is true even under the Arms Export Control Act (AECA), which distinguishes between defense "articles" and "related technical data," 22 U.S.C. § 2778(f)(2)(A), (j)(4)(A), and otherwise defines "articles" as physical goods, *see id.* § 2794(1), (3). Regulations defining defense articles to include their related technical data may be convenient for government administration, but they do not alter the words of § 554 or, to the extent relevant, the AECA.

Finally, § 554 is at least ambiguous when applied to information like emails. That being so, the rule of lenity prevails. *See Yates*, 574 U.S. at 1088.

1. **An email is intangible information, so it is not an "object," "merchandise," or "article."**

    a. **The plain text of the words "object," "merchandise," and "article" do not encompass intangible information.**

§ 554 concerns the export of any "merchandise, article, or object contrary to any law or regulation of the United States." It is clear from this context that the statute refers to sending or exporting tangible goods, rather than intangible information. In interpreting statutes, courts apply

3

various canons of construction including *noscitur a sociis* — a word is known by the company it keeps — to ensure that words are interpreted consistently with surrounding language. *Yates*, 574 U.S. at 543–44. (Construing the broad term "tangible objects" in the context of surrounding words like "documents" and "records" to exclude objects like "fish" that did not relate to financial record-keeping). These surrounding words cabin the meaning of broad terms. *Id.* Article's meaning here is similarly limited to its context.

Here, the word "article" is surrounded by "object" and "merchandise." The plain meaning of an "object" as used here is "[a] specific, individual, material entity." *American Heritage Dictionary of the English Language* (5th ed. 2022). The Supreme Court in *Yates* likewise defined an "object" that is "tangible" as "a discrete . . . thing . . . that possess[es] physical form." *Yates*, 574 U.S. at 537. "Merchandise" likewise refers in the customs context to "goods, wares, and chattels of every description." 19 U.S.C. § 1401(c). Considered in light of the surrounding language, "articles" clearly refers to tangible things, notably goods that might be concealed and illegally carried across the border. Articles may serve as a catch-all for tangible things like objects and merchandise, but it does not reach all things tangible or intangible (which would correspondingly render objects and merchandise redundant).

    **b. The plain text is confirmed by context and past practice that Congress did not intend § 554 to encompass intangible information.**

The legislative history makes clear that § 554 relates to shipping and customs, not emails. § 554 is included in Title 18 chapter 27, which refers to customs offenses, not offenses like Espionage (Chapter 37). It was likewise included under Title III of the USA Patriot Improvement and Reauthorization Act of 2005, titled "Reducing Crime and Terrorism at America's Seaports" among other provisions like "Stowaways on vessels or aircraft," and "Bribery affecting port security." Pub. L. No. 109-177, tit. III, 120 Stat. 192, 233–42. All these factors suggest that Congress shared

the common-sense understanding of the word "smuggling" related to hidden contraband at ports and borders.

In other contexts, Congress has used specific language to make clear that it intends its statutes to cover electronic and intangible transmissions. 18 U.S.C. § 1465 concerns the interstate transmission of "any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character." Although the Sixth Circuit ruled that this language did include electronic communications (*See United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996)), Congress passed a clarifying amendment in order to insert "or interactive computer service" to § 1465 and §1462 (a related statute). 18 U.S.C. §1465 (Feb. 8, 1996 amendment); H.R. Conf. Rep. No. 104-458, § 507 (Jan. 31, 1996) (Noting this change in a House Conference Report only two days after the *Thomas* decision and amending the statute effective February 8, 1996, within two weeks of the *Thomas* ruling).

§ 554 differs from §1465 in two important respects. First, "any merchandise, article, or object" does not lend itself to the same broad construction as the lengthy lists found in §§ 1462 and 1465. Those statutes concern the interstate transmission of obscene images and include media such as "phonograph recordings" and "electrical transcripts." By contrast, "any merchandise, article, or object" refer to physical items in the nature of "goods." More generally, the transmission of obscene images through electronic means is commonplace, whereas few (if any) would understand "smuggling" to include emailing a purchase order to a factory.

