# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**United States of America**

v.

**Quadrant Magnetics LLC et al.**

No. 3:22-CR-88-DJH

## DEFENDANTS' MOTION TO STRIKE MAGNETIZATION ALLEGATIONS FROM SECOND SUPERSEDING INDICTMENT

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") respectfully move the Court, under Federal Rule of Criminal Procedure 7(d), to strike all allegations relating to magnetization[1] and country of origin from (1) the substantive wire fraud counts in Counts II–IV of the Second Superseding Indictment (ECF 73) ("Indictment"), and (2) the allegations regarding a wire fraud conspiracy in Count I of the Indictment.

The Indictment alleges that Defendants concealed and misrepresented the country of origin of the manufacture, smelting, and magnetization of the magnets produced . . . in violation of the DFARS [48 C.F.R. § 252.225-7009 ("Specialty Metals Clause")]". (ECF 73 ¶¶ 16(c) and 20). These alleged misrepresentations are the basis for the Indictment's substantive wire fraud counts (Counts II–IV, 18 U.S.C. § 1343) and wire fraud conspiracy allegations (Count I, 18 U.S.C. § 371).

The Specialty Metals Clause requires specialty metals to be "melted or produced" in a qualifying country, but it does not restrict where magnetization can occur. 48 C.F.R. § 225.252-7009. In order to sustain convictions as alleged in the above noted counts, the government must prove that the alleged concealment and misrepresentations are material, *i.e.,* that they had the

---

[1] Defendants request that any derivatives of the word magnetization also be stricken from the Indictment, including magnetize, magnetizing, magnetized, etc.

tendency or capacity to influence. Because the location where magnetization takes place does not affect compliance with the Specialty Metals Clause, Defendants' alleged misrepresentation regarding the location of magnetization is immaterial, and allegations concerning magnetization should be stricken from the Indictment as they are irrelevant to DFARS—which forms the foundation of the wire fraud and conspiracy charges. Furthermore, the magnetization allegations are prejudicial to a jury because they suggest that Defendants engaged in illegal and fraudulent conduct beyond what is charged in the Indictment.

## STANDARD OF REVIEW

Pursuant to FRCrP 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment[.]" Rule 7(d) applies "when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). "The decision whether to strike language from an indictment rests within the sound discretion of the district court." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001). A motion to strike surplusage should be granted when it is clear that the language is irrelevant and prejudicial. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). A motion to strike irrelevant or nonessential allegations in an indictment should be granted "where it is clear that the allegations are not relevant to the criminal charges and where they contain inflammatory and prejudicial matter." *United States v. Wellman*, No. 519CR00108GFVTMAS, 2019 WL 6311354, at *4 (E.D. Ky. Nov. 25, 2019).

## ARGUMENT

**A. The Specialty Metals Clause does not restrict where magnets can be magnetized.**

The government alleges that an object of the Defendants' conspiracy was to "fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense

contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county [*sic*] of origin, in violation of 18 U.S.C. § 1343 [wire fraud] and 48 C.F.R. § 252.225-7009 [Specialty Metals Clause]." (ECF 73 ¶ 16(c)). While the Specialty Metals Clause restricts the countries where a magnet can be melted or produced, it is silent as to magnetization. The Specialty Metals Clause instructs that "any specialty metals incorporated in items delivered under this contract shall be *melted or produced*[2] in the United States, its outlying areas, or a qualifying country." *Id.* § 225.252-7009(b) (emphasis added). The word "magnetize" does not appear anywhere in the regulation. Yet, throughout the Indictment, the government repeatedly, and in our view falsely, alleges that Defendants concealed and misrepresented that Quadrant's magnets were magnetized in China, which is not relevant to, nor violative of, the Specialty Metals Clause.

### B. Magnetization is not regulated by the Specialty Metals Clause and is irrelevant to wire fraud.

In Count I, the government alleges that an object of the Defendants' conspiracy was to "fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county [*sic*] of origin[3], in violation of 18 U.S.C. § 1343 [wire fraud] and 48 C.F.R. § 252.225-7009 [Specialty Metals Clause]." (ECF 73 ¶ 16(c)).

