UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** | |
| v. | No. 3:22-CR-88-DJH |
| **Quadrant Magnetics LLC et al.** | |

### DEFENDANTS' MOTION TO EXCLUDE THE GOVERNMENT'S COMMODITY JURISDICTION DETERMINATIONS AS INADMISSIBLE HEARSAY

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") respectfully request that the Court exclude the State Department's Commodity Jurisdiction Determinations (CJDs) as they are inadmissible lay opinion testimony of State Department officials who have not been designated as experts. In the CJDs, State Department officials opine that drawings for General Dynamics parts are technical data designated on the United States Munitions List (USML). However, their opinions are solely based on the representations and submissions of General Dynamics, not their personal knowledge of the underlying facts concerning the usage and design of the magnets depicted in the drawings. Because the government has not designated the State Department officials who executed the CJDs as expert witnesses, their opinions are inadmissible lay witness opinion testimony and should be excluded.

The CJDs are also inadmissible hearsay—out of court-statements offered for the truth of the matter asserted. The CJDs conclusions that drawings of General Dynamics' magnets are technical data on the USML are apparently based on representations from General Dynamics—which are also hearsay—rather than the personal knowledge of the State Department officials who issued the CJDs. Thus, the CJDs should be excluded as inadmissible hearsay and for lack of foundation.

Furthermore, the CJDs should be excluded because they are not relevant to the jury and pose a danger of misleading the jury. The Defendants allegedly transferred drawings outside the United States in 2017 and 2018. The government cannot treat a CJD in 2021 as dispositive of whether those alleged transfers violated the ITAR. Further, if the CJDs are presented to the jury even simply as evidence, the jury may improperly defer to the State Department given the CJDs' official imprimatur—despite their disputed underpinnings.

## BACKGROUND

**A.** **The Commodity Jurisdiction Determination Process**

The Arms Export Control Act authorizes the President "to control the import and the export of defense articles." 22 U.S.C. § 2778(a)(1). Under the AECA, the President may "designate those items which shall be considered as defense articles" and "promulgate regulations for the import and export of such articles." *Id.* The President has delegated this responsibility to the State Department. Exec. Order No. 11,958, 42 Fed. Reg. 4311 (Jan. 18, 1977). Pursuant to the President's authority under the AECA, the State Department has promulgated the International Traffic in Arms Regulations (ITAR), 22 C.F.R. pts. 120–130, which includes the United States Munitions List (USML), *id.* pt. 121. A "defense article" designated on the USML may not be exported from the United States without a license from the State Department. *See* 22 U.S.C. § 2778(b)(2). Commercial items that are not designated as defense articles on the USML do not require a license.

To be designated on the USML, an item must either be: (1) enumerated in a category of the USML; or (2) a part, component, or attachment that is "specially designed" for a designated defense article.[1] 22 C.F.R. pt. 120.11(a). However, an item is not considered "specially

---

[1] Technical data, such as drawings, blueprints, instructions, or designs that is necessary for the production of defense articles and is directly related to an enumerated defense article or a specially designed component is also designated on the USML. 22 CFR pt. 120.33.

2

designed" if it "has the same function, performance capabilities, and the same or equivalent form and fit as a commodity . . . that is or was in production . . . and is not enumerated on the USML." 22 C.F.R. pt. 120.41(b)(3). Put simply, if a commodity exists with an equivalent commercial use to the item in question, it is *not* specially designed for a defense article, and therefore, not designated on the USML or subject to the State Department's jurisdiction.

The government, or a manufacturer, when unclear about whether a particular item is a "defense article" covered by the USML, may file a commodity jurisdiction (CJ) request with the State Department. A CJ request is used to determine whether an item is a defense article designated on the USML that is subject to the jurisdiction of the Department of State, Directorate of Defense Trade Controls (DDTC). The CJ determination is made by the DDTC, in consultation with the Departments of Defense and Commerce. *See* 22 C.F.R. § 120.4.4. These CJ determinations are not published as regulations.

**B.     The Government's Submissions for CJD Determinations**

In order to prove that Defendants violated the AECA and ITAR by exporting drawings of General Dynamics' magnets to China, the government must show that the subject drawings were defense articles designated on the USML at the time they were exported. The Second Superseding Indictment (Indictment) alleges that the DDTC concluded that the drawings for General Dynamics' magnets were designated on the USML because they contained technical data directly related to defense articles enumerated in Category XX (Submersible Vessels and Related Articles) and Category XII (Fire Control, Laser, Imaging, and Guidance Equipment) of the USML. (ECF 73 ¶ 15).

