UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 3:22-CR-88-DJH<br>*Filed Electronically* |
| QUADRANT MAGNETICS, et al. | DEFENDANTS |

### UNITED STATES' RESPONSE TO MOTION TO DISMISS LEGALLY INSUFFICIENT CONSPIRACY ALLEGATIONS

Essentially, defendants Quadrant Magnetics LLC ("QM"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively "Defendants") are asking this Court to dismiss, as a matter of law, one of the objects of the charged four-object conspiracy and two overt-act allegations in furtherance of the conspiracy because defendants claim misrepresentations to the Government-Industry Data Exchange Program ("GIDEP") can never be a matter within the jurisdiction of the United States and the statements were not material.  Defendants are wrong on the law and the facts. Defendants Phil Pascoe and Scott Tubbs caused materially false statements to be made in two Government-Industry Data Exchange Program ("GIDEP") Problem Advisories by misrepresenting where QM smelted and magnetized the magnets that were used in parts for the Navy F-18 fighter jet. These misrepresentations were a matter within the federal government's jurisdiction since they had a tendency to influence the Department of Defense's ("DoD") contractual relationship with its contractors that the DoD paid with federal funds to provide compliant items for use by the United States military. Such a responsibility to safeguard federal funds is an official and authorized function of the executive branch.  As to defendants' specific argument that the two overt act allegations relating to the GIDEP misstatements should be

1

dismissed, those overt acts furthered the other three objects of the conspiracy as well, namely the conspiracy to export technical data without a license, the conspiracy to smuggle goods from the United States, and the conspiracy to commit wire fraud. Defendants' argument that those allegations should be dismissed, therefore, fails for that additional reason.

## BACKGROUND

QM, and its president, Phil Pascoe, vice president, Scott Tubbs, and accounting manager, Monica Pascoe were charged with violations of Title 18, United States Code, Section 371 (Conspiracy), Title 18, United States Code, Section 1343 (Wire Fraud), Title 22, United States Code, Section 2778(b)(2) and (c) (Export of Technical Data Without a License); and Title 18, United States Code, Section 554 (Smuggling). (DN 73, Second Superseding Indictment). In particular, the conspiracy charge alleges four interrelated objects:

> a. knowingly and willfully export from the United States to China, and to non-U.S. persons, defense articles, specifically technical data covered by the USML, without first obtaining a valid license and other approval for such export from the U.S. Department of State, in violation of 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(4);
>
> b. fraudulently and knowingly export from the United States any merchandise, article and object contrary to any law or regulation of the United States, in violation of 18 U.S.C. § 554;
>
> c. fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county of origin, in violation of 18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009.
>
> d. knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation; and make and use a false writing or document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry; in violation of 18 U.S.C. § 1001(a)(2) and (3).

(*Id*.).[1] The Second Superseding Indictment also charges numerous overt acts "in furtherance of the conspiracy and to accomplish its objects," including two instances where, in relation to two separate parts, Phil Pascoe and Scott Tubbs created and caused to be created GIDEP Problem Advisory submissions in an attempt to further conceal QM's illegal manufacturing process relating to the magnets QM sold to U.S. Company 1, which were used in parts that went into the generator convertor unit for the Navy F-18 fighter jet. (*Id.* at ¶¶ 18.a-b.) In those GIDEP problem advisories, defendants falsely stated that the subject magnets were magnetized by QM in Louisville, Kentucky when in fact, and as defendants all knew, the magnets were smelted and magnetized in China. At Phil Pascoe and Scott Tubbs's direction, a QM employee emailed these false GIDEP problem advisories to GIDEP on August 25, 2017. The QM employee later, copying Scott Tubbs, emailed the false problem advisories to U.S. Company 1 which then provided the false problem advisories to the Defense Contract Management Agency ("DCMA"), a government entity that provides contract administration services for DoD and their federal organizations and international partners. DCMA provided contract administrative services for the prime contract at issue in this case made by Naval Air Systems Command and the prime contractor for the project. The GIDEP problem advisories were never officially entered into the GIDEP system but were received by DCMA.

