UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

United States of America

v.

Quadrant Magnetics LLC et al.

No. 3:22-CR-88-DJH

**DEFENDANTS' REPLY ON THEIR MOTION TO DISMISS
LEGALLY INSUFFICIENT CONSPIRACY ALLEGATIONS**

The government's response never contests any of the following: (1) GIDEP has no relevant statutory authority granted by Congress; (2) GIDEP has no power to do anything about a false statement; and (3) no court has ever approved an 18 U.S.C. § 1001 prosecution, substantive or conspiratorial, based on a statement made on a GIDEP form. The government instead focuses on how the GIDEP reports in this case eventually made their way into the hands of the Defense Contract Management Agency (DCMA), which finds GIDEP reports important to its contract-management function. The government's DCMA argument is as overbroad as it is wrong.

The test is not whether a federal agency merely *has* the information or even that it relies on it. If that were so, any misrepresentation that may be of interest to a federal agency—or in other words, anything anyone ever says—would be a § 1001 violation. The "heart of the matter" instead is whether the party to which any alleged duty of truthfulness is owed can exact "enforcement consequences." *United States v. Holmes*, 111 F.3d 463, 466 (6th Cir. 1997). The disbursement of federal funds may also be relevant. *See id.* These requirements ensure the "direct relationship" necessary to appropriately cabin § 1001. *Id.* Here, GIDEP *disclaims* enforcement consequences for misrepresentations and does not dispense funds. Consequently, the GIDEP-related allegations in the indictment must be dismissed. The Court should grant Defendants' motion to dismiss the indictment's GIDEP allegations. *See* ECF 71.

## ARGUMENT AND AUTHORITIES

1. **An indictment fails to state an offense for conspiracy to commit a § 1001 violation if the indictment fails to allege conduct that could constitute a § 1001 violation.**

Defendants first clarify what the government must show at this stage, since the government details at length what the government must prove for a conspiracy offense. An indictment need not allege that the conspiracy's underlying substantive offense—the object of the conspiracy—was actually achieved. But the indictment must allege conduct which, if true, would satisfy all elements of the underlying substantive offense if completed. *See United States v. Trevino*, 7 F.4th 414, 424 (6th Cir. 2021) ("[T]he fundamental characteristic of a conspiracy is a joint commitment to do an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" (quoting *Ocasio v. United States*, 578 U.S. 282, 287 (2016)). When an indictment alleges a conspiracy to violate § 1001, the indictment fails to state an offense if what the defendant was allegedly conspiring to do would not violate § 1001 as a matter of law. *See, e.g.*, *United States v. Gibson*, 881 F.2d 318, 321–22 (6th Cir. 1989) (considering whether indictment stated a conspiracy to commit § 1001 violation by evaluating whether defendant was conspiring to do an act that would violate § 1001); *see also* Fed. R. Crim. P. 12(b)(3)(B)(v). The focus of Defendants' motion is thus whether the indictment alleges facts that Defendants were conspiring to do an act that could violate § 1001.

In this case, the indictment's sole factual allegations supporting the challenged § 1001 object of the conspiracy are that Defendants Phil Pascoe and Scott Tubbs "created and caused the creation of [GIDEP] Problem Advisor[ies]" containing allegedly false statements. ECF 73 ¶ 18(a), (b). The indictment thus fails to state a conspiracy to commit a § 1001 violation if false statements in GIDEP problem advisories cannot constitute a § 1001 violation as a matter of law. This is so regardless of whether the GIDEP problem advisories were actually submitted to or published to

GIDEP. And as explained in Defendants' initial motion and below, false statements in GIDEP problem advisories do not violate § 1001 because they are not made within the jurisdiction of the United States. *See* 18 U.S.C. § 1001(a).

2. **Section 1001 jurisdiction requires a breach of duty that flows to a federal agency with power to act.**

Section 1001 jurisdiction "is satisfied if the federal government 'has the power to exercise authority in a particular situation.'" *United States v. Wellman*, 26 F.4th 339, 350–51 (6th Cir. 2022) (quoting *United States v. Rodgers*, 466 U.S. 475, 479–82 (1984)). This means the statement must be "directly related to an authorized function of the federal agency. Otherwise the scope of section 1001 jurisdiction would be virtually limitless." *United States v. Wellman*, No. 5:19-cr-00108, 2019 WL 6311354, at *3 (E.D. Ky. Nov. 25, 2019) (utilizing this standard to determine whether statements to FBI agents investigating a crime constitute a matter within the jurisdiction of the United States) (quoting *United States v. Facchini*, 874 F.2d 638, 641 (9th Cir. 1989) (en banc)); *Holmes*, 111 F.3d at 466; *see also Rodgers*, 466 U.S. at 479.

