UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA						PLAINTIFF

v.									CRIMINAL NO. 3:22-CR-88-DJH
									*Filed Electronically*

QUADRANT MAGNETICS, LLC et al.					DEFENDANTS

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO STRIKE MAGNETIZATION ALLEGATIONS FROM SECOND SUPERSEDING INDICTMENT

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively "Defendants") ask this Court to strike reference to "magnetization" in the Second Superseding Indictment, ECF 73 ("Indictment"), as surplusage in the substantive wire fraud counts (Counts II-IV) and the allegations regarding a conspiracy as it relates to wire fraud (Count I). ECF 89. The Court should deny Defendants' request. The allegations of false representations by Defendants as to the location of magnetization in Kentucky rather than China relate to the heart of the conspiracy and fraud charges. The lack of the word "magnetization" from the text of the Specialty Metals Clause in the Defense Federal Acquisition Regulation Supplement ("DFARS") (48 C.F.R. § 225.252-7009) does not make the term immaterial.

Count One of the Indictment charges a violation of Title 18, United States Code, Section 371. Relevant here, paragraph 16(c) alleges that Defendants engaged in a conspiracy to commit wire fraud by:

> fraudulently and knowingly sell[ing] rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the

> country of origin, in violation of 18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009 [the Specialty Metals Clause].

The Indictment alleges that Defendants conspired to conceal the country of origin of Quadrant Magnetics' magnets from General Electric Aviation Systems ("GE Aviation" and "US Company 1" in the Indictment) and General Dynamics Ordnance and Tactical Systems ("General Dynamics" and "US Company 2" in the Indictment) and instructed employees to conceal this information. *See* ECF 73 ¶¶ 17(e), 18(v). The Indictment specifically charges defendants Scott Tubbs and Phil Pascoe with conspiring to and misrepresenting that PN 36B423718P1 and PN FP24018 were magnetized at Quadrant Magnetics' facility in Louisville, Kentucky, when they were actually magnetized in China, by creating and causing the creation of Government-Industry Data Exchange Program ("GIDEP") Problem Advisories (forms sent to U.S. Government agencies, including the U.S. Army, Navy, and Air Force) that contained these false claims. *Id.* ¶ 18(a)-(b).

Counts Two through Four charge substantive wire fraud based on allegations that Defendants "executed and attempted to execute a scheme to defraud General Dynamics and [the U.S. Department of Defense ("DOD")] by concealing and misrepresenting the country of origin of the manufacture, smelting, and magnetization of magnets produced for [General Dynamics] and DOD, in violation of DFARS." The term "magnetized" is also referred to in two of the three descriptions of the wire transfers that Defendants sent or caused to be transmitted in furtherance of the scheme. *Id.* ¶ 20.

## ARGUMENT

Defendants' argument consists of two prongs: first, they argue that the term "magnetization" is immaterial because it is not found in the Specialty Metals Clause of DFARS; second, they argue that inclusion of the immaterial term in the Indictment is prejudicial to Defendants. Neither assertion is accurate.

Rule 7(d) "makes the striking of surplusage permissive, but not mandatory," and the Rule "has been strictly construed against striking surplusage." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). "If the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). "The relevancy standard is extremely liberal." *United States v. Stephenson*, 2021 WL 5141871, at *2 (W.D.K.Y. Nov. 3, 2021) (citing Fed. R. Evid. 401) ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

*The term "magnetization" is legally relevant to Defendants' scheme to defraud.* Defendants' sole argument that the term "magnetization" is immaterial hinges on the technical language of the Specialty Metals Clause. Because the Clause restricts specialty metals to be "melted or produced" in qualifying countries and does not mention "magnetization," Defendants claim that the term is irrelevant and "had no tendency to influence any decisions concerning the acceptance of the company's magnets." ECF 89 at 4. Not so. Defendants' own motion articulates the elements of a wire fraud charge, *id.*, which include "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). The Defendants' intentional misrepresentations regarding where magnetization occurred, as demonstrated through wired email communications—which are alleged throughout the paragraphs in the Indictment and which form the basis for the wire fraud charges in Counts One through Four, *see* ECF 73 ¶¶ 16(c); 18(f), (h), (l), (n), (o), (v); 19; 20—are directly probative of and relevant to whether there was a scheme or artifice to defraud and use of interstate wire communications in furtherance of the

scheme. Though the Indictment specifically states that the wire fraud scheme was in violation of the DFARS, the scheme to defraud was not limited to material misrepresentations to violate DFARS.

Even if the wire fraud charges related solely to misrepresentations to violate DFARS (which they do not), the misrepresentation of where magnetization occurred is still relevant to the Government's case. "The mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." *United States v. Johnson*, 256 F. Supp. 3d 755, 760 (M.D. Tenn. 2017) (quoting *United States v. Solomon*, 273 F.3d 1108 (5th Cir. 2001)). Evidence that "'adds context and dimension to the government's proof of the charges'" is also relevant. *Johnson*, 256 F. Supp. 3d at 760 (quoting *United States v. Mangual-Santiago*, 562 F.3d 411, 427 (1st Cir. 2009)). Evidence that Defendants misrepresented where part of the process of creating magnets took place undoubtedly adds such context and dimension to their general scheme to defraud DOD and Quadrant Magnetics' customers. It is also relevant to Defendants' "state of mind," another valid reason to include facts in an Indictment. *United States v. Paulus*, 2016 WL 280300, at *2 (E.D.K.Y. Jan. 22, 2016).

