UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                           PLAINTIFF


v.                                                    CRIMINAL NO. 3:22-CR-88-DJH
                                                      *Filed Electronically*


QUADRANT MAGNETICS, LLC et al.                                     DEFENDANTS

## UNITED STATES' RESPONSE TO MONICA PASCOE'S MOTION TO DISMISS INDICTMENT COUNTS ONE AND THREE

Defendant Monica Pascoe ("Pascoe") has moved to dismiss, as a matter of law, Counts One (Conspiracy) and Three (Wire Fraud) of the Government's Second Superseding Indictment, ECF 73 ("Indictment"). ECF 85 at 1. As legal support she cites Fed. R. Crim. P. 12(b)(3)(B)(v), alleging the Indictment fails to state an offense. She is incorrect, and the Court should deny her motion.[1] The Indictment sufficiently places Defendant Pascoe on notice of the charges against her and sets out the elements of all charged offenses.

## BACKGROUND

The Indictment charges Quadrant Magnetics, LLC ("Quadrant Magnetics"), its president, Phil Pascoe, vice president, Scott Tubbs, and accounting manager, Monica Pascoe, with, *inter alia*, violations of Title 18, United States Code, Section 371 (Conspiracy), and Title 18, United States

---

[1] The Indictment also charges Monica Pascoe in Counts Two and Four for wire fraud pursuant to 18 U.S.C. § 1343 and 18 U.S.C. § 2. Defendant does not argue that the Court should dismiss these charges against her. She instead argues that, if the Court dismisses Counts One and Three, then it would dismiss Ms. Pascoe as a Defendant in this case. ECF 85 at 2; *see also* Proposed Order. For the reasons stated below, to the extent Defendant Pascoe intends to move to dismiss Counts Two and Four against her for failure to state an offense, the Court should deny her request.

Code, Section 1343 (Wire Fraud). In particular, the conspiracy charge alleges that Defendants agreed together and with each other to:

> a.     knowingly and willfully export from the United States to China, and to non-U.S. persons, defense articles, specifically technical data covered by the [United States Munitions List] USML, without first obtaining a valid license and other approval for such export from the U.S. Department of State, in violation of 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(4);

> b.     fraudulently and knowingly export from the United States any merchandise, article and object contrary to any law or regulation of the United States, in violation of 18 U.S.C. § 554;

> c.     fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county of origin, in violation of 18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009;

> d.     knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation; and make and use a false writing or document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry; in violation of 18 U.S.C. § 1001(a)(2) and (3).

ECF 73 ¶ 16. The Indictment also charges numerous overt acts "in furtherance of the conspiracy and to accomplish its objects," including overt acts committed by Ms. Pascoe, specifically, processing purchase orders for parts which contained ITAR export control warnings; creating and circulating to her co-conspirators a spreadsheet indicating that multiple part numbers for General Dynamics Ordnance and Tactical Systems ("General Dynamics" and "U.S. Company 2" in the Indictment) had "ITAR prints," including some of the same parts for which Ms. Pascoe processed purchase orders; and coordinating the delivery of magnets illegally made in China using ITAR-controlled technical data, specifically, PN10500B-1022, PN 100101, PN 3730D-1012, and PN 6000U-1002. *See* ECF 73 ¶ 18.

    In addition, the Indictment charges that, between August 2017 to November 2018, Ms. Pascoe, her husband, Phil Pascoe, Scott Tubbs, and Quadrant Magnetics, aided and abetted by

each other and others known and unknown to the grand jury, devised and intended to devise a wire fraud scheme wherein they obtained money and property by means of materially false and fraudulent pretenses, representations, and promises when they executed and attempted to execute a scheme to defraud General Dynamics and the United States Department of Defense ("DOD") by concealing and misrepresenting the country of origin of the manufacture, smelting, and magnetization of magnets that Quadrant Magnetics produced for General Dynamics and DOD, in violation of the Defense Federal Acquisition Regulation Supplement ("DFARS"). ECF 73 ¶ 20. In furtherance of that scheme, the Indictment alleges that Defendants transmitted and caused to be transmitted three separate wires, one of which was an April 16, 2018 email from an employee of Hangzhou X-Mag ("X-Mag" and "Chinese Company 1" in the Indictment") to Mr. and Ms. Pascoe updating a shipping notification showing 100 units of PN 100101 Rev B being shipped via FEDEX on April 17, 2018 from China. *Id.* These were magnets for PN 100101 that Quadrant Magnetics unlawfully produced in China using ITAR-controlled technical data.

