UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 3:22-CR-88-DJH<br>*Filed Electronically* |
| QUADRANT MAGNETICS, LLC et al. | DEFENDANTS |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY FROM ALEX DOUVILLE AND STEVEN BURTON**

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively "Defendants") ask this Court for the *in limine* exclusion of Steven Burton and Alex Douville's expert testimony to prevent them from testifying that Quadrant Magnetics' magnets and the International Traffic in Arms Regulation ("ITAR")-marked technical data drawings used to design Quadrant Magnetics' magnets are "specially designed" for military use pursuant to 22 C.F.R. § 120.41 or are otherwise controlled on the United States Munitions List ("USML"). *See* ECF 91.[1] Defendants claim the testimony is not relevant, prejudicial, and unreliable under Federal Rules of Evidence ("FRE") 401, 403, and 702 respectively, because, according to Defendants, neither expert has opined on whether the magnets were "release[d]" from the USML pursuant to the commercial equivalent exception found in 22 C.F.R. § 120.41(b)(3). While Defendants' argument is untrue on the face of the experts' disclosures, it is also not a proper basis to exclude expert testimony at the pre-trial stage. Contrary to Defendants' claims, the question is not whether Douville and Burton "ignor[ed] the actual legal test" for determining

---

[1] Pursuant to the Court's scheduling Order, the deadline to file any motions *in limine* is four weeks prior to trial, which is scheduled to commence on April 1, 2024. *See* ECF 98. Any responses are due two weeks prior to trial, and there shall be no replies. *Id.*

whether an item is specially designed, ECF 91 at 1, rather, the question is whether their testimony should be admitted according to the Federal Rules of Evidence. The answer to that is plainly yes. Defendants' quibbles with how to apply the test are properly asserted on cross-examination, not in a motion *in limine*. For these reasons, the Court should deny Defendants' motion.

## BACKGROUND AND SUMMARY OF PROPOSED EXPERT TESTIMONY

### ITAR'S "SPECIALLY DESIGNED" PROVISION

The USML contains catch-all categories of defense articles to ensure the export control of items that are specially designed for use in other military items. 22 C.F.R. § 120.42(g) ("A catch-all control is one that does not refer to specific types of parts . . . but rather controls unspecified parts . . . only if they were specially designed for an enumerated item."). The ITAR's specially designed provision details a "catch-and-release" concept that ensures that the USML catches parts specially designed "for use in or with a defense article." 22 C.F.R. § 120.41(a)(2). As relevant to Defendants' motion, a part caught under § 120.41(a)(2) is released from the USML if it "[h]as the same function, performance capabilities, and the same or equivalent form and fit as a commodity or software used in or with a commodity that: (i) [i]s or was in production (*i.e.,* not in development) . . . ." 22 C.F.R. § 120.41(b)(3)(i). The ITAR define each of "form," "fit," "function," "performance capability," and "equivalent." 22 C.F.R. § 120.42.

### ALEX DOUVILLE, DEPARTMENT OF STATE

Alex Douville is presently the Division Chief of the U.S. Department of State's Directorate of Defense Trade Controls' ("DDTC") Small Arms and Training Team and Acting Division Chief for Space, Missile and Sensor Systems. ECF 91 Ex. 1 at 7.[2] Douville has over 13 years of experience in DDTC and is one of three most senior ITAR licensing officials in the State

---

[2] For ease of reference, the Government will refer to the exhibits attached to Defendants' motion where applicable.

Department. *Id.* at 1. In his current roles, Douville has overseen several DDTC teams in their assessments and determinations of ITAR licenses. Throughout his approximately 13 years of experience at the DDTC from an analyst to Division Chief, Douville has assessed, assisted, or reviewed tens of thousands of ITAR licenses, as well as reviewed countless Commodity Jurisdiction ("CJ") determinations made by DDTC. *Id.*

