UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                          PLAINTIFF

v.                          CRIMINAL NO. 3:22-CR-88-DJH
*Filed Electronically*

QUADRANT MAGNETICS, LLC et al.                          DEFENDANTS

## UNITED STATES' RESPONSE TO MOTION TO DISMISS LEGALLY INSUFFICIENT SMUGGLING ALLEGATIONS

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe[1] (collectively "Defendants") ask this Court to hold that "article" does not mean "article" and to dismiss, as a matter of law, Count Nine of the Second Superseding Indictment, ECF 73 ("Indictment"). *See* ECF 86. No court has ever adopted Defendants' narrow reading of 18 U.S.C. § 554 and held that the statute only applies to tangible goods and their physical transport. This Court should decline to be the first to do so, as no such limitation is found in the statutory text. Rather, the technical data that Defendants possessed and exported is a defense article under the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR"), and therefore, when Defendants smuggled it from the United States via email, they violated the plain text of § 554. Count Nine is legally sufficient, and the Court should deny Defendants' motion to dismiss.

---

[1] Though Monica Pascoe joins in Defendants' motion, the government did not charge her in Count Nine. *See* ECF 73 ¶ 30.

1

## BACKGROUND

Count Nine of the Indictment charges that, as part of their broader scheme to produce specially designed magnets in China for use in military items in violation of the AECA and ITAR, Defendants exported to China technical data from General Dynamics Ordnance and Tactical Systems ("General Dynamics" and "U.S. Company 2" in the Indictment) for magnets to be used in a multi-spectral targeting system in violation of 18 U.S.C. § 554. *See* ECF 73 ¶ 30. This technical data took the form of drawings setting forth the technical specifications, parameters, and dimensions needed to manufacture specially designed magnets—specifically, in Count Nine, PN 6000U-1002. As relevant here, Section 554 prohibits "fraudulently or knowingly export[ing] or send[ing] from the United States . . . any merchandise, article, or object contrary to any law or regulation of the United States." This statutory structure is somewhat "unusual" because it "depends on there being other laws or regulations that make unlawful the specific actions taken." *Franco-Casasola v. Holder*, 773 F.3d 33, 36 (5th Cir. 2014); *see also United States v. Place*, 693 F.3d 219, 227 (1st Cir. 2012) (analyzing 18 U.S.C. § 545, the parallel import statute). Here, the Indictment identifies the underlying statute as the AECA, 22 U.S.C. § 2778, *see* ECF 73 ¶¶ 9-12; 13(c); 30, which in turn empowers the President "to designate those items which shall be considered as defense articles and defense services" and to require licenses for the export of designated items, 22 U.S.C. § 2778(a)(1), (b)(2).

Defendants have moved to dismiss Count Nine, arguing that Section 554 only reaches certain items designated under the AECA—those that are tangible. *See* ECF 86. Their argument proceeds in three steps: First, Defendants assert that the technical data they illegally exported is not "merchandise" or an "object," but if anything must be an "article." *Id.* at 2. Next, they argue that "merchandise" and "object" should be read to encompass only tangible items. *Id.* at 4. Finally,

2

invoking the principle of *noscitur a sociis*, Defendants argue that a similar limitation should be read into the term "article." *Id.* They attempt to bolster this argument with appeals to legislative history and lenity. *See id.* at 4-8. Each step of this argument is flawed as explained below. Separately, Defendants argue that the method they used to "export[] or send[]" the technical data—via email—also falls outside the statute's reach, *id.* at 9-10, but Defendants do so by improperly relying on the statute's title, rather than the actual statutory text.

## **ARGUMENT**

An indictment is sufficient if it "fully, directly, and expressly . . . sets forth all the elements necessary to constitute the offense intended to be punished." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (cleaned up). The law favors the sufficiency of an indictment. *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019); *accord United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). A motion under Rule 12(b) is appropriate when it raises questions of law rather than fact. *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009).

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Courts must bear in mind the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (cleaned up). Statutes should be interpreted "as a symmetrical and coherent regulatory scheme" and "fit, if possible, all parts into an harmonious whole." *Id.* (internal quotations omitted). "[S]tatutory interpretation cases almost always start with a careful consideration of the text, and there is no reason to do otherwise here." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2337 (2021).

