UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** <br><br> v. <br><br> **Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LEGALLY INSUFFICIENT SMUGGLING ALLEGATIONS**

Relying exclusively on cases in which defendants exported physical goods, such as breathing gear, narwhal tusks, big-game hides, DVDs, and coffee, the government asks this Court to expand the smuggling statute, 18 U.S.C. § 554, to include emails. This novel construction of the statute should be rejected. Words like "article" or "object" may have different meanings depending on their statutory context, but their meaning in § 554 does not extend to an intangible email. This ordinary understanding is reinforced by § 554's structure, statutory history, and the other contextual clues the Supreme Court instructs courts to consider. It is unsurprising that neither side has found legal support for the government's expansive interpretation of the statute.

The government's chief rejoinder to the evidence indicating § 554's limits is to propose a theory of interpretation unsupported by law and directly contrary to the text of § 554: that because § 554 prohibits exports of "merchandise, article[s], or object[s] . . . contrary to any law or regulation," the statute somehow incorporates *those* laws' or regulations' definitions (if any) of the words "article" or "object." (D.N. 108, PageID.1398.) That is wrong. Other laws and regulations determine whether the *export* or *sending* of an "article," "object," or "merchandise" is illegal but not whether the thing *is* an "article," "object," or "merchandise" under § 554 to begin with. To that point, nothing in the AECA, 22 U.S.C. § 2778, empowers the President (as delegated to the State

Department) to decide what "article" and "object" mean under 18 U.S.C. § 554.

The government's argument only worsens with the contention that "object" and "article" should be *broadly* construed. In arguing for a *broad* construction of smuggling, the government would make a smuggling violation of any international phone call; email; text message; Facebook, Instagram or TikTok posting; or other electronic transmission otherwise made contrary to law. To the extent any ambiguity exists, the proper canon is lenity, not deference to the prosecution's over-expansive interpretation of the smuggling statute.

## ARGUMENT

**1. Section 554 refers to the export of tangible goods.**

**a. The ordinary meaning of § 554 indicates the export of tangible items.**

It is telling that in arguing § 554 does not require tangibility, the government begins by citing seven cases in which defendants were charged with exporting tangible goods and none where they exported anything intangible. (*See* D.N. 108, PageID.1400 (citing *United States v. Sotis*, 89 F.4th 862 (11th Cir. 2023) (breathing gear); *United States v. Matheny*, 42 F.4th 837 (8th Cir. 2022) (eBay goods); *United States v. Place*, 693 F.3d 219 (1st Cir. 2012) (whale teeth and narwhal tusks); *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008) (freon); *United States v. Teh*, 535 F.3d 511 (6th Cir. 2008) (DVDs); *United States v. Mitchell*, 39 F.3d 465 (4th Cir. 1994) (big game hides); *United States v. Patel*, 762 F.2d 784 (9th Cir. 1985) (coffee).) In fact, nowhere in its brief does the government cite any case applying § 554 to sending emails or other intangible data. The government alchemically suggests that the absence of precedent *supports* its argument, for no court has yet rejected its novel position. In reality, it simply shows that the prosecution is out of step with the plain, universal understanding of the statute.

Beyond the absence of any case law supporting the government's expansive reading, the ordinary understanding of the text of § 554 makes clear that "object" and "article" refer to physical

items similar to merchandise. Courts interpret statutory language "according to its ordinary, contemporary, common meaning" and "[t]o discern that ordinary meaning, those words must be read and interpreted in their context, not in isolation." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (cleaned up). Further, "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015). Here the government misstates the Defendants' position as claiming general terms like *article* or *object* can *never* denote anything intangible. (*See* D.N. 108, PageID.1397, 1401 ("'article' does not mean 'article'"; " . . . Defendants' claim that 'object' can only mean a tangible item.").) In reality, Defendants ask only that words be understood in their proper textual and statutory context. The government jumps to the opposite extreme, suggesting that if *article* or *object* can ever refer to anything intangible, then they must in § 554 too. (*See, e.g.* D.N 108, PageID.1402 (citing regulations under a different statute using "defense articles" to refer to intangible items).)

Ironically, the definitions the government relies upon support the reading that "article" generally refer to material things. For example, an "article" is defined as "[a] particular material thing, esp. one belonging to a specified class; a commodity; an item of goods or property. Also *occasionally* used of an immaterial thing." (D.N. 108, PageID.1404 (citing *Oxford English Dictionary*)) (emphasis added). Here the usual definition refers to a "material thing" and corresponds to the definition of "merchandise" under customs statutes as "goods, wares, and chattels of every description." 19 U.S.C. § 1401(c). The government makes much of "article" "occasionally" referring to an immaterial thing, but its reliance on an uncommon meaning to argue against its ordinary meaning only undermines its position. The government notes that *Black's Law Dictionary*'s definition of *article* as a "particular item or thing" does not specifically refer to tangibility (D.N. 108,

PageID.1404 (citing *Black's Law Dictionary* (11th ed. 2019))), but items and things most naturally call to mind physical things, particularly in the present context. According to its ordinary usage and in light of its context, "article" naturally refers to material things similar to merchandise. The government disregards the ordinary meaning in favor of the extraordinary.

