UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America**<br><br>v.<br><br>**Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE CONCERNING ALLEGED ITAR VIOLATIONS

The Court should grant Defendants' motion to suppress evidence concerning alleged ITAR violations because Defendants had a reasonable expectation of privacy in the places searched pursuant to all five search warrants, including certain individuals' home offices and Quadrant subsidiaries' offices where Quadrant Magnetics' documents were likely to be found, and this privacy right was violated because the warrants were unsupported by probable cause.

Concerning probable cause, the government does not challenge the legal framework on which Defendants' motion relies: that the government is legally required to confirm, before an item is placed on the USML, that the item lacks a commercial equivalent. (*See* D.N. 105, PageID.1356–60.) Despite this, the government asserts that the CJDs—unsupported, conclusory statements—are sufficient at the search warrant stage and that Defendants' argument that the commercial-equivalent exception be addressed advocates for "prima facie proof." The government misinterprets Defendants' argument. Although the U.S. State Department was required to conduct a commercial-equivalent analysis in preparing the CJDs (and the CJDs are meaningless without such analysis), Defendants do not assert that the search warrant affiants themselves must perform the commercial-equivalent analysis. But there is no evidence from the search-warrant affidavits that *anyone* conducted the required analysis. That is especially problematic when the government was on notice that the analysis was necessary given the ubiquity of a simple part like a magnet.

The affiants should have—at a minimum—confirmed that no commercial equivalent existed; stated they considered whether a commercial equivalent existed; acknowledged CJDs cannot determine whether an item is on the USML absent this analysis; or inquired whether a commercial-equivalent analysis occurred. The government does not dispute the affiants failed to do any of these required tasks. Thus, the affiants' certifications that Quadrant's magnets and technical data fell on the USML were insufficient to support probable cause.[1]

## ARGUMENT & AUTHORITIES

1. **Defendants have a reasonable expectation of privacy in the places searched pursuant to all five search warrants.**

The government argues that because Defendants lack a reasonable expectation of privacy in the places searched pursuant to the 2022 search warrants, the Court can deny Defendants' motion "outright." (D.N. 105, PageID.1355.) This argument is flawed. Defendants do have a reasonable expectation of privacy in the places searched pursuant to the 2022 and 2018 warrants. And as is later shown, the 2018 warrant lacks probable cause and thus invalidates the 2022 search warrants, which heavily rely on evidence obtained from the 2018 warrant.

A defendant may challenge searches violating the Fourth Amendment if it had a "'legitimate expectation of privacy' in the place[s] invaded." *United States v. Arreola-Alvarado*, 603 F. Supp. 3d 534, 539 (E.D. Mich. 2022) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *see also Gen. Motors Leasing Corp. v. United States*, 429 U.S. 338, 359–60 (1977) (corporations have Fourth Amendment right to challenge searches). It is enough that the defendant is a "victim" of a search, one against whom the search was directed. *See Kroll v. United States*, 433 F.3d 1282, 1288

---

[1] The government suggests that the ITAR evidence "likely could have been obtained as part of the investigation into the other" unchallenged alleged violations in the search warrants. (D.N. 105, PageID.1347.) But "establish[ing] probable cause for one crime" does not establish probable cause for "a search for evidence of an entirely different crime." *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008).

(5th Cir. 1970) (citation omitted). Notably, whether a defendant has a reasonable expectation of privacy is evaluated on a "case-by-case basis." *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (citation omitted). Thus, a defendant is not prevented from challenging a search simply because it lacks a proprietary interest in the places or items searched. *See Arreola-Alvarado*, 603 F. Supp. 3d at 540–41 (citations omitted). Concerning places searched, it "is sufficient" if there is a "relationship" or even an "understanding" or "informal arrangement" between the defendant and the person who has a proprietary interest in the place searched. *United States v. Ferguson*, No. 10-20535, 2012 WL 628509, *7–8 (E.D. Mich. Feb. 27, 2012) (citing *United States v. Jeffers*, 342 U.S. 48, 52 (1951); *United States v. Walker*, 426 F.3d 838, 845–46 (6th Cir. 2005)). Concerning a defendant's expectation of privacy in documents searched, courts evaluate the "nature of the particular documents sought to be protected." *United States v. Miller*, 425 U.S. 435, 442 (1976).

