UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

United States of America

v.                                                              No. 3:22-CR-88-DJH

Quadrant Magnetics LLC et al.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
UNCONSTITUTIONALLY VAGUE AECA AND ITAR ALLEGATIONS**

The government's response ignores the core of Defendants' vagueness argument—that the government cannot reliably determine whether the magnets in the Indictment are specially designed, yielding arbitrary and discriminatory enforcement of the AECA as applied to Defendants. The government instead presents a lengthy discussion of Defendants' fair notice, equating this case to every other vagueness challenge to the AECA. But this case is different because the AECA's "specially designed" provision, as applied to magnets, cannot be reliably applied. Vagueness is not cured, as the government argues expressly and by its proffer of evidence, by allegations that a defendant viewed its actions as potentially illegal. It must actually *be* illegal. Vagueness also is not cured by the fact that Defendants could ask for a government determination, when that determination itself cannot be meaningfully made.

The government's response to the actual issue before the Court is telling. The government says that "a State Department witness would testify that DDTC has interpreted 22 C.F.R. § 120.41(b)(3) . . . to require consideration of the evidence submitted to DDTC through the commodity jurisdiction procedure and a reasonable search under the circumstances." (D.N. 111, PageID.1456.) The government cannot revise the plain text of a regulation via trial testimony to fit a litigation position. *See Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). Additionally, the Court has

enough information to determine the validity of Defendants' vagueness defense, so the motion to dismiss is not moot. The Court should grant Defendants' motion to dismiss this indictment's unconstitutionally vague AECA and ITAR allegations. (*See* D.N. 88.)

## ARGUMENT AND AUTHORITIES

### 1.   The vagueness doctrine requires more than fair notice to those subject to a rule.

Although the government's response dwells on Defendants' fair notice, notice is not sufficient to defeat a vagueness challenge. To avoid unconstitutional vagueness, a law must (1) define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, *and* (2) do so in a manner that does not encourage arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Here, *the government* cannot reliably determine whether the magnets described in the Indictment are specially designed.

Defendants are well aware of the history of vagueness challenges against the AECA and ITAR. (*See* D.N. 88, PageID.994.) Defendants understand that courts have looked to scienter, the commodity jurisdiction process, and defendant sophistication when deciding previous vagueness challenges (*id.*), as the government recapped. (*See* D.N. 111, PageID.1452, 1454.) But those points alone do not address whether the "specially designed" provision is being applied arbitrarily to the Defendants in this case. *See FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

The government's arguments are unpersuasive that this provision does not encourage arbitrary and discriminatory enforcement. The government equates Release (3) to a "difficult to prove incriminating fact." (D.N. 111, PageID.1453 (citing *Fox*, 567 at 253).) That is not Defendants' argument. *Fox*'s statement cited *U.S. v. Williams*, which states, "What renders a statute vague is not the possibility that it will *sometimes* be difficult to determine what the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." 553 U.S. 285, 306 (2008) (emphasis added). Determining whether the magnets at issue in this case are ITAR-

controlled will *always* be indeterminable because nobody can check every neodymium or samarium–cobalt magnet ever used in a commercial product to determine if a magnet is specially designed under 22 C.F.R. § 120.41. (*See* D.N. 88, PageID.998–1001.)

The government also argues that ITAR's broader framework, i.e., the commodity jurisdiction process and the scienter requirement, prevents arbitrary and discriminatory enforcement. (*See* D.N. 111, PageID.1453.) Whatever the merits of those provisions in other contexts, they do not prevent arbitrary enforcement in this one, where illegality turns on a standard impossible to reliably and accurately apply. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."); *Kolender*, 461 U.S. at 358 ("[W]e have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'") (quoted source omitted).

Finally, the government states that Defendants disregard the fact that the magnets in the indictment are used in defense articles. (D.N. 111, PageID.1455.) This too may go to notice, but it is not sufficient to ameliorate the vagueness problem. An item used in a defense article is not ITAR-controlled if it is not "specially designed," including by having a commercial equivalent. (*See* D.N. 88, PageID.991–92.) Just because one element of the offense is clear does not mean that others are.

**2. The government cannot revise the plain text of a regulation via trial testimony.**

In twenty-five pages of responsive briefing, the government provides a one-paragraph response to Defendants' actual argument that the plain text of Release (3) is unconstitutionally vague because it requires an unknowable answer to an impossible question. (*See* D.N. 111 at

PageID.1455–56.) In that paragraph, the government states that a State Department witness will testify that Release (3) merely requires consideration of evidence submitted under the commodity jurisdiction procedure and a reasonable inquiry under the circumstances. (*Id.* at 1456.) Respectfully, this is not a legal argument. The government cites no statute, no case, not even subregulatory State Department guidance such as policies, memoranda, or manuals in favor of this position.

The Supreme Court views agency attempts to rewrite regulations in litigation with deep suspicion, and so should this Court. In *Kisor*, the Supreme Court described the test for determining whether to afford deference to an agency's interpretation of its rule. 139 S.C. at 2415. First, a court must only afford deference if the regulation at issue is genuinely ambiguous. *Id*. Before concluding that a rule is genuinely ambiguous, courts must exhaust the tools of construction, like the text, structure, history, and purpose of the rule. *Id*. If the court concludes that the rule is ambiguous, the agency's reading must still be reasonable. *Id*. Even if the agency's reading is reasonable, courts must ensure that the agency's interpretation is actually made by the agency. *Id*. at 2416. The interpretation "must be the agency's 'authoritative' or 'official position' rather than any more ad hoc statement not reflecting the agencies views." *Id*. (citations omitted). That is, it must emanate from the agency's head, using official vehicles that make authoritative policy. *Id*.; *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012). Courts must next ensure that the agency's interpretation implicates its substantive expertise. *Kisor*, 139 S.Ct. at 2417. Finally, the agency's reading must reflect fair and considered judgment. *Id*.

