UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**United States of America**

   v.

**Quadrant Magnetics LLC et al.**

**No. 3:22-CR-88-DJH**

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO STRIKE MAGNETIZATION ALLEGATIONS

The government concedes that the DFARS's Specialty Metals Clause says nothing about how or where a particular magnet is magnetized. The Clause only regulates where a magnet is "melted" or "produced." Melting a magnet does not magnetize it. Nor does producing it. "Produced" is a defined term under the Clause that refers to three scientific processes that are not magnetization. *See* 48 C.F.R. § 225-7009(a) (definition of "produce").

The government's opposition also fails to support *why* the location of magnetization would matter. As part of an alleged scheme to defraud, the government must prove that a false representation was material, i.e., that the statement "ha[d] a natural tendency to influence . . . the decision of the decision-making body to which it is addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999).  Because the Specialty Metal Clause only regulates where magnets can be "melted or produced," it does not matter for purposes of legal compliance where magnets are painted, coated, tested—or magnetized.

The government attempts to salvage the indictment's countertextual version of the Specialty Metals Clause by arguing that magnetization evidence "adds context and dimension" to the charges. "Context and dimension", as proposed by the government, could be justification for admission of any evidence convenient to its proponent's position. Nor does it follow that an alleged

misrepresentation over the country of magnetization is probative of an alleged scheme to conceal where the magnets were melted or produced. They are different acts.

While the government insists that the indictment's magnetization allegations are no more prejudicial than the other acts alleged in the indictment, the suggestion that Defendants should be convicted for uncharged conduct that is not prohibited by the Specialty Metals Clause is inherently inflammatory and prejudicial in itself, and should be stricken from the indictment.

## ARGUMENT

A motion to strike surplusage should be granted when it is clear that the subject language is both irrelevant and prejudicial. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). The elements of wire fraud that the government must prove are "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). The government argues that the indictment's magnetization allegations are both material and relevant to the indictment's wire-fraud counts. The government is wrong.

**1. Defendants' alleged misrepresentations regarding the country where magnetization occurred are not material because the Specialty Metals Clause does not address where a magnet is magnetized.**

The government contends that the term "magnetization" should remain in the indictment because it is relevant to the "scheme to defraud" in Counts 2–4,[1] and that the alleged scheme to defraud is not limited to material misrepresentations to violate DFARS. (D.N. 104, PageID.1338–39.) In the government's incorrect view, apparently *any* misrepresentation can be used to support

---

[1] Additionally, the government asserts that the magnetization allegations in Count 1 of the indictment should remain because they are relevant and material to the alleged conspiracy to make misrepresentations on a GIDEP form. (D.N. 104, PageID.1339.) Defendants explained that this theory of conspiracy is legally insufficient in a separate motion. (*See* D.N. 71.) Further, if the alleged misrepresentations about the location of magnetization are immaterial in general, they are *a fortiori* immaterial when stated on a GIDEP form.

a scheme to defraud. But this is not what the case law teaches. Rather, it is well-established that the scheme-to-defraud element requires a *material* misrepresentation. *Neder*, 527 U.S. at 3; *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citing same). A misrepresentation is material "if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder*, 527 U.S. at 16.

The indictment alleges that misrepresentations regarding the country where Quadrant's magnets were smelted were material because the Specialty Metals Clause restricts the countries where smelting can take place. Consequently, the location of smelting is material and capable of influencing the decisions of DOD and General Dynamics because they are required to comply with the Clause. Fair enough. But smelting, or Clause's actual term, "melt[ing]," is not magnetization.

Nor is magnetization captured by what may at first appear a broader term, *produced. Produce* is a defined term under the Clause that refers to three scientific processes that are not magnetization. Under the Clause, "'Produce means'— (i) Atomization; (ii) Sputtering; or (iii) Final consolidation of non-melt derived metal powders." 48 C.F.R. § 225-7009(a). The Department of Defense explained when promulgating the antecedent to the current Clause that "produce" had no application to magnetization:

> The concern that magnetization can be considered production under this rule is unfounded. The definition of "produce" has not been left to open-ended interpretation. It has narrowly specified what processes other than melting are included, and does not include magnetization. DoD does not see any impact on the high performance magnet industry from the definition of "produce," because tempering and quenching processes are specifically restricted to the production of steel plate, and gas atomization and sputtering are restricted to the production of titanium.

