# EXHIBIT 1

Supplemental Witness Disclosure of Alex Douville,
Directorate of Defense Trade Controls, U.S. Department of State

In my original witness disclosure, I correctly stated that I undertook my own review, based in part on the final commodity jurisdiction (CJ) determination issued by DDTC. I know from personal knowledge and experience, as well as from my official position in the agency, that whenever DDTC issues such CJ determinations, and when the identified USML control contains the term "specially designed," DDTC analysts are careful to consider all applicable releases according to ITAR § 120.41 based on the best information available, which includes a reasonable amount of diligence to look for and consider whether any items that are in production and not described on the USML may cause the (b)(3) exception to apply. Anecdotally, this "exception" is often characterized as a "release" from the "catch and release" construct of the specially designed framework of ITAR § 120.41.

Thus, when I looked at the CJ determination, I independently went to the USML control entry cited. I looked at the control description. I expressly noted that it included the specially designed qualifier. I then knew the specially designed framework and referenced it. I relied then, as I normally do, on my knowledge that the part at issue would have at least been used in or with a defense article and that the DDTC analysts would have expressly assessed as much. I also knew from experience, personal knowledge, and by virtue of my position in the agency that one of the following routine assessments must have also occurred.

1. Either the CJ applicant submitted information as to why a (b)(3) exception might apply, and the analysts with more technical expertise assessed that the submitted information did not have:

    a. the same, and I know that to mean the exact same, function as a commodity meeting the (b)(3)(i) and (ii) criteria;

    b. the same, which I also know to mean the exact same, performance capabilities as a commodity meeting the (b)(3)(i) and (ii) criteria; *and*

    c. the same or equivalent form or fit as a commodity meeting the (b)(3)(i) and (ii) criteria; or

2. The DDTC analyst would have reached out to any known original equipment manufacturer (OEM) of the commodity at issue, here the parts, to ask about any known commercial uses or comparators that would meet the (b)(3) exception criteria; or

3. The DDTC analyst would have conducted reasonable diligence to search for possible commodities that would meet the (b)(3) exception.

It is not my role as a licensing officer to perform an exhaustive check of the entire global marketplace for comparable items. Nor did I have access to the technical specifications of the parts at issue. I feel comfortable relying on the DDTC analysts because I am familiar with their processes and diligence. I also know that independently, any person from the interagency review process would have had the opportunity to highlight something that should be considered.

My role, based on my many years of experience licensing and being intimately familiar with the ITAR, is to apply the facts to the regulation. I expect to testify how I did and would walk through the USML category and paragraph control descriptions. I would go on to explain how I did and would apply and explain regulatory frameworks and terms of art like "specially designed" and "production" and "equivalent," and how I use ordinary and common definitions to apply other straight-forward and well-known terms like the "same."

After doing so, and considering all available facts and evidence, I reach my own opinion upon which I feel comfortable to testify under oath. My opinion and expected testimony still stand. And I expect that the jury will be left to decide which opinions and facts they consider most credible and reliable. I believe mine would be a helpful voice to explain to them the ITAR purposes, construct, and how exporters and agency officials apply a uniform definition of specially designed in assessing whether an item is controlled on the USML, and what processes are available to any member of the public if they have any doubt or any new information that might assist in such an assessment.

Signature:

_____        01/29/24
Alex J. Douville                Date