# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**United States of America**

v.

**Quadrant Magnetics LLC et al.**

No. 3:22-CR-88-DJH

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY FROM SCOTT MCCALL, JAMES BLANKENSHIP, AND STEVEN BURTON

Defendants moved to exclude these experts' testimony because none of the charged crimes in the indictment alleged that Quadrant's magnets failed to function properly or were in any way deficient. The indictment also does not allege that any of the Defendants knew, or should have known, about any purported deficiencies. All parties agree that the quality or functionality of Quadrant's magnets is never mentioned in the indictment. Despite that, the government, in an effort to make this dubious evidence admissible, introduced for the first time in its opposition brief a new theory of wire fraud—a claim never alleged in the indictment. Further, the government fails to address how the experts' testimony would be unfairly prejudicial by urging the jury to convict Quadrant for the false and unsupported notion that its magnets compromised military efficacy or safety.[1] And lest there be any doubt, Quadrant vigorously contests the suggestion that its magnets have ever been below-standard. Quadrant counts among its customers Apple, Samsung, and other companies with some of the most vigorous quality-control standards in the world.

---

[1] The government appears to suggest that Defendants may not file a reply on this motion. (D.N. 109, PageID.1410 n.1.) The Court's recent order, however, provides: "The United States shall respond to the pretrial motions filed on December 18, 2023 [citing all eight motions, including this one], no later than January 26, 2024. Defendants shall file their replies within 14 days of service of the United States' responses." (D.N. 98, PageID.1304.) Additionally, the Court's original scheduling order treated separately motions "to exclude the testimony of an expert witness pursuant to *Daubert*" from closer-to-trial, no-reply motions *in limine*. (D.N. 37, PageID.128–29.)

**1. The experts' proffered testimony about magnet efficacy are irrelevant to the scheme actually alleged in the indictment and unfairly prejudice Defendants.**

Defendants' motion to exclude expert testimony accurately noted that the indictment says nothing about the quality of the Quadrants' magnets or alleges a fraud scheme or conspiracy in which Defendants knowingly sold defective magnets.

In response, the government presents an entirely new wire-fraud theory. For the first time, the government claims that its unmentioned evidence of alleged magnet failures is necessary and relevant to the indictment's conspiracy and wire-fraud charges "because they show that Quadrant Magnetics sold products that were not what was requested in the technical data, thereby further indicating that Quadrant Magnetics engaged in and took steps as part of a conspiracy to engage in fraud on the Department of Defense (DOD) and its customers." (D.N. 109, PageID.1415.) Repeating the point, the government states that Dr. McCall's testimony is relevant because it "will show that the contractors and DOD were promised magnets with certain specifications, but that Defendants intended to give and did give them magnets that did not meet those specifications and instead exhibited higher than average failure rates across several parameters" and that "is relevant to the Government's wire fraud charges." (*Id.*, PageID.1416–17.) Indeed, the government argues that "the issue of whether Quadrant Magnetics fraudulently sold magnets that did not meet the required or intended specifications to U.S. defense contractor customers for equipment intended for use by the DOD is not an issue of 'no relevance'—it goes to the heart of several counts in the Indictment." (*Id.*, PageID.1417.) The government says Mr. Burton's testimony on this subject is relevant for "the same reasons." (*Id.*, PageID.1420.)

Despite never mentioning this theory in its indictment, the government appears to argue one or both of the following: (1) the magnet-efficacy evidence shows fraud by selling defective magnets, which is a part (though a silent one) of the indictment's fraud scheme and conspiracy; or

2

(2) the magnet-evidence is relevant to the scheme actually alleged because it shows that Defendants allegedly lied about other things regarding their magnets. Both arguments fail.

As to the first, the government notes that the "scheme to defraud" element for wire fraud includes a wide variety of actions and should be applied based on standards of "moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). Defendants do not contest that proposition. But that goes to the scope of conduct that *can* be charged in an indictment. It is not what was *actually* charged under *this* indictment. So those broad formulations of wire-fraud liability are no help to the government here. That is underscored by the second set of magnet tests performed by Dr. McCall, which were done in 2023, *after* this case was originally indicted.

As to the second argument, it relies on inference that is either irrelevant or so tangentially relevant that it should be excluded for unfair prejudice. The government appears to argue that if Defendants supplied magnets allegedly outside the required specifications, then that is relevant evidence that they schemed to defraud their customers by misrepresenting the magnets' place of manufacture, smelting, and magnetization (the scheme actually charged in Counts 2–4) or conspired to do that, or to illegally export and smuggle technical data, or to lie to the government (the objects of the conspiracy in Count 1). But the premise of the former does not logically lead to the conclusion of the latter. *See United States v. Higgins*, No. 22-3538, 2023 U.S. App. LEXIS 26680, *6 (6th Cir. Oct. 6, 2023) (unpublished) (evidence, to be relevant, must "logically advance[] a material aspect of the proposing party's case") (quoting *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (cleaned up)); *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) ("To determine if evidence of other acts is probative of intent, we look to whether the evidence relates

3

to conduct that is *substantially similar* and reasonably near in time to the specific intent offense at issue.") (quoted source omitted) (emphasis added).

The government's reasoning lays the path for it to present evidence of a new crime outside the indictment, so that the jury can convict based on allegations that Defendants provided out-of-spec magnets. The evidence is akin to Rule 404(b) evidence, which cannot be considered for the purpose "to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). And here, the danger of a jury misusing the evidence is compounded by the danger that they will be inflamed to convict by the incorrect suggestion that Quadrant's magnets put at risk military readiness and safety.

