UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** <br><br> v. <br><br> **Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

**DEFENDANTS' JOINT TRIAL MEMORANDUM**

Defendants Quadrant Magnetics, LLC (Quadrant), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, Defendants) respectfully submit their trial memorandum under the Court's scheduling order. (D.N. 98, PageID.1305.)

**I. The statute(s) involved and elements of the offense(s) (with discussion of authorities, if disputed).**

Defendants refer the Court to their accompanying proposed jury instructions for a more fulsome discussion of the statutes involved and their elements.

Count 1 of the Second Superseding Indictment (D.N. 73) (the indictment) charges a conspiracy in violation of 18 U.S.C. § 371. This statute requires the government to prove that (1) a defendant knowingly and voluntarily joined an agreement (2) to violate a specified law and (3) took an overt act in support of it. The government has identified four laws that Defendants allegedly conspired to violate.

One of those four laws is the false-statements statute, 18 U.S.C. § 1001. To prove a violation, the government must prove beyond a reasonable doubt that a defendant conspired to commit each of the following elements: (1) a defendant made a statement or writing; (2) that the statement or writing was false; (3) that the statement or writing was material; (4) that the defendant acted knowingly and willfully; and (5) that the statement pertained to a matter within the jurisdiction of the executive branch of the United States government.

The other three laws the government has alleged Defendants conspired to violate are also the subject of substantive offenses in the indictment. Thus we discuss together both the conspiracy and substantive counts for these remaining offenses.

The conspiracy count alleges a conspiracy to violate, and Counts 2–4 allege a substantive violation of, 18 U.S.C. § 1343. To prove a violation, the government must prove beyond a reasonable doubt that a defendant conspired to commit (for Count 1), or did commit (for Counts 2–4), each of the following elements: (1) that a defendant devised or intended to devise a scheme to defraud in order to deprive another of money or property; (2) that the scheme included a material misrepresentation or concealment of a material fact; (3) that the defendant had intent to defraud; and (4) that the defendant used wire communications or caused another to use wire communications in interstate or foreign commerce in furtherance of the scheme.

The conspiracy count alleges a conspiracy to violate, and Counts 5–8 allege a substantive violation of, 22 U.S.C. §§ 2778(b)(2), (c), as well as 22 C.F.R. §§ 121.1, 123.1, 127.1. To prove a violation, the government must prove beyond a reasonable doubt that a defendant conspired to commit (for Count 1), or did commit (for Counts 5–8), each of the following elements: (1) that a defendant export or attempt to export a defense article; (2) that the defense article was listed on the United States Munitions List at the time of export; (3) that a defendant did not first obtain a license for the export of the defense article; (4) and that the defendant acted willfully. A commercial equivalent exists if a part or component used in or with a defense article has the same function, performance capabilities, and the same or equivalent form and fit as a commodity or software used in or with a commodity that is or was in production and is not on the United States Munitions List. *See* 22 C.F.R. § 120.41(b)(3); (*see also* D.N. 88 (Defs.' Mot. to Dismiss Unconstitutionally Vague AECA and ITAR Allegations)). In order to prove the first and second elements, it is not sufficient

for the government to simply rely on information presented by an applicant or to conduct what it views as a reasonable search under the circumstances; the government must prove beyond a reasonable doubt that there was not a commercial equivalent to the article anywhere in the world at the time of the export.

The conspiracy count alleges a conspiracy to violate, and Count 9 alleges a substantive violation of, 18 U.S.C. § 554. To prove a violation, the government must prove beyond a reasonable doubt that a defendant conspired to commit (for Count 1), or did commit (Count 9), each of the following elements: (1) that the defendant knowingly exported from the United States merchandise, objects, or articles; and (2) that the exportation was contrary to law, specifically here, 22 U.S.C. §§ 2778(b)(2), (c), and 22 C.F.R. §§ 121.1, 123.1, 127.1. The elements of those offenses are described above.

