UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              CRIMINAL ACTION NO. 3:22-CR-00088-DJH
                                                    *Electronically Filed*

QUADRANT MAGNETICS LLC,
PHIL PASCOE,
SCOTT TUBBS, and
MONICA PASCOE                                               DEFENDANTS

## UNITED STATES' PROPOSED JURY INSTRUCTIONS

The United States requests the Court provide the standard, applicable preliminary and

closing instructions to the jury as set forth in the Sixth Circuit Pattern Jury Instructions, including

the following Pattern Instructions:

> 1.01-1.09 (General Principles)
> 2.01A (Separate Consideration on Multiple Crimes)
> 2.01D (Separate Consideration – Multiple Defendants Charged with Different Crimes)
> 2.04 (On or About)
> 2.08 (Inferring Required Mental State)
> 2.09 (Deliberate Ignorance)
> 7.02B (Defendant's Testimony- if applicable)
> 7.03 (Opinion Testimony)
> 7.12 (Summaries and Other Materials not Admitted in Evidence)
> 7.12A (Secondary-Evidence Summaries Admitted in Evidence)
> 7.20 (Statement by Defendant)
> 8.01-8.10 (Deliberations and Verdict)

In addition, the United States requests that the attached specific instructions be submitted

to the jury.

1

## Government's Proposed Instruction No. 1

### Indictment

An indictment is not evidence. It merely describes the charges made against the defendant. It is an accusation. It may not be considered by you as any evidence of the guilt of the defendants.

In reaching your determination whether the government has proved the defendants guilty beyond a reasonable doubt, you may consider only the evidence introduced or the lack of evidence.

The defendants have pled "not guilty" to each charge in the Indictment. When a defendant pleads "not guilty," the government has to prove each of the things that is a part of the definition of an offense charged in the indictment. We commonly call the things the government has to prove as to a particular offense the "elements" of that offense. The government has the burden of establishing each of these elements by proof beyond reasonable doubt.

An indictment may allege more than one charge against a defendant. When it does, the different charges are stated separately in what we call counts. You must give separate consideration to each separate charge. You must consider each count separately, weighing separately the evidence as it bears against each defendant.

1 L. Sand, et al., *Modern Federal Jury Instructions (Criminal)* § 3.01, Instruction No. 3-1 (2006); K. O'Malley, et al. 1A Fed. Jury Prac. & Instr. §13.04 (6th ed. 2024).

**Government's Proposed Instruction No. 2**

**Summary of Indictment**

Count 1 of the Indictment charges **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** with conspiring to knowingly and willfully export from the United States to the People's Republic of China defense articles, specifically technical data for how to produce magnets used in multi-spectral targeting systems, infrared imaging systems, night vision systems, and optical periscopes, without first obtaining a license from the U.S. Department of State; to fraudulently and knowingly export from the United States the same technical data contrary to the Arms Export Control Act and the International Traffic in Arms Regulations; to fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the country of origin; and to knowingly and willfully make a materially false statement and representation and make a false writing, namely, a Government Industry Data Exchange Program Problem Advisory submitted to U.S. government agencies, including the Department of Defense, all from between January 1, 2012 and December 2018, in violation of Title 18, United States Code, Section 371.

Counts 2 through 4 of the Indictment charge **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** with wire fraud, that is, devising a scheme to defraud and deprive the public in the form of the Department of Defense, through selling magnets that were manufactured in China and misrepresenting that the magnets were smelted and magnetized in the United States, in violation of Title 18, United States Code, Section 1343.

Counts 5 through 8 of the Indictment charge **SCOTT TUBBS, PHIL PASCOE**, and **QUADRANT MAGNETICS** with exporting and attempting to export from the United States to

China defense articles, specifically technical data for how to produce magnets that are used in optical periscopes, infrared imaging systems, multi-spectral targeting systems, and night vision systems, on dates ranging between August 16, 2017, and October 25, 2018, without having first obtained a license from the Department of State, in violation of the Arms Export Control Act and the International Traffic in Arms Regulations.

Count 9 of the Indictment charges **SCOTT TUBBS, PHIL PASCOE**, and **QUADRANT MAGNETICS** with willfully exporting technical data in violation of the International Traffic in Arms Regulations and the Arms Export Control Act.

I will now instruct you about the elements of the offenses charged in the Indictment.

## Government's Proposed Instruction No. 3

### Conjunctively Charged Counts

When a statute specifies multiple alternative ways in which an offense may be committed, the indictment may allege the multiple ways in the conjunctive, that is, by using the word "and." If only one of the alternatives is proved beyond a reasonable doubt, that is sufficient for conviction, so long as you agree unanimously as to that alternative.

For example, Counts 5 through 8 of the Indictment charge that the defendants knowingly and willfully exported and attempted to export defense articles, specifically technical data, to China. To prove this aspect of the charge, however, it is sufficient for the government to prove that the defendant either exported *or* attempted to export the defense articles in question.  In other words, you should treat the conjunctive "and" as being a disjunctive "or." As another example, in Counts 2 through 4, the government is not required to prove that the defendants "transmit" *and* "cause to be transmitted"; the government is only required to prove one of the two methods described in the charging language.

Pattern Crim. Jury Instr. 11th Cir. BI B8.1 (2020); *United States v. Pirosko*, 787 F.3d 358, 368 (6th Cir. 2015) ("It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial the government may prove and the trial judge may instruct in the disjunctive form used in the statute." (quoting *United States v. Murph*, 707 F. 2d 895, 896-97 (6th Cir. 1983)).

**Government's Proposed Instruction No. 4**

**Conspiracy to Commit Offenses (18 U.S.C. § 371)**

Count 1 of the Indictment charges **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** with conspiring to commit several different crimes, specifically the crimes of unlawful export of defense articles, specifically technical data; wire fraud; making a material false statement or false writing to a government agency; and smuggling, all in violation of federal law. It is a crime for two or more persons to conspire, or agree, to commit a criminal act, even if they never actually achieve their goal.

A conspiracy is a kind of criminal partnership. For you to find any one of the defendants guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt:

First, that two or more persons conspired, or agreed, to commit at least one of the crimes that was the goal, or object, of the conspiracy, here, the unlawful export of defense articles; wire fraud; making a material false statement or writing; or smuggling.

Second, that the defendant knowingly and voluntarily joined the conspiracy.

Third, that a member of the conspiracy took at least one overt act for the purpose of advancing or helping the conspiracy.

You must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find any one of these defendants guilty of the conspiracy charge.

Pattern Crim. Jury Instr. 6th Cir. 3.01A (2023); *see United States v. Bradley*, 917 F.3d 493, 504 (6th Cir. 2019) ("The indictment must inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case.") (citing *United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986)); *United States v. Kuehne*, 547 F.3d 667, 686 (6th Cir. 2008) (finding no issue with "presentation of additional evidence to substantiate the charged offenses" which did not include "facts materially different from those charged in the

indictment"); *see also United States v. Frank*, 156 F.3d 332, 337-38 (2d Cir. 1998) ("[T]he overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment so long as there is no prejudice to the defendant."); *United States v. Ledbetter*, 2015 WL 5117979, at *7 (S.D. Ohio Sept. 1, 2015) ("'[A]s long as defendants are given notice of the core criminality to be proven at trial,' courts 'afford the prosecution significant flexibility to prove the conspiracy's operation through both unalleged and alleged overt acts.'" (quoting *United States v. Salmonese*, 352 F.33d 608, 620-21 (2d Cir. 2003) (cleaned up))); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1083 (S.D. Ohio 2007) ("[T]he inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts so long as they are in furtherance of the conspiracy and there is no prejudice to the Defendant."); *United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn. 2004) (jury may consider evidence of additional overt acts presented at trial that fit within the scope of the conspiracy).

