UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

v.                                                          CRIMINAL NO. 3:22-CR-88-DJH
                                                            ***Filed Electronically***

QUADRANT MAGNETICS, LLC et al.

## MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY
## OF THOMAS J. MCCARTHY

The United States moves *in limine* to exclude the expert testimony of Thomas J. McCarthy.
Defendants hired the global law firm of Akin Gump Straus Hauer & Feld LLP ("Akin") and one
of its partners, Thomas J. McCarthy, "to opine on the application of the ITAR to certain drawings
sent by Quadrant Magnetics, LLC." Ex. 1 (McCarthy Expert Report), at 2. Defendants also hired
Mr. McCarthy and Akin "to review and provide [an] opinion on the December 4, 2023 expert
reports of Mr. Alex Douville and Mr. Steven Burton submitted by the government." Ex. 2
(McCarthy Expert Rebuttal Report), at 2. Mr. McCarthy would testify that each of Quadrant
Magnetics' drawings that he reviewed "fall within the 22 C.F.R. § 120.41(b)(3) release." Ex. 1, at
5. As a result, Mr. McCarthy would testify that his ultimate conclusion is that each of the drawings
"is not controlled by the [United States Munitions List ("USML")], so no license is required prior
to export from the United States." *Id.*

Mr. McCarthy is no doubt qualified to testify as an expert about the International Traffic
in Arms Regulations ("ITAR"). Were he merely to testify regarding the relevant regulatory
framework surrounding Quadrant Magnetics' export activity to provide context for the jury, his
testimony would be less objectionable, albeit cumulative of other witness testimony. Mr.

1

McCarthy's expert report, however, makes clear Defendants' sole and improper purpose in calling him as an expert witness: to testify that what Defendants did was not illegal. Mr. McCarthy's testimony would usurp both the jury's role as fact finder on a dispositive issue and the Court's role of explaining to the jury how to apply the law to the facts presented at trial. His testimony would also be irrelevant and not assist the jury, present cumulative evidence, waste time, and be unfairly prejudicial. Accordingly, the Court should exclude Mr. McCarthy's expert testimony.

## I.   Legal Principles

A motion *in limine* refers to any motion to exclude inadmissible or prejudicial evidence before it is offered. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Relevant evidence is admissible unless "its probative value is substantially outweighed by a danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see* Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984).

Rule 702 assigns to the court the task of ensuring that an expert's testimony "will help the trier of fact" and that it rests on reliable foundation. *See* Fed. R. Evid. 702. The court's gatekeeping function is not limited to "scientific" experts, but rather "all expert testimony offered under Rule 702." *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994). In the Sixth Circuit, courts consider three factors when deciding whether expert testimony is admissible: (1) requisite qualifications, (2) relevancy, and (3) reliability. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). Courts must consider these factors in light of other applicable Rules of

Evidence, which of course apply to all testimony—including evidentiary rules regarding admissibility, relevance, and opinion testimony on ultimate issues. *See* Fed. R. Evid. 401, 402, 403, 704. Considered together, these Rules compel the Court to exclude Mr. McCarthy's testimony.

## II.   Argument

### a.   Mr. McCarthy Would Offer Inadmissible Legal Opinions Improperly Embracing an Ultimate Issue

Based on his blind assumptions that Dr. Trout's expert opinions regarding commercially equivalent comparator magnets are correct, Mr. McCarthy would testify that, in his expert opinion, five drawings of magnets that Defendants exported to China "are not covered by the USML." Ex. 1, at 6. As a result, in his opinion, "no license is required prior to export from the United States." Ex. 1, at 5. Defendants hired Mr. McCarthy as an expert to tell the jury the magnets Quadrant Magnetics manufactured in China, and therefore the related technical drawings that Defendants exported to China, are not on the USML. But Mr. McCarthy's testimony would improperly wrest an ultimate issue from the jury and usurp the Court's role in instructing the jury how to apply the law.

