UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** <br><br> v. <br><br> **Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

## DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO THE QUALITY OF QUADRANT'S MAGNETS

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Monica Pascoe, and Scott Tubbs ("Defendants") move this Court for an order excluding any evidence related to the quality of Quadrant's magnets, including evidence of tests of the magnets, evidence of investigations into the magnets' quality, or evidence of the purported need for the magnets to meet certain specifications. The second superseding indictment (indictment) alleges various offenses on the bases that Quadrant violated the export and import laws and concealed or misrepresented those violations. (*See* D.N. 73.) Nothing in the indictment alleges anything about the quality of Quadrant's magnets. Were the government to introduce such evidence, it would be overwhelmingly rebutted at trial. The U.S. Navy rejected the very quality tests the government seeks to introduce. Quadrant makes magnets for Apple, Samsung, and some of the other most highly respected and technically demanding customers on the planet. And from October 2017 to September 2018, at the peak of the purported fraud scheme, Quadrant had a 99.85% part acceptance rate from General Dynamics, one of the supposed victims of the scheme. But even so, evidence on the issue of Quadrant's magnet quality is either irrelevant or so tangentially relevant to the actual charges that it is outweighed by unfair prejudice. It should be excluded.

**BACKGROUND**

Defendants earlier filed a motion to exclude testimony from government experts Scott McCall, James Blankenship, and Steven Burton. (*See* D.N. 93.) Defendants incorporate that motion's facts, arguments, and exhibits here. As explained in Defendants' earlier motion, based on his expert disclosure, Dr. McCall seeks to testify about two reports showing how he purportedly tested the reliability and performance of certain magnets from Quadrant. (*See id.* at 1, 4.) In December 2021, Dr. McCall issued his first report. (*Id.* at 4.) He performed measurements and tests of samples of two different magnets produced by Quadrant to see how well they conformed to certain specifications in their drawings, including dimensions and magnetic performance characteristics. (*See* D.N. 93 at 4 & D.N. 93 Ex. 2.) In June 2023, Dr. McCall likewise performed measurements and tests of three other Quadrant magnets to see how they conformed to their drawings. (*See* D.N. 93 at 4 & D.N. 93 Ex. 3.)

Also as explained in Defendants' earlier motion, Mr. Burton has been proffered by the government to testify that if certain magnets are defective or unavailable, then military capabilities would be compromised. (*See* D.N. 93 at 3 & D.N. 93 Ex. 4.) He would testify in particular that if a certain part-number magnet in the F-18's generator-convertor unit were defective or unavailable, then the aircraft would be non-mission capable. (*See* D.N. 93 at 3.)

And finally as explained in Defendants' earlier motion, one of the magnets tested by Dr. McCall was independently investigated by the Navy, and the Navy found it was not the cause of any problems in the F-18 generator-convertor unit. (*Id.* at 5–8.) Dr. McCall's tests did not impress one navy engineer: they "do not have relevance," he said. (*Id.* at 6.) The Navy held firm to its conclusion even in answering ten pointed questions from every angle trying to find some way to attack Quadrant's magnet. (*See id.* at 6–8.) The Navy's bottom line? "GE concluded, and Boeing

and NAVAIR concurred, there are **no GCU reliability issues** due to the PMG magnets." (*Id.* (emphasis in original.).

Defendants do not know what other witnesses or evidence the government intends to introduce on the question of the quality or quality-effects of Quadrant's magnets, but we do expect there will be more.

## LEGAL STANDARD

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Louzon v. Ford Motor Co., 718 F.3d 556, 561 (6th Cir. 2013) (quoting Luce v. United States, 469 U.S. 38, 40 n. 2 (1984)). "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate un-necessary trial interruptions." Id. In other words, a motion in limine is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial[.]" Id. (noting with approval that in criminal cases where summary judgment is not available, courts have used motions in limine to narrow factual as well as evidentiary issues for trial).

