**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **United States of America** | |
| **v.** | **No. 3:22-CR-88-DJH** |
| **Quadrant Magnetics LLC et al.** | |

**DEFENDANTS' MOTION IN LIMINE TO  EXCLUDE MAGNETIZATION EVIDENCE**

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") respectfully move the Court, under Federal Rules of Evidence (FRE) 401 and 403, to exclude all evidence regarding magnetization and the location where Quadrant's magnets were magnetized, and to prohibit the government from arguing that magnetizing a magnet outside of the United States violates the Specialty Metals Clause, 48 C.F.R. § 252.225-7009, or that the Clause regulates where magnetization can occur.

The government alleges that Defendants committed wire fraud by selling "magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government, misrepresenting and concealing the location of the manufacturing process and the county [*sic*] of origin, in violation of 18 U.S.C. § 1343 [wire fraud] and 48 C.F.R. § 252.225-7009 [Specialty Metals Clause]." (D.N. 73, PageID.459.) As part of an alleged scheme to defraud, the government must prove that a false representation was material, *i.e.*, that the statement "ha[d] a natural tendency to influence . . . the decision of the decision-making body to which it is addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999).

Contrary to the Indictment's allegations, the plain text of the Specialty Metals Clause only restricts where metals can be "melted" or "produced,"[1] not where they are magnetized. 48 C.F.R. § 252.225-7009. Likewise, the term "Country of Origin" is entirely absent from the Specialty Metals Clause's text. Because the Clause is only concerned with where magnets are melted or produced, the country of magnetization is immaterial to compliance with it. As such, all evidence pertaining to magnetization or where magnetization occurred should be excluded as irrelevant under Federal Rule of Evidence 401.

The Court should also exclude the government's magnetization evidence pursuant to Rule 403 because evidence of additional alleged misrepresentations related to the location of magnetization pose a danger of unfairly prejudicing the jury. Evidence that magnetization occurred outside the United States suggests that this activity was criminal or even just wrong, when it was not. This improper implication poses a danger of unfairly prejudicing the jury and confusing the relevant issues. Because the minimal probative value magnetization evidence provides is substantially outweighed by the danger of unfair prejudice, all evidence relating to magnetization and the location where magnetization occurred should be excluded.

## LEGAL STANDARD

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 40 n.2 (1984)). "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.*  In other words, a motion in limine is an evidentiary device that "provides

---

[1] *Produce* is a defined term under the Specialty Metals Clause that refers to three scientific processes, none of which include magnetization. Under the Clause, "'Produce means'— (i) Atomization; (ii) Sputtering; or (iii) Final consolidation of non-melt derived metal powders." 48 C.F.R. § 225-7009(a).

a useful adjunct to other devices for truncating the trial[.]" *Id.* (noting with approval that in criminal cases where summary judgment is not available, courts have used motions in limine to narrow factual as well as evidentiary issues for trial).

Rule 401 provides that "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401(a). "The fact [must be] of consequence in determining the action." Fed. R. Evid. 401(b). In the criminal context, a fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct. *United States v. Hazelwood*, 979 F.3d 398, 408–09 (6th Cir. 2020). Evidence that does not directly prove or disprove an element of the offense must at least be "a step on one evidentiary route to the ultimate fact." *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 179 (1997)).

Rule 403 provides a balancing test for excluding relevant evidence. The trial judge may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (citing *Huddleston v. United States*, 485 U.S. 681, 687 (1988)).

## ARGUMENT

### 1. The Specialty Metals Clause does not restrict where magnets can be magnetized.

The Indictment alleges that "[a]ccording to the specialty metals clause in DFARS 225.252-7009, specialty metals including samarium-cobalt magnets, procured by DOD and used in defense articles, must be smelted in the United States or a 'qualifying country[.]'" (D.N. 73, PageID.456.) However, the Specialty Metals Clause actually instructs that "any specialty metals incorporated in items delivered under this contract shall be *melted or produced* in the United States, its outlying areas, or a qualifying country." *Id.* § 225.252-7009(b) (emphasis added). While the Specialty

Metals Clause restricts the countries where a magnet can be melted, it does not regulate or restrict the country of magnetization. In fact, the word "magnetize" does not appear anywhere in the regulation.

### 2. Magnetization evidence is irrelevant to wire fraud.

The threshold question on a motion in limine is whether the evidence a party seeks to admit is relevant. Evidence is relevant if it makes a fact more or less probable than it would be without the evidence, and if the fact to be proved is "of consequence to the determination of the action; that is, material." *United States v. Dunn*, 805 F.2d 1275, 1281 (6th Cir. 1986) (citing FRE 401).

The country where magnetization occurred is an immaterial fact that is of no consequence to determination of the wire-fraud charges. To convict Defendants of wire fraud, the government must prove that they devised a scheme or artifice to defraud, used interstate wire communications in furtherance of the scheme, and intended to deprive a victim of money or property. *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). "It is clear that as an element of the 'scheme or artifice to defraud' requirement, the government must prove that the defendant said something materially false." *Id.* A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder*, 527 U.S. at 16.

Instructive on this point is the Supreme Court's decision in *Universal Health Services v. United States ex rel. Escobar*, 579 U.S. 176 (2016). This was a False Claims Act case where the court was asked to determine when a contractor's omissions of noncompliance with legal or contractual requirements amounted to a false claim. *See id.* at 180–81. The court construed the False Claim Act's prohibition on "false or fraudulent claims" as incorporating the common-law meaning of fraud, and in doing so cited *Neder*, 527 U.S. at 22, which itself incorporated that same common-

law meaning for the wire-fraud statute. That means *Escobar*, while a civil case,[2] interpreted fraud

in a way meaningful for the wire-fraud statute. And *Escobar* interpreted fraud to require that "a

misrepresentation about compliance with a statutory, regulatory, or contractual requirement . . . be

material to the Government's payment decision . . . ." 579 U.S. at 192.

