UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

United States of America

    v.

Quadrant Magnetics LLC et al.

No. 3:22-CR-88-DJH

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO
ALLEGED IMMIGRATION ISSUES**

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Monica Pascoe, and Scott Tubbs ("Defendants") move this Court for an order excluding any evidence related to the immigration or visa status of Quadrant employees and evidence of Chinese-language signs at Quadrant's facilities.

## BACKGROUND

The government's second superseding indictment (indictment) (D.N. 73) charges Defendants with conspiracy to commit ITAR violations (22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 121.1,123.1, 127.1(a)(4)), smuggling violations (18 U.S.C. § 554), DFARS violations (18 U.S.C. § 1343 and 48 C.F.R. § 252.225-7009), and wire fraud (18 U.S.C. § 1001(a)(2), (3)). (D.N. 73, PageID.458–59). The government likewise alleges substantive violations of those provisions. *See generally id.* (Counts 2–9). Not among these charges are any allegations that Quadrant or its employees engaged in attempts to illegally or improperly facilitate the immigration of foreign nationals. Although the government has not charged this conduct, investigators have raised allegations of immigration issues with witnesses in the course of its investigation. Specifically, the government has inquired into the hiring of a particular employee, Michelle Qian. The government has also produced photographs of signs using Chinese characters at Quadrant's facilities taken in the

course of its investigation. As allegations related to immigration offenses or the hiring of foreign workers are not relevant to any of the charged conduct and are likely to unfairly prejudice and confuse the jury, Defendants seek an order excluding such evidence, should the government seek to introduce it.

## LEGAL STANDARD

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)). "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate un-necessary trial interruptions." *Id.* In other words, a motion in limine is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial[.]" *Id.* (noting with approval that in criminal cases where summary judgment is not available, courts have used motions in limine to narrow factual as well as evidentiary issues for trial).

Under the Federal Rules of Evidence, "irrelevant evidence is not admissible." Fed. R. Evid. 402. Likewise, even where evidence is relevant, courts may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* R. 403.

## ARGUMENT

**1.  Evidence of uncharged allegations is not relevant to the charged conduct in this case.**

Here, alleged immigration offenses do not speak to any of the charged conduct in this case, nor does the indictment refer to any such offenses as a basis for its charges. The indictment does not, for example, allege that Quadrant exported technical data by hiring foreign employees or seeking to improperly facilitate their immigration, nor does it charge Defendants with conspiracy

2

to commit any immigration offense. In fact, Quadrant's hiring practices relate in no way to any element of the offenses charged.

Evidence of other wrongful acts is not admissible as character evidence to show that defendants acted in accordance with the character on a particular occasion. Fed. R. Evid. 404(b)(1). Where the government seeks to introduce evidence of "other acts" in a criminal trial, it must do so for a permissible purpose and conform to reasonable notice requirements. *Id.* 404(b).

When admitting evidence of "other acts," the acts must be material or "in issue." *United States v. Merriweather*, 78 F.3d 1070, 1074–75 (6th Cir. 1996). Likewise, courts must consider whether probative value is substantially outweighed by its potential for unfair prejudice. *Id.* Here, immigration practices do not relate in any clear way to the charged conduct. Indeed, there is no clear link between allegations of immigration offenses and motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident for the alleged export of technical data or misrepresentations about where Quadrant's magnets were melted. *See* Fed. R. Evid. 404(b)(2). For example, evidence of immigration practices would do little to show that Defendants knew of ITAR or DFARS requirements, much less that they willfully violated them. Likewise, even as detailed in the government's trial memorandum, the course of conduct alleged in the indictment—violations of law concerning the manufacturing of magnets—has virtually nothing to do with immigration or guest-worker activities.

## 2. The danger of unfair prejudice and jury confusion substantially outweighs the probative value of such evidence.

The suggestion that Defendants have sought to facilitate immigration offenses offers little probative value, but it carries a substantial risk of unfairly prejudicing the jury and confusing the issues. In applying the 403 balancing requirement to evidence of "other acts," courts examine whether there were other, less unfairly prejudicial means of proving a case. *Merriweather*, 78 F.3d

at 1077. To the extent the government might argue that allegations of immigration offenses speak to motive or intent, such evidence is far attenuated from whether Defendants willfully exported technical data or committed fraud by violating the Specialty Metals Clause. Courts likewise consider how the "reverberating clang" of propensity evidence would drown out the permissible purpose of 404(b) evidence. *Id.* Once again, the main effect of raising uncharged criminal allegations is to imply a criminal propensity rather than support the intent to commit an unrelated crime. Finally, allegations of immigration offenses do not speak to the "specific intent" to conspire to export technical data, which can more readily be proved by other evidence. *See id.* at 1078.

Here, the government chiefly alleges that Defendants have exported technical data without a license and hid the source of its magnets from consumers. In particular, the government alleges that Quadrant improperly sent emails containing technical data to a foreign supplier. The government does not allege, for example, that Quadrant hired foreign immigrants in order to export technical data. Introducing evidence related to employee visa status or Quadrant's hiring of foreign citizens does not relate to any of the allegations in the government's indictment. However, it is likely to have the effect of prejudicing the jury against Defendants by suggesting an inappropriate level of foreign control or entanglement in Quadrant's business or confusing them as to the conduct being charged. That danger is especially heightened when the country at issue is China, which could lead the jury to all sorts of unsupported and improper speculation and stir anti-Chinese sentiment. Likewise, evidence of signs at Quadrant's facilities using Chinese characters does not speak to any of the charges. Hiring individuals from a foreign country does nothing to indicate that Defendants sought to willfully export technical data. Nothing in the indictment alleges that there is anything illegal in Quadrant's hiring practices, and allegations about immigrations offenses

serve only to unfairly prejudice the jury by presenting uncharged and irrelevant allegations of criminal conduct without sufficient notice for Defendants to properly rebut those charges.

