UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America** <br><br> v. <br><br> **Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
UNTIMELY AND UNRELIABLE NEW EXPERT TESTIMONY**

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Monica Pascoe, and Scott Tubbs ("Defendants") move this Court for an order excluding testimony based on the purported supplemental disclosures of government expert witnesses Steven Burton and Alex Douville in whole, and in part for Dr. Scott McCall. *See* Exs. 1, 2, 3. The disclosures are untimely and, as to Mr. Douville and Mr. Burton, unreliable as well.

**BACKGROUND**

The government's second superseding indictment (D.N. 73) charges Defendants with ITAR violations (22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(4)). Central to these charges is the determination of whether a magnet was "specially designed" for use in a defense article. *See* 22 C.F.R. § 120.41. A part is not specially designed if it "has the same function, performance capabilities, and the same or equivalent form and fit as a commodity or software used in or with a commodity that: (i) is or was in production (i.e., not in development); and (ii) is not enumerated on the USML." 22 C.F.R. § 120.41(b)(3). If a magnet has a commercial equivalent, it is not specially designed, so it and its related drawings are not subject to ITAR.

On December 4, 2023, initial expert disclosures were due (*see* D.N. 37, PageID.127 ¶¶(3)(b), (c)), and Defendants centrally featured the commercial-equivalent point in their initial

expert disclosures from Dr. Stanley Trout and Mr. Tom McCarthy. *See* Exs. 4, 5.[1] Dr. Trout is an expert in the field of permanent magnets and the rare-earths industry. Mr. McCarthy is an international-trade attorney with substantial experience in ITAR matters. The central point of Dr. Trout's initial disclosure was his comparison of magnet drawings in the indictment to commercially available magnets to show that they had the same performance capabilities, and that commercial magnets with these same performance capabilities would have been commercially available at the time Defendants allegedly transmitted drawings out of the United States. Mr. McCarthy's disclosure explained the ITAR generally, including the commercial-equivalent provision. He opined that, assuming the correctness of Dr. Trout's conclusions, the magnet drawings are not ITAR-controlled.

On December 11, 2023, rebuttal expert disclosures were due. (D.N. 37, PageID.127 ¶¶(3)(b), (c).) The government did not file any.

On December 28, 2023, the Court entered a scheduling order extending the trial date and future deadlines. The order stated, however, that it "extends no other deadlines that have already passed, and which may be extended only upon a showing of good cause." (D.N. 98, PageID.1306.)

On February 2, 2024, the government sent supplemental expert disclosures from Steven Burton, Alex Douville, and Scott McCall. *See* Exs. 1, 2, 3.

## LEGAL STANDARD

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 40 n.2 (1984)). "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary

---

[1] Defendants have not included these reports' exhibits to avoid burdening the Court, but can produce them if requested. Defendants have also redacted allegedly potentially ITAR-controlled information from Dr. Trout's report.

2

trial interruptions." *Id.* In other words, a motion in limine is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial[.]" *Id.* (noting with approval that in criminal cases where summary judgment is not available, courts have used motions in limine to narrow factual as well as evidentiary issues for trial).

## ARGUMENT

Portions of the government's supplemental disclosures are not timely under the Court's scheduling order. These portions simply respond to the interpretation of the ITAR's "specially designed" provision and methodological concerns raised in Defendant's initial disclosures, so they are in the nature of rebuttal reports.

Although the Court continued the trial date in its December 28, 2023 order, the Court's order specifically "extend[ed] no other deadlines that have already passed . . . ." (D.N. 98,PageID.1306.) The Court did so over the government's request to reset its expired deadlines (*see* D.N. 96, PageID.1279.), for which Defendants argued the government failed to show good cause (*see* D.N. 97, PageID.1292). In submitting its supplemental disclosures to Defendants, the government has offered no good cause for its delay.

Defendants do not object on timeliness grounds to everything in all three supplemental disclosures. But insofar as they simply respond to Defendants' commercial-equivalent defense as set out in Defendants' expert disclosures—which, to be clear, is still a great deal of their material— they are simply untimely rebuttals and testimony on their subjects should be excluded. It should also be excluded on other grounds as well.

We discuss both types of deficiencies for each supplemental report next.[2]

---

[2] Defendants also incorporate their reasons for excluding these experts' original and supplemental reports set out in earlier briefing. (*See* D.N. 91, 92, 119, 121.)

