UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **United States of America**<br><br>v.<br><br>**Quadrant Magnetics LLC et al.** | No. 3:22-CR-88-DJH |

### DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
### EXPERT TESTIMONY ON SIXTH AMENDMENT GROUNDS

Defendants Quadrant Magnetics, LLC ("Quadrant"), Phil Pascoe, Monica Pascoe, and Scott Tubbs ("Defendants") move this Court for an order excluding the opinions of government experts Alex Douville and Steven Burton that Quadrant's magnets are ITAR-controlled. Their opinions are predicated on State Department commodity-jurisdiction determinations (CJDs) in which they had no involvement and which were signed by other government employees. If they opine on the magnets' ITAR control, they would be acting as mere conduits of testimony of the people who actually did the analyses and who signed the CJDs. This is an obvious violation of the Sixth Amendment's Confrontation Clause. Their testimony on this subject should be excluded.

### BACKGROUND

According to Mr. Douville's initial expert disclosure, he is expected to testify about, among other things, the AECA, its implementation through the ITAR, including the U.S. Munitions List (USML), and that drawings of Quadrant's magnets qualify as ITAR-controlled technical data requiring a license before export. *See* Ex. 1. In early February 2024, Mr. Douville issued a second expert disclosure elaborating on the ITAR and what he purportedly did to analyze the drawings. *See* Ex. 2.

According to Mr. Burton's initial expert disclosure, he is expected to testify about, among other things, thirteen part numbers that are, in his view, specially designed for ITAR-controlled defense articles so that their associated technical drawings are likewise ITAR-controlled technical data. *See* Ex. 3. He too issued a purported supplemental expert disclosure elaborating on his work. *See* Ex. 4.[1]

The reports are discussed more fulsomely in the context of Defendants' arguments below.

## LEGAL STANDARD

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 40 n.2 (1984)). "[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* In other words, a motion in limine is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial[.]" *Id.* (noting with approval that in criminal cases where summary judgment is not available, courts have used motions in limine to narrow factual as well as evidentiary issues for trial).

## ARGUMENT

**1. The Confrontation Clause requires that the government introduce testimonial statements through the witnesses who made them.**

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Sixth Amendment

---

[1] Testimony based on the supplemental expert reports should be excluded on the additional grounds that it is untimely and unreliable, as argued in Defendants' earlier briefing (*see* D.N. 119, PageID.1576–77, 1580) and in Defendants' contemporaneously filed Motion *In Limine* to Exclude Untimely and Unreliable New Expert Testimony.

2

precludes the government from introducing the testimonial statements of an out-of-court witness unless the witness is unavailable and the defendant has had an earlier opportunity to cross-examine her. *See* 541 U.S. 36, 53–56 (2004). In *Melendez-Diaz v. Massachusetts*, the Court likewise held that it violated the Sixth Amendment for the government to introduce a "certificate of analysis" to prove a substance was an illegal drug without permitting cross-examination of the witness who prepared it. 557 U.S. 305, 310–11 (2009). In *Bullcoming v. New Mexico*, the Court extended its reasoning to hold that an absent analyst's forensic report could not be admitted through a substitute expert who had not observed or participated in the testing. 564 U.S. 647, 661–62 (2011). The Court rejected the argument that the substitute was sufficient because he was familiar with the machine used and the laboratory's procedures. *See id.* at 662. In *Williams v. Illinois*, a four-Justice plurality reasoned that a testifying expert could rely in part on a DNA profile produced by another laboratory when that testimony was not admitted for the truth of the matter asserted and that the out-of-court statement was nontestimonial. *See* 567 U.S. 50, 64–86 (2012). Justice Thomas concurred in the judgment on nontestimonial grounds. *See id.* at 103–18. And even there, the plurality emphasized how trial courts "can screen out experts who would act as mere conduits for hearsay." *Id.* at 80.

    **2. Mr. Douville's opinion that Quadrant's magnets are ITAR-controlled is a constitutionally prohibited substitute for an absent witness's testimonial statement.**

    **2.1 Mr. Douville's opinion merely channels CJDs prepared by others.**

According to his initial expert disclosure, Mr. Douville works in DDTC's licensing office. *See* Ex. 1 at 1. Importantly, the licensing office issues licenses; it does not determine whether items are ITAR-controlled, which is done by DDTC's policy office.[2] Mr. Douville's proffered testimony

---

[2] *See* U.S. Dep't of State, Directorate of Defense Trade Controls (DDTC), *About DDTC* (The "Office of Defense Trade Controls Policy" "serves as the Department's lead for maintaining and interpreting the International Traffic in Arms Regulations (ITAR) (22 CFR 120-130) and its United States Munitions List

3

would cover broadly the AECA legal regime and its administration by DDTC. This would include how the USML works, how technical data is controlled, how DDTC issues licenses, business registration requirements, and the commodity jurisdiction process.

