UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 3:22-CR-88-DJH<br>*Filed Electronically* |
| QUADRANT MAGNETICS, LLC et al. | DEFENDANTS |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT DRAWINGS

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") move *in limine* to "exclude evidence concerning part numbers (and related drawings) other than those specifically identified in the counts of the Second Superseding Indictment." DN 136, at 1. Defendants claim that evidence of drawings for part numbers not referenced in the indictment is irrelevant, inadmissible as "other acts" evidence, and inadmissible under Federal Rule of Evidence 403 as unduly prejudicial, cumulative, confusing, and a waste of time. *Id.* at 2-10. Defendants are wrong across the board. Because evidence of transmission of additional part numbers helps contextualize the pattern of behavior underlying Defendants' conspiracy, it is admissible pursuant to Rule 402, 404(b), or as *res gestae*.

Defendants assert that evidence of their additional transmissions of magnet part drawings to China is irrelevant as to the conspiracy because the Indictment lists seven magnet part numbers in the overt acts, and the conspiracy can only be evaluated as to those discrete magnet parts. DN 136, at 4. Defendants misconstrue basic tenets of conspiracy law. "The indictment must inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case." *United States v. Bradley*, 917 F.3d 493, 504 (6th Cir.

1

2019) (citing *United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986)); *see United States v. Kuehne*, 547 F.3d 667, 686 (6th Cir. 2008) (finding no issue with "presentation of additional evidence to substantiate the charged offenses" which did not include "facts materially different from those charged in the indictment"); *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988) ("It is axiomatic that all the overt acts in furtherance of a conspiracy need not be alleged in the indictment." (citation omitted)). So long as defendants are 'given notice of the core criminality to be proven at trial,' courts 'afford[] the prosecution significant flexibility to prove the conspiracy's operation through both unalleged and alleged overt acts.'" *United States v. Ledbetter*, 2015 WL 5117979, at *7 (S.D. Ohio. Sept. 1, 2015) (quoting *United States v. Salmonese*, 352 F.3d 608, 620-21 (2d Cir. 2003)).  Notice of core criminality includes "description of the alleged [conspiracy], its members and affiliates, its purposes, its means and methods of operation, its timeframe of operation, the nature of the conspiracy and the types of predicate acts the co-conspirators purportedly agreed to." *Id.* The government has provided Defendants with this information in the Indictment. The government seeks to introduce into evidence as unindicted overt acts the same type of transmissions (and in many cases, the same part number being transmitted),[1] involving the same individuals, to the same place, with the same format and type of content of information transmitted. Where, as here, unindicted overt acts do not allege "new types of predicate acts," or otherwise "broaden any other essential elements of the [] conspiracy charge," *id.*, such acts are admissible.

---

[1] Many of the additional transmissions that the government may use at trial involve transmissions of one of the seven part numbers listed in the Indictment. For those, there should be no question that additional transmissions are relevant and probative of whether Defendants engaged in an ongoing conspiracy to commit ITAR violations, wire fraud, smuggling, and material false statements and engaged in acts in furtherance of that conspiracy through repeated transmission of identical part numbers.

Defendants appear to acknowledge that overt acts not specified in an indictment may be admissible "so long as there is no prejudice to the defendant." (DN 136 at 4 n.3 (quoting *United States v. Rios*, 830 F.3d 403, 427 (6th Cir. 2016)). That is the case here. Additional transmissions not alleged as overt acts will not lead the jury to convict for acts not alleged in the indictment (DN 136 at 7). "It has been said over and over again that the conspiracy, not the overt act, is the 'gist' of the crime." *United States v. Stone*, 323 F. Supp. 2d 886, 889 (E.D. Tenn. 2004) (citing *United States v. Cohen*, 145 F.2d 82, 94 (2d Cir. 1944)). The overt act "does not represent the object of the conspiracy, but rather, is one act (out of possible many) done in furtherance of or to effect the object of the conspiracy." *United States v. Abdi*, 498 F. Supp. 2d 1048, 1082 (S.D. Ohio 2007) (citing *Stone*, 323 F. Supp. 3d at 889). Here, evidence of additional transmissions will support the formation of the conspiracy and intent of the co-conspirators. *See United States v. Jenkins*, 871 F.2d 598, 605 (6th Cir. 1989) (evidence of the same general conduct as the offenses charged is not prejudicial). The court may also give appropriate limiting instructions to inform the jury that the Government must prove Defendants committed the crimes charged in the Indictment to address any concerns of prejudice.

