UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                        CRIMINAL NO. 3:22-CR-88-DJH
                                                *Filed Electronically*

QUADRANT MAGNETICS, LLC et al.                              DEFENDANTS

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO THE QUALITY OF QUADRANT'S MAGNETS

Defendants Quadrant Magnetics ("Quadrant"), Phil Pascoe, Scott Tubbs, and Monica Pascoe move *in limine* to prohibit the United States from introducing evidence "related to the quality of Quadrant's magnets, including evidence of tests of the magnets, evidence of the investigations into the magnets' quality, or evidence of the purported need for the magnets to meet certain specifications."  DN 137 at 1.  Defendants claim that since the Second Superseding Indictment ("Indictment") does not allegations relating to quality that such evidence is irrelevant under Federal Rule of Evidence 401, inadmissible as unduly prejudicial under Federal Rule of Evidence 403, and a variance from the Indictment.  *Id*.  Defendants are wrong.[1]  Evidence of the quality of the magnets is directly relevant to the issue of whether Quadrant Magnetics engaged in and took steps as part of a conspiracy to engage in a scheme to defraud General Dynamics and the Department of Defense ("DOD") by providing them with magnets that did not meet the specifications required by their contracts.  In addition, this evidence is directly relevant to

---

[1] Defendants also restate their arguments to exclude the expert testimony of Dr. Scott McCall. *See* DN 137 at 4 (incorporating arguments from Defendants' earlier motion and reply to exclude expert testimony (DN 93, 121)). The government has already responded to Defendants' earlier motion and does not restate that response here. *See* DN 107.

Defendants' expected defense regarding the commercial availability of magnets that are the same as the magnets at issue in this case.  This evidence does not constitute a variance from the indictment and Defendants have failed to show how the probative value is substantially outweighed by any risk of undue prejudice.

All relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that cannot meet this standard is inadmissible. *See* Fed. R. Evid. 402. Even if relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984).

Evidence regarding the fact that Quadrant's magnet properties did not match the magnet properties of the technical drawings is directly probative of and relevant to whether there was a conspiracy and a scheme or artifice to defraud General Dynamics and the DOD.  For example, the failure rates of the magnets are relevant to the conspiracy and the fraudulent scheme because they show that Quadrant sold products that were not what was requested in the technical data, thereby indicating that Quadrant engaged in and took steps as part of a conspiracy to engage in fraud on the DOD and its customers.  To assert a count of wire fraud or conspiracy to commit a scheme involving wire fraud, the Government must assert "a scheme to defraud," which is "any plan or course of action by which someone intends to . . . deprive another by deception of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003). The "scheme to defraud" element "is not defined

according to a technical standard. The standard is a 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.'" *Id*. The magnets that U.S. defense contractors ordered from Quadrant were placed in sensitive military equipment vital to the national security. Any deviation from the specifications, including magnet quality contracted for, would have been concerning to the contractors and the DOD, and represented part of Defendants' scheme to defraud the United States. This evidence is clearly relevant pursuant to Rule 401 and 402 that is admissible to prove the elements of the charged crimes.

Moreover, evidence related to the quality and performance of Quadrant's magnets is also *res gestae* because it is inextricably intertwined with the charged conduct. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (finding that *res gestae* evidence is "background evidence" that "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense"); *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001) (finding that evidence that is "inextricably intertwined" with evidence of the crime charged is admissible.). The jury is entitled to know the "setting" of a case, including the "time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977). "This Court has consistently held that other acts, which are themselves part of the 'setting' of a case, are admissible." *United States v. Davis*, 28 F.3d 1214 (Tbl.), 1994 WL 362061, *4 (6th Cir. 1994). Here, evidence regarding the quality and performance of the magnets goes directly to the issue of whether or not General Dynamics and the DOD were defrauded and provides a comprehensible and coherent story for the jury regarding why there was concern regarding Quadrant's magnets.

In addition, evidence regarding the quality and functional capability of the magnets is directly relevant to rebut Defendants' main, albeit erroneous, defense regarding the applicability of the commercially available exception to the ITAR regulations. *See* 22 C.F.R. § 12041(b)(3)(i). Defendants have filled countless pages in filings with arguments that with "near-certainty" there are commercially available magnets that are equivalent to those at issue in this case and one only need to look "on Amazon, EBay, and Wal-Mart." (DN 88). Indeed, Defendants have proffered their own expert, Stanley Trout, who will purportedly testify that he "compared those principal properties for each of the five QM Magnets with a commercially available magnet" and determined that each of the magnets has the "same principal properties to the QM Magnets depicted in the drawing" and are "widely used in the commercial sector" and "are available in literally thousands of combinations of shapes, sizes, and grades." (DN 134). Defendants have highlighted the quality and specifications of the magnets as a central element of their defense to the ITAR violation counts and at the same time seek to prevent the United States from introducing evidence regarding the same. Evidence relevant to rebutting a defense is admissible. *See United States v. Lang*, 717 Fed. App'x 523, 530 (6th Cir. 2017) (stating that testimony of IRS agent about defendant's failure to file tax returns and underreporting of income was relevant and admissible at trial for federal drug and money laundering charges, as it cast doubt on defendant's main defense of a legitimate business); *United States v. Jackson-Randolph*, 282 F.3d 369, 377 (6th Cir. 2002) ("[B]usiness success has been held admissible to rebut a defense that a defendant is irrational in making business decisions.").