Second, despite Congress amending §§ 1462 and 1465 ten years earlier to clarify that it meant to include transmission over "interactive computer services," § 554 includes no such

5

language. Instead the lack of any references to digital transmission comports with the plain understanding of smuggling: physically carrying concealed contraband across a border.

### c. To the extent relevant, "articles" under the Arms Export Control Act are tangible items.

Even under the AECA (which does not define "article" as used in the context of § 554), "technical data" is distinguished from "defense articles." The AECA mentions, for example, a notification requirement for exemptions to licensing requirements that must include "a description of the scope of the exemption, including a detailed summary of the defense articles, defense services, and related technical data covered by the exemption." 22 U.S.C. 2778(f)(2)(A). In other words, tangible "defense articles" are distinct from intangible "technical data" (the only thing alleged to have been "smuggled"). Likewise, the AECA defines "defense items" to include "defense articles," "defense services," and "related technical data," again underscoring how the "articles" in this context do not include the underlying information. Despite this distinction, the smuggling charge seeks to treat the latter technical data as an article.

### 2. Section 554 is at least ambiguous when applied to intangible information like emails, so the rule of lenity prevails.

"The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). Although a plain, common sense reading of § 554 would exclude intangible information like emails, to the extent any ambiguity exists, the statute should be interpreted in favor of the Defendants.

### a. Because an email is intangible information, it does not fall within the plain and ordinary meaning of merchandise, article, or object.

"Merchandise, article, or object" are not defined in § 554, but a plain reading of "merchandise, article, or object," including related statutory definitions, and relevant caselaw demonstrate that this list refers only to physical, tangible items. "Merchandise" is the only word in this list

6

defined by statute. Under 19 U.S.C. § 1401(c), "merchandise," means "goods, wares, and chattels of every description." 19 U.S.C. § 1401(c); *United States v. Garcia-Paz*, 282 F.3d 1212, 1214 (9th Cir. 2002) (parties agreed that 19 U.S.C. § 1401(c) definition of merchandise applied to 18 U.S.C. § 545 (smuggling into the United States)); *United States v. Singer*, 963 F.3d 1144, 1162 (11th Cir. 2020) (using this definition of merchandise in jury instructions in § 554 case). A plain reading of this definition implicates only tangible, physical items. In fact, "merchandise" encompasses a wide variety of tangible, physical items but, according to our research, no court has held that merchandise encompasses intangible items, like technical data. See, e.g., *Garcia-Paz*, 282 F.3d at 1215 (marijuana qualified as merchandise); *United States v. Patel*, 762 F.2d 784, 790 (9th Cir. 1985) (coffee qualified as merchandise).

Unlike merchandise, "article" and "object" are not statutorily defined, but their dictionary definitions indicate that they too refer only to tangible, physical items. See *United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) ("[W]hen a term . . . is not defined, courts look to the plain and ordinary meaning of the term. . . . To determine the plain meaning of a term, courts frequently look to dictionary definitions."). Because purported technical data in an email is intangible information, unlike the tangible items that fall under the meaning of "merchandise, article, or object," any alleged export of such data does not constitute a § 554 violation as a matter of law.

      **b. The AECA and ITAR's reference to technical data does not bring Defendants' alleged conduct within the scope of § 554.**

The government alleges that Defendants exported technical data contrary to the Arms Export Control Act ("AECA"), see 22 U.S.C. §§ 2778(b)(2), (c), and its implementing regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120–130 (2019), which includes the United States Munitions List ("USML"), 22 C.F.R. § 121.1. The AECA authorizes the President to control the export of "defense articles and services" by designating certain defense

7

articles and defense services for inclusion on the USML. 22 U.S.C. § 2778(a)(1). As technical data is referenced on the USML, the government will likely try to argue here that technical data is a "defense article" and thus an "article" for purposes of § 554. Not so; the AECA, ITAR, and USML all reference technical data, but each either distinguishes "defense articles" or—at the very least—"articles" from related technical data. See 22 U.S.C. § 2778(j) ("The term 'defense items' means defense articles, defense services, and related technical data.") (emphasis added); 22 C.F.R. § 120.10 (explaining that the USML designates "articles, services, and related technical data designated as defense articles or defense services"). 22 C.F.R. § 120.33 (defining technical data as "information . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance, or modification of defense articles," "[c]lassified information relating to defense articles and defense services," and "[s]oftware . . . directly related to defense articles"). *See also United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) ("The ITAR define 'technical data' to include '[i]nformation . . . required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles.'") (22 C.F.R. § 121.10(a)(1)). This distinction again supports the conclusion that intangible "technical data" (that is, "information") is meant to be considered and interpreted apart from a tangible "article" *See id.* (noting distinction between "tangible defense articles . . . as opposed to technical data").