---

[2] "Produce" is defined in the regulation as (i) Atomization; (ii) Sputtering; or (iii) Final consolidation of non-melt derived metal powders." *Id.* § 225.252-7009(a).  It does not include or reference magnetization.

[3] Defendants also request that the Court strike all references to "country of origin" in the Indictment. The phrase "country of origin" is not defined or included in the Specialty Metals Clause. The Specialty Metals Clause limits the countries where specialty metals can be melted and produced, but it labels these as "qualifying countries," not "countries of origin." The Indictment's usage of the term "country of origin" is prejudicial because it implies that the Specialty Metals Clause imposed an additional requirement on Defendants to disclose the magnets' country of origin and that failure to do so was a fraudulent misrepresentation. The Specialty Metals Clause does not restrict a magnet's "country of origin", and therefore this phrase should be stricken from the Indictment.

Counts II–IV of the Indictment are substantive wire fraud counts. The government alleges that Defendants executed or attempted to execute a scheme to defraud General Dynamics and the Department of Defense (DOD) by concealing and misrepresenting "the country of origin of the manufacture, smelting, and magnetization of magnets produced for [General Dynamics] and DOD, in violation of the DFARS" by means of wire communications in furtherance of a scheme to defraud. (ECF 73 ¶ 20).

To convict a defendant of wire fraud, the government must prove "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). "It is clear that as an element of the 'scheme or artifice to defraud' requirement, the government must prove that the defendant said something materially false." *Id.* A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999).

Defendants' alleged misrepresentations that Quadrant's magnets were magnetized in the United States do not violate the Specialty Metals Clause, and therefore had no tendency to influence any decisions concerning the acceptance of the company's magnets. Again, the Specialty Metals Clause limits the locations where a magnet can be *melted or produced*, but it does not restrict or even mention magnetization. Because magnetization and, in particular, the location of such magnetization, is irrelevant to the Specialty Metals Clause and whether Defendants complied with it, any allegations concerning magnetization are non-essential surplusage that should be stricken from the Indictment. *United States v. Paulus*, No. CR 15-15-DLB-EBA, 2016 WL

280300, at *2 (E.D. Ky. Jan. 22, 2016) (distinguishing between essential and non-essential allegations on a motion to strike).

### C. The magnetization allegations are prejudicial to a jury.

Furthermore, the Indictment's allegations that Defendants concealed and misrepresented where magnetization took place are unfairly prejudicial, and could mislead a jury to believe that the Specialty Metals Clause obligated Defendants to disclose where their magnets were magnetized, and that failure to do so is relevant evidence of fraudulent intent. The Indictment's allegations that Defendants concealed the location of magnetization could also improperly prejudice the jury in that they suggest Defendants committed offenses beyond those actually charged. *See United States v. Marlinga*, No. 04-80372, 2005 WL 517964, at *5 (E.D. Mich. Mar. 2, 2005) (granting motion to strike allegations that were not relevant to charges in the indictment that suggested uncharged offenses); *United States v. Hubbard*, 474 F.Supp. 64, 82 (D.D.C. 1979) (striking phrases that might lead the jury to infer accusations of crimes beyond those actually charged); *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (N.D. Ill. 1979) ("The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial.").

Because any reference to magnetization is irrelevant to the charged conduct, not referenced in the Specialty Metals Clause, and could severely and unfairly prejudice jurors, all allegations concerning magnetization and country of origin should be stricken from the Indictment.

5

## CONCLUSION

For all of these reasons, the undersigned respectfully requests that the Court grant Defendants' Motion to Strike all allegations concerning magnetization and country of origin from the substantive wire fraud counts and the wire fraud conspiracy allegations in the Indictment.

Pursuant to Joint Local Criminal Rule 47.1(g), Defendants respectfully request a hearing and oral argument on this motion.

Dated: December 18, 2023                                   Respectfully submitted,

/s/ John Brownlee
John L. Brownlee (*pro hac vice*)
William F. Gould *(pro hac vice)*
Caitlin Eberhardt *(pro hac vice)*
Timothy Taylor *(pro hac vice)*
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

/s/ Kent Wicker (with permission)
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

/s/ Patrick Renn (with permission)
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600

prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/  Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*