The government submitted CJ requests to the DDTC on January 14, 2021 for the four General Dynamics drawings at issue in Counts V–VIII of the Indictment,[2] as well as supporting materials for the DDTC to consider in making its determination whether the drawings should be designated on the USML. These supporting materials included Quadrant's email correspondence with General Dynamics regarding orders for the subject part numbers, and attachments such as Requests for Quotes, Purchase Orders, shipping updates, and drawings of the magnets. The government also submitted a one page form for each part number titled "PM/DDTC Technical Data Certification Form" ("Technical Data Certification Form") with its CJ requests. Dennis Miller, the Senior Manager of Regulatory Compliance for General Dynamics, completed and signed forms for the four drawings in the Indictment's ITAR counts on behalf of General Dynamics. *See* Ex. 1. On each form, Mr. Miller noted the name of the program/contract the drawing was produced for, and checked boxes indicating that the drawings were: technical data subject to ITAR; for military programs; unique to the named program; and had no civilian applications. *See id.* Based on these representations, the DDTC determined that the drawings for all four part numbers in the Indictment's ITAR counts were technical data for defense articles designated on the USML, and therefore subject to ITAR. *See* Ex. 2.

## ARGUMENT

**A.     The CJDs should be excluded because they are inadmissible lay witness opinion testimony.**

The CJDs issued in response to requests submitted pursuant to the government's investigation of Defendants,[3] including the CJDs for the four General Dynamics drawings at

---

[2] The part numbers in the Indictment's ITAR counts are: 1500P-1002 (Count V, ECF 73 ¶ 22); 10500B-1022 (Count VI, ECF 73 ¶ 24); 6000U-1002 (Count VII, ECF 73 ¶ 26); and 100101 (Count VIII, ECF 73 ¶ 28).

[3] Based on the government's productions to Defendants to date, it appears that Agent Michael Zanghi of Homeland Security Investigations submitted at least twenty different CJ Requests over the course of 2021–2022 for various drawings as part of the government's investigation. Only two of the DDTC's resulting CJDs concern the part number drawings that are the subject of the Indictment's four ITAR counts. However, all of the CJDs, even those for part number drawings not at issue in the Indictment, should be excluded for the reasons stated herein.

4

issue in Counts V–VIII,[4] should be excluded because they are inadmissible opinion testimony. The CJDs were issued by Richard Koelling Jr. and Sarah Heidema, directors at the DDTC, and they opined that part nos. 1500P-1002, 10500B-1022, 6000U-1002, and 100101 "were and are designated technical data under Category XX(d)" and "Category XII(f) of the U.S. Munitions List." Since the magnets in General Dynamics' drawings are not specifically enumerated on the USML, they must be "specially designed" for a defense article to be designated on the USML. In order to determine if the drawings are technical data designated on the USML, Mr. Koelling and Ms. Heidema must find that the magnets in the drawings were "specially designed", *i.e.*, that they only had military applications and had no commercial equivalent. 22 C.F.R. pt. 120.41(b)(3). The only materials that Mr. Koelling and Ms. Heidema consulted to support their opinion that the noted magnets had no commercial equivalent was the one-page form submitted by General Dynamics that claimed, without any supporting facts or documents, that the drawings were subject to ITAR and had no commercial application.

In making its baseless conclusions, DDTC did not contact Quadrant, or any other magnet manufacturer, to inquire if the subject magnets had equivalent commercial uses, nor did it perform any other independent investigation to gather information beyond the materials submitted by the government. Essentially, DDTC took General Dynamics at its word that Quadrant's magnets had no commercial equivalent, without reviewing General Dynamics' underlying records or other industry documentation, or performing its own further investigation.[5]

Mr. Koelling's and Ms. Heidema's opinions that the drawings were technical data designated on the USML were based on the opinions of General Dynamics—not facts within

---

[4] The CJ determinations for the part numbers in the Indictment are DDTC case numbers CJ0003927 for Part No. 1500P-1002, signed by Richard W. Koelling Jr. (June 23, 2021); and CJ0003928 for Part Nos. 10500B-1022, 6000U-1002, and 100101 signed by Sarah J. Heidema (July 1, 2021). *See* Ex. 2.
[5] The government also failed to provide any evidence that General Dynamics conducted even a cursory review of these magnets for a commercial equivalent.

their direct knowledge or rational perception. "A witness may testify based on opinion, as opposed to testifying to facts of which he has direct knowledge, under two circumstances: as a lay person under Rule 701 or as an expert under Rule 702." *U.S. v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013). The government has not designated Mr. Koelling or Ms. Heidema as expert witnesses.[6] Since they are not testifying as experts, their opinion testimony must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Mr. Koelling and Ms. Heidema based their opinions in the CJDs that the magnets in General Dynamics' drawings had no commercial equivalents on the representations General Dynamics made in the Technical Data Certification Forms, and not their own review or rational perception of General Dynamics' magnets or other potentially equivalent magnets in the commercial marketplace. Because the opinions stated in the CJDs are not based on Mr. Koelling and Ms. Heidema's own rational perceptions, they should be excluded as impermissible lay witness opinion testimony.