## LEGAL STANDARD

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment is required to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In evaluating criminal indictments, the Sixth Circuit has deemed an indictment sufficient if it "fully, directly, and expressly ... set[s] forth all the elements necessary to constitute

---

[1] Defendants' Motion to Dismiss was filed when the First Superseding Indictment (DN 49) was the operative charging document. Since that filing, a Second Superseding Indictment (DN 73) has been returned. The relevant paragraphs above remain unchanged.

the offense intended to be punished." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas,* 398 F.3d 407, 411 (6th Cir. 2005)). Explaining further, the Sixth Circuit stated, "[i]n particular, the indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" *United States v. Howard,* 947 F.3d 936, 943 (6th Cir. 2020) (quoting United States v. Douglas, 398 F.3d 407, 411 (6th Cir. 2005)).

The law favors the sufficiency of an indictment. *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019), *cert. denied*, No. 19-6076, 2020 WL 129693 (U.S. Jan. 13, 2020) ("An indictment is to be construed liberally in favor of its sufficiency."); *accord United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007); *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002). In the Sixth Circuit, "[c]ourts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense." *United States v. Maney,* 226 F.3d 660 (6th Cir. 2000); *Allen v. United States*, 867 F.2d 969, 971 (6th Cir.1989). "When considering a motion to dismiss an indictment, 'the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the indictment is valid on its face.'" *United States v. Clegg*, 2015 WL 2406103, *2 (S.D. Ohio May 20, 2015) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)); *United States v. Pleasant,* 125 F. Supp. 2d 173, 183 (E.D. Va. 2000) ("a pre-verdict challenge to the sufficiency of the indictment receives stricter scrutiny than does a post-verdict challenge.").

## ARGUMENT

**A. Defendants are charged with a conspiracy to make false statements and the false statements in the GIDEP Problem Advisories that were provided to GIDEP are substantial steps toward the commission of the crime.**

4

The GIDEP problem advisories are alleged overt acts in furtherance of a conspiracy to commit four objects, one of them being making materially false statements to the Government. (*See* DN 73, Second Superseding Indictment). Defendants are not charged with substantive charges relating to the false statements in the GIDEP Problem Advisories. The Supreme Court has long recognized that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *See, e.g., Pinkerton v. United States*, 328 U.S. 640, 643 (1946). As stated by the Sixth Circuit in *United States v. Van Hee*, 531 F.2d 352, 357 (6th Cir. 1976), "[a] conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy." An equally well-settled corollary is that to convict a defendant of conspiracy does not require proof that the object of the conspiracy was achieved. *See, e.g., United States v. Fruehauf Corp.*, 577 F.2d 1038, 1071 (6th Cir. 1978). "The gist of the crime of conspiracy is the agreement to commit an illegal act, not the accomplishment of the illegal act." *Id.*

With respect to the overt acts themselves, the Sixth Circuit Pattern Jury Instructions are helpful. Pattern Jury Instructions 3.04 – Overt Acts reads, in part,

> (1) The third element that the government must prove is that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.
> (2) The indictment lists overt acts. The government does not have to prove that all these acts were committed, or that any of these acts were themselves illegal.

*See* Pattern Crim. Jury Instr. 6th Cir. 3.04 (2023). "[I]t [is] not necessary that any overt act charged in a conspiracy indictment constitute in and of itself a separate criminal offense." *United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir. 1978). *See also Sandroff v. United States,* 174 F.2d 1014, 1018 (6th Cir. 1949) ("An overt act … need not necessarily be a criminal act, nor a crime that is the object of the conspiracy, but … [it] must be done in furtherance of the object of the agreement."). Indeed, where the conspiracy embraces multiple unlawful objects, a jury may

5

convict based upon evidence that the defendants agreed to any one of those objects. *See United States v. Mubayyid,* 658 F.3d 35, 47 (1st Cir. 2011) (citing *Griffin v. United States,* 502 U.S. 46, 57, (1991).