The Sixth Circuit has vigilantly policed the line between misrepresentations that fall within the jurisdiction of the United States and those that are of mere interest to the government. It is not enough, as the government argues, that a federal agency finds the information useful, or that the misrepresentation have some downstream effect on the proper administration of a federal program. Instead, there must be a breach of a duty of truthfulness that flows to a federal agency with power to act, lest § 1001 result in criminal liability for any false statement that somehow wends its way to the government. The Sixth Circuit's decisions in *Ford* and *Holmes* illustrate these points.

In *Holmes*, a defendant was charged with violating § 1001 for lying on Michigan unemployment forms. Even though the U.S. Department of Labor (DOL) helped fund Michigan's unemployment agency, and even though Michigan had to submit information to get those funds, that

was insufficient to establish jurisdiction. The court followed the Ninth Circuit on the issue, agreeing that "the heart of the matter for [that] court was the lack of federal enforcement consequences in the event of fraud upon the state." *Holmes*, 111 F.3d at 466. The court further agreed that the federal funding and monitoring scheme presented only an "indirect and *de minimis*" interest in false statements to the state agency. *Id.* (quoting *Facchini*, 874 F.2d at 642). The court thus held that "[w]here, as here, the federal government neither funds the fraudulently obtained state benefit payments, nor has any authority to act upon discovering that the state program has been defrauded, false statements made to the state agency cannot be said to come 'within the jurisdiction of any department or agency of the United States.'" *Id.*

In *United States v. Ford*, 639 F.3d 718 (6th Cir. 2011), the Sixth Circuit expanded the principle. There, a defendant state senator was charged with violating § 1001 for failing to disclose to a state election agency his financial relationship with certain entities doing business with TennCare, a state medical program "paid for mostly with federal funding and [that] exists only because of a federal waiver from federal Medicaid" issued by the U.S. Department of Health and Human Services (HHS). *Id.* at 720. He argued that "[w]hile the facts that he failed to disclose concerned an entity inseparable from federal ties, the entities to which he failed to disclose those facts were anything but federal." *Id.* Relying on *Holmes*, the court agreed with that distinction. It emphasized that the breach of a disclosure duty was solely to a state entity, and that "no federal entity had similar authority [to act] in this situation." *Id.* Thus, § 1001 did not apply. *See id.*

This case is like *Holmes* and *Ford*. First, there is no power to act by the entity to which truthfulness was owed. The entity owed truthfulness in *Holmes* was a state unemployment agency; in *Ford* a state election agency; and here, GIDEP. None of those three entities have authority to enforce federal laws. True, GIDEP's administration is federally funded, but so was the state

unemployment agency in *Holmes*, and that is insufficient. True also, GIDEP reports are apparently of intense interest to DCMA, but so was proper federally funded unemployment administration to DOL and proper TennCare spending of federal dollars to HHS, yet those interests were insufficient to establish federal jurisdiction there and are insufficient here. Further, the foregoing assumes that there was any duty of truthfulness *at all*. While an unemployment applicant cannot lie to the state unemployment office without being fined, *see Holmes*, 111 F.3d at 465, and a state senator likely cannot make material omissions to a state election registry without equitable penalties, *Ford*, 639 F.3d at 721, GIDEP positively disclaims the accuracy of information submitted to it and a misrepresentation to GIDEP results in no consequences whatsoever, *see* ECF 72 at 7–8. If this is a distinction with *Holmes* and *Ford*, it is a distinction that only further attenuates the conduct here from federal jurisdiction.

*Holmes* and *Ford* establish that obtaining federal funds by the misrepresentation is necessary to establish federal jurisdiction but not that it is sufficient. *Ford* determined that § 1001 should not cover "a failure to disclose to a federal agency a simple conflict of interest by a state public official that results in the state official's receipt of federal funds through multiple state and private intermediaries," nor that § 1001 should cover a lie made by a patient to get Medicaid- or Medicare-reimbursed benefits. 639 F.3d at 722. But regardless, no funds are obtained by creating GIDEP reports. As Defendants initially argued, GIDEP reports are specifically *not* connected to any particular contract, *see* ECF 72 at 10–11, and GIDEP itself disburses no funds. And whatever attenuated connection there might be between the subject matter of a particular GIDEP report and a federal contract, the connection is no closer than the distance found too far in *Holmes* and *Ford*.