The same reasoning applies to the use of the term "magnetization" in Count One's conspiracy charge. "A single agreement to commit several crimes constitutes one conspiracy." *United States v. Vichitvongsa*, 819 F.3d 260, 273 (6th Cir. 2016). In Count One, the allegation that Defendants misrepresented where magnetization occurred goes not only to providing "context and dimension" to the part of the conspiracy involving allegations of wire fraud, smuggling goods outside of the United States, and violations of the Arms Export Control Act ("AECA") and International Traffic in Arms Regulations ("ITAR"). It is also directly relevant to the part of the conspiracy that alleges Defendants conspired to make materially false statements in the GIDEP

Problem Advisories by falsely claiming that Quadrant Magnetics magnetized its magnets in Louisville, Kentucky, before shipping them to GE Aviation. *See* ECF 73 ¶¶ 18(a), (b). To the extent, therefore, that the conspiracy broadly involves agreement to commit several predicate acts, one of which includes material misrepresentations regarding where Quadrant Magnetics' "magnets were magnetized," *id.*, the fact that Defendants conspired to make that misrepresentation is relevant to the charge.

*The term "magnetization" is not prejudicial.* Defendants argue that the term "magnetization" is prejudicial only if it is found to be immaterial. As the term is relevant to the charged conduct, it "cannot be considered surplusage no matter how prejudicial it may be." *Moss*, 9 F.3d at 550 (quotations omitted); *see United States v. Ledbetter*, 2015 WL 5029249, at *2 (S.D. Ohio Aug. 26, 2015) (stating relevant term "may not be legitimately stricken from [the] indictment, regardless of its prejudicial impact").

Even if the term were found to be immaterial, however, its inclusion in the Indictment is not prejudicial such that it should be stricken from the Indictment. A motion to strike irrelevant or nonessential allegations "should be granted only where it is clear that the allegations are not relevant to the criminal charges and where they contain *inflammatory and prejudicial matter*." *United States v. Wellman*, 2019 WL 6311354, at *4 (E.D.K.Y. Nov. 25, 2019) (citation omitted) (emphasis added). Keeping an allegation in the Indictment that Defendants misrepresented where Quadrant Magnetics—part of a global magnetic company with affiliates around the world—magnetized its products is not the kind of inflammatory fact that would tend to prejudice a defendant. It is certainly no more inflammatory than the charged conduct of smuggling, violation of the AECA, material misrepresentation to DOD, or a scheme to defraud by misrepresenting where the magnets were manufactured or smelted. *See Johnson*, 256 F. Supp. 3d at 760-61 (citing

*United States v. Baez*, 349 F.3d 90, 94 (2d Cir. 2003)) (finding language not overly prejudicial where "it did not involve conduct more inflammatory than the charged crime"). And, as explained above, the fact is relevant to the criminal charges. Even if the allegation that Quadrant Magnetics magnetized products in China as opposed to its facility in Louisville, Kentucky does not directly (if proved) establish an element of a charged offense, it has the tendency to add context and dimension to the Government's proof of the charges against Defendants. *See Johnso*n, 256 F. Supp. 3d at 760.

Finally, inclusion of the term magnetized will not confuse the jury or lead the jury to infer accusations beyond the crimes charged, as Defendants suggest. *See* ECF 89 at 5. Magnetization may be considered part of a manufacturing process for a magnet; in that sense, adding the term "magnetization" is "mere redundancy," which is "not enough to trigger the drastic measure of striking the pleading or parts thereof." *Bond v. Douglas Autotech Corp.*, 2005 WL 3359327, at *2 (W.D.K.Y. Dec. 7, 2005) (citation omitted).[1]

## **CONCLUSION**

WHEREFORE, the United States requests that Defendants' Motion to Strike, ECF 89, be DENIED.

---

[1] Defendants also argue that the term "country of origin" should be removed from Counts I-IV for the same reason, that is, that the term does not appear in the Specialty Metals Clause. ECF 89 at 1, 3 fn. 3. Defendants are contesting semantics. The Indictment's allegations that Defendants misrepresented the "country of origin of the manufacture and smelting of magnets" go directly to an element of the wire fraud and conspiracy offenses—that of a scheme to defraud. They also go to the allegations of a scheme to defraud in violation of DFARS, which restricts melting and production of specialty metals to "the United States, its outlying areas, or a qualifying country." Whether the Indictment states Defendants misrepresented the manufacturing "country of origin," or uses Defendants' preferred wordier terminology that hews to the DFARS language (misrepresented that the magnets were not produced in a "qualifying country"), the result is the same.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT<br>United States Attorney<br>Western District of Kentucky | JENNIFER KENNEDY GELLIE<br>Executive Deputy Chief<br>Counterintelligence and Export Control Section<br>National Security Division |
| *s/ Joshua D. Judd*<br>Joshua D. Judd,<br>Christopher C. Tieke<br>Assistant U.S. Attorneys<br>717 W. Broadway<br>Louisville, KY  40202<br>(502) 582-5911<br>Joshua.judd@usdoj.gov<br>Christopher.tieke@usdoj.gov | *s/ Alex Wharton*<br>Alex Wharton<br>Trial Attorney<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br>(202) 514-4523<br>alexander.wharton@usdoj.gov |

CERTIFICATE OF SERVICE

On January 26, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

 s/ *Joshua D. Judd*
Assistant United States Attorney