## ARGUMENT

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment is required to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Sixth Circuit has deemed an indictment sufficient if it "'fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas,* 398 F.3d 407, 411 (6th Cir. 2005)). "In particular, the indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a

subsequent proceeding, if charged with the same crime based on the same facts.'" *United States v. Howard,* 947 F.3d 936, 943 (6th Cir. 2020) (cleaned up).

The law favors the sufficiency of an indictment. *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019); *accord United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). It is sufficient that an indictment sets forth the offense in the words of the statute, so long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished," and where accompanied with a statement of facts to "inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States,* 418 U.S. 87, 117 (1974) (citations omitted). In the Sixth Circuit, "[c]ourts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense." *United States v. Maney,* 226 F.3d 660, 663 (6th Cir. 2000) (citation omitted).

A motion under Rule 12(b) is appropriate when it raises questions of law rather than fact. *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009); *see United States v. Campbell*, 2006 WL 897436, at *2 (E.D. Mich. Apr. 6, 2006) (cleaned up) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)) ("The court must view the indictment's factual allegations as true, and must determine only whether the indictment is valid on its face."). In other words, "the prosecution's evidence is tested at trial, not in a preliminary proceeding." *United States v. Short,* 671 F.2d 178, 183 (6th Cir. 1982). A court should deny a motion to dismiss if it raises a factual challenge that "requires a pretrial test of the government's evidence." *United States v. Harris*, 2022 WL 17741034, at *2 (E.D. Ky. Dec. 13, 2022).

I.      **The Indictment Sufficiently Informs Defendant Monica Pascoe of the Charged Conspiracy Offense.**

To establish a conspiracy charge pursuant to 18 U.S.C. § 371, the government must allege "an agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009) (quoting *United States v. Falcone*, 311 U.S. 205, 210 (1940)); *see United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004). In other words, a conspiracy requires proof that (1) "two or more persons conspired, or agreed, to commit" the alleged underlying crime or crimes, (2) "the defendant knowingly and voluntarily joined the conspiracy"; and (3) "a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy." Pattern Crim. Jury Instr. 6th Cir. 3.01A (2023).

The thrust of Ms. Pascoe's argument is that the Indictment insufficiently alleges her agreement to join the conspiracy and her agreement that the objects of the conspiracy be committed. ECF 85 at 8.[2] Her arguments of omission are unavailing. As Ms. Pascoe acknowledges, *id.* at 8-9, the Indictment alleges that Ms. Pascoe, along with her co-conspirators, "obtained ITAR-controlled technical data" from U.S. companies; imported magnets made in China using the "ITAR-controlled data" to fulfill orders for the U.S. companies; and "repackaged the magnets" before shipping them to the U.S. customers. ECF 73 ¶ 17. It also states that Ms. Pascoe and others

---

[2] Ms. Pascoe repeatedly states that the Indictment fails to allege she "willfully participated in any conspiracy." ECF 85 at 8; *see id.* at 6-7. In the Sixth Circuit, the government must prove that a defendant "knowingly and voluntarily joined [an] agreement." Sixth Circuit Pattern Crim. Jury Instr. 6th Cir. 3.03(1). The Committee Commentary to Pattern Intstruction 3.03 directly counsels against requiring proof that a defendant willfully joined a conspiracy, to "avoid confusion" to the extent that the term "willful" with respect to joinder of a conspiracy "connotes some extra mental state beyond that required for conviction of the substantive offense that is the object of the conspiracy." *Id.*; *see also United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014) (conspiracy to commit wire fraud requires, *inter alia*, proof that "defendant knowingly and voluntarily joined the conspiracy"); *United States v. Harrison*, 663 F. App'x 460, 464 (6th Cir. Nov. 1, 2016) (same).