Douville's testimony covers a variety of subjects he is familiar with through his service with the DDTC. His disclosure covered approximately six pages and identified five federal trials in which he testified as an expert in the last four years. ECF 91 Ex. 1 at 1 (detailing Douville's expert testimony in *United States v. Ross Roggio*, 3:18-cr-97 (M.D. Pa. May 11, 2023); *United States v. Wilson Nuyila Tita*, l:21-cr-334 (D. Md. Apr. 29, 2022): *United States v. Genovevo Alvarez-Ronquillo*, 19-cr-3240 (D.N.M. Dec. 3, 2019); *United States v. Andre Moores*, 19-cr-80014 (S.D. Fla. July 16, 2019); and *United States v. Junior Joel Joseph*, 18-cr-80139 (S.D. Fla. Jan. 29, 2019). Douville is expected to discuss the regulatory scheme for ITAR/the Arms Export Control Act ("AECA"), and the registration, licensing, and export process for DDTC. *Id.* at 2-5. Specifically, Douville will testify as to why the articles at issue in the case meet descriptions in Categories on the USML, 22 C.F.R. § 121.1, and were thus controlled under the ITAR, 22 C.F.R. §§ 120-130. *Id.* at 2. He is also expected to discuss the definition of technical data and the many forms technical data can be in, the importance of technical data controls, and the importance of the ITAR in export control to prevent unauthorized dissemination of technical data. *Id.* at 2-3. He is expected to discuss registration, licensing, and checks for both in this case, and is expected to testify that based on the parts and commodity jurisdiction determinations in this case, DDTC would not have issued export licenses to Quadrant Magnetics because 22 C.F.R. § 126.1(d)(1) lists China

as a country subject to a policy of denial for export of defense articles, technical data, and defense services. *Id.* at 3-4.

Douville will also testify as to how the DDTC makes USML determinations and assists prospective exporters through the CJ process. *Id.* 1 at 4-5. He will testify that, with respect to the parts at issue in this case, he did not participate in the DDTC Office of Policy's assessment or determination of articles at issue; however, he independently reviewed the DDTC's final CJ determination letter. He will testify that based on his own independent review of the defense articles at issue, he agrees with the DDTC's assessment and rationales made therein. *Id.* at 5. He will also testify that, in his experience, DDTC's Office of Policy conducts a thorough review to consider whether any information might cause the item at issue to not match a description on the USML when it issues a determination letter. *Id.* at 4-5.

**STEVE BURTON, DEFENSE TECHNOLOGY SECURITY ADMINSTRATION**

Steven Burton has been a Senior Electronics Engineer at the Defense Technology Security Administration ("DTSA"), a group within the U.S. Department of Defense ("DOD"), since 2005. ECF 91 Ex. 2 at 5. Based on his nearly twenty years of experience at DTSA, Burton will testify that the drawings in the Indictment are technical data, as defined by 22 CFR § 120.33, and that a Department of State export license is required to export them. *Id.* at 1. Burton will directly address whether a commercial equivalent for the magnets exists:

> Mr. Burton confirms that the parts listed above are specially designed (22 CFR 120.41) for ITAR-controlled defense articles and that the associated manufacturing drawings are ITAR-controlled technical data, as indicated above. It should be noted that these magnets are not commercial-off-the-shelf (COTS). No existing COTS magnets met DoD requirements so new magnets were specially designed to meet the military requirement.

*Id.* at 2. Burton will further testify that the magnets related to the Indictment are mission critical for defense platforms and defense articles, that some part numbers have been identified

4

as unique and essential in the manufacturing bill of materials for the related defense article, and that several DOD manufacturing bills of materials uniquely identify these specially designed magnet parts. *Id.* at 3. In addition, he will testify that the permanent magnets are the only source for the required magnet field in military electric generators and electric motors to enable mechanical to electrical conversion and vice versa, and that, if the magnets were defective or unavailable, defense platforms would be non-mission capable and unable to perform their military mission. *Id.*

## ARGUMENT

### I. LEGAL STANDARD.

Federal Rule of Evidence 702 governs expert testimony. Trial courts serve a "gatekeeper" role for expert witnesses, which involves three basic inquiries:

> First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). Testimony meets the reliability threshold when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court's gatekeeping inquiry must be tied to the facts of a particular case. *Id.* at 150.

The Rule 702 inquiry is "a flexible one," and "[t]he focus . . . must be solely on the principles and methodology, not on the conclusions they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-95 (1993). The Sixth Circuit "recognize[s] that a district court operates with wide latitude in deciding how to test an expert's reliability, and, as such, must be afforded considerable leeway in deciding how to go about determining whether particular expert

testimony is reliable." *United States v. LaVictor*, 848 F.3d 428, 443 (6th Cir. 2017) (cleaned up). "[T]he requirement that an expert's testimony be reliable means that it must be supported by appropriate validation—i.e., good grounds, based on what is known." *In re Scrap Metal*, 527 F.3d at 529 (internal quotation marks removed). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id*. at 529-30; *see United States v. Stapleton*, 2013 WL 5966122, at *5 (E.D. Ky. Nov. 8, 2014) (stating expert's opinions "must be the product of a reliable application of an otherwise acceptable method").