I.      **Section 554 Does Not Include a Tangibility Element.**

Section 554 broadly prohibits sending "any merchandise, article, or object" outside the United States "contrary to any law or regulation of the United States." Its sister statute, 18 U.S.C. § 545, contains a similar prohibition with respect to importing. These statutes are necessarily written in general terms because of the varied other laws which might fall under their "contrary to law" provisions. *See, e.g.*, *United States v. Sotis*, 2023 WL 8792068 (11th Cir. Dec. 20, 2023) (exporting underwater breathing equipment contrary to IEEPA); *United States v. Matheny*, 42 F.4th 837 (8th Cir. 2022) (exporting eBay goods contrary to postal regulations); *Place*, 693 F.3d at 227 (importing whale teeth and narwhal tusks contrary to environmental regulations);[2] *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008) (importing freon contrary to Clean Air Act regulations); *United States v. Teh*, 535 F.3d 511 (6th Cir. 2008) (importing DVDs contrary to copyright law); *United States v. Mitchell*, 39 F.3d 465 (4th Cir. 1994) (importing big game hides contrary to Fish & Wildlife Service regulations); *United States v. Patel*, 762 F.2d 784 (9th Cir. 1985) (importing coffee contrary to U.S. treaty obligations). Here, Defendants are alleged to have exported technical data contrary to the AECA and ITAR.

As an initial, practical matter, Defendants' argument elevates form over substance. Defendants do not dispute that, had they instead printed the charged technical data and mailed it to China, or boarded a plane to China with that printout in their pocket, Section 554 would apply. The fact that Defendants instead used the modern convenience of email does not immunize their conduct. The important national security concerns underlying Section 554, which as Defendants

---

[2] While *Place* addressed whether the endangered species regulations at issue there qualified as "law," Defendants (correctly) do not argue that the AECA and ITAR fail to satisfy that statutory requirement. *See, e.g.*, *Franco-Casasola*, 773 F.3d at 36 (examining § 554 charge based on AECA); *Place*, 693 F.3d at 228 ("[E]very circuit court to have considered the question in the context of the smuggling statute has likewise agreed that 'contrary to law' similarly includes at least some regulations.").

note was added as part of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, do not hinge on whether an item has been reduced to tangible form. The Court should reject an interpretation so contrary to the statute's purpose. *See Bailey v. United States*, 516 U.S. 137, 145 (1995) ("We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme.").

Defendants' more specific claims are flawed as well. Defendants ground their motion in the definitions of "merchandise" in the Customs statutes, 19 U.S.C. § 1401(c) ("goods, wares, and chattels of every description"), and "object" and "article" in the *American Heritage Dictionary of the English Language* ("[a] specific, individual, material entity" and "[a]n individual thing or element of a class; a particular object or item," respectively). *See* ECF 86 at 4. While they assert that each of these cherry-picked definitions "denotes tangibility," *id.* at 2, that is not so.

A brief survey of the U.S. Code refutes Defendants' claim that "object" can only mean a tangible item. Rather, when Congress has sought to so limit the term, it has done so explicitly through adjectives such as "material" or "tangible." For example, copyright law distinguishes the protected idea from a "material object" in which it may be embodied. *See* 17 U.S.C. § 202. The criminal code reflects this Congressional precision too. In the very statute at issue in the case on which Defendants primarily rely, *Yates v. United States*, 574 U.S. 528 (2015), the Supreme Court analyzed 18 U.S.C. § 1519's use of the term "tangible object." *See also* 18 U.S.C. § 3110 (defining "'property' as used in Rule 41 [to] include[] documents, books, papers and any other tangible objects"); 18 U.S.C. § 668(a)(1)(D) (defining "museum" as an entity that "owns, utilizes, and cares for tangible objects that are exhibited to the public on a regular schedule"). Under Defendants' definition, each of these statutes contains a meaningless redundancy. Given "the presumption that each word Congress uses is there for a reason," *Advocate Health Care Network v. Stapleton*, 581

5

U.S. 468, 477 (2017), the Court should reject Defendants' claim that "object" can only mean a tangible item.

This shows the first two flaws in Defendants' argument. First, they are wrong in asserting, without citation, that technical data cannot be an "object" simply because it is sometimes intangible. *See* ECF 86 at 2. Where, as here, Congress has chosen not to include limiting adjectives such as "tangible" or "material" to modify "object," this Court should not add such language. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply."). Second, the fact that "object" is not limited to tangible items fatally undermines the central premise of Defendants' *noscitur a sociis* argument—that the other terms of Section 554 are limited to tangible items. In fact, to the extent the canon of *noscitur a sociis* applies, it suggests the opposite conclusion—that "article" should be read likewise to encompass intangible items.