In specifying any "merchandise, article, or object," the statute refers to merchandise and similar goods. Under the canon of *noscitur a sociis*, the fact that "article" and "object" follow "merchandise" indicates that they should be understood to bear similar meaning. *See Yates*, 574 U.S. at 543. In fact, *Yates* emphasizes that the function of the canon is to avoid the very type of overbreadth the government seeks. The canon applies to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id.* (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561 at 575 (1995)). Consistent with this reading, other courts' jury instructions have collapsed "merchandise, article, or object" into simply "merchandise." *See, e.g.* Model Crim. Jury Instr. 9th Cir. 21.2 (2024) (instruction for § 554 referring only to "merchandise" and defined as "objects, items, goods, and wares of every description"); *United States v. Singer*, 963 F.3d 1144, 1162 (11th Cir. 2020).

The government also argues that reading "object" to mean a tangible thing would generate "meaningless redundanc[ies]" in other statutes that preface it with a word like "tangible" or "material." (D.N. 108, PageID.1401.) Congress has not used such a preface every time it refers to exclusively physical things. *See, e.g.* 18 U.S.C. § 1791 (using "object" to refer to prison contraband such as drugs, currency, phones, and weapons); 25 U.S.C. § 3001 (using "objects" in reference to "cultural items" associated with Native American funeral rites); 10 U.S.C. § 2579 (using "object" in reference to battlefield souvenirs). The statute in *Yates*, 18 U.S.C. § 1519, refers to any "record, document, or tangible object." There, "object" followed "record," a word that *does* indicate

4

intangibility, particularly in the context of financial recordkeeping. Thus, the use of "tangible" helped clarify that Congress was referring to physical evidence in contradistinction from "document" and "record." Contrary to the government's suggestion, "material object," as used in a copyright context does not indicate a tangible object; rather it is a term of art indicating a copyrighted work is embodied in a fixed medium and includes electronic files. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 170–71 (D. Mass 2008). Though Congress often chooses to specify that an object is tangible when it is otherwise in the company of intangible terms, when in the company of tangible items like "merchandise," adding "tangible" would be redundant.

Although "merchandise," "article," and "object" are close in meaning, the preference for avoiding surplusage does not override ordinary meaning. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004) ("Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute"); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012). "Legislative prohibitions are often stated in strings of closely related and overlapping terms, to plug loopholes." *United States v. Costello*, 666 F.3d 1040, 1046 (7th Cir. 2012) (Posner, J.). But "the fact that a clause is broadly worded to stop up loopholes doesn't justify a literal interpretation that carries far beyond any purpose that can reasonably be imputed to the drafter." *Id.* (quoted source omitted). Here, "merchandise" suggests goods to be sold. By coupling "merchandise" with "article" and "object," the statute makes clear it applies to additional physical items, but not that it stretches so far as to regulate intangible data like emails.

The government further argues that because "articles" refers to intangible items in some other statutes, the same understanding must hold for § 554, regardless of context. The government, for example, cites a Court of International Trade ruling that the Trade Act did not require an "article" to be tangible on the grounds that "remedial statutes [such as 19 U.S.C. § 2272] should be

5

liberally construed." *Former Emps. of Computer Scis. Corp. v. U.S. Sec'y of Labor*, 414 F. Supp. 2d 1334, 1343 (CIT 2006). But § 554 is a criminal statute, so the rule of lenity requires the opposite presumption. *E.g.*, *United States v. Santos*, 553 U.S. 507, 514 (2008). Likewise, while the government's citation to *Thomas* concerned an unrelated obscenity statute which made direct reference to intangible items like "electrical transcription[s]," Congress nonetheless saw fit to immediately pass a clarifying amendment addressing the perceived ambiguity. *See United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996); 18 U.S.C. § 1465 (Feb. 8, 1996 amendment).

Finally, the government emphasizes that an email can be "sent." (D.N. 108, PageID.1404.) "Sent" is consistent with both physical and electronic transmission, but that does not mean Congress *must* have intended § 554 to include electronic transmission. "Sent" is best read as capacious, certainly, but as intended to capture any and all means of physical transmission, whether by boat, plane, parcel post, or carrier pigeon, without necessarily including electronic transmission.