### a. The 2022 Search Warrants

The 2022 search warrants authorized searches for: (1) the personal residence of Cody Sun, the CEO and owner of Quadrant and its affiliated companies; (2) Quadrant International, Inc., Quadrant's parent company; (3) Quadrant Solutions, Inc., a subsidiary of Quadrant International; and (4) the personal residence of Michelle Qian, an employee of Quadrant and COO of Quadrant International. Quadrant has a reasonable expectation of privacy in Mr. Sun's and Ms. Qian's residences because they qualify as Quadrant's corporate offices or there was at least an understanding or arrangement between Quadrant and these individuals that Quadrant's documents would be located at their residences. The government sought to search for Quadrant's records at Mr. Sun's residence because "[d]uring the COVID-19 pandemic, Quadrant employees worked from home" and "Sun also ma[de] multiple references to a 'home office' in emails." (D.N. 87-2, PageID.704, 751, 762–67.) Similarly, the government sought Quadrant's records from Ms. Quian's residence.

(*Id.*, PageID.708, 716–17, 762–67.) Considering that the 2022 warrants targeted Quadrant's corporate records, and that the residences were undisputedly used regularly to conduct Quadrant business, these residences constitute corporate offices. *Cf. O'Connor v. Ortega*, 480 U.S. 709, 739 (1987) (Blackmun, J., dissenting) (noting, in discussing a defendant's reasonable expectation of privacy, that "the tidy distinctions" between a work place and private activities "do not exist in reality"). Quadrant has a reasonable expectation of privacy in such offices. *See Gen. Motors Leasing Corp.*, 429 U.S. at 359–60 (corporation may challenge search of its corporate offices); *Reid Mach. Inc. v. Lanzer*, 421 F. App'x 497, 503 (6th Cir. 2010) (same).

At a minimum, there was an understanding or arrangement between Quadrant and the individuals that Quadrant's corporate records would be stored at their residences. Again, the search warrants and affidavits are premised on Quadrant's corporate records being located at these residences.[2] (D.N. 87-2, PageID.762–67.) The affidavits acknowledge that the individuals conducted Quadrant business from home and made much of Mr. Sun's residence being a home office. (*Id.*, PageID.751, 762–67.) These facts demonstrate at least an understanding or arrangement that Quadrant's corporate records would be stored in these locations. *See Ferguson*, 2012 WL 628509, at *8 (informal arrangement existed to store corporate property at private residence, entitling corporation to reasonable expectation of privacy) (citations omitted).

Further, because the searches targeted Quadrant's corporate records, the Court must consider those records' nature to determine whether the individual Defendants had a reasonable expectation of privacy in them. *See Miller*, 425 U.S. at 442. The individual Defendants, as officers and employees of Quadrant, had a reasonable expectation of privacy in the places where

---

[2] Indeed, the 2022 search warrants were authorized *after* Quadrant and the individual Defendants had already been indicted in this case for ITAR violations. (*Compare* D.N. 1, *with* D.N. 87-2; D.N. 87-3; D.N. 87-4; D.E. 87-4.) As the affidavits state, the government sought to obtain evidence of these violations, further demonstrating that Defendants are "victims" of the searches. *See Kroll*, 433 F.3d at 1288; *see also* (D.N. 87-2, PageID.762–67).

Quadrant's records were likely to be found, *particularly* because they assisted in preparing them. *See Ferguson*, 2012 WL 628509, *6–7 (individual defendants' assertions that defendant corporation's business records were "maintained in a secure location and that they were involved in the preparation of at least some business records" were "sufficient to establish [their] reasonable expectation of privacy" in corporate office searched); *United States v. Mohney*, 949 F.2d 1397, 1403 (6th Cir. 1991) (corporation's officer could challenge search of corporate office, especially when officer prepared materials searched and was a target of search); (*see also* D.N. 87-2, PageID.762–67 (search was for corporate records created by individual Defendants)). Thus, the individual Defendants had a reasonable expectation of privacy in these corporate documents.

Lastly, for all the reasons just stated, Defendants had a reasonable expectation of privacy in the other corporate offices searched. The offices of Quadrant's subsidiaries were searched to target Quadrant's corporate records, created by the individual Defendants, to locate evidence to support the government's then-ongoing case against Defendants. The affidavits also detail the close relationship and common ownership between the Quadrant entities, qualifying these offices as Quadrant offices or at least establishing an understanding or informal arrangement that Quadrant's records would be stored there as well. (*See* D.N. 87-2, PageID.736, 759, 762–67.)

b.  **The 2018 Search Warrant**

Even if Defendants cannot show they had a reasonable expectation of privacy in the places searched pursuant to the 2022 warrants, that is insufficient for the Court to deny Defendants' motion without further consideration. Undisputedly, Defendants had a reasonable expectation of privacy in the place searched pursuant to the 2018 warrant, on which the 2022 warrants rely.