The government's reference to an unidentified witness's private interpretation of the regulation satisfies none of these requirements. The reference is a "merely convenient litigation position" or a "post hoc rationalization advanced to defend past agency action against attack." *Id.* (citations omitted). "It is certainly not open to an agency to promulgate mush and then give it concrete form

only through subsequent less formal 'interpretations.'" *Paralyzed Vets. of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 584 (D.C. Cir. 1997), *overruled on other grounds*, *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015).

Regardless, 22 C.F.R. § 120.41(b)(3) is not cabined to a reasonable search under the circumstances. The plain text contains no such limitations, and the government is not free to revise the text to suit its litigation positions. Doing so would put it in the same spot that was so roundly rejected in the ITAR case *United States v. Pulungan:* "A regulation is published for all to see. People can adjust their conduct to avoid liability. A designation by an unnamed official, using unspecified criteria, that is put in a desk drawer, taken out only for use at a criminal trial, and immune from any evaluation by the judiciary, is the sort of tactic usually associated with totalitarian regimes. Government must operate through public laws and regulations." 569 F.3d 326, 328 (7th Cir. 2009) (Easterbrook, C.J.). Appending the regulation to salvage its invalidity as applied, via an unnamed witness, to aid a litigation position is the same sort of impermissible resort to "secret law." *Id.* (citing *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)). By all means, the State Department could go through the notice-and-comment regulatory process to revise § 120.41 to provide the sorts of caveats offered by the government's witness, but they do not exist today, nor during the alleged conspiracy of 2012–2018.

### 3. The plain text of Release (3) is unconstitutionally vague.

As already laid out in Defendants' motion to dismiss, the plain text of Release (3) is unconstitutionally vague because it requires concrete proof that no commercially equivalent magnets exist for the magnets listed in the Indictment. *See* D.N. 88. That is, Release (3) requires proof of a negative. Open-ended whitelists like Release (3) are vanishingly rare (the government cites no analog), but at least one court has recognized their due process implications. In *State National*

*Insurance Co. v. County of Camden*, the court explained that not all negatives are difficult to prove. No. 08-5128(NLH)(AMD), 2012 U.S. Dist. LEXIS 179892 (D.N.J. Dec. 19, 2012). For example, both parties in a car accident at an intersection have an equal chance of proving a traffic light was green, or the opposing negative, that it was red. *Id*. at *10 n.2. Whether the light is red or green is existential, and there is no unfairness in asking a party to prove the light's status. *Id*. A negative becomes problematic when it is universal. *Id*. The Court explained that it would not be fair to compel a defendant to prove that he has never robbed a bank in his life. *Id*. That universal negative is unfair because it "would require a searching inquiry and endless proofs." *Id*. But that is what is asked by Release (3). It thus violates due process and is unfairly vague.

Contrary to the government's warning, the Court would not jeopardize the DDTC's "specially designed" framework by finding Release (3) unconstitutionally vague as applied here. It applies only to magnets of the type named in the Indictment. (D.N. 88, PageID.990.) Even taking Defendants' vagueness challenge to its most extreme, only "parts" would be at issue, and even there, only parts of such basic and fungible character as the magnets at issue (*id*., PageID.996.), which also by their nature have the least national-security sensitivity. Additionally, the current "specially designed" framework is one of the State Department's own making and of relatively recent vintage. *See* 78 Fed. Reg. 22740 (Apr. 16, 2013). The Department can amend the regulation at any time, including without notice and comment, to repair its constitutional defects. *See* 5 U.S.C. § 553(a)(1) (military or foreign affairs exception to notice and comment), (b)(B) (good-cause exception).

**4. Defendants' motion is properly before the Court.**

Defendant's motion is properly before the Court because the Court has the information it needs to weigh Defendants' vagueness challenge. The Court in *Edwards* explained that "a defense raised in a motion to dismiss an indictment is capable of determination if trial of the facts

6

surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." 291 F. Supp. 3d at 831 (quoting *United States v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976)). Defendants' motion only requires knowledge of the AECA, ITAR, and the magnets described in the Indictment.

The government argues that as-applied vagueness challenges must wait until after trial because it must be clear what the Defendants did. (D.N. 111, PageID.1459.) However, the government once again leans too heavily on vagueness's notice prong. As described *supra*, the Defendants' actual notice and the government's references to facts and witnesses they plan to present at trial are insufficient to rebut Defendants' argument. Defendants' motion is distinct from other as-applied vagueness challenges before trial. For example, the defendant in *United States v. Raniere* argued that a rule was unconstitutionally vague due to lack of actual notice. 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019). The *Raniere* court needed additional facts about the defendant's notice to determine whether their defense was valid. *Id.* Defendants do not argue that Release (3) is unconstitutionally vague due to actual notice, so fact-finding on notice would not conclusively resolve Defendants' motion. With that said, should the Court determine that Defendants' motion is premature, Defendants reserve the right to raise a vagueness challenge at trial.

## CONCLUSION

For the reasons stated in Defendants' motion to dismiss and this reply, Defendants respectfully request that the Court dismiss ¶¶ 16(a)–(b), 17(b)–(c), and 18(c)–(v) of Count 1 (Conspiracy), Counts 5 through 8 (Exporting Technical Data Without a License), and Count 9 (Smuggling) of the Second Superseding Indictment, D.N. 73 (Indictment).

Dated: February 9, 2024

By: */s/ John Brownlee*

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*