74 Fed. Reg. 37626, 37631 (July 29, 2009).[2]

---

[2] DOD's regulatory preamble explaining that the definition of *produce* does not include magnetization also applies to the version of the Specialty Metals Clause in effect in 2018 at the time of the alleged criminal conduct. The 2009 version of the Specialty Metals Clause defined *produce* as "the application of forces or processes to a specialty metal to create the desired physical properties

The government does little to defend the idea that the Specialty Metals Clause controls where a magnet can be magnetized. The government gestures at the argument, saying that magnetization is "part of the process of creating magnets," without citation. (D.N. 104, PageID.1341.) Insofar as the government is arguing for an interpretation of the Clause that runs contrary to its text and the Department of Defense's own view, the Court should reject it, especially when that interpretation has been devised ex post for criminal liability and imposed without prior notice. Such action is "precisely the kind of 'unfair surprise' against which [the Supreme Court's] cases have long warned." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (quoted source omitted).

As such, the indictment fails to allege or explain why the country where magnetization occurs is a material consideration capable of influencing the decisions of DOD and General Dynamics. If the indictment's scheme to defraud includes misrepresentations that do not violate DFARS, the government must show that these misrepresentations are material for another reason, or are otherwise relevant to an essential element of the charge.

### 2. The magnetization allegations are not otherwise relevant to the elements of fraudulent intent or a scheme to defraud.

The indictment does not allege how Defendants' misrepresentations regarding the country of magnetization were material and capable of influencing the decisions of DOD or General Dynamics. The government attempts to remedy this critical oversight by arguing instead that the

---

through quenching or tempering of steel plate, gas atomization or sputtering of titanium, or final consolidation of non-melt derived titanium powder or titanium alloy powder." 48 C.F.R. § 252.225-7009 (2009). On March 28, 2013, the definition of *produce* was revised to read: "Produce means: (i) Atomization; (ii) Sputtering; or (iii) Final consolidation of non-melt derived metal powders." 48 C.F.R. § 252.225-7009 (2013). Atomization, sputtering, and final consolidation of non-melt derived metal powders were included in both the 2009 and 2013 definitions of *produce*. Therefore, DOD's comment in 2009 that magnetization is not encompassed by the definition of *produce* also applies to the revised 2013 definition in effect at the time of the charged conduct.

location of magnetization is at least relevant because it "undoubtedly adds [ ] context and dimen-sion to the general scheme to defraud DOD and Quadrant Magnetics' customers." (D.N. 104, PageID.1341.)

The government's circular argument fails to explain how the location where magnetization took place is relevant to a material misrepresentation, i.e., the country where smelting occurred, or any other element of wire fraud. To be considered relevant background, evidence must have "a causal, temporal or spatial connection with the charged offense." *United States v. Buentello*, 423 F. App'x 528, 533 (6th Cir. 2011). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* None of these circumstances apply to the allegations regarding the country where Quadrant's mag-nets were magnetized. The alleged magnetization misrepresentations did not occur as a prelude to the alleged wire fraud, are not directly probative of an essential fact, nor do they arise from the same events or stages in the magnet-creation process. Neither do the magnetization allegations substantively complete the story of the alleged wire fraud, or form an integral part of witnesses testimony. Consequently, the indictment's magnetization allegations are not relevant background information and should be stricken as surplusage.

In a final bid for relevancy, the government argues that the indictment's magnetization allegations are relevant to Defendants' state of mind. (D.N. 104, PageID.1341.) Implicit in the "scheme to defraud" element of wire fraud is the intention to deprive another by deception of money or property. To convict a defendant of wire fraud, the government must prove specific intent, which means not only that a defendant must knowingly make a material misrepresentation, but also that the misrepresentation must have the purpose of inducing the victim of the fraud to

part with property or undertake some action that he or she would not otherwise do absent the misrepresentation. *Daniel*, 329 F.3d at 487. Thus, the question in this case is whether Defendants knowingly misrepresented the country where magnetization occurred with intent to induce General Dynamics or DOD to purchase magnets that it would not have otherwise absent the misrepresentations. But the Specialty Metals Clause does not restrict where magnetization can occur, and the indictment provides no other basis to conclude that the country where magnetization took place would have affected DOD's or General Dynamics' decision to purchase Quadrant's magnets, or that Defendants misrepresentations regarding magnetization were relevant to demonstrating that Defendants acted with a knowing intent to defraud. *Cf. United States v. Hazelwood*, N.D. Ohio No. 1:10 CR 150, 2011 WL 2565294, at *25 (N.D. Ohio June 27, 2011), *aff'd in part sub nom. United States v. Darji*, 609 F. App'x 320 (6th Cir. 2015) (striking references to Defendant's history of drug use despite government's claim that it was relevant to Defendant's mental state for drug distribution charge, since only essential allegation regarding *mens rea* was that defendant acted knowingly).