Whatever probative value that evidence has, if any, it is tangential to the issues actually to be tried in this case concerning Defendants' transfer of allegedly ITAR-controlled drawings, non-compliance with the DFARS specialty metals clause, and whether they made misrepresentations as to those things. The government's evidence as to magnet efficacy is prohibited "piling on" when the government has "the availability of other means of proof" of the actual scheme charged. *United States v. Jenkins*, 593 F.3d 480, 482, 486 (6th Cir. 2010) (quoted source omitted).

Meanwhile, under the Rule 403 balancing test, "there looms, Kong-like, the prejudicial effect" of the magnet-efficacy testimony. *Id.* at 486. As just argued, there is substantial danger that a jury would take it as prohibited "propensity evidence." *Id.* And while the government does address the relevance side of the scale, it does not address Defendants' concerns that the jury would misuse the evidence to convict based on unfounded concerns that the magnets put servicemembers or their high-tech equipment at risk.

4

The proffered testimony is similar to that excluded in *United States v. Stout*, 509 F.3d 796, 801 (6th Cir. 2007). There, the government failed in its appeal of a ruling in a child-pornography case excluding evidence that the defendant had pleaded guilty in state court to surreptitiously videotaping an underage neighbor while she showered. *See id.* at 798. The court approvingly quoted the district judge: "The prior bad acts evidence is potentially prejudicial because it is both inflammatory and distracting. It is more lurid and frankly more interesting than the evidence surrounding the actual charges. Any jury will be more alarmed and disgusted by the prior acts than the actual charged conduct. As a consequence, the jury is likely to pay undue attention to it. . . . There is a strong possibility that the jury will be improperly distracted from the primary evidence at hand." *Id.* at 801 (cleaned up) (ellipsis in original).

Those same dangers lurk here. The gravamen of this case will be technical, complicated, and perhaps often dry testimony over ITAR, DFARS, AECA, and P/N FP24018. But testimony that the Defendants sold defective magnets that endangered military readiness—that is something that is "more lurid and frankly more interesting" than, as well as "distracting" from, the actual principal issues to be decided. And it should be excluded for the same reason.

Even worse, the inference from this impermissible yet lurid and inflammatory material is not true. The government's response does not contest what Defendants' motion laid out in painstaking detail, that the supposed defective magnet featuring so centrally in the government's case did not degrade military hardware. The government retreats to the position that a reasonable person "would not have taken a chance on sub-contracting with a company they knew could not guarantee the magnet's exact specifications, even if the end result was within a range of performance that would be acceptable for one particular contract, because a reasonable company would not want to take the risk of deviations being greater or interfering with requirements for other contracts,

5

including those subject to DFARS or other Government regulations." (D.N. 109, PageID.1421.) The government then argues that such questions should be for the jury. (*Id.*) The government's response relies on speculation: there could be a risk of greater deviations—why? on what basis?—or their could be interference with requirements for other contracts—but which ones? how so? and what about how this magnet is allegedly "unique" for its defense article? (*Id.*, PageID.1419.) The response further illustrates the prejudicial and speculative inferences this proffered testimony invites from the jury.

At bottom, the government seeks to introduce an entirely new theory and course of conduct to convict Defendants than that alleged in the indictment. This effort must be rejected. If this testimony were admitted at trial, it may amount to a fatal variance or, even worse, a constructive amendment. But even if not, "surely the government cannot introduce mounds of 'extraneous and highly prejudicial' evidence … without some recourse for the defendant. … [T]he recourse is an objection pursuant to the Federal Rules of Evidence." *United States v. Mize*, 814 F.3d 401, 415 (6th Cir. 2016) (Keith, J., dissenting) (the majority went even further, holding that extensive evidence of an uncharged conspiracy was a prejudicial variance). That is the objection here, and it should be sustained.

**2. The experts' proffered testimony would result in a distracting, lengthy trial within a trial.**

Defendants also argued in their motion that rebutting this unfair prejudice would result in a timewasting and distracting trial within a trial. Rather than contest the point, the government embraces it. "The parade of horribles that would result from allowing Dr. McCall's (and the Government's other experts) testimony would not be 'wasting time.'" (D.N. 109, PageID.1417.) To the contrary, "it goes to the heart of several counts in the Indictment." (*Id.*)

6

The allegations about the magnets' efficacy go to the heart of a case that has not been indicted. And it is not a matter that can be effectively handled through brief cross-examination. If the government is permitted to argue or hint that Quadrant's FP24018 magnet (the subject of the first set of tests in 2021) put the F-18's readiness at risk, Defendants will need to put on all the witnesses and evidence described in its motion and more showing that is not true. Likewise, if the government is permitted to present evidence through its expert witnesses that other magnets were allegedly out-of-specification, Defendants will need to call witnesses to disprove that allegation as well. As described in Defendants' motion, that is a significant endeavor that will require significant trial time on highly technical issues.[2]

## CONCLUSION

For the reasons stated in Defendants' original motion (D.N. 93) and above, the Court should exclude the testimony in the two McCall expert reports and the offending portion of Mr. Burton's expert report as described in Defendants' original motion.

---

[2] One week ago, the government sent Defendants a supplemental disclosure from Dr. McCall purporting to address the calibration and demagnetization problems in his original reports, as well as a host of other statements well outside the scope of his original disclosure. Defendants reserve the right to challenge and to move for exclusion of all or portions of the material in Dr. McCall's supplemental disclosure in a separate motion or at trial on the grounds in its motion here, for untimeliness, or on other grounds.

Dated: February 9, 2024                    By:   */s/ John Brownlee*

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

ATTORNEYS FOR DEFENDANT
QUADRANT MAGNETICS, LLC

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2024, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*