**II. A statement of undisputed and disputed facts.**

The government and Defendants expect to negotiate stipulations regarding certain documents and facts. Defendants believe the following facts are undisputed:

    **1.**    Quadrant Magnetics LLC is a limited liability company.

    **2.**    Quadrant Magnetics LLC operates today in Louisville, Kentucky.

    **3.**    Phil Pascoe has been an employee of Quadrant Magnetics LLC for a certain period of time.

    **4.**    Monica Pascoe has been an employee of Quadrant Magnetics LLC for a certain period of time.

    **5.**    Scott Tubbs has been an employee of Quadrant Magnetics LLC for a certain period of time.

6.      From 2012 to 2018, the International Traffic in Arms Regulations (ITAR), including the United States Munitions List, were found at 22 C.F.R. subchapter M, albeit that the contents of that regulation changed from time to time during that time period.[1]

7.      From 2012 to 2018, the specialty metals clause was found at 48 C.F.R. § 252.225-7009, albeit that the contents of that regulation changed from time to time during that time period.

8.      The only alleged defense articles at issue in this case are drawings of magnets with the part numbers 36B423718P1, FP24018P1, 1500P-1002, 10500B-1022, 6000U-1002, 100101, and 3730D-1012.

9.      The magnets called for in the drawings of 36B423718P1, FP24018P1, 1500P-1002, 10500B-1022, 6000U-1002, and 100101 are all made of samarium–cobalt, while the magnets called for in the drawing of 3730D-1012 is a neodymium–iron–boron magnet.

10.     The government will need to prove beyond a reasonable doubt that, for each of these magnets, at the time of alleged export, there did not exist, and had never existed, anywhere in the world, a commercial equivalent as defined by 22 C.F.R. § 120.41(b)(3).

11.     The government's investigation into the performance of its F-18 generator convertor units determined that Quadrant's FP24018P1 magnet performed "within the regulation requirement" and that the generator's "voltage and power rating margin are still acceptable while operating at [relevant] temperatures." (D.N. 93 at 6.) Dr. McCall's report purporting to show that the magnets were out-of-specification "do not have relevance," as stated by a Navy engineer. (*Id.*)[2]

12.     The government personnel that issued and helped determine the commodity-jurisdiction determinations for the magnet drawings at issue in this case, with the possible exception

---

[1] Defendants do not concede that the AECA is constitutional or that the Executive Branch's delegation or administration of the AECA are constitutional or lawful.

[2] As noted below, evidence on this entire issue, never mentioned in the indictment, should be wholly excluded as irrelevant, prejudicial, a waste of time.

4

of FP24018P1, relied solely on information, if any, supplied by the person requesting the determination to identify an equivalent commodity under 22 C.F.R. § 120.41(b)(3), on those instances where they considered (b)(3) at all.

13. Government expert Alex Douville performed no work to determine whether any of the articles in this case are ITAR-controlled beyond reading the final commodity-jurisdiction determinations and reading the ITAR.

14. The following magnets from the indictment's ITAR counts had identified commercial equivalents at the time of export, or have identified commercial equivalents today from which it can be inferred that commercial equivalents existed at the time of export, and thus were not specially designed (identified despite Defendants' limited access to only a small segment of the historical magnet market), as follows:

    a. 10500B-1022 (indictment) → 461988 (commercial)

    b. 3730D-1012 (indictment) → NS-10140 (commercial)

    c. 1500P-1002 (indictment) → SCB250 (commercial

    d. 100101 (indictment) → 26RE163208 (commercial)

    e. 6000U-1002 (indictment) → SFW Curved Prototype (commercial)[3]

15. All parties agree that if an article was not on the United States Munitions List at the time of export, no U.S. State Department license was required prior to its export.

16. All other facts, at this stage, remain disputed.

### III. A separate statement of each unresolved substantive issue of law, with discussion and citations to authorities.

1. Whether the indictment alleges an offense when it alleges that Defendants conspired to violate 18 U.S.C. § 1001 by allegedly placing false information on a GIDEP form. It does

---

[3] Defendants reserve the right to supplement this analysis with additional commercial equivalents.

not. The United States gains no jurisdiction by virtue of the existence of or its agencies' participation in GIDEP, nor by definition can any such misrepresentations on GIDEP forms be material. (*See* D.N. 71, D.N. 99, and authorities cited therein.) If the Court determines that this issue requires factual development at trial, Defendants expect to raise these arguments again at the appropriate time at trial.