**Government's Proposed Instruction No. 5**

**Conspiracy- Agreement**

With regard to the first element—a criminal agreement—the government must prove that two or more persons conspired, or agreed, to cooperate with each other to commit at least one of the crimes that was the goal, or object, of the conspiracy. The Indictment charges that Defendants agreed to commit the crimes of illegally exporting defense articles, wire fraud, making a material false statement or writing, and smuggling.

This does not require proof of any formal agreement, written or spoken. Nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proved an agreement. But without more they are not enough.

What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to commit the crime of illegally exporting defense articles, wire fraud, making a material false statement or writing, or smuggling.  This is essential.

An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed. But it is up to the government to convince you that such facts and circumstances existed in this particular case.

One more point about the agreement. The Indictment accuses the defendants of conspiring to commit several federal crimes. The government does not have to prove that the defendants agreed to commit all these crimes. But the government must prove an agreement to commit at least

one of them, and you must unanimously agree on the crime, or crimes, that the defendants agreed to commit for you to return a guilty verdict on the conspiracy charge.

Later I will instruct you on the elements of each crime that the Indictment alleges were the objects of the conspiracy charged in Count 1.

Pattern Crim. Jury Instr. 6th Cir. 3.02 (2023); *United States v. Tragas*, 727 F.3d 610, 616 (6th Cir. 2013) ("For defendants charged with conspiracy, the object offense of the conspiracy is an element of the crime. Therefore, where a defendant is charged in a single count with a conspiracy to commit multiple crimes, the jury must unanimously decide which crime the defendant conspired to commit.") (internal citations omitted); *United States v. Warner*, 843 F. App'x 740 (6th Cir. 2021) (noting that the Sixth Circuit Pattern Jury Instruction does not include a specific unanimity instruction).

## Government's Proposed Instruction No. 6

## Impossibility is No Defense to Conspiracy

Because a conspiracy is an unlawful agreement to commit one or more crimes, the government does not need to prove that the defendants actually committed each element of the crimes that were the unlawful objectives of the conspiracy, and a conspirator may be convicted even though he or she was incapable of committing the substantive offense. Indeed, it is no defense to a charge of conspiracy that the success of the conspiratorial object was impossible.

As I have instructed you, Count 1 of the Indictment charges the defendants with conspiracy to commit several different crimes. One of those crimes that is an object of the conspiracy with which the defendants are charged in Count 1 is to unlawfully export defense articles without a license in violation of the AECA. The government and the defendants dispute whether the technical data that the defendants are accused of exporting from the United States were in fact defense articles under AECA. As I will instruct you later in connection with the violations of AECA charged in Counts 5 through 8, the government bears the burden of proving beyond a reasonable doubt that defendants exported or attempted to export the defense articles charged in Counts 5 through 8 in violation of AECA. But I instruct you that it is no defense to the conspiracy charged in Count 1 that it would have been impossible for defendants to complete a violation of AECA because the technical data they agreed to export without a license were not actually defense articles under AECA. If the government proves that defendants believed that any technical data they agreed to export were defense articles under AECA, you may find them guilty of the conspiracy charged in Count 1, even if defendants' belief was mistaken.

*United States v. Schaffer*, 586 F.3d 414, 422-23 (6th Cir. 2009), *cert. denied*, 559 U.S. 1021 (2010) ("The basis of the conspiracy charge is the agreement to commit the unlawful act, and not the unlawful act itself….[I]t is irrelevant that it may have been objectively impossible for the conspirators to commit the substantive offense. Indeed, it is the mutual understanding or agreement

itself that is criminal, and whether the object of the scheme actually is, as the parties believe it to be, unlawful is irrelevant.") (citations omitted); *United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (legal impossibility not a defense to prosecution for conspiracy to steal trade secrets); *United States v. Hamilton*, 689 F.2d 1262, 1269 (6th Cir. 1982) ("[I]t is no defense to a conspiracy that success of the conspiratorial object was impossible because of unknown circumstances.") (citing 16 Am. Jur. 2d 225 (2d ed. 1979)); *see Ocasio v. United States*, 578 U.S. 282, 289 (2016) ("[A] conspirator may be convicted 'even though he was incapable of committing the substantive offense.'") (quoting *Salinas v. United States*, 522 U.S. 52 (1997)); *United States v. Zhen Zhou Wu*, 711 F.3d 1, 25-26 (1st Cir. 2013) ("[A] defendant can be convicted of conspiracy to export items on the Munitions List even when the items he conspires to export are not in fact on the Munitions List."); *United States v. Posey*, 864 F.2d 1487, 1492 (9th Cir. 1989) ("Although the substantive offense of violating the AECA requires that a defendant actually export Munitions List items . . . it is not necessary to a conspiracy charge that he actually export such items. Even if the items that appellant took out of the country were lawfully exportable under the AECA, the jury could still have found all the elements of a conspiracy to violate the AECA") (internal citations omitted); *see also United States v. Nosal*, 844 F.3d 1024, 1045 (9th Cir. 2016) ("[A] conviction may be upheld even where the object of the crime was not a legal possibility.") (citations omitted); *United States v. Hsu*, 155 F.3d 189, 203 (3d Cir. 1998) ("[L]egal impossibility is not a defense to conspiracy.").

**Government's Proposed Instruction No. 7**

**Defendants' Connection to the Conspiracy**

If you are convinced that there was a criminal agreement, then you must decide whether the government has proved that each of the defendants knowingly and voluntarily joined that agreement. You must consider each defendant separately in this regard. To convict any defendant, the government must prove that he or she knew the conspiracy's main purpose, and that he or she voluntarily joined it intending to help advance or achieve its goals.

This does not require proof that a defendant knew everything about the conspiracy, or everyone else involved, or that he or she was a member of it from the very beginning. Nor does it require proof that a defendant played a major role in the conspiracy, or that his or her connection to it was substantial. A slight role or connection may be enough.

But proof that a defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if he or she approved of what was happening or did not object to it. Similarly, just because a defendant may have done something that happened to help a conspiracy does not necessarily make him or her a conspirator. These are all things that you may consider in deciding whether the government has proved that a defendant joined a conspiracy. But without more they are not enough. A defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he or she knew the conspiracy's main purpose.

In addition, a corporation may conspire with its officers and employees.

Pattern Crim. Jury Instr. 6th Cir. 3.03 (2023)*; United States v. Ames Sintering Co.*, 927 F.2d 232, 236 (6th Cir. 1990) ("[A] corporation may conspire with its officer and employees."); *United States v. S & Vee Cartage Co.,* 704 F.2d 914, 920 (6th Cir. 1983) (same).

**<u>Government's Proposed Instruction No. 8</u>**

**<u>Overt Acts (18 U.S.C. § 371)</u>**

The third element that the government must prove is that a member of the conspiracy took at least one overt act for the purpose of advancing or helping the conspiracy.

The Indictment lists overt acts. The government does not have to prove that all these acts were committed, or that any of these acts were themselves illegal.

But the government must prove that at least one of these acts was committed by a member of the conspiracy, and that it was committed for the purpose of advancing or helping the conspiracy. This is essential.