Counts Five through Eight of the Second Superseding Indictment ("Indictment), ECF 73, charge Defendants with exporting and attempting to export defense articles in the form of ITAR-controlled technical data to China, in violation of the Arms Export Control Act ("AECA") and ITAR. To prove Defendants exported technical data in violation of AECA, the government must prove, among other elements, that the exported defense article was on the USML. Under *United States v. Roth*, to prove that element in this case, the government must prove that the technical drawings Defendants exported "fall under the definition[] of technical data" on the USML. *See* 628 F.3d 827, 832 (6th Cir. 2011). Accordingly, Mr. McCarthy's opinion that neither Quadrant

Magnetics' magnets nor the related technical drawings are covered by the USML is an ultimate issue as to Defendants' guilt or innocence.

Pursuant to Federal Rule of Evidence 704, opinion testimony regarding an "ultimate issue" to be decided by the trier of fact is "[n]ot automatically objectionable." However, expert testimony that offers "nothing more than a legal conclusion—i.e., testimony that does little more than it would tell the jury what result to reach—is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). In its oft-cited decision in *Berry v. City of Detroit*, the Sixth Circuit explained Rule 704's distinction between testimony on an ultimate issue and legal conclusion as follows:

> It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so. When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue. We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.

25 F.3d at 1353. Moreover, Rule 704(a) "does not lower the bar so as to admit all opinions"—an evidentiary problem remains if "testimony containing a legal conclusion is allowed." *United States v. Smith*, 70 F. App'x 804, 809 (6th Cir. 2003) (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). This is so because "it is not for the witness to instruct the jury as to applicable principles of law, but for the judge." *Sahid v. City of Detroit*, 889 F.2d 1543, 1548 (6th Cir. 1989) (cleaned up) (quoting *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)). Mr. McCarthy's testimony would improperly state legal conclusions and instruct the jury as to applicable principles of law.

Defendants seek to have Mr. McCarthy not only embrace an ultimate issue in this case—i.e., whether the items Defendants exported as charged in Counts Five through Eight were defense articles on the USML—but decide it for the jury. In so doing, Mr. McCarthy would attempt to substitute his expert judgment for the jury's, which does not aid the jury in deciding the defense article element of an AECA offense. *See Lamar Co., LLC v. Lexington-Fayette Urb. Cnty. Gov't*, 2023 WL 3956149, at \*4 (E.D. Ky. June 12, 2023) (excluding expert testimony from licensed attorney; conclusory statements based upon expert's interpretation of the evidence must be excluded); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (collecting cases) ("In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion.").

Moreover, Mr. McCarthy's testimony reads like a jury instruction. *Compare, e.g.*, Ex 1, at 5-6 (defining key terms of "function," "performance capability," "form and fit," and "equivalent" under 22 C.F.R. § 120.41(b)(3)), *and* Defendants' Proposed Jury Instructions, ECF 125, at 17-18 (same). After defining the legal meaning of these key terms under the ITAR's specially designed provision, Mr. McCarthy merely would state that the purported comparator magnets Dr. Trout identified satisfy each exception requirement, based on his assumption that Dr. Trout's opinions are correct. Ex. 1, at 5-6 (stating as to each of the (b)(3) exception requirements: "Thus, assuming he is correct, this (b)(3) requirement is satisfied"). If he were to testify, Mr. McCarthy would improperly embrace "legal terminology that frames the ultimate legal conclusion that the jury must reach in the case." *Gough v. Louisville Jefferson Cnty. Metro Gov't*, 2016 WL 4535663, at \*2 (W.D. Ky. Aug. 30, 2016) (cleaned up); *see also Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (finding district court properly excluded expert report attempting to define legal terms, characterize government agency's view of regulations defining such, and offered no

specialized knowledge). While Mr. McCarthy might be an expert on the ITAR, "'he is not qualified to compete with the judge in the function of instructing the jury.'" *Berry*, 25 F.3d at 1354 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)).