Federal Rule of Evidence 401 states that "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Rule 402 states that relevant evidence is admissible and irrelevant evidence is not. Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**ARGUMENT**

Defendants incorporate their arguments from their motion and reply to exclude Dr. McCall and Mr. Burton on Rule 401 and Rule 403 grounds. (*See* D.N. 93 at 9–13; D.N. 121 at PageID.1594–99.) To be clear, this motion is broader than the previous one. It seeks to exclude all evidence from the government on the issue of the quality of Quadrant's magnets, whether from those two witnesses or others. This motion also provide an additional reason why this evidence should be excluded.

Defendants' previous motion explained how the quality of Quadrant's magnets is nowhere mentioned in the indictment. The conspiracy, wire-fraud, and ITAR violations alleged focus on whether Defendants emailed ITAR-controlled technical drawings out of the country, and then misrepresented or omitted the provenance of the magnets to conceal a violation of the DFARS' specialty metal clause. (*See* D.N. 93 at 9–11.)

The government does not dispute the accuracy of this description. Its Trial Memorandum essentially repeats it. (*See* D.N. 129, PageID.1707–08.) Instead, the government responded to Defendants' previous motion by articulating an entirely new wire-fraud theory—one absent from the indictment. The government argued that evidence about Quadrant's magnet quality would show that Quadrant "sold products that were not what was requested in the technical data, thereby further indicating that Quadrant[] engaged in and took steps as part of a conspiracy to engage in fraud on the Department of Defense (DOD) and its customers." (D.N. 109, PageID.1415.) The government also argued that Quadrant promised magnets with certain specifications, but their magnets allegedly "exhibited higher than average failure rates across several parameters" and that "is relevant to the Government's wire fraud charges." (*Id.*, PageID.1416–17.) The government even went so

4

far as to say that evidence about magnet quality "goes to the heart of several counts in the Indictment." (*Id.*, PageID.1417.)

The government's justifications for admitting this evidence should be rejected for the reasons argued in Defendants' previous motion and reply. (*See* D.N. 93, 121.) *First*, the evidence should not be admitted because it is irrelevant. The DFARS and ITAR schemes alleged in the indictment do not logically depend on evidence regarding the quality of Quadrant's magnets, nor does the quality of Quadrant's magnets make the commission of those schemes more or less likely to be true. (*See* D.N. 93 at 9–11; D.N. 121, PageID.1594–95.) *Second*, the evidence should not be admitted because its probative value, if any, is substantially outweighed by its unfair prejudice and waste of time. The evidence has so little connection, if any, to the DFARS scheme alleged in the indictment as to amount to simple propensity evidence. Further, it would inflame the jury and encourage it to convict on the unfounded basis that Quadrant's magnets were out-of-specification and thus put military servicemembers or equipment at risk. That evidence would be conclusively rebutted, but doing so would become a trial-within-a-trial requiring many witnesses to testify about complex scientific matters. (*See* D.N. 93 at 11–13; D.N. 121, PageID.1596–99.)

In addition to those reasons, the evidence should be excluded because it would result in a variance from the indictment. A variance occurs "when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019). Permitting a variance is error that violates the constitutional rights of the accused to limit his jeopardy to only those offenses charged by an independent grand jury. *See United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) ("the constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment"; "modifications . . . exist in two forms:

amendments and variances"); *cf. United States v. Kuehne*, 547 F.3d 667, 685 (6th Cir. 2008) (referring to an "erroneous jury instruction" when it charged the jury with an alternate theory from the indictment's for committing the same offense). Whether a variance is so prejudicial it constitutes reversible error is a different question, *see id.*, but this Court should not permit error in the first place.