  *Escobar* thus actually raises the bar twice-higher than the reach of the government's mag-

netization allegations. Magnetization cannot even conceptually affect the government's payment

decision when it is not "a statutory, regulatory, or contractual requirement" to begin with. Quad-

rant's compliance with the Specialty Metals Clause could arguably influence DOD's and General

Dynamics' decisions because they are required to purchase magnets that comply with the Specialty

Metals Clause. However, Defendants' alleged misrepresentations that Quadrant's magnets were

magnetized in the United States do not violate the Specialty Metals Clause. Again, the Specialty

Metals Clause limits where a magnet can be melted, but it does not restrict or even mention mag-

netization. Put simply, even if the government introduced evidence establishing that Quadrant's

magnets were magnetized in China, and that Defendants misrepresented that fact, this would not

violate the Specialty Metals Clause or provide the government or Quadrant's customers contrac-

tual grounds to deny payment. Indeed, had a Quadrant customer refused to pay on that contractu-

ally nonexistent ground, Quadrant most likely could have successfully sued the customer for

breach of contract. *See, e.g.*, *Akers v. Columbus Life Ins. Co.*, Civ. No. 17-34-HRW, 2018 U.S.

Dist. LEXS 120400, *13 (E.D. Ky. July 19, 2018) ("If it is not a term of the contract, it cannot be

breached."). "A scheme to defraud includes any plan or course of action by which someone intends

to deprive another by deception of money . . . or property by means of false or fraudulent pretenses,

---

[2] Though some courts have used "quasi-criminal" to describe the "nature of FCA violations." *United States ex rel. Day v. Spectrum Health Med. Grp.*, No. 1:17-cv-714, 2018 U.S. Dist. LEXIS 241572, *4 (W.D. Mich. May 7, 2018) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)).

representations, or promises." *Daniel*, 329 F.3d at 485 (6th Cir. 2003) (quoting *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 479 (6th Cir. 1999)). Any misrepresentations concerning the country of magnetization were immaterial because they could not have affected Quadrant's compliance with the Specialty Metals Clause, and therefore could not have "induc[ed] the victim of the fraud to part with property or undertake some action that he or she would not otherwise do absent the misrepresentation." *Daniel*, 329 F.3d at 487. Because any alleged misrepresentations regarding magnetization could not have been part of a plan or scheme to fraudulently influence or induce DOD or General Dynamics to part with money or property in exchange for Quadrant's magnets, magnetization evidence is immaterial.

Magnetization evidence should also be excluded because it does not make any material fact concerning "melt[ing]" of the magnets "more or less probable." Fed. R. Evid. 401. Magnetization is a distinct act that is not required to be performed in geographic or temporal proximity to the melting stage. To the contrary, melting is virtually the *first* step in samarium–cobalt magnet production, while magnetization is the *last*:[3]

---

[3] Jun Cui et al., *Manufacturing Processes for Permanent Magnets: Part I—Sintering and Casting*, 74 J. of the Minerals, Metals & Materials Soc'y 1279, 1284, 1286 (2022)); *see also, e.g.*, Magfine, *Magnet Production Process*, https://tinyurl.com/4mbv4njd; Arnold Magnetic Techs., *Magnet Manufacturing Process*, https://tinyurl.com/5ytb5rxv. Note that neodymium magnets are not subject to the Specialty Metals Clause, *see* 48 C.F.R. § 252.225-7009(a) (definition of *specialty metal* does not include neodymium nor any alloy that would include $Nd_2Fe_{14}B$), but for them too, magnetization occurs last. *See* Cui et al., *Manufacturing Processes*, 74 J. of the Minerals at 1286.



Fig. 6. Basic process steps for the Sm-Co based magnets. Reprinted with permission by Dr. Jinfang Liu.[23]

As such, evidence of magnetization is not probative of where melting takes place.

### 3. Evidence of magnetization poses a danger of unfair prejudice and confusion of the issues.

Evidence of magnetization is not only irrelevant, but also prejudicial. It incorrectly implies that Defendants were required to magnetize magnets in the United States and that that fact should have mattered to their customers and the Department of Defense. Evidence that Defendants concealed or misrepresented where magnetization took place is unfairly prejudicial, and risks misleading a jury to believe that Defendants' failure to disclose the country of magnetization and to magnetize in certain locations is relevant evidence of fraudulent intent. Any negligible probative value that magnetization evidence could provide is manifestly and substantially outweighed by the unfair impact of the jury learning of Defendants' additional, immaterial alleged misrepresentations—conduct for which they have not been charged or convicted. *Dunn*, 805 F.2d at 1282.

Magnetization evidence should also be excluded as impermissible character evidence under FRE 404(a) because "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates

a prejudicial effect that outweighs ordinary relevance." *Hazelwoo*d, 979 F.3d at 410 (citing *United States v. Old Chief*, 519 U.S. 172,180–82 (1997)).

Because magnetization evidence is irrelevant to the charged conduct and its probative value is substantially outweighed by the danger of unfair prejudice, all evidence concerning magnetization and the location where magnetization occurred should be excluded. Fed. R. Evid. 403.

## CONCLUSION

For all of these reasons, the undersigned respectfully requests that the Court grant Defendants' Motion to Exclude Magnetization Evidence and prohibit the government from introducing evidence related to magnetization at trial.

Dated: March 4, 2024

Respectfully submitted,

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould *(pro hac vice)*
Timothy Taylor (*pro hac vice*)
Caitlin Eberhardt *(pro hac vice)*
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
502-541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*