In assessing unfair prejudice, courts consider the "undue tendency to suggest a decision based on improper considerations like the chance that the jury will convict the defendant because of his prior instead of his charged, conduct." *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018) (internal quotes removed). Uncharged allegations of criminality create a risk that the jury will improperly consider evidence of immigration offenses in convicting for unrelated offenses. *Id.* at 862 (describing the influence of the desire to punish).

Evidence of alleged immigration offenses should also be excluded as it would result in a variance from the indictment. Here, evidence of alleged immigration offenses would "prove facts materially different from those alleged in the indictment." *See United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019). Allowing a variance would violate Defendants' rights to limit their jeopardy to the offenses charged by an independent grand jury. *See United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989). Here, even if the government cannot convict Defendants of immigration violations, the suggestion of criminality would nonetheless confuse the jury and introduce improper considerations for the charges at issue in this case.

As with much of the other extraneous evidence the government seeks to introduce, this evidence also invites a time-wasting, confusing, and one-sided trial-within-a-trial. The immigration laws are complex, and Defendants have had no notice until now of the government's intent to use this extraneous material at trial. The month before trial begins, in a matter that is already complicated and contains a voluminous record, is insufficient time for Defendants to properly investigate this new stream of evidence and research the relevant law and defenses. Further, Defendants would need to call an expert to explain these complex matters and rebut the government's

evidence, but the expert deadline has passed and there is not enough time to properly prepare and disclose an expert besides. And the government's evidence would be misleading insofar as Quadrant's owner, Cody Sun, is a green-card holder entitled to review ITAR-controlled material without a license. *See* 22 C.F.R. §§ 120.54(a) ("The following activities are not exports . . . : transferring technical data to a U.S. person in the United States from a person in the United States; . . . transferring within the same foreign country technical data between or among only U.S. persons . . . ."), 120.62 ("*U.S. person* means a person who is a lawful permanent resident as defined by 8 U.S.C. 1101(a)(20)"). And all this effort would go toward an issue wholly divorced from the charges in the case and which will do nothing but bewilder the jury.

In short, the immigration evidence the government may seek to introduce does virtually nothing to show the truth or falsity of the crimes charged. But it does give the government a chance to advance a subtextual narrative that Defendants are too cozy with China. As China is one of the United States' chief geopolitical rivals, suggestions that Quadrant is aligned with or otherwise controlled by China would be highly charged. Such suggestions would invite the jury to speculate about political and national-security questions that have nothing to do with this case and could even, however unfortunately and despite diligent voir dire, cause jurors to convict on the basis that they are taking a stand against China rather than because the evidence supports the elements of the offenses charged.

Courts also consider whether a limiting instruction would be effective in limiting the prejudice of evidence. *Id.* at 863. Here, such an instruction is unlikely to be effective. Evidence of alleged immigration offenses has little probative value in proving Defendants' intent related to unrelated offenses, but is likely to bias the jury against Defendants both in implying a general criminal propensity and improper foreign influence.

**CONCLUSION**

For all of these reasons, Defendants respectfully request that the Court issue an order excluding any evidence of immigration offenses, the hiring of foreign workers, or the use of Chinese characters at Quadrant facilities.

Dated: March 4, 2024                    By:    /s/      John L. Brownlee

                                        John L. Brownlee (*pro hac vice*)
                                        William F. Gould (*pro hac vice*)
                                        Timothy J. Taylor (*pro hac vice*)
                                        Caitlin A. Eberhardt (*pro hac vice*)
                                        HOLLAND & KNIGHT LLP
                                        1650 Tysons Blvd., Suite 1600
                                        Tysons, VA 22201
                                        T: 703.720.8053
                                        F: 703.720.8610
                                        John.Brownlee@hklaw.com
                                        William.Gould@hklaw.com
                                        Timothy.Taylor@hklaw.com
                                        Caitlin.Eberhardt@hklaw.com
                                        *Counsel for Quadrant Magnetics, LLC*

                                        /s/      Kent Wicker     (with permission)
                                        Kent Wicker
                                        WICKER / BRAMMELL PLLC
                                        323 W. Main Street, 11th Floor
                                        Louisville, Kentucky 40202
                                        (502) 541-5533
                                        Kent@wickerbramel.com
                                        *Counsel for Phil Pascoe*

                                        /s/      Patrick J. Renn  (with permission)
                                        Patrick J. Renn
                                        Smith & Helman
                                        600 W. Main Street, Suite 100
                                        Louisville, KY 40202
                                        502-540-5700
                                        Fax: 502-568-3600
                                        prenn@600westmain.com
                                        *Counsel for Scott Tubbs*

                                        /s/      Scott C. Cox    (with permission)
                                        Scott C. Cox
                                        Cox & Mazzoli, PLLC
                                        600 W. Main Street, Suite 300
                                        Louisville, KY 40202
                                        502-589-6190
                                        502-584-1744
                                        CoxECF@aol.com
                                        *Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*