3

### 1. Mr. Burton's supplemental disclosure is untimely and erroneous.

Mr. Burton's original expert report did not meaningfully apply the (b)(3) analysis, merely noting that the magnets are not "commercial-off-the-shelf" magnets—language which is neither found in nor required by 22 C.F.R. § 120.41(b)(3). (*See* D.N. 93, Ex. 4.)  Mr. Burton's supplemental report goes beyond an elaboration of that point, however. He begins by discussing the ITAR "order of review" and what those regulations require—precisely what Mr. McCarthy offered in his initial report. *See* Ex. 1 at 1; *cf.* Ex. 5 at 3–6. Then, from halfway through the second page of his supplemental report to its end, Mr. Burton adds an entirely new area of testimony, editorializing on what "commercially equivalent" means in his view. *See* Ex. 1 at 2–3. This matter is clearly in rebuttal of Defendants' experts' principal points. It is thus untimely.

It is also inappropriate to be heard by a jury. "[A] court should decline to defer to a merely 'convenient litigating position' or 'post hoc rationalization[n]' advanced to 'defend past agency action against attack.'" *Kisor v. Wilkie*, 139 S.Ct. 2400, 2417 (2019) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U. S. 142, 155 (2012)). Mr. Burton's supplemental disclosure holds forth on his personal view of what the commercial-equivalent provision means, wholly divorced from the regulatory text and imposing upon it several restrictive caveats never enacted by Congress nor even put through notice-and-comment rulemaking. For instance, he quotes the ITAR's definition of *fit*, 22 C.F.R. § 120.42(b), then says, "this definition *should be* interpreted as . . . ," and then he goes on to give his own self-serving definition of the term, Ex. 1 at 3 (emphasis added). The government has failed to show good cause for this untimely rebuttal testimony, nor why it should be admissible in any event. It should be excluded.

4

### 2. Mr. Douville's supplemental disclosure is untimely and erroneous.

Mr. Douville's supplemental disclosure, Ex. 2, is also in the nature of rebuttal to Defendants' experts. It is devoted entirely to the commercial-equivalent issue, which was the central point raised in Defendants' initial expert disclosures. *Cf.* Exs. 4, 5. Like Mr. Burton, he offers his own self-serving and impermissible gloss on the text of the regulations: commercial-equivalence requires, he says, "the same, and I know that to mean the exact same, function," and "the same, which I also know to mean the exact same, performance capabilities . . . ." Ex. 2 at 2. Such testimony should be excluded for that reason. Further, the supplemental disclosure is unreliable and testimony from it should be excluded for the reasons Defendants have stated in earlier briefing. (*See* D.N. 119, PageID.1576–77.[3])

### 3. The second half of Dr. McCall's supplemental disclosure is untimely.

Dr. McCall's supplemental disclosure first purports to address certain methodological deficiencies in his reports identified by Dr. Trout. But pages 4 and 5 of his report do not; instead, they opine on the importance of a magnet's shape and dimensions to its intended function. *See* Ex. 3 at 4–5.

This new area of opinion is wholly outside the scope of Dr. McCall's initial expert disclosure. His original disclosure was concerned solely with testing Quadrant's magnets. Nothing in his original reports begins to suggest that he was offered to opine on the commercial-equivalents question. The deadline for such entirely new opinion testimony has passed, so it should be excluded for this reason.

Further, this new area of opinion is proffered to directly rebut Dr. Trout's opinion that commercial equivalents existed to the Quadrant magnet drawings allegedly transmitted overseas.

---

[3] This is a reply brief, but the government submitted Mr. Douville's supplemental disclosure after Defendants' filed their opening brief.

Specifically, Dr. Trout's disclosure explained how he views the performance characteristics of a magnet to be those of its inherent properties, such as its material's strength of magnetic field and resistance to demagnetization. *See* Ex. 4 at 6, 9. Dr. McCall's new testimony seeks to counter it by arguing that a magnet's shape and size are also important performance measurements. Ex. 3 at 5–6. But the place for Dr. McCall to offer such a counterargument was in a rebuttal report, and that deadline has passed.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court issue an order excluding the untimely supplemental disclosures of Mr. Burton, Mr. Douville, and Dr. McCall.

| | |
|---|---|
| Dated: March 4, 2024 | By:  /s/      John L. Brownlee    |

                                                John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/*      *Kent Wicker*     *(with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/*      *Patrick J. Renn*  *(with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/*      *Scott C. Cox*    *(with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

7

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*