Mr. Douville would also testify that Quadrant's magnets are ITAR-controlled. He has no independent basis for doing so; he is simply a conduit for other people who made that determination. Quite remarkably, he "will testify that he took no part in the DDTC Office of Policy's assessment or determination of articles at issue in this case." Ex. 1 at 4. What he did instead was purportedly "independently review the DDTC's final [commodity-jurisdiction] letter," *id.*—a roughly one-page form document that typically says little more than that the article is controlled under a particular category. *See* Ex. 5 (an exemplar CJD). According to Mr. Douville, DDTC's Office of Policy "conducts a thorough review to consider whether any information might cause the item at issue to not match a description on the USML." Ex. 1 at 4. And Mr. Douville also purportedly conducted "his own independent review of [the] defense articles at issue" and "agrees with the DDTC's assessment and rationales made therein" because "magnets that go into submersible submarines or the F-18 fighter jet, and other similar military items, are described on the USML as a defense article and are controlled for export, requiring a license or other approval." *Id.* at 5.

Mr. Douville offered a supplemental expert disclosure in early February that elaborates on his purportedly independent review that Quadrant's magnets are ITAR-controlled. It demonstrates he did nothing more than look at the CJD (the one-page letter) and then, quite literally, read and think about the ITAR. He begins by stating, "I undertook my own review, *based in part on the final commodity jurisdiction (CJ) determination issued by DDTC*." Ex. 2 at 1 (emphasis added). "Thus, when I looked at the CJ determination," he continues, "I independently went to the USML

---

(USML), which identifies defense articles and defense services subject to the ITAR"), https://tinyurl.com/yhcn7fz3.

control entry cited. . . . I relied then, as I normally do, on my knowledge that the part at issue would have at least been used in or with a defense article and that the DDTC analyst would have expressly assessed as much." *Id.* He did not do any such analysis himself, nor did he have anything beyond the CJD itself to determine it occurred here. To the contrary, Mr. Douville continues by stating, "It is not my role as a licensing officer to perform an exhaustive check of the entire global marketplace for comparable items. Nor did I have access to the technical specifications of the parts at issue. I feel comfortable relying on the DDTC analysts because I am familiar with their processes and diligence." *Id.* at 2.

In short, Mr. Douville looked at the CJDs, noted that they did in fact cite to categories of the United States Munitions List, and now seeks to opine that Quadrant's magnets are ITAR-controlled. The sole bases for his opinion are the CJDs themselves and his general familiarity with how DDTC makes its decisions. He is exercising no independent judgment or analysis. He had no access to the technical specifications of the parts themselves and played no part in the relevant CJD processes. He is simply a conduit for the testimony of the two people who actually signed the CJDs, DDTC employees Richard W. Koelling Jr. or Sarah J. Heidema.

### 2.2  The CJDs are testimonial.

Because Mr. Douville would be doing nothing more than admitting or relating the substance of the CJDs,[3] his testimony violates the Sixth Amendment if the CJDs are testimonial. "The [core] class of testimonial statements covered by the Confrontation Clause" include "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial

---

[3] The government "may not circumvent the Confrontation Clause by introducing the same substantive testimony in a different form." *Ryan v. Miller*, 303 F.3d 231, 248–49 (2d Cir. 2002); *accord United States v. Meises*, 645 F.3d 5, 21 (1st Cir. 2011); *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994); *Ocampo v. Vail*, 649 F. 3d 1098, 1109 (9th Cir. 2011); *Hutchins v. Wainwright*, 715 F.2d 512, 516 (11th Cir. 1983); *Young v. United States*, 63 A.3d 1033, 1045 (D.C. 2013); *State v. Swaney*, 787 N.W.2d 541, 53–54 (Minn. 2010).