Defendants further assert that any additional transmissions are prejudicial because they did not receive fair notice of additional part numbers or additional transmissions beyond those stated in the indictment. (DN 136, at 6). But the Sixth Circuit has "reject[ed] [the] argument that the due process right to clear notice of criminal charges includes notice of the exact method by which the criminal actions were alleged to have been committed." *Bradley*, 917 F.3d at 504 (quoting *United States v. Prince*, 214 F.3d 740, 758 (6th Cir. 2000)); *see id.* (rejecting argument that defendant had not been adequately noticed of additional overt acts not listed in indictment where facts presented at trial were not "materially different" from those charged in the indictment). As explained above,

3

the government has provided Defendants with notice of the facts that form the basis of the conspiracy charge, including twenty-two overt acts in support of the conspiracy charge. The indictment states that there were seventy transmissions during the period of the conspiracy, and the government has represented to Defendants that those transmissions are of the same type and form as the transmissions specifically alleged in the Indictment. In addition, the additional transmissions are in the possession of the defense, and they will have the opportunity to respond to the government's evidence and to cross-examine any government witnesses who testify to their contents. *See id.* at 504-05 (considering such "[a]dditional safeguards" that ensured fairness for defendant in case involving overt act evidence not listed in the indictment). Defendants will not be unduly prejudiced by presentation of additional transmissions of ITAR-controlled drawings to China.[2]

Defendants' remaining arguments to exclude evidence of additional transmissions pursuant to Federal Rule of Evidence 403 parrot the argument made with respect to unfair prejudice which, as stated above, does not hold up to scrutiny. Reference of additional part numbers and transmissions will not confuse or mislead the jury; rather, it will show a pattern of repeated conduct over a period of years that evinces both an ongoing conspiracy and strong indication of willfulness on Defendants' part to engage in the charged criminal conduct. For the same reasons, evidence of additional transmissions is not cumulative or a waste of time. Defendants' reliance on *United*

---

[2] The government is not required to provide Defendants with notice of the specific additional drawing transmissions that it intends to introduce as evidence at trial. For this reason, the government did not specify transmissions in its pre-trial brief (DN 129). It may choose to file a Rule 404(b) notice out of an abundance of caution, which would be due two weeks before trial. DN 37; *see* DN 98. In that regard, Defendants' assertion that the government "has failed to respond" to their February 8, 2024 letter simply is not true. The government responded on February 16, 2024 (the date on which Defendants' requested a response), stating that it would provide any 404(b) notice pursuant to the Court's scheduling orders.

*States v. Collins* to argue cumulativeness is misplaced. *See* 2022 WL 265946 (E.D. Mich. Jan. 27, 2022). In *Collins*, the court held that evidence of tax returns from five years prior to the earliest time period of offense conduct alleged in the indictment were cumulative where the government admitted five years' worth of untimely returns and there was an issue with the availability of potentially exculpatory evidence regarding the earlier returns. *Id.* at *11. Here, however, the additional transmission are within the time period of the charged conspiracy, there is no issue with missing exculpatory evidence, and the Indictment only has two, not five, years' worth of evidence of the conspiracy alleged in overt acts.

Defendants also argue that introduction of additional transmissions would be a waste of time to prove "complex elements as to *each* magnet." DN 136, at 9. To the extent the Defendants suggest the government would need to prove each additional part number is on the United States Munitions List (USML), that is not the case. The government may offer additional transmissions as evidence of willfulness and intent to join the conspiracy and does not need to prove that the Defendants actually committed each element of the crimes that were the unlawful objectives of the conspiracy. Even if any additional parts were *not* on the USML, evidence of additional transmissions may still show conspiracy and attempt to commit the crimes charged in the Indictment. Indeed, to prove Defendants are guilty of the conspiracy charge, the government need not prove that the exported item even was on the USML. *See, e.g.*, *United States v. Schaffer*, 586 F.3d 414, 422-23 (6th Cir. 2009), *cert. denied*, 559 U.S. 1021 (2010) ("The basis of the conspiracy charge is the agreement to commit the unlawful act, and not the unlawful act itself . . . . [I]t is irrelevant that it may have been objectively impossible for the conspirators to commit the substantive offense."); *United States v. Zhou Wu*, 711 F.3d 1, 25-26 (1st Cir. 2013) ("[A] defendant can be convicted of conspiracy to export items on the Munitions List even when the items he

5

conspires to export are not in fact on the Munitions List."); *United States v. Posey*, 864 F.2d 1487, 1492 (9th Cir. 1989) (finding actual export of USML items actually on the USML unnecessary for conviction of a conspiracy to violate AECA).