Defendants additionally argue that evidence regarding the quality of the magnets represents a variance from the Indictment because it is not mentioned in the Indictment. This stretches the concept of a variance far beyond the law. A variance "occurs when the charging terms of the

indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (internal citations omitted).  The substantial rights of the defendant "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Id*.  A variance is "not per se prejudicial." *Id*.  "Of critical importance is whether the evidence offered departs from the conspiracy alleged in such a manner that can reasonably be construed only as supporting a finding of multiple schemes." *United States v. Smith*, 749 F.3d 465, 482 (6th Cir. 2014).

Here, evidence regarding magnet quality is not of a completely different fraud scheme or conspiracy as Defendants suggest.  Instead, this evidence would "merely constitute a presentation of additional evidence to substantiate charged offenses," namely, conspiracy and wire fraud, and would not be offered for proof of facts "materially different from those alleged in the indictment." *United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019) (cleaned up) (citing *Kuehne*, 547 F.3d at 686) (finding evidence of  use of additional firearms not materially different from facts charged for use of a firearm during and in relation to a drug trafficking offense). It is basic conspiracy law that the indictment need only "inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case." *Bradley*, 917 F.3d at 504 (citing *United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986)); *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988) ("It is axiomatic that all the overt acts in furtherance of a conspiracy need not be alleged in the indictment." (citation omitted)).

Defendants are specifically charged in the Defendants with a conspiracy to "fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government" and with a "scheme and artifice to defraud, and for

obtaining money and property by means of materially false and fraudulent pretenses, representations and promises." (DN 73). Evidence of whether or not the customer, in this case General Dynamics and the DOD, received what they paid for, which would mean magnets that complied with United States' export control laws, magnets that met the technical specifications of the drawings, and magnets that performed as expected, is all relevant in terms of whether a conspiracy or scheme to defraud existed. The quality of Quadrant's magnets, including evidence of tests of the magnets, investigations into the magnets' quality, evidence of whether the magnets met the contractual specifications, and evidence of magnet performance is not evidence of facts materially different from those alleged in the indictment but is instead direct proof of a single conspiracy and scheme to defraud General Dynamics and DOD of the benefits they bargained for.

Defendants next briefly argue that this evidence is unfairly prejudicial since it has "so little connection, if any, to the DFARS scheme." (DN 137 at 5). A Rule 403 violation only occurs if the court is convinced that the evidence would "result in 'unfair prejudice.'" *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993) (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988)). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *Id*. The discretion granted to the district court in analyzing evidence under Rule 403 is "very broad." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.1989); *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006). Much more than a "little connection" as Defendants claim, evidence regarding the magnet quality is, as discussed in detail above, directly related to and highly probative of the issue of whether Quadrant conspired to and fraudulently sold magnets that did not meet the required or intended specifications to U.S. defense contractor customers for equipment intended for use by the DOD as part of a broader scheme to

obtain money and property by means of materially false and fraudulent pretenses, representations and promises.  Defendants have failed to demonstrate how this probative value is substantially outweighed by a danger of unfair prejudice.

Lastly, Defendants claim the evidence would be "overwhelmingly rebutted." (DN 137 at 1).  Defendant's assertion that they can rebut the evidence weighs in favor of that evidence's admission and is certainly not grounds for exclusion.  That is what a trial is for.

WHEREFORE, the United States requests that Defendants' Motion *in Limine*, ECF 137, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |

| | |
|---|---|
|  s/ *Joshua D. Judd* |  s/ *Alex Wharton* |
| Joshua D. Judd | Leslie Esbrook |
| Christopher C. Tieke | Alex Wharton |
| Assistant U.S. Attorneys | Trial Attorneys |
| 717 W. Broadway | 950 Pennsylvania Ave., NW |
| Louisville, KY  40202 | Washington, DC 20530 |
| (502) 582-5911 | (202) 514-4523 |
| joshua.judd@usdoj.gov | alexander.wharton@usdoj.gov |
| christopher.tieke@usdoj.gov | leslie.esbrook@usdoj.gov |

<u>CERTIFICATE OF SERVICE</u>

     On March 11, 2024 I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.


  s/ *Joshua D. Judd*
Assistant United States Attorney