To the extent regulations group these terms under the umbrella "defense articles" for administrative convenience, that is not sufficient to alter the meaning of articles as it appears in § 554 (or the AECA). *See, e.g.* 22 CFR § 120.6 (2022). The government is owed no deference under the *Chevron* doctrine for its preferred construction of § 554, a general criminal statute not entrusted to the Department of State either expressly or implicitly. *See Gonzales v. Oregon*, 546 U.S. 243,

8

255–56 (2006) (Affording deference only when Congress has delegated authority to an agency to make rules carrying the force of law and the interpretation was promulgated in the exercise of that authority.) § 554 is not tied to any Department of State rulemaking authority and thus its regulations have no bearing on how § 554 should be constructed. Further, even to the extent Congress delegated interpretive authority to the Department of State over the AECA, conflating technical data with defense articles contradicts the clear language of the statute. *See* 22 U.S.C. § 2778(j).

There are no clear examples of courts ruling that sending an email can constitute smuggling under § 554. Where cases involved both ITAR violations and smuggling under § 554, defendants exported physical contraband across a border, most frequently guns and drugs. *See, e.g. United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) (defendant unlawfully exported magazines for AK-47 firearms); *United States v. Tita*, No. CR RDB-21-0334, 2022 WL 17850250, at *1 (D. Md. Dec. 22, 2022) (defendant exported firearms); *United States v. Roggio*, No. 3:CR-18-0097, 2021 WL 5088240, at *1 (M.D. Pa. Nov. 2, 2021) (defendant exported tools used to make firearms). Where a defendant was charged with smuggling and an ITAR violation for the export of technical data, the defendant was charged only with exporting physical parts. *United States v. Qin*, No. 18-CR-10205, 2020 WL 7024650, at *6 (D. Mass. Nov. 30, 2020), *aff'd*, 57 F.4th 343 (1st Cir. 2023) (The case also involved physically carrying a computer containing potential digital contraband across the border). None of these cases support a reading of § 554 that would characterize an email as smuggling.

c. **Emailing does not fall within the plain meaning of smuggling a good.**

18 U.S.C. § 554 criminalizes smuggling, a far cry from sending an email. In common usage, smuggle means "[t]o bring into a country (a prohibited item) secretively and intentionally, in violation of the law," "[t]o bring into a country (an item) secretively and intentionally without declaring the item to customs officials and paying the associated duties or taxes on it, in violation

9

of the law," or "[t]o bring in or take out illicitly or by stealth." *American Heritage Dictionary of the English Language* (5th ed. 2022). In other words, smuggling entails secretly moving a physical object across borders, often in order to evade customs or taxes. Here, Defendants are not alleged to have snuck across a border with contraband. Nor are they charged with failing to pay any tax or duty. The alleged "smuggling" is simply sending an email with an attached purchase order alleged to contain technical data.

In characterizing an email as a "smuggling" offense, the government goes against the plain language of 18 U.S.C. § 554. To the extent any ambiguity exists as to whether an intangible email is "any merchandise, article, or object" for the purposes of the statute, the rule of lenity dictates that it should be construed in the Defendants' favor.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court dismiss Count 9 (Smuggling) of the Second Superseding Indictment, ECF 73 (Indictment).

Pursuant to Joint Local Criminal Rule 47.1(g), Defendants respectfully request a hearing and oral argument on this motion.

| | |
|---|---|
| Dated: December 18, 2023 | By:   /s/ John Brownlee   |

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

/s/  Kent Wicker (with permission)
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

/s/  Patrick Renn (with permission)
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

/s/  Scott Cox (with permission)
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*

Case 3:22-cr-00088-DJH   Document 86   Filed 12/18/23   Page 12 of 12 PageID #: 633