Similarly, the statements of Mr. Miller, the Senior Manager of Regulatory Compliance for General Dynamics, in the Technical Data Certification Forms that the drawings were technical data on the USML and therefore subject to ITAR should be excluded as impermissible lay witness opinion testimony because the government has not designated Mr. Miller as an expert witness. Thus, in order to be admissible, his opinions as stated in the Technical Data Certification Forms must be "rationally based on [his own] perception" and cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* As the senior manager of regulatory compliance, Mr. Miller's opinion that the magnets had no

---

[6] In its expert reports, the government claimed that it "does not concede [its witnesses are] . . . expert[s] but discloses them in an abundance of caution." This isn't good enough. If the government wants to offer expert opinions, it must affirmatively designate its witnesses as experts and subject them to voir dire at trial or at a pre-trial hearing.

commercial equivalent was informed by secondhand knowledge from General Dynamics' engineers, not through his own rational perception of the part drawings or technical knowledge of the equipment where the magnets were ultimately used.[7] Because Mr. Miller's opinions were not rationally based on his own perceptions, the Technical Data Certification Forms he executed on behalf of General Dynamics should also be excluded as impermissible lay witness opinion testimony.

B.  **The CJDs should be excluded because they are inadmissible hearsay.**

The Court should exclude the CJDs because they are hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(a), (c). Unless a statement falls within an exception or exclusion set forth by the Federal Rules of Evidence, federal statute, or Supreme Court precedent, hearsay is inadmissible. Fed. R. Evid. 802. If a statement offered for the truth of the matter asserted contains another statement offered for the truth of the matter asserted, this presents a double-hearsay, multiple-hearsay, or hearsay-within-hearsay issue. *Back v. Nestle USA, Inc*., 694 F.3d 571, 577–78 (6th Cir. 2012). Each layer of hearsay-within-hearsay must conform with a hearsay exception in order to be admissible. Fed. R. Evid. 805. The CJDs should also be excluded for lack of foundation because the DDTC directors who issued them, Mr. Koelling and Ms. Heidema, lack personal knowledge for the conclusions within them. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

---

[7] Even if Mr. Miller did review General Dynamics' part drawings himself to make scientific determinations regarding their use, he failed to contact Quadrant to investigate if it produced equivalent magnets or sold them to other companies for commercial or civilian applications. Therefore, his opinion that the magnets in General Dynamics' drawings had no equivalent commercial or civilian application was not "rationally" derived, because he did not consider any applications for the magnets outside of General Dynamics' projects.

The CJDs contain out-of-court statements offered for the truth of the matter asserted, *i.e.*, that the drawings of the General Dynamics magnets are technical data designated on the USML. Thus, they constitute inadmissible hearsay and should be excluded. Fed. R. Evid. 802. Furthermore, even if the CJDs are admissible under a hearsay exception, they are still inadmissible for lack of foundation because Mr. Koelling and Ms. Heidema lack the requisite personal knowledge that the magnets in the drawings have no equivalent commercial use and are designated on the USML. Fed. R. Evid. 602. The CJDs are not based on these DDTC directors' personal knowledge, but rather on hearsay statements submitted by General Dynamics in the Technical Data Certification Forms.[8] Without personal knowledge, there is no foundation for Mr. Koelling's and Ms. Heidema's statements in the CJDs that the drawings are technical data designated on the USML, and their statements are inadmissible. *See* Fed. R. Evid. 803 cmt. ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."). As such, the CJDs should be excluded as hearsay.