In the context of a conspiracy to make a false statement, the focus is on the agreement to make a false statement. For purposes of the federal statute proscribing making of material false statements to a government agency, "the statement must be made intentionally and with knowledge that it is false, … but defendant need not know of agency's jurisdiction and he need not intend to deceive" any agency. *See United States v. Yermian,* 468 U.S. 63 (1984). In other words, the requirement that the false representation be made "knowingly and willfully" is satisfied if defendant acts deliberately and with knowledge that the representation is false. *United States v. Guzman*, 781 F.2d 428, 431 (5th Cir. 1986). Proof of actual knowledge of federal agency jurisdiction is not required to obtain a conviction for making any false or fraudulent statement in any matter within the jurisdiction of a federal agency. *Yermian, supra*. Also, the false statement need not be made directly to the government. The statement can be made to a third party, so long as it involves a matter within the jurisdiction of any governmental department or agency. *See United States v. Lutz*, 154 F.3d 581, 587 (6th Cir. 1998) ("there is no implicit requirement that the false statements be made directly to, or even be received by, the federal department or agency.").

In this case, as part of the conspiracy, defendants Phil Pascoe and Scott Tubbs created and caused to be created, the two GIDEP problem advisories which falsely stated that the subject magnets were magnetized by QM in Louisville, Kentucky when in fact, and as all defendants knew, the magnets were smelted and magnetized in China. At Phil Pascoe and Scott Tubbs's direction, another QM employee emailed these GIDEP problem advisories directly to GIDEP and then to U.S. Company 1, which forwarded them to DCMA. Ultimately, while these GIDEP

problem advisories were never properly submitted in order to be published by GIDEP, they were nonetheless received by DCMA.

      **B.**      **The false statements in the GIDEP Problem Advisories involve a matter within the jurisdiction of the Department of Defense since they related to and affected a relationship within the agency's jurisdiction.**

In relevant part and as charged, Section 1001 prohibits anyone from knowingly and willfully "mak[ing] any materially false, fictitious, or fraudulent statement or representation" or "mak[ing] or us[ing] and false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry," . . . "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a)(2)-(3). "[T]he term jurisdiction should not be given a narrow or technical meaning for the purposes of § 1001." *United States v. Gibson,* 881 F.2d 318, 322 (6th Cir.1989) (quoting *Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969)) (internal quotation marks omitted); *U .S. v. Herring,* 916 F.2d 1543, 1547 (11th Cir.1990) (The "United States Supreme Court has stated that jurisdiction within the meaning of section 1001 should not be narrowly or technically defined." (*citing U.S. v. Rodgers,* 466 U.S. 475, 480 (1984)). Rather, the Supreme Court has instructed that "'jurisdiction,' as it is used in section 1001, is to be defined broadly." *United States v. Wright*, 988 F.2d 1036, 1038 (10th Cir. 1993). Further, Section 1001 is "necessarily couched in very broad terms to encompass the variety of deceptive practices which ingenious individuals might perpetrate upon an increasingly complex government." *U.S. v. Gafyczk,* 847 F.2d 685, 690 (11th Cir. 1988).

The federal government has jurisdiction "when it has the power to exercise authority in a particular situation." *United States v. Ford*, 639 F.3d 718, 720 (6th Cir. 2011) (quoting *United States v. Rodgers,* 466 U.S. 475, 479 (1984)) (internal quotation marks omitted). "Federal