The government responds by citing the case law that a § 1001 false statement need not be made directly to a federal agency or with intent to deceive that agency, and that courts have

affirmed § 1001 convictions for false statements made to federally funded or regulated state, local, or private activities. *See id.* at 6–9. All that case law is distinguishable here as it was in *Ford*. In all those other cases, the duty of truthfulness flowed, directly or indirectly, to a federal agency charged with the power to act on the information.[1] There was a "sufficient nexus." *United States v. Munoz*, 392 F. Supp. 183, 187 (E.D. Mich. 1974). In *Gibson*, for example, the defendant violated § 1001 when, in his capacity as a federal government subcontractor, he submitted false invoices to the prime contractor, which in turn implicated the government customer's power to investigate and prevent fraud in the performance of the contract. *See* 881 F.2d at 322–23. *Ford* distinguished *Gibson* on grounds that the duties owed were not to an entity with a direct contractual relationship with the federal government. *See id.* at 722. The creation of the GIDEP reports here is the same. Except for certain irrelevant exceptions, *see* ECF 71 at 9 n.10, private parties need not create GIDEP reports at all. Therefore, Defendants could not have created the GIDEP reports at issue pursuant to federal contracting requirements. And given that, the GIDEP reports were not created with any duty of truthfulness owed to an upstream government customer or to DCMA. If there was any duty owed, it was to GIDEP. And GIDEP disclaims any warranties and lacks capacity to act on misrepresentations.

The government also responds that these GIDEP reports pertain to parts used in a fighter jet paid with federal funds, and DCMA monitors GIDEP for nonconforming parts like these. *See* ECF 94 at 14; *see also id.* at 10–11 (citing 2006 DCMA instruction; citations to DCMA materials

---

[1] *See, e.g.*, *United States v. Kirby*, 587 F.2d 876 (7th Cir. 1978) (false United States Warehouse Act inspection and weight certificates fell under Department of Agriculture because department was *statutorily authorized* to regulate warehouses); *United States v. Wolf*, 645 F.2d 23, 25–26 (10th Cir. 1981) (agency regulations *mandated* that defendant make certification); *United States v. Mouton*, 657 F.2d 736, 738 (5th Cir. Unit A 1980) (false time sheet submitted to private entity fell under § 1001 because it *directly impacted* amount of government funds reimbursed to that private entity).

in 2019 and 2023 post-dating the indictment conduct should be ignored as irrelevant). But the jurisdictional test is not whether "GIDEP is involved with Government activities," *id.* at 9, or that "GIDEP has been historically important in servicing the purpose and policies of the DCMA to ensure the integrity of the supply chain," *id.* at 10, or "DoD's reliance on GIDEP," *id.* at 11. The government may rely on and use a great number of data points to inform its decisions about its contractual or other activities. And obviously any statement an agency receives and finds useful will be in the context of something the agency *does*. But the government's view of a statement's utility does not perforce make that statement one that falls within a federal agency's jurisdiction. That leads to precisely the overbreadth problem cabined by *Holmes* and *Ford.*

Indeed, the circumstances here illustrate that overbreadth. According to the government, DCMA received the GIDEP reports at issue via email by a third party. Thus DCMA became aware of them not even through the regular GIDEP channel, but through DCMA's 2006 instruction to investigate information "from any source." *Id.* at 10. In essence, any misrepresentation pertaining to something of interest to DCMA, that somehow ends up in DCMA's possession, is automatically converted into a § 1001 offense. That is too broad. That is why *Holmes* and *Ford* require that the misrepresentation be contrary to a duty to tell the truth to a federal agency with power to act.

This danger of overbreadth is also cabined by the rule of lenity. "The meaning of 'any matter' and 'jurisdiction' requires interpretation of unspecific words at an extremely high level of abstraction." *Ford*, 639 F.3d at 721–22. Section 1001's ambiguity was thus resolved in the defendant's favor in *Ford*. A similar result obtained in *Tanner v. United States*, 483 U.S. 107 (1987). There, the Supreme Court construed the scope of a similar statute, 18 U.S.C. § 371, conspiracy to defraud the United States. The Court rejected the idea that a fraud on the United States could be extended to frauds where the government merely exercises substantial supervision: "Given the

immense variety of ways the Federal Government provides financial assistance, and the fact that such assistance is always accompanied by restrictions on its use, the inability of a 'substantial supervision' test to provide any real guidance is apparent. A criminal statute, after if not before it is judicially construed, should have a discernable meaning." *Tanner*, 483 U.S. at 132 (quoted source omitted). So too here. Where the statement was on a voluntarily generated report, for use in a joint Canadian–U.S. private–public partnership database with no power to sanction misrepresentations or disburse funds, that is useful to a different federal agency by virtue only of its own unilateral and discretionary decisions, it is at the very least "completely unclear" whether that statement falls within the scope of § 1001. *Ford*, 639 F.3d at 722. For that reason too the GIDEP allegations in the indictment should be dismissed.