"knowingly and willfully" conspired and agreed with each other to carry out the conspiracy. *Id.* ¶ 15. Those allegations, even without the additional facts asserted against Defendant Pascoe, more than meet the requirement to "sufficiently inform" her of the conspiracy offense with which she is charged, including her alleged knowing and voluntary agreement to join the conspiracy. *See Maney*, 226 F.3d at 663. The Indictment does not stop there though. It additionally sets out the following acts committed by Ms. Pascoe in furtherance of the conspiracy:

- Ms. Pascoe processed two purchase orders for General Dynamics which, along with the email correspondence from General Dynamics, contained "ITAR export control warnings" that stated "[t]his technical information is not to be . . . exported from the U.S., or given to any foreign person in the U.S. without the prior specific authorization of" General Dynamics and the Department of State, *see* ECF 73 ¶¶ 18(e), (p);

- Ms. Pascoe received an email from X-Mag informing her that the parts commissioned in one of those purchase orders that contained ITAR-controlled technical data had been shipped from China approximately one month after the order was placed, *see id.* ¶ 18(q);

- Ms. Pascoe processed an additional purchase order for a part made using ITAR-controlled technical data for General Dynamics and received an additional shipping notification from X-Mag informing her that the part was shipping from China to the United States approximately one month after the order was placed, *see id.* ¶¶18(s), (t);

- Ms. Pascoe created a spreadsheet with the title "SmCo itar DPAS review" containing part numbers for General Dynamics and listing at least two parts that were highlighted and labeled with "ITAR prints" for which Ms. Pascoe processed purchase orders, *see id.* ¶¶ 18(u), (e), (p); and

- Ms. Pascoe was told, as a Quadrant Magnetics employee, to conceal the country of origin of the parts from General Dynamics, *see id.* ¶ 18(v).

"Just as the conspiracy may be inferred from circumstantial evidence, a defendant's knowledge of and participation in a conspiracy also may be inferred from his conduct and established by circumstantial evidence." *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008). The additional acts alleged against Defendant Pascoe detail clearly her intent to join the conspiracy—she knowingly and voluntarily exported information that could not be exported to a Chinese company and aided in facilitating shipment of parts made from that controlled information

back to Quadrant Magnetics in the United States. Quadrant Magnetics then sent those parts to DOD subcontractors. The Indictment need not use the specific words "intend to agree" or "agreed to do anything improper," ECF 85 at 9, to demonstrate an agreement. Ms. Pascoe's actions as alleged in the Indictment speak for themselves.

For the same reasons, the Indictment sufficiently alleges Ms. Pascoe's intent that the objects of the conspiracy be committed. The Indictment must allege the same degree of criminal intent necessary for each underlying substantive offense. *United States v. Feola*, 420 U.S. 671, 686-696 (1975). The Arms Export Control Act ("AECA") and its implementing regulations punish willful violations, which are acts for which a defendant has "knowledge that the underlying action is unlawful." *United States v. Roth*, 628 F.3d 827, 833 (6th Cir. 2011). Thus, the government must allege that Ms. Pascoe intended that the object of the conspiracy to violate the AECA be committed willfully. As explained above, the Indictment alleges that Ms. Pascoe processed purchase orders containing ITAR warnings not to export technical data outside the United States, and that for multiple of these purchase orders, Ms. Pascoe received notification from a non-U.S. company that the parts subject to the purchase order would be shipped from China to the United States. *See* ECF 73 ¶¶ 18(e), (p)-(t). It further alleges that Ms. Pascoe created a spreadsheet which tracked parts that Quadrant Magnetics contracted for, and that this spreadsheet included and marked as "ITAR prints" parts for which ITAR-controlled technical data was sent to a Chinese company. *Id.* ¶ 18(u). These allegations demonstrate Ms. Pascoe's knowledge that her actions and those of her co-conspirators who were on emails with her and engaging in similar conduct as alleged in the Indictment, were unlawful.