In the Sixth Circuit, "rejection of expert testimony is the exception, rather than the rule[.]" *United States v. Gowder*, 2018 WL 6932119, at *4 (E.D. Ky. Nov. 14, 2018) (*citing In re Scrap Metal*, 527 F.3d at 530); *see also* Fed. R. Evid. 702 Advisory Committee Notes (2000) (stating "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility"). The benchmark for exclusion of expert testimony is whether the proffered testimony will usurp the function of the jury or the court. In performing its gatekeeper function, the trial court has broad discretion in deciding how to test an expert's reliability and in determining whether expert testimony is admitted or excluded. Notably, pre-trial challenges to expert testimony should not become "a series of mini-trials with regard to every objection raised against a party's expert witnesses." *Bitler v. A.O. Smith Corp*., 400 F.3d 1227, 1234-35 (10th Cir. 2004). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002); *see SCF, LLC v. Hartford Fire Ins. Co.*, 2021 WL 6932658, at *3 (citing *Hartley,* 310 F.3d at 1061).

## II. STEVE BURTON AND ALEX DOUVILLE'S TESTIMONY ARE ADMISSIBLE PURSUANT TO FRE 702, 401, AND 403.

Defendants' sole contention as to both experts is that their testimony is inadmissible because their consideration of whether the magnets and underlying data at issue in this case were "released" from the USML based on the (b)(3) exception for commercially equivalent parts is "utterly absent." ECF 91 at 1, 2 (claiming flawed methodology because Burton and Douville did not "account for this critical regulatory fact").[3] As an initial matter, Defendants are facially incorrect that Douville and Burton's proposed testimony does not cover the full scope of how to determine whether a part is on the USML because it is "specially designed" pursuant to 22 C.F.R. § 120.41. Douville states that he will testify "as to why the articles at issue in the case met descriptions in Categories in the [USML]," ECF 91 Ex. 1 at 2; that "when DDTC's Office of Policy issues a determination letter, it conducts a thorough review to consider whether any information might cause the item at issue to not match a description on the USML," *id.* at 4; and that "based on his own independent review of defense articles at issue [that] he agrees with the DDTC's assessment and rationales made therein [that the magnets and parts are 'specially designed']," *id.* at 5. All of these statements are based on a complete analysis of what is required for a part to be 'specially designed' such that that it is on the USML. That consideration—that the parts are on the USML because they meet the definition of "specially designed"—necessarily encompasses review of *both* 22 C.F.R. § 120.41(a) (laying out parameters of what is considered specially designed), *and* (b) (laying out exceptions to (a)).

Likewise, Burton will testify that he "confirms that the parts listed above are specially designed (22 CFR § 120.41)." ECF 91 Ex. 2 at 2. He goes on to say that "these magnets are not

---

[3] Defendants also cross-reference their argument that the AECA and ITAR are unconstitutionally vague, the subject of a separate motion. ECF 88. The government has responded to that motion in a motion filed contemporaneously herewith.

commercial-off-the-shelf (COTS)," that "[n]o existing COTS magnets met DoD requirements so new magnets were specially designed to meet the military requirement," and that the magnets "are the only source for the required magnet field to enable mechanical to electrical conversion, and vice versa." *Id.* at 2-3. While Defendants decry the semantics used in those statements, they are fundamentally explaining Burton's consideration of whether the magnets met one of the exception categories of 22 C.F.R. § 120.41(b). Defendants claim that because the term 'commercial off the shelf' is not found in the regulations, it is not an appropriate measure of whether a part is not specially designed pursuant to 22 C.F.R. § 120.41(b)(3) (asking if a part "[h]as the same function, performance capabilities, and the same or equivalent form and fit as a commodity or software used in or with a commodity that: (i) [i]s or was in production (*i.e.*, not in development)"). ECF 91 at 14. But a litigant need not demonstrate to the Court that an expert's assessments are correct, only reliable. Rule 702 is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. *See* Fed. R. Evid. 702, Advisory Committee Notes (2000).

At base, Defendants are not challenging the test to apply to determine whether a part is on the USML; they are challenging the application of the test by the government's experts and their ultimate findings. Indeed, Defendants and the government *agree* on the test here—it is application of 22 C.F.R. § 120.41 to each part in question. Where challenges to experts are grounded in issues related to credibility and weight of witness testimony, those issues are appropriately challenged not by motion *in limine*, but at trial. *See Louderback v. Orkin Exterminating Company, Inc.*, 26 F. Supp. 2d 1298, 1307 (D. Kan. 1998) (issues of credibility are for cross-examination); *accord Reynolds v. Freightliner, LLC*, 2006 WL 5249847, * 5 (E.D. Ky. Sept. 18, 2006).