Defendants compound these errors in their specific discussion of the term "article." They incorrectly ask this Court to interpret "article" in Section 554 in a vacuum, unmoored from its statutory relatives. As the Supreme Court has directed, the Court should rather read Section 554's terms "as a symmetrical and coherent regulatory scheme." *Brown & Williamson*, 529 U.S. at 133 (internal quotations omitted). Here, that regulatory scheme includes the AECA and its restrictions on the export of "defense articles." Within the definition of "defense articles" are numerous intangible items, from encryption algorithms (USML Category XIII(b)), to nuclear modeling programs (USML Category XVI(b)), to the technical data at issue here (USML Category XII(f)). *See* 22 C.F.R. § 121.1. The export of any of these "articles" without a license is "contrary to law" and therefore violates Section 554.

6

Ignoring the other intangible items designated as "defense articles," Defendants dismiss the designation of technical data as a mere "administrative convenience." *See* ECF 86 at 8. On the contrary, these designations are each necessary to bring the intangible items within the AECA's regulatory structure and have real, substantive consequences. While the ITAR specifically discusses the "technical data" categories throughout the regulations, Section 2778(a)(1)'s statutory language includes only the categories of "defense articles" and "defense services." Thus, Defendants are wrong that the law "distinguishes 'defense articles' or—at the very least—'articles' from related technical data." ECF 86 at 8; *see also id.* at 3 (similar). Rather, the law defines "defense articles" to *include* "technical data," and Defendants' true request is for this Court to hold that "articles" in Section 554 somehow excludes certain "defense articles" as defined in the AECA.[3] Because such an exception would exempt large swaths of critical national defense software, algorithms, and data, this Court should reject that request and deny Defendants' motion.

The broader reading is also consistent with other uses of the term "article." For example, although Defendants rely on the Customs Act definition of "merchandise," they notably omit that the term "article" within the Trade Act has been held to include intangible goods. *See Former Emps. of Computer Scis. Corp. v. U.S. Sec'y of Labor.*, 414 F. Supp. 2d 1334, 1340 (Ct. Int'l Trade 2006) ("The Trade Act does not define the term 'articles' within the statutory language, and specifically absent is a tangibility requirement."). Moreover, even their selected dictionary definition defines "article" to include an "object," and as explained above, "object" also includes

---

[3] Defendants are wrong in claiming that the AECA "otherwise defines 'articles' as physical goods." *See* ECF 86 at 3 (citing 22 U.S.C. § 2794(1), (3)). Section 2794(1) defines "excess defense article," a particular technical term used in provisions governing the sale and disposal of such items. More importantly, Section 2794(3)'s definition of "defense article" applies to sales by the United States and explicitly notes that it does not apply to exports of items "subject to the provisions of section 2778," the AECA provision at issue here. *See* 22 U.S.C. § 2794(7). If, as Defendants claim, "defense articles" in § 2778(a)(1) excluded technical data, no such exception would have been necessary.

intangible items. *See also Oxford English Dictionary* ("article (n.), sense V.14.a - A particular material thing, esp. one belonging to a specified class; a commodity; an item of goods or property. Also occasionally used of an immaterial thing."); *Black's Law Dictionary* (11th ed. 2019) (defining "article" as "[g]enerally, a particular item or thing," without reference to tangibility).

Because the language of Section 554 is clear, the Court need not address Defendants' appeal to legislative history, *see* ECF 86 at 4-6, but these arguments are also incorrect. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."). First, Defendants rely on Section 554's placement in Title III of the USA PATRIOT Improvement and Reauthorization Act of 2005, which is titled "Reducing Crime and Terrorism at America's Seaports." But this proves far too much. Even Defendants do not claim that the statute is limited to exports via sea, and as discussed below, the statute's use of the broad terms "export[] or send[]" covers all manner of transmitting items outside the United States.

Second, Defendants note that Congress once amended an unrelated statute, 18 U.S.C. § 1465, to clarify that it applied to electronic transmissions of obscenity. ECF 86 at 5. But the Sixth Circuit had already held that such an amendment was unnecessary, *see United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996), and Defendants' attempts to distinguish the original version of the statute fall flat. They claim that "transmission of obscene images through electronic means is commonplace, whereas few (if any) would understand 'smuggling' to include emailing," ECF 86 at 5, but, as discussed below, this ignores the actual text of Section 554. This text prohibits "export[ing] or send[ing]," and "send" is of course the verb most commonly used to describe transmitting an email. *Cf.* ECF 86 at 1 ("an email was sent"); *id.* at 9 ("sending an email"). Thus,

to the extent the Court chooses to examine legislative history, it also does not support Defendants' narrow reading of the statute.