    **b. "Defense article" as defined in the AECA and related regulations does not alter the meaning of "article" within § 554.**

Section 554 proscribes "[f]raudulently or knowingly export[ing] or send[ing] from the United States . . . any merchandise, article, or object *contrary to any law or regulation of the United States*." 18 U.S.C. § 554(a) (emphasis added). As the government notes, a violation of this statute depends on another statute or regulation making the specific action taken unlawful. (D.N. 108, PageID.1398 (citing *Franco-Casasola v. Holder*, 773 F.3d 33, 36 (5th Cir. 2014), and *Place*, 693 F.3d at 227).) This means that it must be unlawful to *export* or *send* the "merchandise, article, or object." The government cites this language for a different and incorrect proposition: that the *meaning* of "any merchandise, article, or object" must mirror its meaning in another statute or regulation. (*See* D.N. 108, PageID.1398.) Nothing in § 554 suggests the meaning of "merchandise, article, or object" incorporates other statutes'. The phrase "contrary to any law or regulation"

6

modifies "exports or sends," not "merchandise, article, or object." Nor does the argument make sense. Statutes prohibiting exporting or sending things may not even use the specific words "article" or "object," so they would have nothing to supply meaning to § 554's use of the same words.

The argument is especially weak when considering the AECA. The AECA grants the President (delegated to the State Department) authority to designate items as defense articles and promulgate regulations solely "for the purposes of this section." 22 U.S.C. § 2778(a)(1). Congress did not grant the State Department authority to interpret § 554, a general criminal statute. *See Crandon v. United States*, 494 U.S. 152, 177 (1990) (Scalia, J. concurring) (*Chevron* is not triggered where "[t]he law in question, a criminal statute, is not administered by any agency but by the courts"). Further, as explained in Defendants' opening motion, the AECA takes pains to separate "articles" from their "related technical data." (D.N. 86, PageID.628–29.) It is only in regulation (and again, regulation inapplicable to § 554) that the State Department has combined the two. (*Id.*)

The government argues that the Court should level these textual barriers in order to enact "a symmetrical and coherent regulatory scheme." (D.N. 108, PageID.1402). The government ironically cites *FDA v. Brown & Williamson Tobacco Corp.*, where the Supreme Court held that the FDA did *not* have authority to regulate tobacco under the FDCA because it was part of a separate statutory scheme. *See* 529 U.S. 120, 143 (2000). This argument fails to appreciate that words often have different meanings when used in different statutes, as they do here. *See, e.g.*, *Envt'l Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) ("[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section") (citing *Atl. Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427 (1932)).

### c. The statutory history of § 554 further indicates that article and object refer to material goods.

Defendants' motion described § 554's statutory history as further demonstrating that the statute is concerned with physical items.[1] "Statutory history is an important part of [the] context" to understand statutory language. *United States v. Hansen*, 143 S. Ct. 1932, 1943 (2023). While legislative history looks to unenacted sources such as committee reports, "statutory history . . . reflects the constitutional bicameralism and presentment process and thus is vastly more difficult to manipulate than legislative history." *Hueso v. Barnhart*, 948 F.3d 324, 335 (6th Cir. 2020). The language of § 554 indicates that "merchandise," "articles," and "objects" refer to tangible items, and the enacted language surrounding § 554 helpfully supports this meaning.

The government asks the Court to disregard § 554's title. But the title only reinforces that § 554 applies solely to physical objects. Again ironically, the government cites as support a chapter of *Reading Law* titled "The title and headings are permissible indicators of meaning." Scalia & Garner at 221; (*see* D.N. 108, PageID.1405). *Reading Law* states further, "the title is adopted by the legislature" and favorably points to an example of a title helping to ascertain that the term "vessels" meant only "steam vessels." Scalia & Garner at 221–22. The Supreme Court has repeatedly held that headings may help guide statutory interpretation: "While these headings are not commanding, they supply cues that Congress did not intend 'tangible object' in § 1519 to sweep within its reach physical objects of every kind, including things no one would describe as records, documents, or devices closely associated with them." *Yates*, 574 U.S. at 540. The government emphasizes the heading's use of seaports (D.N. 108, PageID.1404), but this only further indicates a traditional understanding of smuggling that does not extend to electronic transmission.

---

[1] Although Defendants' Motion made a general reference to "legislative history" (DN 86, PageID.625), the primary focus was the enacted statutory history of § 554.