The 2018 search warrant specifies the place to be searched as "Quadrant Magnetics, 2606 River Green Circle, Louisville, Kentucky 40206," (D.N. 87-1, PageID.650), which was Quadrant's

then-corporate office address. As already explained, Quadrant has a reasonable expectation of privacy in its offices and the items searched there. *See Reid Mach. Inc.*, 421 F. App'x at 503; *see also, e.g.*, *Ferguson*, 2012 WL 628509, *5 (corporation's expectation of privacy in its office not diminished when nothing suggested office was generally open to the public). As also explained, the individual Defendants may challenge the search of Quadrant's corporate offices because they were agents, employees, and officers of Quadrant; targets of the search; and prepared the corporate records targeted. *See Mohney*, 949 F.2d at 1403; *Bender's Inc. v. Walker*, 1 F. App'x 317, 323 (6th Cir. 2001) ("It is well established [] that an employee has a reasonable expectation of privacy in his office."); *Brooks v. Roth*, No. 06-14939-BC, 2007 WL 3203761, *6 (E.D. Mich. Oct. 31, 2007) (individual could challenge search of corporate employer's property even though her own records were not searched) (citing *O'Connor*, 480 U.S. at 716).

Because Defendants may challenge the 2018 warrant, the Court must determine whether the 2018 warrant is supported by probable cause and, if it is not, suppress evidence from it. The Court must also determine whether the 2018 search warrant's invalidity affects the 2022 warrants, for they rely on alleged ITAR evidence obtained from the 2018 search warrant. *See United States v. Tucker*, 742 F. App'x 994, 1003 (6th Cir. 2018); (*see also* D.N. 87-2, PageID.734–36).

2. **All five search warrants are unsupported by probable cause because the affiants failed to discuss or inquire into whether the noted magnets were on the USML.**

If an item is "specially designed" for a defense article, the item is not on the USML if a commercial equivalent to that item exists. (*See* D.N. 87, PageID.640.) Accordingly, certifying to the court that the magnet, and its technical data, were on the USML without first inquiring whether a commercially equivalent magnet existed cannot establish probable cause. *See United States v. Helton*, 314 F.3d 812, 821 (6th Cir. 2003) (allegation "leav[ing] open" the "slight possibility" that criminal activity occurred at a location "hardly creates a probability" that the location contained

6

evidence of that criminal activity). Both search warrant affiants failed to discuss or inquire into whether a commercially equivalent magnet existed, relying—at most—on the CJDs to conclude Quadrant's magnets were on the USML. This cannot establish probable cause.[3]

The CJDs in this case were each a couple of pieces of paper with the only substantive portion stating: "Pursuant to the ITAR, a license or other approval was required[.]" (*See* D.N. 87-2, PageID.735–36.) This conclusion was unaccompanied by *any* analysis, including of the commercial-equivalent exception. As wholly conclusory statements, the CJDs cannot establish more than a "slight possibility" that the magnets were on the USML. *See Helton*, 314 F.3d at 821; *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) ("[A] wholly conclusory statement unsubstantiated by underlying facts is not sufficient to support a determination of probable cause."). The problem with relying on conclusory statements to support probable cause—even if those statements involve government entities—is illustrated in *United States v. Lewis*. There, the court found there was no factual basis to conclude the defendant committed a crime when the affidavit concluded that "[a]n HSI investigation identified [defendant] as a person of interest," but the affidavit did not explain the meaning of HSI, why HSI considered defendant a person of interest, nor the significance of HSI's person-of-interest designation. 81 F.4th 640, 648 (6th Cir. 2023). Notably, what mattered to the *Lewis* court in determining whether the affidavit established probable cause was that there was a *factual basis* to the affiant's assertions that the defendant was, among other things, a government agency's (HSI's) person of interest. *See id.* The court did not find the

---

[3] The affiant to the 2018 search warrant does not explicitly rely on a CJD in concluding the magnets were specially designed samarium–cobalt magnets and thus, according to the affiant, on the USML. (D.N. 87-1, PageID.660–61); *see also infra* n.4. Accordingly, the 2018 warrant is insufficient to establish probable cause to believe ITAR violations would be found in the place searched. *See United States v. Waide*, 60 F.4th 327, 336 (6th Cir. 2023) ("The absence of particularized facts . . . is fatal to a finding of probable cause because 'the evidence presented must be sufficient to allow the [magistrate] to independently determine probable cause; 'his action cannot be a mere ratification *of the bare conclusions of others*.'") (emphasis added and citation omitted); *cf. United States v. Schenck*, 3 F.4th 943, 947 (7th Cir. 2021) (noting affiant's "conclusory statement will not suffice" and finding that affiant's conclusion did not contribute to probable cause when it did not "explicitly and separately cite [the] source for" the particular information).

assertions established probable cause simply because they involved or came from the government's information; regardless of the source, all assertions had to be supported adequately.