The purpose of Federal Rule of Criminal Procedure 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts. *See* Fed. R. Crim. P. 7(d) cmt. d; Wright & Leipold, 1 *Fed. Prac. & Proc. Crim.* § 128 (5th ed.). "The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). The indictment's magnetization allegations are nonessential because they are immaterial to the alleged scheme to defraud, and irrelevant to the essential elements of wire fraud. As such, the magnetization allegations should be stricken from the wire fraud charges in the indictment.

### 3. The indictment's magnetization allegations are prejudicial.

The government further contends that the magnetization allegations should not be stricken from the indictment because they are relevant, and are no more inflammatory or prejudicial than the conduct charged in the indictment.[3] (D.N. 104, PageID.1342–43.) As detailed above, the indictment's magnetization allegations are not material to the alleged scheme to defraud or relevant to an essential element of the wire-fraud charges. Not only are the magnetization allegations irrelevant, they are also prejudicial because they suggest Defendants were subject to regulatory requirements not alleged in the indictment, namely that Quadrant was required to magnetize its magnets in the United States or a qualifying country and disclose the country of magnetization to its customers, and Defendants acted improperly by not doing so. However, the indictment does not assert that the Specialty Metals Clause imposes any such requirements, nor does it. As such, the magnetization allegations are nonessential and prejudicial in that they imply that Defendants engaged in offenses beyond those charged in the indictment. *See United States v. Palma*, No. 19-20626, 2020 WL 6743144, *9 (E.D. Mich. Nov. 17, 2020) (striking irrelevant and prejudicial allegation that Defendant improperly failed to calibrate automobile emissions where indictment did not allege a regulation that imposed such a requirement*); United States v. Cooper*, 384 F. Supp. 2d 958, 960–61 (W.D. Va. 2005) (striking allegations regarding defendant's past altercations with

---

[3] The government also argues that the term *magnetization* is a part of the manufacturing process, and that the indictment's magnetization allegations should not be stricken because they are a "mere redundancy" of the manufacturing allegations. (D.N. 104, PageID.1343.) To the contrary, the magnetization allegations are distinguishable because they imply that Defendants were legally obligated to carry out the magnetization phase of the manufacturing process in certain locations, and that they acted improperly by failing to do so and by concealing where magnetization took place. The magnetization allegations are uniquely problematic because they imply that distinct (and nonexistent) regulations control the magnetization process and are applicable to Defendants, in addition to the Specialty Metals Clause that regulates other stages of the manufacturing process.

environmental agencies as irrelevant and unduly prejudicial, and noting that allegations provided government an unwarranted extra opportunity to assert additional claims against defendant).

The government also discounts Defendants' request to strike the term "Country of Origin" as mere semantics. (D.N. 104, PageID.1343 n.1.) But in other statutory and regulatory contexts, *country of origin* is a defined term implicating meanings or obligations that may not be applicable to the Specialty Metals Clause. While the government may scoff at Defendants' preference for "wordier terminology that hews to the DFARS language" (*id.*) rather than "Country of Origin," Defendants are mindful that their personal liberties are at stake and it is of critical importance that the indictment accurately and precisely enumerate the charges against them.

Because the indictment's magnetization allegations and use of the term "country of origin" are irrelevant to the charged conduct and unduly prejudicial, all references concerning magnetization and country of origin should be stricken from the indictment.

## CONCLUSION

For the reasons set out in Defendants' motion and above, the Court should grant Defendants' Motion to Strike the indictment's allegations regarding magnetization and country of origin from the substantive wire-fraud counts and the wire-fraud conspiracy.

Dated: February 9, 2024                     Respectfully submitted,

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould *(pro hac vice)*
Timothy Taylor *(pro hac vice)*
Caitlin Eberhardt *(pro hac vice)*
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
Counsel for Phil Pascoe

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
Counsel for Scott Tubbs

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
Counsel for Monica Pascoe

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2024, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*