2.   Whether the indictment alleges an offense against Monica Pascoe. It does not. The indictment's allegations simply do not contain sufficient factual matter to make out an offense against Ms. Pascoe. (*See* D.N. 85, D.N. 113, and authorities cited therein.)

3.   Whether the indictment alleges a violation of 18 U.S.C. § 554, prohibiting smuggling merchandise, objects, and articles from the United States. It does not. The indictment alleges Defendants emailed technical drawings from the United States, but the smuggling statute pertains only to tangible objects, not intangible information. (*See* D.N. 86, D.N. 114, and authorities cited therein.)

4.   Whether the government may use the fruits of its 2018 and 2022 search warrants concerning alleged ITAR violations. It may not. The affidavits for the search warrants fail to support a finding of probable cause that Quadrant violated the ITAR. This is because they relied on only conclusory statements of that violation. (*See* D.N. 87, D.N. 115, and authorities cited therein.)

5.   Whether the ITAR's "specially designed" provision is unconstitutionally vague when applied to the magnets identified in the indictment. It is. The ITAR's "specially designed" provision states that items that are specially designed for military hardware are controlled. But specially designed means just that—if there is a commercial equivalent to the item, then the item is *not* specially designed. For the small, unremarkable magnets in this case, which are of a type that have hundreds of commercial applications, the government cannot reliably determine if a

commercial equivalent exists. Thus, here, the specially designed provision leads to unconstitutionally arbitrary and discriminatory enforcement. (*See* D.N. 88, D.N. 116, and authorities cited therein.) If the Court determines that this issue requires factual development at trial, Defendants expect to raise these arguments again at the appropriate time at trial.

6. Whether the indictment's allegations regarding magnetization and country of origin should be struck from the indictment. They should be. The government alleges that Defendants committed wire fraud, and conspired to do so, by concealing and misrepresenting where Quadrant's magnets were manufactured, smelted, and magnetized, in violation of 48 C.F.R. § 225.252-7009, the DFARS specialty metals clause. But the clause actually says nothing about where magnetization may occur, so the country of magnetization cannot be material to a wire-fraud scheme predicated on a violation of the clause. (*See* D.N. 89, D.N. 117, and authorities cited therein.) If the Court declines to strike the allegations from the indictment, Defendants expect to argue before and, if necessary, at trial that the government should be prohibited from admitting evidence about country of magnetization for the same reason that it is irrelevant and immaterial to a wire-fraud scheme predicated on a violation of the DFARS clause.

7. Relatedly, whether the government should be permitted to deviate from the indictment to prove any other wire-fraud scheme, or that they conspired to do so, not predicated on a violation of 48 C.F.R. § 225.252-7009, which requires only that specialty metals (i.e., cobalt in samarium–cobalt magnets) be either "melted … in the United States, its outlying areas, or a qualifying country," or "manufactured in a qualifying country," *id.* §§ 225.252-7009(b), (c)(4). The government should not be so permitted. The plain text of the specialty metals clause regulates only the country where the cobalt is melted, not where it is magnetized or where other steps in the

7

manufacturing process take place. (The clause does not prohibit, and in fact provides a permissive exception for, specialty metals manufactured in a qualifying country.)

8. Whether the government's commodity-jurisdiction determinations (CJDs) are admissible. They are not. The government experts who would introduce the CJDs cannot do so because they depend on lay testimony from others, because they are inadmissible hearsay, and because they are irrelevant and pose a danger of misleading the jury. (*See* D.N. 90, D.N. 118, and authorities cited therein.) If the Court denies Defendants' earlier-filed motion on this issue, Defendants expect to raise this issue at trial, including through voir dire of witnesses that seek to introduce CJDs.