Pattern Crim. Jury Instr. 6th Cir. 3.04 (2023); *see United States v. Bradley*, 917 F.3d 493, 504 (6th Cir. 2019) ("The indictment must inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case.") (citing *United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986)); *United States v. Kuehne*, 547 F.3d 667, 686 (6th Cir. 2008) (finding no issue with "presentation of additional evidence to substantiate the charged offenses" which did not include "facts materially different from those charged in the indictment"); *see also United States v. Frank*, 156 F.3d 332, 337-38 (2d Cir. 1998) ("[T]he overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment so long as there is no prejudice to the defendant."); *United States v. Ledbetter*, Case No. 2:15-CR-080, 2015 WL 5117979, at *7 (S.D. Ohio Sept. 1, 2015) ("'[A]s long as defendants are given notice of the core criminality to be proven at trial,' courts 'afford the prosecution significant flexibility to prove the conspiracy's operation through both unalleged and alleged overt acts.'" (quoting *United States v. Salmonese*, 352 F.33d 608, 620-21 (2d Cir. 2003) (cleaned up))); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1083 (S.D. Ohio 2007) ("[T]he inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts so long as they are in furtherance of the conspiracy and there is no prejudice to the Defendant."); *United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn. 2004) (jury may consider evidence of additional overt acts presented at trial that fit within the scope of the conspiracy).

**Government's Proposed Instruction No. 9**

**Unindicted, Unnamed or Separately Tried Co-Conspirators**

Now, some of the people who may have been involved in these events are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged and prosecuted, or tried together in one proceeding.

Nor is there any requirement that the names of the other conspirators be known. An indictment can charge a defendant with a conspiracy involving people whose names are not known, as long as the government can prove that the defendant conspired with one or more of them. Whether they are named or not does not matter.

Pattern Crim. Jury Instr. 6th Cir. 3.06 (2023).

## Government's Proposed Instruction No. 10

## Making a False Statement or Making or Using a False Writing in a Matter Within the Jurisdiction of the United States Government (18 U.S.C. § 1001(a)(2) and (a)(3))

The Indictment alleges as one of the objects of the conspiracy charged in Count 1 that Defendants **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** conspired to commit the crime of making a false statement or making or using a false writing in a matter within the jurisdiction of the United States government, namely, submitting a Government Industry Data Exchange Program Problem Advisory to U.S. government agencies, including the Department of Defense, that falsely stated that magnets were magnetized in the United States when they were actually magnetized in the People's Republic of China.

The elements of the offense of making a false statement in a matter within the jurisdiction of the United States government are as follows:

(A) First, that the defendant made a statement;

(B) Second, that the statement was false, fictitious, or fraudulent;

(C) Third, that the statement was material;

(D) Fourth, that the defendant acted knowingly and willfully; and

(E) Fifth, that the statement pertained to a matter within the jurisdiction of the executive branch of the United States government.

The elements of the offense of making or using a false writing or document in a matter within the jurisdiction of the United States government are as follows:

(A) First, that the defendant made a false writing;

(B) Second, that the writing contained a statement that was false, fictitious, or fraudulent;

(C) Third, that the statement was material;

(D) Fourth, that the defendant acted knowingly and willfully; and

(E) Fifth, that the writing pertained to a matter within the jurisdiction of the executive branch of the United States government.

A statement is "false" or "fictitious" if it was untrue when it was made, and the defendant knew it was untrue at that time. A statement is "fraudulent" if it was untrue when it was made, the defendant knew it was untrue at that time, and the defendant intended to deceive.

A "material" statement or representation is one that has the natural tendency to influence or is capable of influencing a function or decision of a U.S. government agency. The government need not show that the agency was actually influenced by the statements involved. If a statement could have provoked governmental action, it is material regardless of whether the agency actually relied upon it.

An act is done "knowingly and willfully" if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason.

A matter is "within the jurisdiction of the executive branch of the United States government" if a government agency has the power to exercise authority in that matter.  As a matter of law, I instruct you that the Department of Defense is within the Executive Branch of the U.S. government.

It is not necessary that the government prove that the defendant knew the matter was within the jurisdiction of the United States government, or that the statements were made directly to, or even received by, the United States government.

Because this offense is being charged as a conspiracy to make a false material statement, the government does not need to prove each element of this offense by proof beyond a reasonable doubt. The government need only show that two or more persons conspired, or agreed, to commit the crime of making material false statements or false writings; that the defendant knowingly and voluntarily joined the conspiracy; and finally, that a member of the conspiracy did one of the overt acts described

16

in the Indictment for the purpose of advancing or helping the conspiracy to make material false

statements or materially false writings.

Pattern Crim. Jury Instr. 6th Cir. 13.02 (2023); Pattern Crim. Jury Instr. 6th Cir. 13.03 (2023); *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001) ("A showing of 'materiality' is a fairly low bar for the government to meet . . . [a] showing of actual influence, or actual agency reliance, is unnecessary . . . [i]f the false statements are received by an agency, they may be material even if the receiving agent or agency  knows that they are false" (citations omitted)); *United States v. Brooks*, 379 F. App'x 465, 469 (6th Cir. 2010) ("[I]f a statement could have provoked governmental action, it is material regardless of whether the agency relied on it." (quoting *United States v. Sebaggala*, 256 F.3d 59, 65 (1st Cir. 2001)).

**Government's Proposed Instruction No. 11**

**Pinkerton Liability for Substantive Offenses Committed by Others**

Counts 2 through 4 of the Indictment accuse **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** of wire fraud in violation of federal law. Counts 5 through 9 of the Indictment accuse **SCOTT TUBBS, PHIL PASCOE,** and **QUADRANT MAGNETICS** of unlawful export of defense articles, specifically technical data, and smuggling, all in violation of federal law. There are three ways that the government can prove a defendant guilty of these crimes. The first is by convincing you that he or she personally committed or participated in the particular offenses charged. The second is by proving that the defendant aided and abetted someone else in committing the particular offenses charged. The third, which I will discuss now, is based on the legal rule that the members of a conspiracy are responsible for acts committed by the other members, as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement.

In other words, under certain circumstances, the act of one conspirator may be treated as the act of all. This means that all the conspirators may be convicted of a crime committed by only one of them, even though they did not all personally participate in that crime themselves.

But for you to find any one of the defendants guilty based on this legal rule, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the defendant was a member of the conspiracy charged in Count 1 of the Indictment.

Second, that after he or she joined the conspiracy, and while he or she was still a member of it, one or more of the other members committed the particular offense charged.

Third, that this crime was committed to help advance the conspiracy.

And fourth, that this crime was within the reasonably foreseeable scope of the unlawful project. The crime must have been one that the defendant could have reasonably anticipated as a necessary or natural consequence of the agreement.

This does not require proof that each defendant specifically agreed or knew that the particular crime would be committed. But the government must prove that the crime was within the reasonable contemplation of the persons who participated in the conspiracy. No defendant is responsible for the acts of others that go beyond the fair scope of the agreement as the defendant understood it.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of them, then the legal rule that the act of one conspirator is the act of all would not apply.

Pattern Crim. Jury Instr. 6th Cir. 3.10 (2023); Pattern Crim. Jury Instr. 6th Cir. 4.01 (2023) (discussing aiding and abetting liability).

### Government's Proposed Instruction No. 12

### Wire Fraud (18 U.S.C. § 1343))

Counts 2 through 4 of the Indictment charge **SCOTT TUBBS, MONICA PASCOE, PHIL PASCOE**, and **QUADRANT MAGNETICS** with wire fraud. Furthermore, the Indictment alleges that wire fraud was one of the crimes that was an object of the conspiracy charged in Count 1. For you to find each defendant guilty of wire fraud, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to obtain money or property, as alleged in the indictment, ,

Second, that the scheme included a material misrepresentation or concealment of a material fact;

Third, that the defendant had the intent to defraud; and

Fourth, that the defendant used wire communications or caused another to use wire communications in interstate or foreign commerce in furtherance of the scheme.