For these very reasons, courts typically prohibit lawyers from interpreting the law and then testifying about how it applies to the facts of a particular case. *See, e.g., Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc) (holding testimony "which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case"); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044-46(D. Ariz. 2005) (holding law professors' discussion and application of law to facts of case irrelevant). Indeed, it is well established that "[n]either a lay witness nor an expert may simply in effect tell the jury what decision it should reach." 1 MCCORMICK ON EVID. § 16 & n.25 (8th ed., July 2022) (collecting cases); *see, e.g., Woods*, 110 F.3d at 1220 (affirming exclusion of expert testimony that attempted to tell jury what result to reach and consequently risked interfering with district court's jury instructions); *Whitmill v. City of Philadelphia*, 29 F. Supp. 2d 241, 246 (E.D. Pa. 1998) (finding expert testimony regarding legal issues would have usurped role of court and jury).[1]

---

[1] Every Court of Appeals has held similarly. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("[E]xpert testimony on such purely legal issues is rarely admissible."); *Hygh*, 961 F.2d at 364 (finding testimony that explicitly or implicitly communicates a legal standard to the jury objectionable); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (citations omitted) (stating expert witness prohibited from rendering legal opinion that usurps court's "pivotal role in explaining law to jury"); *Teague v. Bakker*, 35 F. 3d 978, 993 n.21 (4th Cir. 1994) ("Expert testimony as to the proper interpretation of applicable domestic law is inadmissible."); *Snap–Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law."); *Berry*, 25 F.3d at 1353 ("It is the responsibility of the court, not testifying witnesses, to define legal terms."); *United States v. Sinclair*, 74 F.3d 753, 757-58 n. 1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case."); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding abuse of discretion for district court to admit expert testimony about law); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) (finding reasonableness and foreseeability of reliance matters of law for court's determination and inappropriate subjects for

Mr. McCarthy's proffered testimony would be well outside the scope of what is permissible. He defines the legal meaning of key terms, including those at the core of Defendants' defense that Quadrant Magnetics' magnets were not on the USML. After admitting he is "not an expert on magnet performance capabilities or the magnet industry or market," Ex. 1, at 5, Mr. McCarthy would accept as true Dr. Trout's opinions regarding complex magnetic properties and then summarily apply the ITAR to Dr. Trout's opinions to determine that Quadrant Magnetics' magnets are not covered by the USML. Thus, Mr. McCarthy's testimony would communicate to the jury his conclusion on a dispositive issue—whether the technical data Defendants willfully exported to China were defense articles on the USML. The law does not permit such conclusory testimony on an ultimate issue.

### b. Mr. McCarthy's Testimony Would Not Assist the Jury

Mr. McCarthy's proposed testimony also would violate the precepts of Rules 401, 403, and 702. Aside from his inadmissible determination that Quadrant Magnetics' magnets are not on the USML, Mr. McCarthy would testify only about his undisputed qualifications, the general regulatory framework that the ITAR provides, and his assumptions that Dr. Trout's opinions

---

expert testimony.); *Specht*, 853 F.2d at 807 (citation omitted) ("To allow anyone other than the judge to state the law would violate the basic concept."); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citations omitted) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."); *Weston v. Washington Metro. Area Transit Auth.*, 78 F.3d 682, 684 n. 4 (D.C. Cir. 1996) (citation omitted) ("An expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702.").

regarding commercially equivalent comparator magnets are correct.[2] Neither Mr. McCarthy's qualifications nor the ITAR's general regulatory framework are at issue. Accordingly, his testimony in this regard would not be relevant, and the Court should exclude it pursuant to Rule 401. Any probative value this testimony might have also would be outweighed by danger of it being cumulative and a waste of time, and the Court should exclude it on that basis pursuant to Rule 403. *See Kolesar v. United Agri Prods., Inc.*, 412 F. Supp. 2d 686, 698 (W.D. Mich. 2006) (excluding testimony that does not help the jury determine a fact in issue "as a waste of court time").

Mr. McCarthy's uncritical reliance on Dr. Trout's opinions demonstrates that his testimony would confuse the jury and be unreliable. *See* Fed. R. Evid. 403, 702(c). Mr. McCarthy concedes he is "not an expert on magnet performance capabilities or the magnet industry or magnet." Ex. 1, at 5. Because he does not know magnets or the magnet industry, *each and every* one of Mr. McCarthy's conclusions would rely exclusively on his assumption that Dr. Trout's opinions regarding comparator magnets, and their satisfaction of the "function," performance capability," and "form and fit" exception provisions under 22 C.F.R. § 120.41(b)(3), are correct. Ex. 1, at 5-6. Mr. McCarthy is an international trade lawyer with no specialized knowledge of magnets. Were he to testify, the jury would be asked to assume Dr. Trout's opinions are correct when evaluating Mr. McCarthy's testimony, significantly confusing and misleading the jury under Rule 403.