Again, there is nothing in the indictment about a fraud based on the quality of Quadrant's magnets. Indeed, it is not a fraud alleged anywhere even in the government's trial memorandum's statement of facts (*see* D.N. 129, PageID.1706–14) or discussion of 404(b) issues (*see id.*, PageID.1731–34). And it is noteworthy that Dr. McCall's second set of tests were in 2023, after this case was originally indicted. A conspiracy or fraud scheme about Quadrant's magnet quality is thus a separate conspiracy from that alleged in the indictment. *See United States v. Mize*, 814 F.3d 401, 410 (6th Cir. 2016) ("To determine whether a variance has occurred, we look to whether the evidence can 'reasonably be construed only as supporting a finding of multiple conspiracies' rather than the single conspiracy alleged in the indictment.") (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982)).

The government may point out that the indictment's conspiracy overt acts are prefaced with a boilerplate "including, but not limited to" proviso. (D.N. 73 ¶ 18); *see United States v. Rashid*, 274 F.3d 407, 414 (6th Cir. 2001). That loophole is not so wide as to engulf an entirely new fraud theory. And the problem is not only how a magnet-quality fraud scheme is conspicuously absent from the overt acts. It is that the indictment's fraud counts, ITAR counts, and conspiracy count's objects and manners-and-means are expressly limited to the alleged ITAR and DFARS schemes (including efforts to conceal them). So even if Quadrant's magnet quality could

be shoehorned into some other "not limited to" overt act, it would not be an overt act to accomplish the DFARS and ITAR schemes alleged.

The government may also argue that a fraud theory based on magnet quality is just another way to satisfy the elements of conspiracy in the indictment, or that it is part of the same course of conduct bound up in the DFARS and ITAR fraud schemes alleged. Not so. The standard is whether the facts to be proved are "materially different from those alleged in the indictment," and thus those that were passed upon by the grand jury. The indictment, including as augmented by the government's trial memorandum, lays out a precise set of allegations concerning the Defendants' alleged activities emailing technical data out of the country in violation of the DFARS and misrepresenting where the magnets were sintered and magnetized. Those allegations establish a set of purportedly wrongful conduct divorced from the quality of Quadrant's magnets, unless abstracted to such a high level of generality as to simply encompass any and all of Quadrant's conduct related to these particular customers. But a standard that lax permits a grand-jury bait-and-switch, defeating the purposes behind prohibiting amendments, and which apply just as well to variances:

> The purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial, notice to the court so that it may determine if the alleged facts are sufficient in law to support a conviction, prevention of further prosecution for the same offense, and finally, of 'paramount importance,' the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence.

*United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000) (quoting *United States v. Moore*, 129 F.3d 873, 878 (6th Cir. 1997) (citations omitted)).

Finally, the government may cite any of the many Sixth Circuit cases rejecting defendants' prejudicial-variance claims. But this is not a case like *Kuehne*, where the government merely "offered evidence of more firearms than were listed in the indictment." 547 F.3d at 682. Nor is it like

*Rashid*, where the government offered evidence about a defendant's earlier lies to investors in his business, involving falsified contracts and the like, when the defendant was indicted for conspiring to lie to a later, different group of investors in his business by using falsified contracts and the like. 274 F.3d at 411–12, 414–15. Nor is it like *United States v. Hynes*, where the government argued a defendant had made two false statements before a grand jury when the indictment alleged only that the defendant had made one. 467 F.3d 951, 965 (6th Cir. 2006). Nor is it like *Bradley*, where evidence of a defendant's underpayment of tax cases merely substantiated the indictment's overt acts about a defendant's massive fraudulent diversions of government funds. 917 F.3d at 503. In all these cases, the trial evidence not explicitly stated in the indictment was of the same kind. Here, it is evidence of an entirely different fraud scheme.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court issue an order excluding any evidence related to (1) the quality of Quadrant's magnets, including Dr. McCall's tests; and (2) the effect of magnet quality on defense safety, capabilities, and the like.

| | |
|---|---|
| Dated: March 4, 2024 | By:   */s/*      *John L. Brownlee*   |

                                                 John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics*

*/s/  Kent Wicker         (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/      Patrick J. Renn  (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/      Scott C. Cox    (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 4, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

                                                                */s/ John Brownlee*