5

examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz*, 557 U.S. at 309–10 (cleaned up). In *Williams*, the plurality determined that the lab test at issue was not testimonial because it was not "prepared for the primary purpose of accusing a targeted individual." *Id.* at 84. Justice Thomas agreed they were not testimonial but on narrower grounds that they lacked sufficient "formality" or "indicia of solemnity." *Id.* at 110–14 (cleaned up). Regardless of the precise formulation, "a formal report created for the purpose of proving a fact at trial is testimonial, and a defendant has the right to cross-examine the report's author." *United States v. Miller*, 982 F.3d 412, 435 (6th Cir. 2020).

The CJDs are testimonial. *First*, they have sufficient formality or solemnity. They are written on official Department of State letterhead, have a case number, are signed by a Deputy Director of State's Office of Defense Trade Controls Policy (again, not the licensing office), and include an appeal mechanism. *See* Ex. 5.

*Second*, under the circumstances here, the CJDs' creators were aware that they were being asked to prepare the CJDs for use in litigation, and indeed, to accuse an individual of criminal wrongdoing. CJD requests typically come from industry participants seeking guidance. But here, they came from Special Agent Michael Zanghi of the Department of Homeland Security, Homeland Security Investigations (HSI). *See id.* HSI "is the principal investigative arm of the U.S. Department of Homeland Security, responsible for investigating transnational crime and threats," with "broad legal authority to conduct federal criminal investigations"; "HSI special agents gather

evidence to identify and build criminal cases," "work[ing] with prosecutors to indict and arrest violators." DHS, *Homeland Security Investigations*, tinyurl.com/5n8ddajw.

Department of State documents describe the "manufacturer" of the items at issue as "Homeland Security Investigations," list Mr. Zanghi's DHS email address as the filer, and the applicant as "Homeland Security Investigations." *See* Ex. 6 (Figures 1, 2 (USA-093352, USA-093349)).[4]

The CJD participants also repeatedly stated that their work was in aid of an investigation, and they even stated that they needed to hurry because DHS "is coming up against statute of limitations deadlines":

- "Do you have any capacity to prioritize getting this position out today? . . . DHS previously advised it is *coming up against statute of limitations deadlines* in requesting it by the end of the month." *See id.* (Figure 3 (USA-093301) (emphasis added)).

- "This CJ application by Homeland Security is for determining jurisdiction and controls for ten magnets as part of an ongoing investigation." *See id.* (Figure 4 (USA-093334)).

- "The applicant is requesting a commodity jurisdiction determination for ten different magnets from January 1, 2009 through the present in support of an ongoing Homeland Security/HSI investigation under case # LU06SR18LU0001." *See id.* (Figure 5 (USA-093317)).

- "Information is being used in an ongoing federal investigation and if published could jeopardize the investigation." *See id.* (Figure 6 (USA-104564)).

---

[4] The figures show excerpts of these documents and the relevant Bates-stamps. We have not includ-ed the entirety of the documents as exhibits because some of them are quite lengthy, some are marked sensitive but unclassified and/or subject to protective order, and some appear to contain allegedly ITAR-controlled material. We have added the highlighting in the excerpts. We can provide the full documents to the Court if desired.

- "Navy continues to recommend that HSI ask the vendor (if possible, as Navy acknowledges that this request is part of an ongoing federal investigation) which of the specifications found in Drawing 11375B-1002 . . . ." *See id.* (Figure 7 (USA-104686)).

- "Once this CJ is assigned to the appropriate analyst, please reach out to me SA Michael Zanghi . . . to ensure I have provided everything needed, there is no confusion *and discuss the on-going investigation.*" *See id.* (Figure 8 (USA-104568) (emphasis added)).[5]

In addition to this evidence, the CJDs' creators would have known this was for a particular prosecution based on the following facts: (1) the sheer number of items for which SA Zanghi requested review—Defendants estimate somewhere around 60; (2) that the CJD participants were asked to opine on the magnets' ITAR-controlled status not prospectively, but *retrospectively* back to 2009; and (3) the specificity of SA Zanghi's requests, pertaining almost entirely to rare-earth magnets sold to two particular contractors.

### 2.3 The government has not shown that the authors of the CJDs are unavailable and that Defendants had an opportunity to cross-examine them.

"Testimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" *Bullcoming*, 564 U.S. at 658 (cleaned up). Defendants have had no opportunity to cross-examine the CJD signers, Mr. Koelling and Ms.. Heidema. And the government has not demonstrated that they are unavailable.