Defendants next contest admission of the additional drawing transmissions as evidence of *res gestae* or 404(b) "other acts" evidence. DN 136, at 4-5. Additional drawing transmissions are *res gestae* because they are, despite Defendants' assertions, "inextricably intertwined" with the charged offenses. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). The transmissions have "causal, temporal, [and] spatial connection with the charged offense[s]." *Id.* Specifically, most occur around the time period of the transmissions described in the overt acts of the conspiracy, they involve the same Defendants transmitting technical data to the same relevant individuals in China. The transmissions that occur before the transmissions charged in Count One are "a prelude to the charged offense" and "complete[] the story" of the conspiracy charge by demonstrating that Defendants had a pattern of conduct even before being notified by GE Aviation of the ITAR and DFARS violations inherent in sending technical drawings to, and producing magnets for DOD in, China. *Id.* These earlier transmissions show that Defendants took no remedial action when informed of their ITAR and DFARS violations in late 2017, instead continuing to place orders with their Chinese magnet manufacturer to benefit their bottom line.

The transmissions are also admissible under Rule 404(b), which allows for admission of "similar act" evidence "if such evidence bears upon a relevant issue in the case." *Hardy*, 228 F.3d at 750. Additional transmissions cannot be admitted pursuant to 404(b), according to Defendants, because there is not "sufficient evidence that the other act in question actually occurred," that is to say, that any magnet part numbers not alleged in the indictment were on the USML at the time of export such that the act of a transmission "in violation of the ITAR" occurred. DN 136, at 5 (first

6

quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002).[3] Not so. The "other act" that the government seeks to admit for purposes of 404(b) is the fact that additional drawings with ITAR markings were sent by Defendants to China. Irrespective of whether the government offers evidence to show that transmissions of any additional part numbers involved technical data that was on the USML, the fact of transmission of ITAR marked data before, during, and after the transmissions described in the overt acts of Count One's conspiracy charge are "other acts" that at least bear on the object of Defendants' conspiracy, and whether Defendants knowingly and voluntarily joined the conspiracy.[4] Again, as stated above, for purposes of the conspiracy charge, the government does not need to prove that the items were on the USML to prove that Defendants entered into a conspiracy and that a member of the conspiracy took at least one overt act to advance the conspiracy. *Schaffer*, 586 F.3d at 422-23; *United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002).

Separately and in the alternative to arguments made in other motions to exclude the government's commodity jurisdiction determinations (*see* DN 90, 118), Defendants ask the Court to exclude evidence of drawings for which there is no corresponding commodity jurisdiction determination. DN 136, at 9 & n.1. For the same reasons as articulated above, however, these drawings (and transmission of these drawings) are admissible as relevant, non-overly prejudicial examples of a pattern of conduct that also demonstrates willful, ongoing behavior by Defendants.

---

[3] Defendants also challenge admission of additional transmissions as other act evidence based on unfair prejudice and relevance, referring to arguments made in other parts of their motion. See DN 136, at 5. The United States responds to Defendants' motion in the order of Defendants' arguments, and hereby incorporates its responses to Defendants' challenges under Federal Rules of Evidence 401 and 403, as stated *supra* and *infra*.

[4] The government may offer evidence that additional parts transmitted were on the USML through commodity jurisdiction determinations. All commodity jurisdiction determinations that the government may use have been provided to Defendants.

7

For example, ITAR markings on drawings are evidence of whether the drawing is controlled, and transmission of such a drawing is evidence of intent to violate ITAR by exporting controlled items without a license. Moreover, Defendants are incorrect to insinuate that the government has failed to request commodity jurisdiction determinations for drawings it potentially seeks to introduce to avoid producing "potentially exculpatory evidence." DN 136 at 10. The government has turned over in discovery all commodity jurisdiction determinations made by the Department of State for part numbers that it intends to introduce at trial, including for part numbers where there *was* a determination that the drawing for the part number was not subject to the USML.[5] The United States has not deprived Defendants of any exculpatory or potentially exculpatory evidence.

    WHEREFORE, the United States requests that the Defendants' Motion *in Limine*, DN 136, be DENIED.

---

[5] The government also notes that nothing has prevented Defendants from obtaining commodity jurisdiction determinations for any drawings that they believe are not controlled by the USML.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |

 s/ *Joshua D. Judd*  
Joshua D. Judd  
Christopher C. Tieke  
Assistant U.S. Attorneys  
717 W. Broadway  
Louisville, KY 40202  
(502) 582-5911  
joshua.judd@usdoj.gov  
christopher.tieke@usdoj.gov  

 s/ *Alex Wharton*  
Alex Wharton  
Leslie Esbrook  
Trial Attorneys  
950 Pennsylvania Ave., NW  
Washington, DC 20530  
(202) 514-4523  
alexander.wharton@usdoj.gov  
leslie.esbrook@usdoj.gov  

9

CERTIFICATE OF SERVICE

On March 11, 2024 I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

   s/ *Joshua D. Judd*
Assistant United States Attorney