Furthermore, the Technical Data Certification Forms signed by Mr. Miller of General Dynamics also constitute hearsay. And, as with the DDTC directors, Mr. Miller lacks the necessary personal knowledge to lay a foundation for his statements in the Technical Data Certification Forms that there are no commercial or civilian applications for the magnets in the drawings and that they are designated on the USML. Fed. R. Evid. 602. As the Senior Manager of Regulatory Compliance at General Dynamics, Mr. Miller does not have personal knowledge

---

[8] Admission of the CJDs would also run afoul of the Defendants' rights under the Sixth Amendment's Confrontation Clause, to the extent they do not have the opportunity to cross-examine Mr. Koelling, Ms. Heidema, or Mr. Miller regarding their statements in the CJDs and Technical Data Certification forms. *See King v. Brown*, No. 20-2074, 2021 WL 3417921, at *1 (6th Cir. Apr. 20, 2021) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011)). The CJDs and Technical Data Certification Forms were created pursuant to the government's investigation in order to prove an element of the Indictment's ITAR charges, *i.e.*, that the drawings are designated on the USML. As such, they are testimonial in nature and implicate the Confrontation Clause. *See Hashi v. Cook*, No. 22-3250, 2022 WL 4333771, at *2 (6th Cir. Aug. 25, 2022) (citing *Ohio v. Clark*, 576 U.S. 237, 244-46 (2015) ("A statement is testimonial if its primary purpose is to prove past events that are potentially relevant to a later criminal trial.")).

of the magnets Quadrant manufactures for other clients in the commercial sector, or if any of these commercial magnets are equivalent to the ones it sold to General Dynamics for military applications, which would exclude them from ITAR jurisdiction. As such, Mr. Miller's conclusions in the Technical Data Certification Forms that the General Dynamics' drawings contain technical data designated on the USML and have no commercial or civilian application are not based on his own personal knowledge, and should be excluded for lack of foundation and as hearsay.

**C.      The CJDs should be excluded because they are irrelevant post-hoc determinations that pose a danger of confusing and misleading the jury.**

The Indictment alleges that the *actus reus* for the four charged ITAR violations occurred in 2017 and 2018 when Quadrant emailed drawings of four General Dynamics outside the United States. The DDTC issued its CJDs concluding that these drawings were designated on the USML in 2021, nearly three years after the drawings were allegedly exported to China.

The Ex Post Facto clause of the Constitution prohibits punishing an individual for activity which was not criminal when it occurred. *See Lindsey v. Washington*, 301 U.S. 397, 401, (1937) ("The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer."). Citing *Lindsey*, the court in *United States v. Zhen Zhou Wu*, 711 F.3d 1, 17 (1st Cir. 2013) observed that "there would be serious constitutional problems if . . . Directorate determinations [CJDs] issued after exports have already occurred [were] retroactively dispositive as to the coverage of the Munitions List." The *Zhen Zhou* court explained that ex-post CJDs issued by the DDTC concluding that items were designated on the USML should not be accepted as a matter of law, and that the proper inquiry for the jury is whether Defendants' conduct violated the relevant regulations "as those regulations existed at the time the conduct occurred." *Id.* at 19.

9

At the time Defendants exported the General Dynamics' drawings to China in 2018, the CJDs did not exist. Thus, they cannot be treated as dispositive. Rather than relying on these post-hoc determinations as a matter of law, the government must go through the exercise of presenting evidence to the jury that the drawings were technical data designated on the USML in 2018 when the alleged criminal exports to China occurred; *e.g.*, evidence that the magnets in the drawings had no commercial equivalent in 2018 and were specially designed for defense articles designated on the USML. *Id.* But the government cannot decide for itself, three years after the alleged exports, that this conduct violated ITAR as a matter of law. Because the CJDs did not exist in 2018 when the charged conduct occurred, the jury should not consider them as part of the relevant evidence relating to the ITAR charges in the Indictment.[9] Fed. R. Evid. 401.

Furthermore, even if the CJDs are treated merely as evidence rather than binding determinations (which they cannot be), the CJDs have the potential to confuse and mislead a jury because they are pronouncements by a government agency that would still appear to have the authoritative binding force of law. As such, there is substantial danger that the jury will conflate the State Department's finding with what *it* must find. The CJDs would also cloak the State Department's lack of investigation with a seal of government approval, which too would have danger of misleading the jury. Given the CJDs lack of probative value, and their risk of misleading and confusing the jury, they should be excluded. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]").

---

[9] The CJDs only state that the drawings are technical data designated on the USML. They do not include any relevant factual information or analysis to substantiate this conclusion that could be of probative value to a jury in determining whether the part numbers were designated on the USML in 2018.

## CONCLUSION

For all of these reasons, the undersigned respectfully requests that the Court grant Defendants' Motion to Exclude the CJDs and Technical Data Certification Forms from evidence.

Pursuant to Joint Local Criminal Rule 47.1(g), Defendants respectfully request a hearing and oral argument on this motion.

Dated: December 18, 2023                              Respectfully submitted,

/s/ *John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Caitlin Eberhardt (*pro hac vice*)
Timothy Taylor (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

/s/ *Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

/s/ *Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
(502) 540-5700
Fax: (502) 568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
(502) 589-6190
(502) 584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*