departments and agencies have 'the power to exercise authority' in a great many matters not completely controlled by those departments or agencies. So long as the statements are material false statements made in any such matter are within the scope of § 1001." *Gibson*, 881 F.2d at 322 (finding that TVA had jurisdiction, for purposes of § 1001, to investigate and prevent fraud in the performance of its contracts) (internal citations omitted). The fraud need not be perpetrated directly on or to the government agency or department involved; the false statement need only relate to and affect a relationship within jurisdiction of agency or department of United States. *United States v. Munoz*, 392 F. Supp. 183 (E.D. Mich. 1974), aff'd, 529 F.2d 526 (6th Cir. 1975). The false statement need not be made directly to or even received by the federal agency in order for it to fall within its jurisdiction. *Gibson*, 881 F.2d at 322. Moreover, there is no requirement that the Defendant be aware that his false statement would be submitted to or influence the decision of the federal agency. *See United States v. Lewis,* 587 F.2d 854, 857 (6th Cir. 1978) ("the language of Section 1001 does not require such specific proof that the person committing the fraud did so with knowledge that the fraudulent statement would affect federal funds and we decline to write any such requirement into the Act.").

As the Sixth Circuit recognized in *Gibson*, "courts have routinely upheld § 1001 convictions for false statements made to state or local government agencies receiving federal support or subject to federal regulation." 881 F.2d at 322 (citing, *United States v. Lewis*, 587 F.2d 854, 857 (6th Cir.1978) (per curiam) (false statements to state welfare agency receiving federal funds fell within the jurisdiction of a department or agency of the United States since defendant directly affected the right of state to participate in federal program and to obtain its share of federal reimbursement monies); *United States v. Petullo*, 709 F.2d 1178, 1180–81 (7th Cir.1983) (false invoices submitted to city administering federal disaster relief funds); *United States v. Stanford*,

589 F.2d 285, 296–98 (7th Cir.1978) (false statements to state welfare agency receiving federal funds); *United States v. Lawson*, 809 F.2d 1514, 1518 (11th Cir.1987) (false statements to local housing authority acting as agent for HUD)).

Again, as the cases collected by the Sixth Circuit in *Gibson* demonstrate, "courts have also affirmed § 1001 convictions for false statements made to private entities receiving federal funds or subject to federal regulation or supervision." 881 F.2d at 322-23 (citing *United States v. Kirby*, 587 F.2d 876, 881 (7th Cir.1978) (false inspection and weight certificates submitted to private grain purchaser in transaction subject to regulation by Department of Agriculture); *United States v. Dick*, 744 F.2d 546, 554 (7th Cir.1984) (false statements to surety insured by Small Business Administration); *United States v. Brack*, 747 F.2d 1142, 1150–52 (7th Cir.1984) (false statements to surety insured by Small Business Administration), *United States v. Green*, 745 F.2d 1205, 1208–09 (9th Cir.1984) (false statements to private firm constructing nuclear power plant regulated by Nuclear Regulatory Commission); *United States v. Wolf*, 645 F.2d 23, 25–26 (10th Cir.1981) (false statements to oil company subject to federal regulation); *United States v. Matanky*, 482 F.2d 1319, 1322 (9th Cir.) (false statements to insurance company acting as payment agent for Medicare); *United States v. Mouton*, 657 F.2d 736, 739 (5th Cir. Unit A Sept. 1981) (false time sheet submitted to accounting office of community organization receiving CETA funds); *United States v. Cartwright*, 632 F.2d 1290, 1292–93 (5th Cir. Unit A 1980) (false statements to savings and loan association insured by FSLIC) (cleaned up)).

Its very name, Government-Industry Data Exchange Program, indicates that GIDEP is involved with Government activities. As Defendants recognize in their motion, "GIDEP is funded and administered by the U.S. Department of Defense." (Mot. DN 71 at Page ID #439). As GIDEP explains on its website, numerous federal agencies are members of GIDEP:

> GIDEP is managed and funded by the U.S. Government. Among its participating organizations are: US Army, Navy, Air Force, Defense Logistics Agency, National Aeronautical and Space Administration, Department of Energy, Department of Labor, Department of Commerce, General Services Administration, Federal Aviation Administration, US Postal Service, National Institute of Standards and Technology, National Security Agency, as well as, the Canadian Department of Defence.

https://gidep.org/content/faq.(last visited December 20, 2023). In fact, membership in GIDEP is limited to

> Any organization that meets one of the following criteria may become a GIDEP member:
>
> - U.S. or Canadian industrial organization supplying items or services (directly or indirectly) through contract to the U.S. Government or to the Canadian Department of National Defence
> - U.S. Government department, agency, or activity
> - Canadian Department of National Defence or Canadian Space Agency

https://gidep.org/content/faq.(last visited December 20, 2023). So private company membership in GIDEP is limited to companies that have contracts to supply items or services, directly or indirectly, to the United States or Canadian government - i.e., companies that receive federal funds from the U.S. government or Canadian Defence Department for those items and services.