> 3. **The GIDEP statements are immaterial because DCMA was not entrusted with any particular decision concerning them.**

We agree with the government to the extent it argues that *the government* is never excused from having to *prove* the materiality of a § 1001 false statement beyond a reasonable doubt, and in that sense it is a mixed question of law and fact for the jury, just like any other element of the offense. *See United States v. Gaudin*, 515 U.S. 506 (1995); *see, e.g.*, *United States v. Latouf*, 132 F.3d 320, 330 (6th Cir. 1997). But when, as here, the indictment fails to allege that the false statement could *ever* be material, then it is appropriate to dismiss that portion of the indictment on materiality grounds—just as a failure to allege any other element of the offense as a matter of law should result in dismissal. *See United States v. Bazantes*, 978 F.3d 1227, 1245 (11th Cir. 2020) ("If materiality was not sufficiently alleged in the indictment, the motion to dismiss should have been granted. If the evidence was insufficient to prove the materiality of the statements alleged, the motion for judgment of acquittal should have been granted."); *see also United States v. Dedhia*,

134 F.3d 802, 806 (6th Cir. 1998) ("Whether an indictment adequately alleges the elements of the offense is a question of law subject to *de novo* review.").[2]

A statement is material only if it is "capable of influencing" an "actual decision entrusted to the decisionmaker." *United States v. Johnson*, 19 F.4th 248, 256–57 (3d Cir. 2021) (citing *Gaudin*, 515 at 509; *United States v. Litvak*, 808 F.3d 160, 173–74 (2d Cir. 2015)); *see also Dedhia*, 134 F.3d at 806. An actual decision must be *entrusted* to a decisionmaker because a misrepresentation may be "presented to a governmental decision maker" but still be "incapable of affecting anything." *Johnson*, 19 F.4th at 258–59 (citing *United States v. Camick*, 796 F.3d 1206 (10th Cir. 2015)); *see also, e.g., id.* at 259 (statements immaterial because, although decisionmaker viewed false statements, no particular decision was identified); *Dedhia*, 134 F.3d at 807 (false statement about marriage impacted *ongoing investigation* concerning whether marriage was fraudulent); *Hughes v. United States*, 899 F.2d 1495, 1499 (6th Cir. 1990) (false reporting of information *specifically required to be disclosed* was material). For instance, in *United States v. Qaisi*, 779 F.2d 346 (6th Cir. 1985), a woman validly married an immigrant, and thereafter lied to immigration officials that they were happily living together so that the immigrant could get a visa. The government charged the immigrant and his brother with procuring that false statement. However, the visa statute only required that the marriage be valid, which it was, and not that it be viable into the future. Consequently, the false statement was immaterial as a matter of law because it had no relevance to the criteria for the visa. Implicit in *Qaisi* is the point that the misrepresentation was "incapable of affecting anything," *Johnson*, 19 F.4th at 258–59, because it could not affect anything relevant under the law.

---

[2] The unpublished and thus nonbinding decision of *United States v. Moss*, 69 F. App'x 724, 730 (6th Cir. 2003), did not appear to address this argument. Instead, it affirmed the district court's holding that materiality is a question for the jury when challenged on purely factual insufficiency. The Defendants' argument is different, that the creation of GIDEP reports as a matter of law is incapable of influencing a decisionmaker because GIDEP makes no decisions.

There was no actual decision entrusted to a decisionmaker here. The GIDEP problem advisories were created and given voluntarily to a third party to submit to GIDEP. As explained in Defendants' motion, ECF 71 at 12, GIDEP specifically disavows decision-making authority. Likewise, GIDEP confers no decision-making authority on federal agencies. *Id.* While agencies (along with private parties and Canadians) may review problem advisories from GIDEP's library whenever they choose, the availability of GIDEP information alone does not create a decision entrusted to those who look at them. As there was no actual decision entrusted to DCMA by virtue of the creation of the GIDEP report, any misrepresentations in the problem advisory cannot be material.

**4. The GIDEP allegations should be dismissed.**

Defendants' motion does not ask the Court to dismiss the entire conspiracy count nor contest the concept that multiple objects can support one conspiracy count. But regardless of how many objects are alleged, *each* object of the conspiracy must state an offense. *See Trevino*, 7 F.4th at 424. If it does not, it *must* be dismissed from the indictment, even if the other objects remain, and even if any factually related overt act remains. *See, e.g.*, *United States v. Abdi*, 498 F. Supp. 2d 1048, 1082 (S.D. Ohio 2007) ("The overt act alleged does not represent the object of the conspiracy.") (citations omitted). Thus, the GIDEP conspiracy allegations should be dismissed.

## CONCLUSION

For the reasons stated in Defendants' motion to dismiss and in this reply, Defendants respectfully ask the Court to dismiss the object-of-the-conspiracy and overt-act allegations in Count 1, ¶¶ 16(d) and 18(a)–(b), of the Second Superseding Indictment pursuant to Rule 12(b)(3) as legally insufficient.

| | |
|---|---|
| Dated: January 10, 2024 | By:  /s/ John Brownlee |

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

/s/  Kent Wicker (with permission)
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

/s/  Patrick Renn (with permission)
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

/s/  Scott Cox (with permission)
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*