Defendant Pascoe argues that her actions were consistent with her role as an accounting manager,[3] and the fact that the documents she handled had ITAR-controlled warnings and/or technical data does not mean that Ms. Pascoe read, knew, or understood the import of her actions. ECF 85 at 11-12. It beggars belief to argue that Ms. Pascoe did not read her emails or understand the plain text that appeared in the ITAR warnings, particularly when Ms. Pascoe around the same time created a spreadsheet that tracked parts with "ITAR prints" that Quadrant Magnetics had under contract. Ms. Pascoe cannot "deliberately close[her] eyes to what was obvious." *United States v. Matthews*, 31 F.4th 436, 450 (6th Cir. 2022); *see United States v. Smith*, 561 F.2d 8, 13 (6th Cir. 1977) (stating knowledge of a conspiracy cannot be avoided by closing one's eyes "to what [is] going on about him"); *accord United States v. Nguyen*, 493 F.3d 613, 624-25 (5th Cir. 2007) (finding jury could conclude defendants knowingly participated in conspiracy to defraud lenders where they were deliberately ignorant and evidence of their continued facilitation of suspicious transactions could constitute "specific intent"). Moreover, continuing to do one's job does not immunize unlawful actions. And when those actions are taken on behalf of one's employer as its agent, those unlawful actions are attributed to the employer. *See United States v. Carter*, 311 F.2d 934, 942 (6th Cir. 1963) (stating "the corporate principal is liable for the criminal act" related to the performance of an agent's duties which the agent has authority to perform); *United States v. Halpin*, 145 F.R.D. 447, 449 (N.D. Ohio 1992) (same). Taken as true, as required

---

[3] Ms. Pascoe's insistence that she cannot be held responsible because these duties were part of her "job duties" is a disputed fact that Ms. Pascoe can use to test the United States' evidence at trial. Ms. Pascoe's challenge of factual assertions cannot be decided on a motion to dismiss. *See Ali*, 557 F.3d at 719; *Short,* 671 F.2d at 183.

on a motion to dismiss, the Indictment "clearly contained on its face all of the elements necessary to state a federal offense." *Schaffer*, 586 F.3d at 422.[4]

Count One charges a conspiracy as to four substantive offenses: conspiracy to violate the AECA and its implementing regulations in violation of 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§121.1, 123.1, 127.1(a)(4); conspiracy to smuggle goods from the United States in violation of 18 U.S.C. § 554; conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009; and conspiracy to make false statements in violation of 18 U.S.C. § 1001(a)(2), (3). ECF 73 ¶ 16. Defendant Pascoe also argues that the Indictment does not allege sufficient facts informing her of the required mental state to enter into a conspiracy to commit the remaining three substantive offenses, namely smuggling, wire fraud, and false statements. ECF 85 at 13-16. Defendant repeats the same argument on lack of sufficient facts for the smuggling offense as she did for the AECA offense (as the smuggling offense relies on the AECA charge as the underlying unlawful activity). For the same reasons that the government explained in the previous paragraph, the facts in the Indictment as to Ms. Pascoe are more than sufficient to show that she entered into the conspiracy with the intent to "knowingly" smuggle ITAR-controlled technical data outside the United States contrary to AECA.

Both the wire fraud and material false statement offenses require specific intent or willfulness. *See United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (wire fraud statute requires "willful participation"); 18 U.S.C. § 1001(a) (prohibiting "knowingly and willfully" making a false statement). Ms. Pascoe's intent to join the conspiracy committing these

---

[4] Defendant's citation to *United States v. Adames*, 878 F.2d 1374 (11th Cir. 1989), ECF 85 at 11-12, as out-of-circuit, non-binding authority does not move the needle. That case affirmed a Rule 29 post-trial judgment of acquittal on an AECA charge and based its holding on "transcription of the testimony *elicited at trial*." *Adames*, 878 at 1377 (emphasis added). The court did not analyze the sufficiency of an indictment.