Beyond those disclosures, Burton and Douville's testimony give myriad support that they

8

use a "reliable methodology" and that their testimony contains opinions based on "reliable facts or data." *In re Scrap Metal*, 527 F.3d at 529. Both Burton and Douville follow the same procedure as Defendants' expert in their disclosures to assess whether technical data should be included on the USML. They reviewed the CJ determinations for the relevant parts, reviewed the end use items, and provided the assessment that the items and technical data were on the USML and that they agreed with the determinations of the State Department. They made their assessments based in part on knowledge of the CJ process and the rigor that goes into those interagency decisions. As to Burton, he is also an engineer who understands the end use regarding the magnets at issue, the associated technical data, and the interplay between the magnets and their military purpose, and that technical know-how was used as part of his methodology to assess whether the parts were specially designed. Both experts base their opinions on the fact that they have performed license determinations thousands of times over the course of collectively nearly three decades. "Unsupported speculation" these opinions are not. *Id.* at 529-530.[4]

Defendants' motion is filled with factual statements that demonstrate their concern is not with the methodology Burton or Douville apply (which is based on the same regulatory test that Defendants ask to apply), but with their ultimate conclusion that the magnets and magnet parts are on the USML. Defendants vaguely claim that including a hypothetical magnet on the USML "with thousands or millions of commercial applications" "would militarize everything on Wal-Mart's shelves." ECR 91 at 8. They claim that *their* expert's conclusion, that the magnets are not on the USML because commercial equivalents exist, is the correct interpretation of the regulations. *Id.* at

---

[4] The government vigorously denies that Burton or Douville's testimony is inadmissible in this case. Both Burton and Douville intend to provide Defendants with a supplement to their disclosures to provide additional description of their proposed testimony. However, these supplements in no way are intended to suggest that the experts' initial disclosures are irrelevant, prejudicial, or unreliable.

13 n.9. And they cite to a scholarly article to claim that neodymium magnets (which Defendants do not argue are the same as the magnets or associated technical data alleged to have been unlawfully exported in the Indictment) are used "pervasively by the commercial sector." *Id.* at 11 & n.8. None of these facts have any bearing on the question of whether Burton or Douville's testimony is admissible. To the extent Defendants want to argue that Burton and Douville failed to consider certain relevant commercial equivalents, such "weaknesses in [] methodology will affect the weight that [their] opinion is given at trial, but not its threshold admissibility." *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 182 (6th Cir. 2009).[5]

Because Burton and Douville's testimony is admissible under 702, it is also *ipso facto* admissible under Federal Rules of Evidence 401 and 403. Federal Rule of Evidence 401 permits evidence that is relevant, *i.e.*, "has any tendency to make a fact more or less probable than it would be without the evidence," and "is of consequence in determining the action." Fed. R. Evid. 401. Burton and Douville's testimony easily meets this standard; it was also determined to have been relevant for purposes of the analysis under Rule 702. *See In re Scrap Metal*, 527 F.3d at 529 (stating the second prong of the test for admissibility is that the "testimony must be relevant"). Defendants argue that the testimony should be excluded under Federal Rule of Evidence 403, because it "poses a danger of prejudicing and misleading the jury." ECF 91 at 2. Again, though, for reasons stated above, expert opinions by an employee of the U.S. State Department and the DOD applying the State Department's regulations—determinations that the experts have made "tens of thousands" of times, pose no such risks. *See* ECF 91 Ex. 1 at 1; *see* Ex. 2 at 3 (stating Burton participates in export license request assessments for ITAR-controlled defense articles and technical data "daily").

---

[5] So too, Defendants' skepticism of whether the CJ determination process does a "thorough job," ECF 91 at 12, is a question of weight, not admissibility.

## CONCLUSION

WHEREFORE, the United States requests that Defendants' Motion *in Limine*, ECF 91, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |
| | |
| s/ *Joshua D. Judd* | s/ *Alex Wharton* |
| Joshua D. Judd | Alex Wharton |
| Christopher C. Tieke | Trial Attorney |
| Assistant U.S. Attorneys | 950 Pennsylvania Ave., NW |
| 717 W. Broadway | Washington, DC 20530 |
| Louisville, KY  40202 | (202) 514-4523 |
| (502) 582-5911 | alexander.wharton@usdoj.gov |
| Joshua.judd@usdoj.gov | |
| Christopher.tieke@usdoj.gov | |

11

CERTIFICATE OF SERVICE

On January 26, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

 s/ *Joshua D. Judd*
Assistant United States Attorney