## II. Section 554 Does Not Include a Stealth Element.

Separately, Defendants ask this Court to hold that Section 554 requires that the method used to move items outside the United States involve "stealth" or be done "secretively." ECF 86 at 9-10. This argument is easily rejected. The sole basis for Defendants' claim is that the title of Section 554 is "Smuggling goods from the United States." But it is black-letter law that "a title or heading should never be allowed to override the plain words of a text." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 222 (2012); *see also Spurr v. Pope*, 936 F.3d 478, 488 (6th Cir. 2019) (internal quotations omitted) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text."). The text of Section 554 does not use the word "smuggle," but instead speaks of one who "exports or sends" items overseas. Defendants do not claim that sending an email falls outside the plain meaning of these terms. Indeed, to do so would be to echo their previous flaw of ignoring that the AECA uses the same terminology. *See, e.g.*, 22 U.S.C. § 2778(a)(1) (emphasis added) (empowering President "to promulgate regulations for the import *and export* of such articles and services"); 22 C.F.R. § 120.50 (defining "export").

In relying instead on dictionary definitions of the term "smuggle,"[4] Defendants repeat the same error the Supreme Court identified in *Regalado Cuellar v. United States*, 553 U.S. 550, 558-59 (2008). There, the defendant attempted to limit the reach of 18 U.S.C § 1956 based on common definitions of "money laundering," a term used only in the statute's title. The Supreme Court

---

[4] Although the Court need not reach the issue, Defendants' proffered definition is also contrary to common usage of the term "smuggling." *See, e.g.*, *Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp. 2d 1308, 1325 (S.D. Fla. 2008) ("[T]he dictionary definitions of 'piracy' and 'smuggling' are sufficiently broad to encompass the activities charged in Microsoft's complaint" alleging software copyright infringement).

9

rejected this attempt in words equally applicable here: "[T]o the extent they are inconsistent, we must be guided by the words of the operative statutory provision, and not by the common meaning of the statute's title." *Id.* at 558. The Indictment alleges precisely what the statutory language requires—that Defendants exported or sent ITAR-designated technical data outside the United States contrary to law.

### III.  The Rule of Lenity Does Not Apply.

Finally, Defendants seek refuge in the rule of lenity. *See* ECF 86 at 3, 6, 10. The rule does not apply here. Courts "only invoke the rule when the usual tools of statutory construction leave us with a 'grievous ambiguity,' not when, as here, they resolve the interpretive question." *United States v. Fitzgerald*, 906 F.3d 437, 448 (6th Cir. 2018) (quoting *Chapman v. United States*, 500 U.S. 453, 463 (1991)). As explained above, the plain language of Section 554 rejects both of Defendants' attempts to inject additional elements into the statute. The necessary grievous ambiguity simply does not exist.

The rule of lenity is even less appropriate in cases, such as this, where a defendant's violation was willful. "Lenity is premised in large measure on fair-notice principles—the idea that citizens must be given fair warning that certain conduct might subject them to criminal sanction." *Fitzgerald*, 906 F.3d at 448. Here, as the Indictment alleges, the technical data that Defendants illegally sent to China carried explicit warnings against doing so. *See, e.g.*, ECF 73 ¶ 18(e). The fact that Defendants had actual knowledge that their conduct was prohibited further counsels against application of the rule of lenity. *See* United States' Response to Defendants' Motion to Dismiss Unconstitutionally Vague AECA and ITAR Allegations, at 17-19 (filed contemporaneously herewith).

10

## CONCLUSION

For the reasons stated herein, the United States requests that Defendants' Motion to Dismiss, ECF 86, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |
| | |
| s/ *Joshua D. Judd* | s/ *Alex Wharton* |
| Joshua D. Judd, | Alex Wharton |
| Christopher C. Tieke | Trial Attorney |
| Assistant U.S. Attorneys | 950 Pennsylvania Ave., NW |
| 717 W. Broadway | Washington, DC 20530 |
| Louisville, KY 40202 | (202) 514-4523 |
| (502) 582-5911 | alexander.wharton@usdoj.gov |
| Joshua.judd@usdoj.gov | |
| Christopher.tieke@usdoj.gov | |

CERTIFICATE OF SERVICE

On January 26, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the Defendants.

s/ *Joshua D. Judd*
Assistant United States Attorney