The government conflates the ordinary understanding of "smuggle" with creating a "stealth requirement." (D.N. 108, PageID.1405). No, but a word like "smuggle" helps solidify the idea that § 554 is concerned with physical items. Indeed, courts have ruled that "smuggle" is traditionally interchangeable with "clandestinely introduce" and have even favorably cited the definitions to which the government objects. *United States v. Broadening-Info Enters., Inc.*, 578 F. App'x 10, 14 (2d Cir. 2014) (citing *Keck v. United States*, 172 U.S. 434 (1899); *American Heritage Dictionary of the English Language* 1644 (4th ed. 2000) (describing the contemporary ordinary meaning as "[t]o import or export without paying lawful customs charges or duties" and as "[t]o bring in or take out illicitly or by stealth")). Section 554 further supports this traditional understanding by referring to "concealing" goods multiple times. The words "smuggle" and "concealing" further confirms that § 554 is concerned with physical items brought across a border.

The government also gestures at a purposive argument that a loose reading of § 554 would further Congress's aim of national security. (*See* D.N. 108, PageID.1400–01.) The government raises the hypothetical of smuggling physical blueprints over a border, arguing that there should be no distinction for an email that accomplishes the same thing. *Id.* But it is a distinction Congress has made. "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987). Section 554 cannot mean something different than it what it provides just to serve an abstract national-security end.

Indeed, there is no evidence that Congress intended through § 554 to enact an all-purpose electronic-regulation super-statute, yet that is what the government argues for. The government's reading would permit a § 554 charge for any email, text message, or Facebook post that furthers, for instance, a scheme under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1, or an

9

international wire fraud, 18 U.S.C. § 1343. After all, such offenses would entail illegal transmission of data outside the United States. Further, coupled with the government's theory that § 554 adopts definitions from the AECA's regulations, it would even make illegal *oral* communications and communications with a foreigner *within* the United States. *See* 22 C.F.R. §§ 120.50(a)(2), 120.56(a)(2).

2. **If Section 554 is ambiguous the rule of lenity applies.**

Under the rule of lenity, ambiguous criminal statutes should be interpreted in favor of the defendants subjected to them. *Santos*, 553 U.S. at 514. Section 554 is a smuggling statute and the language, statutory history, and universal application of the statute all indicate that it criminalizes the illegal transmission of tangible items. To the extent the government seeks to create ambiguity by arguing for a creative and unprecedented application of § 554 to emails, that ambiguity should be resolved in favor of Defendants. "The rule of lenity comes into operation at the end of the process of construing what Congress has expressed" in circumstances where "the Court must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013). Having already reached the alleged export of technical data with its ITAR charges, the government seeks an expansive and unnecessary reading of a smuggling statute to doubly litigate the same conduct. Absent any textual, structural, or historical indication that Congress intended to expand the ordinary meaning of smuggling to encompass emails, the government at most raises an ambiguity, which must be resolved in Defendants' favor.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court dismiss Count 9 (Smuggling) of the Second Superseding Indictment, D.N. 73.

| | |
|---|---|
| Dated: February 9, 2024 | By:  */s/      John L. Brownlee*<br><br>John L. Brownlee (*pro hac vice*)<br>William F. Gould (*pro hac vice*)<br>Timothy J. Taylor (*pro hac vice*)<br>Caitlin A. Eberhardt (*pro hac vice*)<br>HOLLAND & KNIGHT LLP<br>1650 Tysons Blvd., Suite 1600<br>Tysons, VA 22201<br>T: 703.720.8053<br>F: 703.720.8610<br>John.Brownlee@hklaw.com<br>William.Gould@hklaw.com<br>Timothy.Taylor@hklaw.com<br>Caitlin.Eberhardt@hklaw.com<br><br>ATTORNEYS FOR DEFENDANT<br>QUADRANT MAGNETICS, LLC<br><br>*/s/      Kent Wicker     (with permission)*<br>Kent Wicker<br>WICKER / BRAMMELL PLLC<br>323 W. Main Street, 11th Floor<br>Louisville, Kentucky 40202<br>(502) 541-5533<br>Kent@wickerbramel.com<br>*Counsel for Phil Pascoe*<br><br>*/s/      Patrick J. Renn   (with permission)*<br>Patrick J. Renn<br>Smith & Helman<br>600 W. Main Street, Suite 100<br>Louisville, KY 40202<br>502-540-5700<br>Fax: 502-568-3600<br>prenn@600westmain.com<br>*Counsel for Scott Tubbs*<br><br>*/s/      Scott C. Cox    (with permission)*<br>Scott C. Cox<br>Cox & Mazzoli, PLLC<br>600 W. Main Street, Suite 300<br>Louisville, KY 40202<br>502-589-6190<br>502-584-1744<br>CoxECF@aol.com<br>*Counsel for Monica Pascoe* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 9, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

*/s/ John Brownlee*