Similarly, here, the affiants cited the CJDs' conclusion that the magnets were on the USML but did not explain (or inquire into) why the CJDs concluded the magnets were on the list or that the significance of the CJDs' determination was non-existent considering there was no accompanying indication a commercial-equivalent analysis was conducted. There was no indication *anyone* did any of the work *required* by the applicable regulations, and thus no factual basis to the affiants' (or the CJDs creators') assertions that Defendants' magnets were on the USML. The government's conclusion that Defendants' magnets were on the USML should not have been taken at face value, but should have been accompanied by adequate support (the commercial-equivalent analysis).

This is essentially what the government advocates; that a government agent can rely on another government agent's barebones conclusion simply because the government made it. (*See* (D.N. 105, PageID1359–60.) But an insufficient, barebones conclusion—even if made by the government—is still just that, *Settegast*, 755 F.2d at 1121, and is unreliable. The government's own cited cases concerning the reliability of government conclusions underscore this point. To be reliable, there must be something *supporting* the government assertions or conclusions, whether it be detailed observations, adequate facts, or, here, the analysis of applicable regulations. *Cf. United States v. Ventresca*, 380 U.S. 102, 111 (1965) (*detailed* government *observations* reliable); *United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir. 2009) (information obtained indirectly from government report "deemed less reliable, particularly when the affidavit does not set forth the factual basis for an officer's statement"). The government cannot simply conclude a magnet is on the USML based on its own observations, so it can reliably do so only by doing the requisite analysis or confirming that such analysis was done. Neither of these things occurred. Accordingly, the

government's barebones conclusion that the magnets were on the USML is not reliable or capable of establishing probable cause simply because it comes from the government.[4]

In sum, if there is a commercial equivalent to Quadrant's magnets, Quadrant's magnets and related drawings are not on the USML. Defendants do not require the search warrant affiants to perform the commercial-equivalent analysis or to make a prima facie showing of a crime. However, there is no probable cause that criminal activity exists if there is nothing more than a barebones conclusion that Quadrant's magnets are on the USML. This is even more glaringly obvious considering the ubiquity of small magnets, which have hundreds of non-defense uses. Considering this, the government agency responsible for making the CJDs as well as the affiants, federal agents highly trained in the applicable statutes and regulations, were particularly on notice of the need to perform or confirm the commercial-equivalent analysis. As the government admits, the affiants failed to discuss or even mention the commercial-equivalent analysis and failed to even *inquire* whether the government conducted the commercial-equivalent analysis in creating the CJDs. Without such confirmation or discussion, the warrants lacked probable cause that evidence of ITAR violations would be found in the places searched.

3. **The good-faith exception does not apply.**

Evidence obtained from a warrant lacking probable cause must be suppressed unless the officer's reliance on the invalid warrant was in good faith or objectively reasonable. *United States v. Leon*, 468 U.S. 897, 919 (1984). This "good faith" exception does not apply, however, when "a

---

[4] The government also contends that the affidavits are supported by probable cause without the CJDs because they list other evidence of ITAR violations. The government combines the "evidence" set forth in the 2018 and 2022 search warrants. (*See* D.N. 105, PageID.1359.) Each search warrant must be considered separately to determine whether it is supported by probable cause. Regardless, for the most part, all this "evidence" shows is GE Aviation's subjective belief that the magnets were ITAR-controlled. GE Aviation's subjective opinions carry no weight in establishing probable cause. *See Lewis*, 81 F.4th at 648 (subjective belief "does not provide a factual basis upon which a *magistrate* could independently reach that conclusion"). The other "evidence" cited only matters if there was a fair probability the magnets were on the USML and, as explained, there is no analysis or facts to show there was.

warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. "Affidavits that are 'so lacking in indicia of probable cause'" are barebones affidavits. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). A barebones affidavit is one that "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Stated differently, a barebones affidavit is "conclusory" and only states "the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quotations omitted).

Here, the good faith exception does not apply because the affidavits make barebones conclusions that Quadrant's magnets were on the USML (and thus, that there was probable cause to search for ITAR evidence) without providing any factual basis to support this conclusion. The affiants' reliance on the CJDs does not provide the requisite factual support because, as already explained, the CJDs are also barebones conclusory statements, unsupported by any factual basis, including the required commercial-equivalent analysis. *See Lewis*, 81 F.4th at 649 (good faith exception did not apply when affiant omitted essential facts and communicated "only his bottom line conclusion"). This also makes the CJDs unreliable—regardless of whether they came from the government. The good-faith exception does not apply.

## CONCLUSION

For the reasons stated in Defendants' motion to suppress and in this reply, Defendants respectfully request that the Court enter an order suppressing any ITAR-related evidence obtained from the 2018 and 2022 search warrants based on lack of probable cause.

Dated: February 9, 2024　　　　　　By:　　/s/ John Brownlee

                                                  John L. Brownlee (*pro hac vice*)
                                                  William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

*/s/  Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/  Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/  Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 9, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

                                                     /s/ *John Brownlee*