9. Relatedly, whether a CJD can conclusively establish that an item is a defense article in support of the ITAR violations charged. They cannot. It is perfectly permissible for Defendants to contest the CJDs' validity and persuasiveness. *See United States v. Roth*, 628 F.3d 827, 832 (6th Cir. 2011); *see also United States v. Zhen Zhou Wu*, 711 F.3d 1, 18–19 (1st Cir. 2013); *United States v. Pulungan*, 569 F.3d 328 (7th Cir. 2009). We believe the government concedes this point. (*See* D.N. 110, PageID.1427.)

10. Whether government experts Alex Douville and Steven Burton may opine that Quadrant's magnets at issue in this case are export-controlled under the ITAR. They may not. Their testimony is unreliable. Mr. Douville has offered no assurance that he went through the proper legal test, nor that he took any action to see if anyone else did either. Mr. Burton applied the wrong legal test in his initial report, and his supplemental report purporting to correct that defect is untimely. (*See* D.N. 91, D.N.119, and authorities cited therein.)

11. Relatedly, whether Mr. Douville and Mr. Burton should be permitted to opine on the subjects in their supplemental disclosures. Both supplements are in the nature of a rebuttal to

Defendants' initial expert disclosures, so they are untimely. Defendants expect to file a motion in limine on this topic, with further development of this argument and relevant authorities.

12. Whether the government may deviate from its indictment by presenting government experts Scott McCall, James Blankenship, and Steven Burton to opine or otherwise offer evidence or testimony concerning the quality of Quadrant's magnets or the effects, if any, were Quadrant's magnets to not meet quality standards. They may not. Nothing in the indictment alleges anything about the quality of Quadrant's magnets. The charges are solely about whether Quadrants' magnets and drawings crossed the border appropriately. An inflammatory sideshow about the quality of Quadrant's magnets would be improper. It would also be misleading. A comprehensive government investigation determined that Quadrant's magnets were not the cause of any issues with military hardware. (*See* D.N. 93, D.N. 121, and authorities cited therein.)

13. Relatedly, whether the government may otherwise introduce evidence concerning the quality of Quadrant's magnets or the effects, if any, were Quadrant's magnets to not meet quality standards. For much the same reasons discussed above, such evidence should be excluded. Defendants expect to file a motion in limine on this topic, with further development of this argument and relevant authorities.

14. Relatedly, whether Dr. McCall should be permitted to testify on the subject of magnet performance, fit, function, and the like, as described in his supplemental disclosure. He should not be permitted. The disclosure is in the nature of an expert rebuttal report, so it is untimely. Defendants expect to file a motion in limine on this topic, with further development of this argument and relevant authorities.

15. Whether the government must prove merely that the defendants voluntarily and intentionally violated a known legal duty not to export the alleged defense articles at issue in this

case, or whether they must have known that the alleged defense articles were specifically prohibited by the United States Munitions List from being exported. Defendants acknowledge that *United States v. Roth*, 628 F.3d 827, 835 (6th Cir. 2011), requires that the government prove only that defendants knew that their underlying action was unlawful. Respectfully, the Sixth Circuit should overrule *Roth* and follow the more stringent standard in *United States v. Wenxia Man*, 891 F.3d 1253, 1268 (11th Cir. 2018), because the ITAR regulations are just the sort of highly technical, *malum prohibitum* rather than *malum in se* regulations that can trap the unwary and thus fall within the rule of *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994), and *Cheek v. United States*, 498 U.S. 192, 200 (1991), rather than the lower intent standard of *Bryan v. United States*, 524 U.S. 184, 191 (1998). Defendants raise this argument now to preserve that matter for appeal should they not be acquitted.

**IV. A statement of evidentiary issues it is reasonably believed will be raised at trial, together with citations to the appropriate Federal Rules of Evidence and authorities in support of the position taken.**

Defendants direct the Court to their objections to the admissibility of evidence and testimony described in the preceding question III, items #4, #6–8, and #10–14.

**V. A statement of any known or reasonably anticipated potential trial problems, or other issues that may assist the Court in trying the case.**

None at this time.

| | |
|---|---|
| Dated: February 26, 2024 | By: */s/ John Brownlee* |

                                                 John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com

*Counsel for Quadrant Magnetics, LLC*

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*