Now I will give you more detailed instructions on some of these terms.

A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.

An act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or some other innocent reason.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension. The government can prove a misrepresentation through omissions or through circumstances reasonably calculated to deceive persons of ordinary prudence and comprehension.

To act with "intent to defraud" means to act with intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself.

To "cause" wire, radio or television communications to be used is to do an act with knowledge that the use of the communications will follow in the ordinary course of business or where such use can reasonably be foreseen.

 The term "interstate commerce" includes wire, radio or television communications which crossed a state line.  Foreign wire communications include email and internet communications and other electronic transmissions between any part of the United States and any other country.

It is not necessary that the government prove all of the details alleged concerning the precise nature and purpose of the scheme or that the material transmitted by wire communications was itself false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone or that the use of the wire communications was intended as the specific or exclusive means of accomplishing the alleged fraud or that someone relied on the misrepresentation or false statement or that the defendant obtained money or property for his own benefit.  What the government must prove is that the defendant knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged in the indictment.

Actual loss is not an element of wire fraud.  The government need not prove that the alleged scheme to defraud actually succeeded in defrauding anyone. The evidence need only show that each defendant participated in a scheme to defraud that involvement a misrepresentation of material fact, not that each defendant made a specific misrepresentation.

Each separate transmission by wire communication in interstate or foreign commerce for the purpose of carrying out the scheme is a separate violation of the wire fraud statute.  An interstate or foreign wire transmission is considered to be "for the purpose of carrying out the scheme" so long as the transmission is incident to the accomplishment of an essential part of the scheme. An interstate or foreign wire communication need not itself by false or deceptive, nor necessary or even helpful for the success of the scheme.

Pattern Crim. Jury Instr. 6th Cir. 10.02 (2023); *United States v. Hathaway*, 798 F.2d 902, 912 (6th Cir. 1986) ("It is not necessary that the government prove . . . that the alleged scheme actually succeeded in defrauding anyone.");*United States v. Birnie*, 193 Fed. App'x 528, 536 (6th Cir. 2006) ("[T]he evidence need only show that each defendant participated in a scheme to defraud that involved a misrepresentation of material fact"); *United States v. Daniel*, 329 F.3d 480, 489 (6th Cir. 2003) (wire fraud scheme's "completion or the prevention of its detection must have depended in some way on the charged [wire transmissions]"); *United States v. Haque*, 315 Fed. App'x 510, 526 (6th Cir. 2009) ("[A]ctual loss is not an element of wire fraud" (citing *Ames v. Sintering*, 927 F.2d at 235-36)); *United States v. Tao*, Case No. 19-20052-JAR, ECF 249-1 (D. Kan. Mar. 7, 2022) (government's proposed jury instructions defining foreign wire communications); Pattern Crim. Jury Instr. 5th Cir. 2.57 (2019) ("It is also not necessary that the government prove that the material transmitted by wire [radio] [television] communications was itself false or fraudulent, or that the use of the interstate [foreign] wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud."); Pattern Crim. Jury Instr. 11th Cir. OI O51 (2020) ("[The Government] also doesn't have to prove that the material transmitted by interstate [wire] [radio] [television] was itself false or fraudulent; or that using the [wire] [radio] [television] was intended as the specific or exclusive means of carrying out the alleged fraud; or that the Defendant personally made the transmission over the [wire] [radio] [television]"; "Each separate use of the interstate [wire] [radio] [television] communications as part of the scheme to defraud is a separate crime."; "And [the Government] doesn't have to prove that the alleged scheme actually succeeded in defrauding anyone."); *United States v. Morris*, 572 F. Supp. 3d 323, 342 (E.D.K.Y. 2021) ("The wire transmission need be only 'a step in the plot', and minimally '*incident* to an essential part of the scheme.'" (quoting *United States v. Lo*, 231 F.3d 471, 478 (9th Cir. 2000), *holding modified by United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007)).

## Government's Proposed Instruction No. 13

## Defense Federal Acquisition Regulation Supplement (DFARS)

You have heard testimony related to the Defense Federal Acquisition Regulation Supplement, or "DFARS," related to the wire fraud and conspiracy charges in this case. The DFARS set forth regulations with which U.S. Department of Defense government acquisition officials and those contracting and subcontracting to do business with the Department of Defense must follow when procuring certain goods and services. The specialty metals clause of the DFARS required that specialty metals procured by the Department of Defense and its contractors for use in defense articles must be melted and produced, defined to include final consolidation of non-melt derived metal powders, in the United States or a qualifying country.  China is not a qualifying country.

Specialty metal is a defined term under the regulations and includes cobalt alloys that contain a total of alloying metals other than cobalt and iron in excess of 10 percent. The magnets at issue in this case are made of specialty metal as defined in the regulation.

48 C.F.R. § 252.225-7009 (74 Fed. Reg. 37626, 37640, 2009 WL 2241085 (July 29, 2009)); 48 C.F.R. § 252.225-7008 (78 Fed. Reg. 18877, 18879, 2013 WL 1228933 (Mar. 18, 2013); *see also* 74 Fed. Reg. 37626, 37639-40, 2009 WL 2241085 (July 29, 2009) (similar); 48 C.F.R. § 252.225-7002 (68 Fed. Reg. 15616, 15624, 2003 WL 1617340 Mar. 31, 2003)).

**Government's Proposed Instruction No. 14**

**Arms Export Control Act**

The Arms Export Control Act or AECA authorizes the President of the United States to place controls on the export from the United States of certain munitions, articles, and technical information related to national defense. The Act provides that no defense articles designated by the President may be exported without a license issued in accordance with the AECA and regulations issued under the AECA. Any person who willfully violates the AECA or its associated regulations is guilty of an offense against the United States.

Regulations for the export of defense articles under the AECA are contained in the International Traffic in Arms Regulations, known as the "ITAR." The ITAR contains the United States Munitions List ("USML"), which sets forth categories of defense articles that are subject to export licensing controls. Categories of defense articles listed on the USML include things such as aircraft and related articles, such as attack helicopters and fixed-wing attack aircraft (Category VIII), fire control, aiming, detection, guidance, and tracking systems, and imaging systems including electro-optical reconnaissance systems specially designed for a military end user (Category XII), and submersible vessels, such as military use submarines (Category XX). Defense articles, including technical data, designated in the United States Munitions List may not be exported from the United States without a license or other approval issued by the United States Department of State.

22 U.S.C. § 2778 (2016) (Pub. L. 113-276, 128 Stat. 2989 (Dec. 18, 2014)); 22 C.F.R. § 121.1 (*see generally* 78 Fed. Reg. 61750, 61754 (Oct. 3, 2013), and 81 Fed. Reg. 70340, 2016 WL 5911570 (Oct. 12, 2016) (describing relevant categories on USML)); 22 C.F.R. § 127.1 (*see* 71 Fed. Reg. 20534-01, 2006 WL 1036045 (Apr. 21, 2006) and subsequent rule changes describing willful violations of the AECA); *United States v. Roth*, CR 3-08-69, ECF 99 at 97-98 (E.D. Tenn. Sept. 2, 3, 2008).