---

[2] Aside from a brief response to the government's expert witness reports, *see* Ex. 2, at 5-6, Mr. McCarthy's rebuttal expert report is entirely duplicative of his expert report. In his rebuttal portion, Mr. McCarthy seeks to question whether Mr. Douville and Mr. Burton applied "the correct legal test or describe[d] all relevant facts in analyzing whether the drawings of the QM Magnets are covered by the USML." Ex. 2, at 5. Defendants raised this argument in their Motion *in Limine* to Exclude Expert Testimony from Alex Douville and Steven Burton, which the parties fully briefed. *See* ECF 91, 107, 119. For the reasons stated in the government's response, ECF 107, Defendants' position is meritless. In any event, Mr. Douville and Mr. Burton supplemented their expert disclosures to put to rest Mr. McCarthy's and Defendants' unfounded concerns. *See* ECF 119-1 (Douville Supplemental Expert Report), ECF 119-2 (Burton Supplemental Expert Report).

Further, Mr. McCarthy's expert testimony would be unreliable because expert testimony cannot be based merely on assumptions. *See Builders Mut. Ins. Co. v. GCC Constr., LLC*, --- F. Supp. 3d ---, 2024 WL 71715, at *9 (E.D. Tenn. Jan. 5, 2024) (quoting *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000)) ("Expert testimony based on 'shaky' evidence is admissible, so long as the testimony is not based on 'guesses' or 'assumptions.'"); *cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (stating nothing in evidentiary rules "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Federal Rule of Evidence 702 requires that expert testimony be "the product of reliable principles and methods," and Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) requires that an expert report disclose "the bases and reasons" for an expert's opinions. Respectfully, Mr. McCarthy has no idea whether the other magnets Dr. Trout identified meet the narrow exception criteria under 22 C.F.R. § 120.41(b)(3), further highlighting that his testimony would merely tell the jury what conclusion to reach based on an underlying analysis about which he has no specialized knowledge or expertise. And the only "bases and reasons" for his opinions are assumptions regarding Dr. Trout's opinions. His testimony would be neither helpful to the jury nor reliable and, for these additional reasons, the Court should exclude it.[3]

Moreover, as the government will show at trial, Dr. Trout did not even identify commercially equivalent magnets that meet the exception provisions under 22 C.F.R. § 120.41(b)(3), utterly disregarding certain magnetic properties in his analysis and glossing over

---

[3] The government primarily seeks to preclude Mr. McCarthy's testimony based on relevance and because he would embrace improperly an ultimate issue. Moreover, any purported relevance of his testimony would be outweighed substantially by risk of confusing the jury, wasting time, and unfair prejudice. Accordingly, the government's motion is framed properly as a motion *in limine* rather than a *Daubert* motion challenging his qualifications and methodology. *See In re Com. Money Ctr., Inc.*, 737 F. Supp. 2d 815, 822 (N.D. Ohio 2010) (finding motions seeking to exclude expert witnesses from offering legal opinions and opinions as to ultimate facts motions *in limine* rather than "true *Daubert* motions").