### 2.4 The Sixth Amendment bears no exceptions permitting Mr. Douville's testimony.

Mr. Douville's general familiarity with DDTC's processes, and his vouching for its reliability, does not constitute independent expert judgment that cleanses the CJDs of their confrontational taint. That argument was easily rejected in *Bullcoming*. The question presented was straightforward: "Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory

---

[5] That same instruction appears elsewhere in the government's production, in at least the following places: documents beginning with Bates USA-104594, USA-104642, USA-104594, USA-104670, USA-104704, USA-10474, USA-104776, and USA-104866.

report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification?" 564 U.S. at 657. So was the answer: "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Id.*

It did not matter to the Supreme Court that the substitute was qualified as an expert witness with respect to the testing machine at issue in that case nor that he could vouch for the government agency's laboratory procedures. *See id.* at 661. "[S]urrogate testimony of the kind [the substitute] was equipped to give could not convey what [the actual tester] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 661–62.

Here, too, Mr. Douville is no substitute for Mr. Koelling and Ms. Heidema, the persons who actually signed the CJDs and thus are the ones that "bear testimony" against Defendants. *Crawford*, 541 U.S. at 51. Indeed, he admits that he did not "have access to the technical specifications of the parts at issue," and is "relying on the DDTC analysts." Ex. 2 at 2. As to one of Defendants' chief defenses, that the government has failed to properly consider commercial equivalents to Quadrant's magnets, Mr. Douville speculates "that one of the following routine assessments [by the CJD analysts] *must* have also occurred." Ex. 2 at 1 (emphasis added). But he does not know that, and Defendants cannot cross-examine him to demonstrate to the jury whether such an assessment occurred, nor how thoroughly. The government should not be permitted to use Mr. Douville to shield its actual CJD signatories from cross-examination.

The government nonetheless may argue that Mr. Douville's opinion that Quadrant's magnets are ITAR-controlled is permissible because its bases, the CJDs, are offered only as basis evidence rather than for their truth, so the CJDs are not testimonial. This argument fails.

*First*, there is nothing to Mr. Douville's opinion on ITAR control *except* the CJDs. If the CJDs are taken away, Mr. Douville's opinion floats on air. As already stated, Mr. Douville's opinion is simply a conduit for the CJDs, whether he admits them directly or in substance conveys them. So even the limited, noncontrolling reasoning of the *Williams* plurality does not apply here. Instead, this falls within the straightforward rule of *Melendez-Diaz:* "The government cannot introduce a report created to serve as evidence for a criminal proceeding without making the author of the report available for cross-examination." *Fleming v. Brown*, No. 23-1247, 2023 U.S. App. LEXIS 20593, *7 (6th Cir. Aug. 8, 2023) (citing *Melendez-Diaz*, 557 U.S. at 310).

*Second*, this government argument would function to create a forbidden exception to the Sixth Amendment. There is no "*legitimate*, nonhearsay purpose" for admitting Mr. Douville's testimony "merely parrot[ing]" the CJDs. *Williams*, 567 U.S. at 105 (Thomas, J., concurring) (emphasis added); *United States v. Taylor*, No. 23-5473, 2024 U.S. App. LEXIS 1854, *6 (6th Cir. Jan. 25, 2024) . Five Justices agreed in *Williams* that such basis evidence is useful only if it is true, so it is necessarily offered for its truth. *See id.* at 104–10; *id.* at 125–29 (Kagan, J., dissenting). As explained by Justice Kagan, "the factfinder can do nothing with it *except* assess its truth and so the credibility of the conclusion it serves to buttress." *Id.* at 128 (Kagan, J., dissenting). Numerous treatises and scholars have likewise recognized that the not-for-the-truth rationale for admitting an expert's basis evidence is indefensible. *See* D. Kaye et al., *The New Wigmore: A Treatise on Evidence: Expert Evidence* § 5.4 at 272–74 (3d ed. 2022) (describing the rationale as "fictional," "factually implausible," "nonsense," and "strain[ing] credibility"); V. Gold, 29 *Federal Practice*

10

*& Procedure: Evidence* § 6275 (2d ed. 2023) (arguing the rationale "badly misreads the situation"); Hon. M. Bernstein, *Jury Evaluation of Expert Testimony Under the Federal Rules*, 7 Drexel L. Rev. 239, 286–300 (2015) (criticizing the rationale as "fiction" and "absurd[]"); J. Mnookin, *Expert Evidence and the Confrontation Clause After* Crawford v. Washington, 15 J.L. & Pol'y 791, 816 (2007) (the rationale "makes almost no sense").[6] So that is no excuse here either.