What is more, GIDEP has been historically important in serving the purpose and policies of the DCMA to ensure the integrity of the supply chain relating to defense articles and to effectively control and investigate instances of non-conforming parts. DCMA released an Instruction in 2006 that required DCMA to

> investigate and notify all potentially affected contract management offices (CMOs), and procurement and program officials of potential or known defective / nonconforming product, processes and services received from any source in which a serious hazard to health, safety, or operational readiness is indicated.

https://www.dcma.mil/Portals/31/Documents/Policy/DCMA-INST-301.pdf. (last visited December 20, 2023.) DCMA directed that all "activities shall participate in the Government Industry Data Exchange Program (GIDEP)." *Id*. In addition, DCMA directed that

> DCMA CMOs shall issue, review and disseminate appropriate GIDEP Failure Experience Data (FED) about potential or known nonconforming products, process or material not meeting manufacturing specifications, design, composition or other contract requirements. These nonconformances could present a significant health or safety risk, or could negatively impact operational readiness or mission success.

*Id*. In order to accomplish this directive, the DCMA Instruction stated that

> To facilitate this requirement, the Division/CMO GIDEP Representative shall enroll eligible DCMA personnel as GIDEP Users and administer and monitor their activities.
>
> …
>
> The GIDEP Representative and Forum Users will receives [sic] GIDEP Failure Experience Data (FED) notices via "push mail" and **should review potentially applicable notices at least weekly.**

*Id*. (emphasis supplied). In other words, beginning since at least 2006, DCMA guidance has required that a GIDEP representative be appointed in its contract management offices and that representative would be required to participate in GIDEP, review information in GIDEP regarding non-conforming products, and to collect and disseminate information within DCMA.

What makes it even more obvious regarding DoD's reliance on GIDEP is that these requirements regarding GIDEP representatives and their responsibilities to monitor GIDEP for non-conforming goods were incorporated into the DCMA Manual in 2019. Section 2.3 of the 2019 DCMA Manual requires that contract management offices appointment of a primary GIDEP representative and alternate GIDEP representative. https://www.dcma.mil/Portals/31/Documents/Policy/DCMA-MAN-2301-06.pdf?ver=2019-04-

11

03-123750-053 (last visited December 20, 2023). Section 6.2 of the 2019 DCMA manual required that the GIDEP representative, among other things,

> (1) Apply for access to the GIDEP through your organization's representative. GIDEP training is located on the Resource Page.
> (2) Report CMO Primary and Alternate GIDEP Representatives names and changes to both the OUC GIDEP Representatives and the HQ GIDEP Program Manager.
> (3) Distribute "push-mail" GIDEP Notices and "DoD IG Notices of Potentially Defective Products/Safety Alerts" to FS/GIDEP Users. "DoD IG Notices of Potentially Defective Products/Safety Alerts" are received from the HQ GIDEP representative.
> (4) Verify and approve CMO personnel GIDEP user accounts.
> (5) Communicate information on all GIDEP/Forum issues to and from the:
> • HQ GIDEP Program Manager,
> • OUC GIDEP Representative, and
> • CIC/Assigned Legal Counsel (ALC)
> (6) Generate and submit GIDEP notices and data for inclusion into the GIDEP database.
> (7) Review and take appropriate action as necessary on Forum Topics which affect the CMO.
> (8) Review the emailed GIDEP Weekly Document Summaries and Parts Listings to determine if CMO contractors, contracts, programs, supplies, items are impacted.
> (9) Submit the AUR, using the PURS. Submit the AUR before November 1st and include benefits received since the last report.