substantive offenses is clear from the face of the Indictment. As to wire fraud, the facts allege that Ms. Pascoe processed orders with ITAR-restricted technical data for parts that she knew were manufactured in China and shipped back to the United States for delivery by Quadrant Magnetics to DOD subcontractors, that she was informed to keep the identity of the Chinese manufacturer secret, and that she participated in this scheme with her co-workers, including repackaging the parts (magnets) before shipping them to Quadrant Magnetics' customers. As to false statements, the Indictment alleges that Ms. Pascoe conspired to "knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation" in the context of fulfilling orders for magnets that were incorporated into military items for DOD while concealing the fact that the magnets were manufactured in China. ECF 73 ¶¶ 16, 17(d).

If that were not enough, Ms. Pascoe's actions in relation to her co-conspirators are more than sufficient to show that she knowingly and intentionally joined the conspiracy with the intent to commit all four substantive offenses. "Once the existence of the conspiracy is proven, only slight evidence is needed to connect a defendant to the conspiracy." *United States v. Powell*, 847 F.3d 760, 780 (6th Cir. 2017); *Smith*, 561 F.2d at 12. Here, Ms. Pascoe does not challenge that the Indictment contains sufficient facts to allege involvement of her co-conspirators in all aspects of the conspiracy charge. Indeed, the Indictment details actions taken by Ms. Pascoe's co-conspirators that are very similar to the allegations against Ms. Pascoe, all of which give sufficient notice to Defendant that a conspiracy was formed. The Indictment alleges that Ms. Pascoe's co-conspirator Phil Pascoe emailed ITAR-controlled technical data to non-U.S. persons or outside the United States on ten occasions. *See, e.g.*, ECF 73 ¶¶ 18(d), (h), (o); It also alleges that Ms. Pascoe and her co-conspirators received shipping updates from a Chinese company on the status of orders for pars that were manufactured using ITAR-controlled technical data, *id.* ¶¶ 18(g), (j); and that

Defendants repackaged magnets received from China before shipping them to Quadrant Magnetics' customers while concealing their origin of manufacture, *id.* ¶¶ 17(d), (e). The allegations specific to Ms. Pascoe, when viewed together with the allegations against her co-conspirators, are more than sufficient to allege her knowing and voluntary participation in the scheme.

Ms. Pascoe argues that, as to the conspiracy to make false statements, the two allegations in the Indictment specific to overt acts committed in furtherance of that offense mention only her co-conspirators Mr. Tubbs and Mr. Pascoe. ECF 85 at 15-16. "A single agreement to commit several crimes constitutes one conspiracy." *United States v. Vichitvongsa*, 819 F.3d 260, 273 (6th Cir. 2016). The law does not require the United States to allege that Ms. Pascoe participated in all aspects of the conspiracy or each overt act; it need only prove that she was voluntarily a party to the general conspiratorial agreement. And once it is alleged that Ms. Pascoe joined the conspiracy, she is responsible for all overt acts of her co-conspirators—even the ones in which she did not directly participate. "[A] conspirator [need] not agree to commit or facilitate each and every part of the substantive offense," but must "merely reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." *Ocasio v. United States*, 578 U.S. 282, 288 (2016) (cleaned up); *see United States v. Phillips*, 872 F.2d 803, 806-07 (6th Cir. 2017) (similar). The Indictment alleges Ms. Pascoe conspired to agree to make a materially false and fictitious statement, as part of a broader conspiracy in which Ms. Pascoe participated with her co-conspirators in unlawfully exporting ITAR-controlled data and concealing Quadrant Magnetics' production of parts in China from its U.S. defense contractor customers. That is sufficient to give notice to the Defendant of the charge against her. The Indictment need not allege

an overt act committed by Ms. Pascoe as to the materially false statement element of the conspiracy.

## II.      The Indictment Sufficiently Informs Defendant Monica Pascoe of the Charged Wire Fraud Offense in Count Three.