**Government's Proposed Instruction No. 15**

**Exporting Technical Data Without a License (22 U.S.C. §§ 2778(b)(2) & (c))**

Defendants **PHIL PASCOE, SCOTT TUBBS**, and **QUADRANT MAGNETICS** are charged in Counts 5 through 8 of the Indictment with unlawfully exporting and attempting to export from the United States to China defense articles, specifically technical data for how to produce magnets that are used in optical periscopes, multi-spectral targeting systems, infrared imaging systems, and night vision systems, without first having obtained a license from the United States Department of State, in violation of the Arms Export Control Act and International Traffic in Arms Regulations.  Furthermore, the Indictment alleges that unlawful export of defense articles in violation of AECA was one of the crimes that was an object of the conspiracy charged in Count 1.

In order for the defendants to be found guilty of unlawfully exporting a defense article as alleged in each separate Count, the government must prove each of the following three elements beyond a reasonable doubt:

First:  The defendant exported, attempted to export, or caused to be exported from the United States a defense article, including technical data, that is listed on the United States Munitions List;

Second:  That the defendant exported the defense article, including technical data, without having first obtained a valid license or written approval from the United States Department of State;

Third:  That the defendant acted knowingly and willfully in exporting the defense article, including technical data, without a license.

*See United States v. Roth*, CR 3-08-69, ECF 99 at 98-99 (E.D. Tenn. Sept. 2, 3, 2008).

**<u>Government's Proposed Instruction No. 16</u>**

**<u>Export</u>**

The term "export" means a shipment or transmission out of the United States, including the sending or taking of a defense article out of the United States in any manner, or releasing or otherwise transferring technical data to a foreign person in the United States. The term "foreign person" means any person who is not a citizen or national of the United States or lawfully admitted to the United States for permanent residence, and includes foreign corporations.

22 U.S.C. § 2778(9)(C) (Pub. L. 113-276, 128 Stat. 2989 (Dec. 18, 2014); 22 C.F.R. § 120.17 (81 Fed. Reg. 35611, 35616 (June 3, 2016)).

## Government's Proposed Instruction No. 17

### Defense Article

The term "defense article" means any item or technical data designated in the United States Munitions List and includes technical data recorded or stored in any physical form, models, mockups or other items that reveal technical data directly relating to items designated in the United States Munitions List.

22 C.F.R. § 120.6 (79 Fed. Reg. 61226, 61227 (Oct. 10, 2014)).

## Government's Proposed Instruction No. 18

## Technical Data

The term "technical data" means information that is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles. This includes information in the form of blueprints, drawings, photographs, plans, instructions and documentation.

22 C.F.R. § 120.10 (79 Fed. Reg. 61226, 61227 (Oct. 10, 2014)).

**Government's Proposed Instruction No. 19**

**Categories on the USML**

The United States Munitions List includes the following designated defense articles which cannot be exported from the United States without a license issued by the United States Department of State:

Designated defense articles in Category XX include submersible and semi-submersible vessels that are submarines specially designed for military use, parts and components specially designed for such vessels, and technical data directly related to such vessels, parts, and components.

Designated defense articles in Category XII include electro-optical reconnaissance, surveillance, target detection, or target acquisition systems, specially designed for articles in this subchapter or specially designed for a military end user, parts and components specially designed for such systems, and technical data directly related to such systems, parts and components.

22 C.F.R. § 121.1 (*see* 78 Fed. Reg. 61750, 61754 (Oct. 3, 2013) (updating Category XX of the USML); *see also* 81 Fed. Reg. 70340, 2016 WL 5911570 (Oct. 12, 2016) (updating Category XII of the USML)).

**Government's Proposed Instruction No. 20**

**Item Exported Was a Covered Defense Article**

As I previously explained, the United States Munitions List includes technical data directly related to parts and components "specially designed" for enumerated defense articles.

A commodity is specially designed it if is a part, component, accessory, attachment, or software for use in or with a defense article, and it does not fall within one of five exceptions listed in the United States Munitions List. As relevant here, one exception to the specially designed inquiry is as follows: a part or component is not specially designed if it has the same function, performance capabilities, and the same or equivalent form and fit as a commodity or software used in or with a commodity that is or was in production (*i.e.*, not in development) and is not enumerated on the United States Munitions List.  An enumerated commodity is any item designated on the United States Munitions List that is not in a catch-all control, and a catch-all control is one that does not refer to specific types of parts, components, accessories, or attachments.

The United States Munitions List defines many of the terms used to determine if an item falls within the exception to "specially designed" I just described. I will read you those definitions now:

Form: The form of a commodity is defined by its configuration (including the geometrically measured configuration), material, and material properties that uniquely characterize it.

Fit: The fit of a commodity is defined by its ability to physically interface or connect with or become an integral part of another commodity.

Function: The function of a commodity is the action or actions it is designed to perform.

Performance capability: Performance capability is the measure of a commodity's effectiveness to perform a designated function in a given environment (e.g., measured in terms of speed, durability, reliability, pressure, accuracy, efficiency).

Equivalent: With respect to a commodity, equivalent means its form has been modified solely for fit purposes.

In sum, a license is required to export technical data directly related to specially designed parts and components for an enumerated defense article on the USML. In Counts 5 through 8, the government is required to prove that the technical data alleged in each count was designated on the United States Munitions List. If you find that the government has proved beyond a reasonable doubt that the technical data was designated at the time that it was allegedly exported, you should conclude that the government has met its burden as to this element.

22 U.S.C. § 2778(a)(1) (Pub. L. 113-276, 128 Stat. 2989 (Dec. 18, 2014)); 22 C.F.R. § 120.41 (78 Fed. Reg. 61750, 61754 (Oct. 3, 2013)).

## Government's Proposed Instruction No. 21

## Failure to Obtain Required License from the U.S. Department of State

Unless specifically exempted, persons engaged in the export of defense articles, including technical data, covered by the United States Munitions List must be registered with the U.S. Department of State, and must apply for and receive a valid license or other approval to export the defense article from the United States. The term "license" means a document bearing the word license issued by the Department of State that permits the export of a specific defense article, including technical data, controlled by the ITAR.

22 U.S.C. § 2778(a)(1) (Pub. L. 113-276, 128 Stat. 2989 (Dec. 18, 2014)); 22 C.F.R. § 120.20 (79 Fed. Reg. 8082, 8084, 2014 WL 508473 (Feb. 11, 2014)); 22 C.F.R. § 122 (78 Fed. Reg. 52680, 52686 (Aug. 26, 2013) (registration requirements)); *see generally* 22 C.F.R. § 120, 123, 124, 125, 126 (81 Fed. Reg. 35611, 2016 WL 3088250 (June 3, 2016) (updating requirement to register for license and listing certain exceptions)).

### Government's Proposed Instruction No. 22

### Willfully

An act is done willfully if it is committed with the knowledge that it was prohibited by law or was done in disregard of a known legal obligation.  The government must prove that the defendant acted with knowledge that his conduct was unlawful.  While the government must show that the defendant knew that his or her conduct was unlawful, it is not necessary for the government to show that the defendant was aware of the specific law or rule that his or her conduct may have violated.  In other words, the government need not prove that the defendant had read, was aware of, or had consulted the United States Munitions List, or the licensing provisions of the Arms Export Control Act or the International Traffic in Arms Regulations. The government, however, must prove beyond a reasonable doubt that the defendant knew that his or her conduct was unlawful.

*United States v. Roth*, CR 3-08-69, ECF 99, at 99 (E.D. Tenn. Sept. 2, 3, 2008) (instructing the jury that "[t]o prove that defendant acted knowingly and willfully, the government must prove beyond a reasonable doubt that the defendant voluntarily and intentionally violated a known legal duty. In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something he knew was unlawful, that is to say, with intent either to disobey or disregard the law."); *see Bryan v. United States*, 524 U.S.  184 (1998); *see also United States v. Henry*, 888 F.3d 589, 592 (2d Cir. 2018); *United States v. Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010); *United States v. Brodie*, 403 F.3d 123, 147 (3rd Cir. 2005) (similar).