significant differences between the magnets produced by Quadrant Magnetics and those he identified. Indeed, most of Dr. Trout's magnets are not relevant comparisons. Dr. Trout identified five comparator magnets that purportedly meet the exception provisions under 22 C.F.R. § 120.41(b)(3). *See* Ex. 3 (Trout Expert Report), at 7-10. Dr. Trout identified three specific magnets and two specific drawings. Ex. 3, at 7. The three comparator magnets that Dr. Trout identified were on the market when he prepared his report—i.e., in "late 2023." *See* Ex. 3, at 10. One of the drawings he identified (for a prototype)[4] was dated July 29, 2022. *Id*. The other drawing he identified was revised in 2015. *Id*. Assuming arguendo that Dr. Trout could conduct the requisite analysis of magnetic properties based on a drawing rather than the magnet itself, four of the five magnets Dr. Trout identified are not relevant comparators because the charged AECA violations involving Quadrant Magnetics' magnets occurred in 2018 or earlier. *See, e.g.*, *United States v. Piquet*, 372 Fed. App'x 42, 48 (11th Cir. 2010) (citing 22 U.S.C. § 2778(b)(2)) ("The government must therefore prove that the defense article was on the USML at the time of the alleged conduct."); *see also* 22 C.F.R. § 120.41(b)(3)(i) (providing relevant commodity for "same or equivalent" analysis is one that "is or was in production" at the time). Mr. McCarthy's blind assumption that Dr. Trout's analysis was correct compounds the temporal error, among other errors that the government will elicit during its cross-examination of Dr. Trout.[5] Mr. McCarthy's conclusions

---

[4] Magnets that were in development are not proper comparators for purposes of the ITAR's specially designed provision. *See* 22 C.F.R. § 120.41(b)(3)(i) (excluding equivalent commodities that were in development).

[5] Dr. Trout assumes—based on his opinion that the magnets are "unremarkable, standard, and fungible"—that the magnets themselves or similar magnets "existed on the commercial market from 2016 to 2018." Ex. 3, at 10. At trial, the government anticipates presenting evidence refuting Dr. Trout's assertions and eliciting from Dr. Trout on cross-examination several fallacies in his expert opinions that will show his testimony is unreliable, that he misapplied the ITAR, and that he did not identify any comparator magnets meeting the exception under 22 C.F.R. § 120.41(b)(3).

that Quadrant Magnetics' magnets "are" not controlled, that the drawings "are" not on the USML, and that no license "is" required for their export in 2024, are irrelevant.

Finally, the Court should exclude Mr. McCarthy's testimony because any relevance would be substantially outweighed by a risk of unfair prejudice based on his background and credentials. *See* Fed. R. Evid. 403. Mr. McCarthy is a partner at an elite global law firm where he practices international trade and export control law. A jury listening to an attorney who is an expert on the law in these areas would be expected to give "special credence" to such testimony. *See Zipkin*, 729 F.2d at 387 & n.2 (finding testimony of two lawyers regarding receivership law and bankruptcy judge regarding bankruptcy law prejudicial and improper opinion testimony); *see also Specht*, 853 F.2d at 808 ("There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness."). Courts prohibit expert legal opinions from attorneys to prevent a jury from adopting the lawyer's conclusions rather than making its own decision. Courts also exclude expert testimony from lawyers to prevent the jury from determining that "the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of law." *Specht,* 853 F.2d at 809 (citing *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977)) (finding expert legal testimony should have been excluded because "a practical and experienced view of the trial world strongly suggests that the jury's deliberation was unduly prejudiced by the expert's testimony").

In light of Mr. McCarthy's law practice and professional credentials, the jury surely would accord his expert testimony special credence. Moreover, not only is Mr. McCarthy a lawyer, but his testimony also would come with the imprimatur of an elite global law firm. Accordingly, the prejudicial effect of his testimony would substantially outweigh any limited probative value.

## CONCLUSION

For the reasons stated herein, the Court should grant the government's motion *in limine*.

Respectfully submitted,

MICHAEL A. BENNETT                JENNIFER KENNEDY GELLIE
United States Attorney            Executive Deputy Chief
Western District of Kentucky      Counterintelligence and Export Control Section
                                  National Security Division


 s/ *Joshua D. Judd*              s/ *Alex Wharton*
Joshua D. Judd,                   Alex Wharton
Christopher C. Tieke              Leslie C. Esbrook
Assistant U.S. Attorneys          Trial Attorneys
717 W. Broadway                   950 Pennsylvania Ave., NW
Louisville, KY 40202              Washington, DC 20530
(502) 582-5911                    (202) 514-4523
Joshua.judd@usdoj.gov             alexander.wharton@usdoj.gov
Christopher.tieke@usdoj.gov       leslie.esbrook@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On March 4, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the Defendants.


s/ *Alex Wharton*
Trial Attorney