> **3. Mr. Burton's testimony that Quadrant's magnets are ITAR-controlled is a constitutionally prohibited substitute for an absent witness's testimonial statement.**

For the same reasons, Mr. Burton's opinion that Quadrant's magnets are ITAR-controlled is impermissible. According to his initial disclosure, Mr. Burton works for the Department of Defense. *See* Ex. 2 at 1. His proffered testimony would similarly cover how the ITAR works, as well as how the Department of Defense works with the State Department on ITAR issues. *See id.* 1–2, 3–4. He would testify about the importance of magnets to the military and the miliary supply chain. *See id.* at 3.

He would also testify about the CJD process generally, and opine that the magnets at issue in this case are ITAR-controlled. "For this Indictment, DoS DDTC has provided official CJ Determinations that all magnet drawings are ITAR-controlled technical data under various USML controls." *Id.* at 2. Mr. Burton "reviewed the Department of State CJ Determinations, including USML control, for the following part numbers." *Id.* His disclosure then lists a chart of 13 parts, their CJD case numbers, their U.S. Munitions List categories, and, for some, their end use, like a periscope or a generator. *See id.* All this information is described on the face of the corresponding

---

[6] This issue is presently before the Supreme Court in *Smith v. Arizona*, No. 22-899 (cert. granted Sept. 29, 2023, argument heard Jan. 10, 2024). The question presented is "[w]hether the Confrontation Clause of the Sixth Amendment permits the prosecution in a criminal trial to present testimony by a substitute expert conveying the testimonial statements of a nontestifying forensic analyst, on the grounds that (a) the testifying expert offers some independent Dcont opinion and the analyst's statements are offered not for their truth but to explain the expert's opinion, and (b) the defendant did not independently seek to subpoena the analyst."

CJDs, except end-use is missing from one of the CJDs.[7] The disclosure then says that "Mr. Burton confirms that the parts listed above are specially designed . . . for ITAR-controlled defense articles and that the associated manufacturing drawings are ITAR-controlled technical data, as indicated above," i.e., the information from the face of the CJDs. *Id.* The disclosure then says that the magnets are not commercial-off-the-shelf, "so new magnets were specially designed to meet the military equipment." *Id.* Mr. Burton's supplemental disclosure describes generally how the Department of Defense applies an "order of review" under the ITAR regulations when determining if an item is ITAR-controlled. *See* Ex. 4 at 1–2.

Like Mr. Douville, Mr. Burton's testimony that Quadrant's magnets are ITAR-controlled merely channels the underlying CJDs. Like Mr. Douville, he has much to say about the CJD process in general, but he had no involvement with the particular CJDs here. Like Mr. Douville, he appears to have done nothing or little more than review the information on the face of the CJDs. And like Mr. Douville, he appears to be comfortable resting on those two things—a general faith in the process and a reading of the CJDs—for his expert opinion. Granted, it appears that Mr. Burton was also supplied with information sufficient to fill in four cells of that chart (the end uses for the items reviewed in CJD number CJ0003928). And also granted, it appears he might have at least looked at the drawing for one part. *See* Ex. 3 at 3 ("Note: U.S. contractors routinely label ITAR-controlled technical data, such as the PN FP24018P1 magnet drawing, with visible ITAR export control markings . . . ."). But there is no evidence of independent work sufficient to make his opinions anything other than a substitute for those of the CJDs' signatories. Thus, for the same reasons Mr. Douville's proffered testimony that the magnets are ITAR-controlled violates the Sixth Amendment, so does Mr. Burton's. It too should be excluded on that subject for that reason.

---

[7] Specifically, the CJD numbered CJ0003928.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court issue an order excluding the opinions of Mr. Douville and Mr. Burton that Quadrant's magnets are ITAR-controlled.

| | |
|---|---|
| Dated: March 4, 2024 | By:     */s/     John L. Brownlee* |

John L. Brownlee (*pro hac vice*)
William F. Gould (*pro hac vice*)
Timothy J. Taylor (*pro hac vice*)
Caitlin A. Eberhardt (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/     Kent Wicker     (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/     Patrick J. Renn   (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/     Scott C. Cox    (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, the foregoing motion was electronically filed with the Clerk of the Court via the CM/ECF system, which sent a notice of electronic filing to the attorneys of record.

/s/ *John Brownlee*