*Id*. These requirements carried forward through the 2021 updates to the DCMA manual. *See* https://www.dcma.mil/Portals/31/Documents/Policy/MAN_2301-06r_Rewrite_(20211220).pdf (last visited December 20, 2023).

In fact, in March of 2023, DCMA amended the DCMA Manual to require Government contractors to screen GIDEP notices

> The contractor is required to screen GIDEP Notices and, as applicable, to conduct product investigations when FAR 52.246-26 is included in the contract. Active Contractor investigations may impact a contractor's ability to present/deliver conforming product to the Government for Acceptance.

*See* https://www.dcma.mil/Portals/31/Documents/Policy/PTM_23-001_MAN_2301-06 (20230331)_(PPO508V_20230404).pdf (last visited December 20, 2023).

The pronounced role of GIDEP for contracting officers of DCMA – a government agency- beginning in at least 2006 in the process of monitoring for non-conforming goods demonstrates the prominent relationship that GIDEP has the contracting officers for the Department of Defense.

Much of defendants' argument focuses on what GIDEP is and what GIDEP allegedly can and cannot do and the fact the participation in GIDEP is voluntary. (Mot. to Dismiss, DN 71). This argument misses the mark. Instead, as the cases above demonstrate, the focus isn't whether GIDEP has authority to act on the information in the problem advisories. The question is whether or not DCMA- the executive agency that controls DoD contracts, ensure the integrity of the supply chain relating to defense articles, and controls and investigate instances of non-conforming parts - has the ability to exercise authority. It is apparent from the provisions outlined above that DoD contracting officers-officers who can bind components of the DoD to contracts- are instructed to use and rely upon information in GIDEP when exercising their authority with respect to contracts entered into with government contractors and their subcontractors. False statements in the GIDEP problem advisories they are relying on to exercise that authority easily satisfies the jurisdictional element of § 1001.

Defendants' reliance on *United States v. Holmes*, 111 F.3d 463, 466 (6th Cir. 1997) is misplaced. *Holmes* involved false statements to the Michigan Employment Security Commission which distributed benefits funded entirely by the state and not funded by the federal government. Important to the decision in *Holmes* was the lack of federal enforcement authority against any state or individual when an individual obtains benefits to which he or she is not entitled. *United States v. Facchini*, 874 F.2d 638 (9th Cir. 1989), non-binding precedent cited by the defendants, is equally unhelpful to their argument. In *Facchini*, the Ninth Circuit found that false statements made on state claim forms for unemployment benefits and submitted to a state agency to obtain state-funded

13

benefits did not fall within § 1001's jurisdictional requirement. *Id*. at 643. However, those claimants who received federal unemployment benefits as result of false statements made to state unemployment officials were subject to prosecution under § 1001 since those statements were within the jurisdiction of the Department of Labor since there was a link between those statements and action by Department of Labor in certifying payment of federal money. *Id*.

Here, the parts at issue in the GIDEP Problem Advisories were used in the Navy's F-18 fighter jets. The funds used to pay for these parts were federal funds. The federal funds used to pay for these parts were disbursed under U.S. Government contracts with the Navy, one of the military departments within the DoD. And GIDEP is utilized and relied upon by DCMA employees who are specifically instructed to monitor GIDEP for non-conforming parts relating to those contracts with DoD, like those contracts at issue here between QM and U.S. Company 1 and U.S. Company 1 and the Navy.

Far from "peripheral" as defendants suggest, GIDEP problem advisories are directly related to the national security mission of DCMA to ensure that companies that contract with DoD components provide services and goods that conform to the specification requirements that serve the needs of the nation's military.

  **C.**  **Materiality is a mixed question of law and fact that must be determined by the jury.**

In an attempt to support its unfounded motion to dismiss, defendants argue that the GIDEP problem advisories cannot be material as a matter of law because "there is no decision to be made regarding them." (Mot. to Dismiss, DN 71, at Page ID #442). Again, defendants are wrong on the law and the facts.