Defendant argues that Count Three fails to state an offense against her because it fails to allege specifics as to mental states, specifically: (1) willful participation in the scheme to defraud; (2) intention to deprive someone of money or property; and (3) knowledge that her actions were unlawful. ECF 85 at 17-18. But the Indictment need not profile the mind of every Defendant—as with Count One, circumstantial evidence and allegations that track the language of the statute are sufficient.

In general, an indictment contains the elements of the offense charges and fairly informs a defendant of the charge against which she must defend if it "states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *Harris*, 2022 WL 17741034, at *2 (finding wire fraud indictment sufficient where the indictment tracked the elements of the wire fraud statute nearly verbatim); *see also Hamling,* 418 U.S. at 117 ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"). To support a conviction for wire fraud, 18 U.S.C. § 1343, the United States must prove: (1) the existence of a scheme to defraud, (2) use of wire communications in furtherance of the scheme, and (3) that the scheme was intended to deprive a victim of money and property. *United States v. Merklinger,* 16 F.3d 670, 678 (6th Cir. 1994).

In this case, similar to *Harris*, *supra*, the Indictment tracks the elements of the wire fraud statute nearly verbatim:

On or about and between August 2017 to November 2018 on the dates set forth below, in the Western District of Kentucky and elsewhere, the defendants, **PHIL PASCOE**, **SCOTT TUBBS**, **MONICA PASCOE** and **QUADRANT MAGNETICS LLC,** aided and abetted by each other and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, to wit: **PHIL PASCOE, SCOTT TUBBS, MONICA PASCOE** and **QUADRANT MAGNETICS LLC**, executed and attempted to execute a scheme to defraud U.S. Company 2 and DOD by concealing and misrepresenting, the country of origin of the manufacture, smelting, and magnetization of magnets produced for U.S. Company 2 and DOD, in violation of the DFARS, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing the scheme to defraud, from the Western District of Kentucky to outside of Kentucky, as set forth below:

| Count | Date | Description |
|---|---|---|
| 2 | June 7, 2018 | **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15036 for 250 units of PN 6000U-1002 to be supplied magnetized. |
| 3 | April 16, 2018 | Chinese Company 1 employee, E.Y., emailed **PHIL PASCOE** and **MONICA PASCOE**. This email updated shipping notification for PO 14970 and showed 100 units of PN 100101 Rev B being shipped via FEDEX on April 17, 2018 from China. |
| 4 | October 25, 2018 | **PHIL PASCOE** emailed ITAR-controlled technical data for PN 6000U-1002 to a Chinese Company 1 employee, J.G., a non-U.S. person, releasing PO 15156 for 500 units of PN 6000U-1002 to be supplied magnetized. |

ECF 73 ¶ 20.

More than that, the Indictment provides facts, which at this stage must be accepted as true, that tie the elements of the wire fraud to detailed facts and circumstances; in particular, it links the charged wires of the transmission of technical data relating to the magnets with the devised scheme

to defraud General Dynamics and DOD by concealing and misrepresenting the country of origin where Quadrant Magnetics manufactured, smelted, and magnetized its magnets. While Ms. Pascoe claims that the *sole* factual allegation against her in Count Three is that she received an email, ECF 85 at 4, 19, the Defendant disregards the Indictment's incorporation of Paragraphs 1-18 into Count Three, *see* ECF 73 ¶ 19, which, as explained above, detail additional actions taken by Defendant to participate in the scheme to defraud General Dynamics and DOD, including placing purchase orders for the magnets to be manufactured in China, coordinating their shipment back to the United States, and repackaging them before Quadrant Magnetics shipped them to General Dynamics. *See id.* ¶¶ 17-18. The Indictment's citation to the wire fraud statute in combination with the statutory language and specific allegations of wire fraud are sufficient to withstand Ms. Pascoe's motion to dismiss. *See Harris*, 2022 WL 17741034, at *2; *see also United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (upholding sufficiency of indictment where language tracked statute verbatim and "identifies with precision the date and location of Defendant's offense"); *United States v. Turner*, 615 F. Supp. 3d 576, 580 (W.D.K.Y. 2020) (denying motion to dismiss wire fraud charge where indictment stated elements of statute and identified broad contours of scheme); *United States v. Caniff*, 2023 WL 3901529, at *4 (S.D. Ohio June 8, 2023) (denying motion to dismiss wire fraud charge where indictment tracked language of wire fraud statute and alleged means and date of defendant's alleged offense).