## Government's Proposed Instruction No. 23

### Attempt

(1) Counts 5 through 8 of the Indictment accuse the defendants of attempting to commit the crime of unlawful export of defense articles without a license in violation of AECA. For you to find any of the defendants guilty of this crime, you must be convinced that the government has proved both of the following elements beyond a reasonable doubt:

(A) First, that the defendant intended to commit the crime of unlawful export of a defense article without a license.

(B) And second, that the defendant did some overt act that was a substantial step towards committing the crime of unlawful export of a defense article without a license.

(C) Merely preparing to commit a crime is not a substantial step. The defendant's conduct must go beyond mere preparation, and must strongly confirm that he or she intended to unlawfully export a defense article without a license. But the government does not have to prove that the defendant did everything except the last act necessary to complete the crime. A substantial step beyond mere preparation is enough. A substantial step must be something beyond more than mere preparation, and must show that a fragment of the crime was essentially in progress.

(2) If you are convinced that the government has proved both of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about either one of these elements, then you must find the defendant not guilty.

Pattern Crim. Jury Instr. 6th Cir. 5.01 (2023); *United States v. Alebbini*, 979 F.3d 537, 546-47 (6th Cir. 2020) ("A substantial step must be something more than mere preparation;" "[e]vidence is sufficient to sustain a conviction for criminal attempt, if it shows that the defendant's conduct goes beyond preliminary activities and a fragment of the crime was essentially in progress") (*first quoting United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) (cleaned up), *then quoting United States v. Price*, 134 F.3d 340, 351 (6th Cir. 1998) (cleaned up)).

## Government's Proposed Instruction No. 24

## Impossibility is No Defense to Attempt to Unlawfully Export

Because attempt to unlawfully export a defense article without a license requires only intent to commit the crime and some overt act that was a substantial step towards committing the crime, the government does not need to prove that the defendant actually committed each element of the crime of unlawful export, and a defendant may be convicted even though he or she was incapable of committing the substantive offense. Indeed, it is no defense to a charge of attempt that the completion of the criminal act was impossible.

As I have instructed you, Counts 5 through 8 of the Indictment charge the defendants with unlawfully exporting and attempting to export from the United States to China defense articles, specifically technical data for how to produce magnets that are used in optical periscopes, multi-spectral targeting systems, infrared imaging systems, and night vision systems, without first having obtained a license from the United States Department of State, in violation of the Arms Export Control Act and International Traffic in Arms Regulations. The government and the defendants dispute whether the technical data that the defendants are accused of exporting from the United States were in fact defense articles under AECA. As I have instructed you, the government bears the burden of proving beyond a reasonable doubt that defendants exported or attempted to export the defense articles charged in Counts 5 through 8 in violation of AECA. But I instruct you that it is no defense to the charge of attempt to unlawfully export in Counts 5 through 8 that it would have been impossible for defendants to complete a violation of AECA because the technical data they agreed to export without a license were not actually defense articles under AECA. If the government proves that defendants believed that any technical data they attempted to export were defense articles under AECA, you may find them guilty of attempt to unlawfully export charged

in Counts 5 through 8, even if defendants' belief was mistaken.

*United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) ("[L]egal impossibility is not a defense to prosecution under [the statute prohibiting attempt to steal trade secrets]"; "Since [defendants] intended to commit the crime and took a substantial step towards commission of the crime, they violated [the statute prohibiting attempt to steal trade secrets]" (citing *United States v. Shelton*, 30 F.3d 702, 705 (6th Cir. 1994))); *United States v. Hsu*, 155 F.3d 189, 202-03 (3d Cir. 1998) ("[L]egal impossibility is not a defense to a charge of attempt[]"; holding in trade secret case that "[t]he government can satisfy its burden under [statute prohibiting attempt to steal trade secrets] by proving beyond a reasonable doubt that the defendant sought to acquire information which he or she believed to be a trade secret, regardless of whether the information actually qualified as such"); *United States v. King*, No. 1:05-CR-247, 2006 WL 2367339, at *2 (W.D. Mich. Aug. 14, 2006) ("The continued validity of the legal impossibility defense in the Sixth Circuit is, at best, suspect . . . .").

**Government's Proposed Instruction No. 25**

**Smuggling or Attempting to Smuggle Goods from the United States (18 U.S.C. § 554)**

**PHIL PASCOE, SCOTT TUBBS**, and **QUADRANT MAGNETICS** are charged in Count 9 of the Indictment with smuggling and attempting to smuggle merchandise, to wit, technical data in the form of drawings for how to produce magnets used for defense articles, from the United States in violation of Section 554 of Title 18 of the United States Code. Furthermore, the Indictment alleges that smuggling was one of the crimes that was an object of the conspiracy charged in Count 1. For the defendants to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly and fraudulently exported, sent, facilitated, or attempted to export, facilitate, or send from the United States technical data; and

Second, the exportation, sending, or facilitation or attempted export, sending, or facilitation was contrary to the Arms Export Control Act; and

Third, the defendant knew the exportation, sending, facilitation, or attempt to export, send, or facilitate was contrary to law or regulation.

For an attempt to export, send, or facilitate export from the United States, you must also find that fourth, the defendant did something that was a substantial step toward committing the crime. A substantial step must be something beyond more than mere preparation, and must show that a fragment of the crime was essentially in progress.

Exportation or sending of technical data from the United States may include transmission of technical data via email or electronic means.

Model Crim. Jury Instr. 9th Cir. 21.2 (2024); 22 C.F.R. § 120.10 (79 Fed. Reg. 61226, 61227, 2014 WL 5036040 (Oct. 10, 2014) (defining technical data)); *see generally* 22 C.F.R. § 121.1 (listing intangible items in United States Munitions List categories); *see United States v. Alebbini*, 979 F.3d 537, 546-47 (6th Cir. 2020) ("A substantial step must be something more than mere

preparation;" "[e]vidence is sufficient to sustain a conviction for criminal attempt, if it shows that the defendant's conduct goes beyond preliminary activities and a fragment of the crime was essentially in progress") (*first quoting United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) (cleaned up), *then quoting United States v. Price*, 134 F.3d 340, 351 (6th Cir. 1998) (cleaned up)); *Former Emps. of Computer Scis. Corp. v. U.S. Sec'y of Labor.*, 414 F. Supp. 2d 1334, 1340 (Ct. Int'l Trade 2006) (holding that the term "article" within the Trade Act includes intangible goods); *see also Oxford English Dictionary* ("article (n.), sense V.14.a - A particular material thing, esp. one belonging to a specified class; a commodity; an item of goods or property. Also occasionally used of an immaterial thing."); *Black's Law Dictionary* (11th ed. 2019) (defining "article" as "[g]enerally, a particular item or thing," without reference to tangibility).

**Government's Proposed Instruction No. 26**

**Accomplice Liability: Aiding and Abetting (18 U.S.C. § 2(a))**

(1) For you to find defendants guilty of wire fraud, exporting technical data without a license, or smuggling as alleged in Counts 2 through 9, it is not necessary for you to find that each defendant personally committed the crime. You may also find a defendant guilty if he intentionally helped or encouraged someone else to commit the crime. A person who does this is called an aider and abettor.

(2) But for you to find the defendant guilty of the charges in Counts 2 through 9 as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A) First, that the crime of wire fraud, exporting technical data without a license, or smuggling was committed.

(B) Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime.

(C) And third, that the defendant intended to help commit or encourage the crime.