Defendants are wrong on the law in that the issue of materiality for purposes of proving a § 1001 charge is not a question of law, it is a mixed question of law and fact that the Constitution

14

demands be determined by a jury. It is not a question of law to be decided by the Court in a motion to dismiss. The law is settled on this point. The Supreme Court directly addressed this issue in *United States v. Gaudin*, 515 U.S. 506 (1995), where the court held that the question of whether defendant's allegedly false statement in a matter within the jurisdiction of federal agency was material to agency's decision is a mixed question of law and fact typically resolved by juries. This principle has been affirmed by the Sixth Circuit on multiple occasions. *E.g., United States v. Little*, 173 F.3d 857 (6th Cir. 1999) ("The question of 'materiality' is one for the jury, not the judge."); *United States v. Latouf*, 132 F.3d 320, 330 (6th Cir. 1997) ("Materiality is a mixed question of law and fact that must be submitted to the jury").

In addition, defendants are wrong on the facts when they state that GIDEP problem advisories cannot be material because information in the GIDEP problem advisories has "no relationship to any particular decision before the government." (Mot. to Dismiss, DN 71). This is not accurate. As discussed above, DoD, through the DCMA, relied upon GIDEP for accurate and truthful information regarding counterfeit and non-conforming parts as part of its authority to enforce DoD contracts, ensure the integrity of the supply chain relating to defense articles, and control and investigate instances of non-conforming parts. But, of course, these facts are, as the Supreme Court directs, facts for the jury to consider, not the Court as a matter of law in a motion to dismiss.

      **D.    Even if the false statement object of the charged conspiracy is dismissed, the law does not require the related overt-acts to be dismissed.**

In this case, the defendants are charged with a multi-object conspiracy, including the objects of knowingly and willfully exporting ITAR-controlled technical data from the United States to China and non-US persons without a license, fraudulently selling rare earth magnets manufactured, smelted, and magnetized in China to defense contractors while concealing where

the magnets were really made, smuggling goods from the United States, and making false statements to the Government. Even if the Court struck the false statement object of the conspiracy from the charged conspiracy count, the Government need only establish at trial that a defendant conspired to commit one of the multiple objects of the conspiracy for a defendant to be convicted of conspiracy. *See Griffin v. United States*, 502 U.S. 46, 56-57 (1991) (a conviction on a conspiracy count with multiple objects will be sustained even though one object is supported by inadequate evidence); *United States v. Acevedo Vila*, 588 F. Supp. 2d 194, 209 (D.P.R. 2008) ("No case law prohibits the government from proving multiple objectives in the conspiracy."). Moreover, the determination of whether overt acts were committed in furtherance of the illicit agreement, or whether the charged conspiracy is single or multiple, are issues of fact for a properly instructed jury. *See United States v. Johansen*, 56 F.3d 347, 350 (2d Cir. 1995).

The false statements in the GIDEP Problem Advisories regarding where the magnets were smelted and magnetized (the subjects of paragraphs 18(a) and (b) of the Second Superseding Indictment) not only furthered the conspiracy's object to make false statements to the Government, but they also directly support the other three objects of the conspiracy, namely to unlawfully export technical data, fraudulently sell rare earth magnets that were made in China, and smuggle goods from the United States. Thus, the conspiracy to commit these objects continued irrespective of any false statements theory of liability. Moreover, the overt acts of false statements in the GIDEP Problem Advisories were in furtherance of all objects of the conspiracy, not just the conspiracy to make false statements.

## **CONCLUSION**

WHEREFORE, the United States requests that Defendants' Motion to Dismiss be

16

DENIED.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

_____
Christopher C. Tieke
Joshua D. Judd
Assistant U.S. Attorneys
717 W. Broadway
Louisville, KY 40202
(502) 582-5911
Christopher.tieke@usdoj.gov
Joshua.judd@usdoj.gov

CERTIFICATE OF SERVICE

    On December 20, 2023, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

_____
Assistant United States Attorney

17