Finally, as with her arguments with respect to Count One, Ms. Pascoe attempts to minimize her role to "just keeping the books" and discounting her knowledge of the AECA and ITAR, which implicates questions of fact, not questions of law, that are ultimately for the jury. *See United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997) ("While courts may determine "preliminary findings

of fact necessary to decide questions of law presented by pretrial motions," these findings cannot "invade the province of the ultimate factfinder").

### III.    Defendant Monica Pascoe Does Not Challenge Counts Two or Four.

While Counts Two and Four of the Indictment also allege wire fraud against Defendant Pascoe in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, Ms. Pascoe does not argue explicitly that the Court should dismiss these counts against her. Nevertheless, Defendant acknowledges that Counts Two through Four "assert wire fraud against *all* Defendants." ECF 85 at 19 (emphasis theirs). To the extent Defendant relies on the same arguments with respect to Counts Two and Four as to Count Three, those arguments are unpersuasive.

Ms. Pascoe also makes much of the fact that only Count Three specifically mentions her. ECF 85 at 19. Ms. Pascoe's focus on Count Three attempts to cabin her liability to a single email while ignoring that the crux of the crime of wire fraud is the scheme to defraud. "The defendant does not have to directly or personally perform the wire communication; it is sufficient that it is foreseeable that a wire communication could be used to advance the scheme to defraud." *United States v. Prince*, 215 F.3d 740, 748 n.4 (6th Cir. 2000). Indeed, the statute, when read in conjunction with 18 U.S.C. § 2, criminalizes aiding or abetting anyone who "transmits or causes to be transmitted" wire transfers for the purposes of executing or attempting to execute the scheme to defraud, 18 U.S.C. § 1343, and that statutory language is repeated in the Indictment as to Defendant Pascoe, ECF 73 ¶ 20. Given Ms. Pascoe's alleged role in the scheme to defraud, from processing purchase orders with ITAR-controlled data, *id.* ¶ 18(e), (p), (s), facilitating shipments from China to the United States of parts made using that ITAR-controlled data, *id.* ¶ 18(q), (t), cataloguing parts under contract that used "ITAR prints" and that Quadrant Magnetics manufactured in China, *id.* ¶ 18(u), repackaging parts that came from China before Quadrant

Magnetics shipped them to U.S. customers, *id.* ¶ 17(d), to being told by co-conspirators to conceal

from U.S. customers that Quadrant Magnetics made the parts in China, *id.* ¶ 18(v), the Indictment

provides sufficient information to tie Defendant Pascoe to the scheme to defraud and aiding and

abetting the transmission of wires in furtherance of that scheme.

## **CONCLUSION**

WHEREFORE, the United States requests that Defendant Monica Pascoe's Motion to

Dismiss, ECF 85, be DENIED.


Respectfully submitted,

MICHAEL A. BENNETT                      JENNIFER KENNEDY GELLIE
United States Attorney                  Executive Deputy Chief
Western District of Kentucky            Counterintelligence and Export Control Section
                                        National Security Division


 _s/ Joshua D. Judd_                     _s/ Alex Wharton_
Joshua D. Judd,                         Alex Wharton
Christopher C. Tieke                    Trial Attorney
Assistant U.S. Attorneys                950 Pennsylvania Ave., NW
717 W. Broadway                         Washington, DC 20530
Louisville, KY 40202                    (202) 514-4523
(502) 582-5911                          alexander.wharton@usdoj.gov
Joshua.judd@usdoj.gov
Christopher.tieke@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On January 26, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.


  s/ *Joshua D. Judd*
Assistant United States Attorney