(3) Proof that the defendant may have known about the crime, even if he or she was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he or she was an aider and abettor, but without more it is not enough.

(4) What the government must prove is that the defendant did something to help or encourage the crime with the intent that the crime be committed.

(5) If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these

elements as to one of the charges listed in Counts 2 through 9, then you cannot find the defendant guilty as an aider and abettor for that charge.

Pattern Crim. Jury Instr. 6th Cir. 4.01 (2023).

## Government's Proposed Instruction No. 27

## Corporate Criminal Responsibility

The defendant **QUADRANT MAGNETICS** is a corporation. A corporation is a legal entity that may act only through individuals who are called its agents. The agents of a corporation are its officers, directors, employees, and other persons who are authorized by the corporation to act for it.

You may find a corporate defendant guilty or not guilty of the offense(s) charged under the same instructions that apply to an individual defendant. You must give to a corporate defendant the same impartial consideration of the evidence that you would give to any individual.

The legal responsibility of a corporation, if any, is based on the conduct of its agents. In this case, the government has alleged that some of those agents are defendants **SCOTT TUBBS**, Vice President of Sales and Marketing for **QUADRANT MAGNETICS**, **PHIL PASCOE**, Vice President of Operations and later President of **QUADRANT MAGNETICS**, and **MONICA PASCOE**, accounting manager for **QUADRANT MAGNETICS**. In addition, those agents may include any other officer, director, employee, or other person authorized by the corporation to act for it. For example, you have heard from other **QUADRANT MAGNETICS** employees as witnesses in this trial. If those employees described actions of themselves or any other person who was an officer, director, employee, or other person authorized by **QUADRANT MAGNETICS** to act for it, you may consider those actions to be actions of **QUADRANT MAGNETICS**.

To find **QUADRANT MAGNETICS** guilty of conspiracy to unlawfully export technical data, to smuggle goods outside the United States in violation of the International Traffic in Arms Regulations and the Arms Export Control Act, to commit wire fraud, and to make material false

statements or writings, as charged in Count 1, wire fraud, as charged in Counts 2 through 4, unlawful export of technical data without a license, as charged in Counts 5 through 8, or smuggling, as charged in Count 9, you must find that the government proved beyond a reasonable doubt each of the following three requirements:

First: That each of the elements of the offenses of conspiracy, wire fraud, unlawful export of technical data, and smuggling was committed by an officer, director, employee, or other agent of **QUADRANT MAGNETICS**. I have explained in these instructions the elements of conspiracy, making material false statements, wire fraud, unlawful export of technical data, and smuggling.

Second: That each of the acts committed by **SCOTT TUBBS,** Vice President of Sales and Marketing for **QUADRANT MAGNETICS**, **PHIL PASCOE**, Vice President of Operations and later President of **QUADRANT MAGNETICS**, **MONICA PASCOE**, accounting manager for **QUADRANT MAGNETICS,** or acts committed by any other person who was an officer, director, employee, or other person authorized by **QUADRANT MAGNETICS** to act for it were within the course and scope of the employment or agency given to the officer or employee or within the officer or employees' actual or apparent authority; and

Third: That **SCOTT TUBBS,** Vice President of Sales and Marketing for **QUADRANT MAGNETICS**, **PHIL PASCOE**, Vice President of Operations and later President of **QUADRANT MAGNETICS**, **MONICA PASCOE**, accounting manager for **QUADRANT MAGNETICS,** or any other person who was an officer, director, employee, or other person authorized by **QUADRANT MAGNETICS** to act for it committed each of these acts with the intent to benefit **QUADRANT MAGNETICS**.

In order to find that an act was committed within the course and scope of the employment or agency or within actual or apparent authority given to **SCOTT TUBBS,** Vice President of Sales and Marketing for **QUADRANT MAGNETICS**, **PHIL PASCOE**, Vice President of Operations and later President of **QUADRANT MAGNETICS**, **MONICA PASCOE**, accounting manager for **QUADRANT MAGNETICS,** or any other person who was an officer, director, employee, or other person authorized by **QUADRANT MAGNETICS** to act for it, the evidence must prove that the act related directly to the general duties that **SCOTT TUBBS,** Vice President of Sales and Marketing for **QUADRANT MAGNETICS**, **PHIL PASCOE**, Vice President of Operations and later President of **QUADRANT MAGNETICS**, **MONICA PASCOE**, accounting manager for **QUADRANT MAGNETICS,** or any other person who was an officer, director, employee, or other person authorized by **QUADRANT MAGNETICS** to act for it was expected to perform by **QUADRANT MAGNETICS**. However, the government does not need to prove that the act was authorized by **QUADRANT MAGNETICS** formally or in writing.  Apparent authority is the authority that outsiders could reasonably assume the agent would have, judging from his position with the company, the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

A corporation may also be liable if it adopts, approves, or ratifies an agent's acts. An act is approved if, after it is performed, another agent of the corporation, having full knowledge of the act and acting within the scope of his or her employment and with the intent to benefit the corporation, approves the act by his or her words or conduct. A corporation is responsible for any act or omission approved by its agents.

Model Crim. Jury Instr. 3rd Cir. 7.06 (2023); *see Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) ("Under an apparent authority theory, vicarious '[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be

acting in the ordinary course of the business provided to him.'" (quoting *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982)); Model Crim. Jury Instr. 8th Cir. 5.03 (2021) ("If you find that an act of an agent was not committed within the scope of the agent's employment or with intent to benefit the corporation, then you must consider whether the corporation later approved the act. An act is approved if, after it is performed, another agent of the corporation, having full knowledge of the act and acting within the scope of his employment and with the intent to benefit the corporation, approves the act by his words or conduct. A corporation is responsible for any act or omission approved by its agents.")

**<u>Government's Proposed Instruction No. 28</u>**

**<u>Personal Responsibility of Corporate Agent</u>**

A person who acts on behalf of a corporation or limited liability company also is personally responsible for what he or she does or causes someone else to do. This is so even if the person acted on instructions of a superior.

Fed. Crim. Jury Instr. 7th Cir. 5.02 (2023); Model Crim. Jury Instr. 8th Cir. 5.04 (2021).

<u>**Government's Proposed Instruction No. 29**</u>

<u>**Agent's Crimes Need Benefit the Corporation Only in Part**</u>

To be acting within the scope of his or her employment or with actual or apparent authority, the agent first must have intended that his act would produce some benefit to the corporation. The agent's acts or statements need not actually have resulted in any benefit to the corporation. As long as the agent intended to benefit the corporation in some manner, the fact that he may also have acted for other reasons as well, such as for his own personal benefit, is of no consequence. A corporation may be liable for its agent's criminal acts even if the agent intends *in part* to benefit the corporation; he or she may also intend to benefit himself or herself.  That may be true even if the dominant motivation of the agent is self-interest.  It is not necessary for you to find that the agent's actions have actually benefitted the corporation. You need only find that the agent was motivated in some degree by a purpose of benefitting the affairs of the corporation.

Ninth Circuit Model Criminal Jury Instruction 6.16; *see United States v. Carter*, 311 F.2d 934, 941-43 (6th Cir. 1963) (corporation may be liable for employee acts done "in furtherance of the business interests of, his company"; "[p]roof of an actual benefit to the corporation in such circumstances is not essential to its responsibility"; corporate liability extends at least so long as it is not the case that "illegal conduct of its agents was shown to be solely for the personal gain of such agents"); *see also Automated Medical Laboratories, Inc.*, 770 F.2d 399, 407 (4th Cir. 1985) (discussing corporate liability for agent's criminal acts intended in part to benefit corporation)*; United States v. Gold*, 743 F.2d 800, 823 (11th Cir. 1984) (corporate criminal liability is proper when the acts of a corporate officer were "actuated, at least in part, by a purpose to serve the master" (quoting Prosser, Torts § 70 (4th ed. 1971)); KATHLEEN F. BRICKEY, CORPORATE CRIMINAL LIABILITY § 4:02, at 136 (1992) ("Conduct [may satisfy the 'intent to benefit' requirement] . . . even though it is actuated by the dual purposes of performing the employer's work and of furthering objects in conflict with his interests. That may be true even if the dominant motivation of the disloyal agent is self interest. . . . Actual benefit, of course, is not essential to hold the principal liable."); BRICKEY § 1:04, at 10 n.38 ("A corporation's criminal responsibility is not, however, continent upon receipt of actual tangible benefit. The test is whether the agent was actuated in some degree by a purpose of forwarding the affairs of the enterprise.").

## Government's Proposed Instruction No. 30

### A Corporation's Good Faith or Policies to Prevent
### Criminal Violations Is Not a Defense to Liability

A corporation may be liable even when it expressly prohibits the agent's conduct or when the agent acts contrary to the corporation's actual instructions or stated policies. Purported good faith efforts by a corporation to prevent unlawful action, including through periodic compliance programs or instructions, are not a defense to corporate criminal liability.

*United States v. Potter*, 463 F.3d 9, 25-26 (1st Cir. 2006) ("The case law has rejected arguments that the corporation can avoid liability by adopting abstract rules that no agent can make an unlawful [act]"; "Even a specific directive to an agent or employee or honest efforts to police such rules do not automatically free the company for the wrongful acts of agents."); *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 407 (4th Cir. 1985) ("The fact that many of [the agents'] actions were unlawful and contrary to corporate policy does not absolve [the corporation] of legal responsibility for their acts"); *United States v. Beusch*, 596 F.2d 871, 877-78 (9th Cir. 1979) (affirming instruction that corporation may be responsible for agents' acts made within the scope of its authority "even though the agent's' conduct may be contrary to the corporation's actual instruction or contrary to the corporation's stated policies"); KATHLEEN F. BRICKEY, CORPORATE CRIMINAL LIABILITY § 3:01, at 90 (1992) ("[C]riminal conduct may occur within the scope of employment even though the agent is not authorized to commit crimes and despite good faith efforts to prevent their commission. Indeed, acts in disobedience of specific prohibitions against them have been held to occur with the scope of the agent's employment.").

## Government's Proposed Instruction No. 31

## Knowledge and Intent of a Corporation

Knowledge obtained by corporate agents, including employees, officer, directors, or other agents, is imputed to the corporation, regardless of when that knowledge was obtained. Accordingly, if a specific agent, including an employee, officer or director, knows something, then the corporation can be said to know that same thing.

A corporation is also considered to have acquired the collective knowledge of its employees. The corporation's "knowledge" is therefore the totality of what its employees know within the scope of their employment.

Similarly, the intent of corporate agents, including employees, officers, directors, or other agents, is imputed to the corporation. Accordingly, if a specific agent, including an employee, officer, directors or other agent, intends something, then the corporation can be said to intend the same thing.

*Holt v. Southern Ry. Co.*, 51 F.R.D. 296, 299 (E.D. Tenn. 1969) ("[T]he knowledge of all of [the corporation's] officers and agents was the knowledge of the corporation. Notice of any fact acquired by one of its agents while transacting the business of the corporation was notice to the corporation" (citations omitted)); *see United States v. Bank of New England*, 821 F.2d 844, 856 (1st Cir. 1987) ("A collective knowledge instruction is entirely appropriate in the context of corporate criminal liability. . . . the corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act accordingly."); *United States v. Pacific Gas and Electric Co.*, Case No. 14-cr-00175-TEH, 2015 WL 9460313, at *3 (N.D. Cal. Dec. 23, 2015) ("[W]here a corporation has a legal duty to prevent violations, and the knowledge of the corporation's employees collectively demonstrates a failure to discharge that duty, the corporation can be said to have 'willfully' disregarded that duty" (citing *United States v. T.I.M.E.-D.C., Inc.*, 381 F. Supp. 730, 741 (W.D. Va. 1974)); 3 RESTATEMENT (SECOND) OF AGENCY § 276, at 471 (1958) (the "[g]reat weight of judicial authority is in accord with the rule" that "it is immaterial how or when an agent acquires knowledge which becomes relevant in transactions conducted by him for the principal, except where the knowledge has been acquired confidentially"); 1 RESTATEMENT (THIRD) OF AGENCY § 5.03 cmt. e, at 374 (2006) ("When an agent is aware of a fact at the time of taking authorized action on behalf of a principal and the fact is material to the agent's duties to the principal, notice of the fact is imputed to the principal although the agent learned the fact *prior to the agent's relationship with the principal*, whether through formal education, *prior work*, or otherwise. Likewise, notice is imputed to the principal of material facts that an agent learns casually or through experience in the agent's life

separate from work."); BRICKEY § 4:05, at 140-41 (footnotes omitted) ("Under the collective knowledge doctrine, a corporation may be held to knowingly violate the law even though no single agent intended to commit the offense or even knew of the existence of the operative facts that led to the violation.").

## Government's Proposed Instruction No. 32

### Expert Testimony

(1) You have heard the testimony of Steven Burton, Office of the Secretary of Defense, Defense Technology Security Administration, Alex Douville, U.S. Department of State, Defense Directorate of Trade Controls, Dr. Scott McCall or Lawrence Livermore National Laboratory, Dr. Stanley Trout, of Spontaneous Materials, and Mr. Thomas McCarthy, of Akin Gump Strauss Hauer & Feld LLP, who testified as opinion witnesses.

(2) You do not have to accept Mr. Burton, Mr. Douville, Dr. McCall, Dr. Trout, or Mr. McCarthy's opinion. In deciding how much weight to give their opinions, you should consider the witness's qualifications and how he reached his conclusions. Also consider the other factors discussed in these instructions for weighing the credibility of witnesses.

(3) Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

Pattern Crim. Jury Instr. 6th Cir. 7.03 (2023).

## Government's Proposed Instruction No. 33

## Other Acts of Defendant

(1)  You have heard testimony that the defendants committed wrongs other than the ones charged in the Indictment. If you find the defendants did those wrongs, you can consider the evidence only as it relates to the government's claim on the defendants' intent, motive, opportunity, knowledge, absence of mistake, or absence of accident. You must not consider it for any other purpose.

(2)  Remember that the defendants are on trial here only for conspiracy, unlawful export pursuant to the AECA and the ITAR, wire fraud, and smuggling, not for the other acts. Do not return a guilty verdict unless the government proves one or more of the crimes charged in the Indictment beyond a reasonable doubt.

Pattern Crim. Jury Instr. 6th Cir. 7.13 (2023).

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney
Western District of Kentucky

JENNIFER KENNEDY GELLIE
Executive Deputy Chief
Counterintelligence and Export Control Section
National Security Division

 s/ *Joshua D. Judd*
Joshua D. Judd
Christopher C. Tieke
Assistant U.S. Attorneys
717 W. Broadway
Louisville, KY 40202
(502) 582-5911
Joshua.judd@usdoj.gov
Christopher.tieke@usdoj.gov

s/ *Alex Wharton*
Alex Wharton
Leslie Esbrook
Trial Attorneys
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-4523
Alexander.wharton@usdoj.gov
Leslie.esbrook@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on February 26, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel for defendants.

         *s/Leslie Esbrook*
         Leslie Esbrook
         Trial Attorney