UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                                    CRIMINAL NO. 3:22-CR-88-DJH
                                                                      *Filed Electronically*

QUADRANT MAGNETICS, LLC et al.                                        DEFENDANTS

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE MAGNETIZATION EVIDENCE

Defendants Quadrant Magnetics, LLC ("QM"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") recycle the very same arguments previously made in a pretrial motion to strike magnetization allegations (Motion to Strike, DN 89) and now recast them as a motion *in limine* to prohibit the United States from providing evidence regarding magnetization and the locations where QM's magnets were illegally magnetized. They claim that such evidence is irrelevant and prejudicial. For many of the same reasons discussed in the United States' response to QM's motion to strike, the Court should deny Defendants' baseless request. (*See* United States' Response to Motion to Strike, DN 104). However, the United States will address Defendants' refashioned arguments from an evidentiary standpoint.

Evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that cannot meet this standard is inadmissible. *See* Fed. R. Evid. 402. Even if relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "A district court

1

is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984).

As the United States explained in its response to Defendants' motion to strike, evidence regarding magnetization and the location of magnetization is relevant to Defendants' scheme to defraud General Dynamics and the Department of Defense ("DOD"). Defendants' intentional misrepresentations regarding where magnetization occurred are directly probative of and relevant to whether there was a scheme or artifice to defraud and use of interstate wire communications in furtherance of the scheme. *See United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (reciting elements of wire fraud charge). In particular, evidence regarding magnetization and Defendants' own false statements regarding where the magnets were produced (country of origin), including specific statements and material omissions regarding magnetization and production, are directly relevant to the existence of a scheme to misrepresent that the magnets they were providing to General Dynamics and the Department of Defense were compliant with the DFARS. More than that, it is evidence that "'adds context and dimension to the government's proof of the charges,'" making it further relevant as *res gestae*. *United States v. Johnson*, 256 F. Supp. 3d 755, 760 (M.D. Tenn. 2017) (quoting *United States v. Mangual-Santiago*, 562 F.3d 411, 427 (1st Cir. 2009)). Evidence that Defendants misrepresented where part of the process of creating magnets took place undoubtedly adds context and dimension to their general scheme to defraud DOD and Quadrant Magnetics' customers.

It is also relevant to Defendants' "state of mind." *United States v. Paulus*, 2016 WL 280300, at *2 (E.D.K.Y. Jan. 22, 2016). And the government will present evidence that, when the issues with GE Aviation arose in August 2017 and QM was directly asked by GE Aviation about the country of origin of the magnets and the location where magnetization occurred, QM

2

misrepresented that the magnets were magnetized in the United States and provided false documentation to GE Aviation and to the United States government indicating the same. This demonstrates consciousness of guilt, and is further direct evidence of Defendants' willfulness moving forward and intent to ultimately defraud General Dynamics and DOD.

In addition, evidence of magnetization is relevant to the conspiracy charge, which alleged that Defendants conspired to smuggle goods outside of the United States, commit violations of the Arms Export Control Act ("AECA") and International Traffic in Arms Regulations ("ITAR"), commit wire fraud by fraudulently and knowingly sell rare earth magnets manufactured, smelted, and magnetized in China to defense contractors and the United States government while misrepresenting and concealing the location of the manufacturing process and the county of origin, and making a materially false statement. (Second Superseding Indictment, DN 73). "A single agreement to commit several crimes constitutes one conspiracy." *United States v. Vichitvongsa*, 819 F.3d 260, 273 (6th Cir. 2016). Where Defendants magnetized the magnets and their false statements on the topic to GE Aviation, General Dynamics, and the United States government not only provide "context and dimension" to the conspiracy, but are also directly relevant to the part of the conspiracy that alleges defendants made materially false statements, in particular in the Government Industry Data Exchange Program (GIDEP) Advisories, where Defendants falsely stated that they magnetized QM magnets in Louisville, Kentucky, before shipping them to GE Aviation. These were "acts of concealment done in furtherance of the *main* conspiracy." *United States v. Finlay*, 55 F.3d 1410, 1415 (9th Cir. 1995) (finding submission of false documents to Nuclear Regulatory Commission an essential part of conspiracy to mislead and conceal violations of Commission's rules).

3

As in their prior pleadings, Defendants' sole argument that the term "magnetization" is irrelevant hinges on the technical language of the Specialty Metals Clause. Because the Clause restricts specialty metals to those that are "melted or produced" in qualifying countries and does not mention "magnetization," Defendants claim that the term is irrelevant to the wire fraud charges. (DN 139, at Page ID #1910). Defendants cite to *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), to support their unfounded assertion that the United States is precluded from putting on magnetization evidence to support the wire fraud charges since the Specialty Metals Clause does not use the term magnetization. *Escobar* is not a wire fraud case, however, its interpretation of the False Claims Act ("FCA") actually supports the United States' position. In *Escobar*, the Supreme Court adopted the implied false certification theory of liability under the FCA, which is based on the premise that a defendant that submits a claim to the government impliedly certifies that it has complied with applicable legal requirements (such as statutory, regulatory, or contractual requirements), even without making an express statement of compliance. A defendant that does not comply with a relevant requirement can then be found liable under the FCA even without having expressly certified compliance in the claim. However, the Supreme Court rejected the idea that FCA liability only applies in instances where a defendant "fails to disclose the violation of a contractual, statutory, or regulatory provision that the Government expressly designated a condition of payment. We conclude that the Act does not impose this limit on liability." *Id.* at 190. Rather, "the misrepresentation must be *material to the other party's course of action.*" *Id.* at 191. (emphasis added). In other words, *Escobar* does not, as Defendants suggest, support the proposition that wire fraud in the context of the Specialty Metals Clause requires that the United States show that misrepresentations regarding magnetization and the country of origin of the magnets violate the Specialty Metals Clause as

incorporated into contract provisions. Rather, the misrepresentation must simply be material to the government's decision to rely on the representation. In this case, QM's specific statements regarding magnetization are directly relevant to the existence of a scheme to misrepresent that the magnets paid for by GE Aviation, General Dynamics and the Department of Defense were compliant with DFARS and were partially produced in the United States. Had the government known the magnets were fully made in China, they would not have purchased them. That the magnetization occurred in China makes it more likely that the ITAR and DFARS violations charged in the Indictment occurred.

This argument also ignores the fact that the conspiracy broadly involves an agreement to commit several predicate acts, one of which includes material misrepresentations regarding where QM's "magnets were magnetized." (DN 73 ¶ 18(a), (b)). The fact that Defendants conspired to make that misrepresentation is relevant to the charge regardless of whether the Specialty Metals Clause does or does not mention magnetization. The bottom line is that the magnets the defendants sold to GE Aviation, General Dynamics, and DOD were magnetized in China and their statements and omissions otherwise to each were materially false. Introduction of evidence related to Defendants' false claims of magnetization are relevant to both the wire fraud and conspiracy charges.

Even if not considered direct evidence, where Defendants magnetized the magnets and their false statements on the topic to GE Aviation, General Dynamics, and the United States are *res gestae* because this evidence is inextricably intertwined with the charged conduct. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (finding that res gestae evidence is "background evidence" that "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged

5

offense"); *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001) (finding that evidence that is "inextricably intertwined" with evidence of the crime charged is admissible.). The jury is entitled to know the "setting" of a case, including the "time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977). "This Court has consistently held that other acts, which are themselves part of the 'setting' of a case, are admissible." *United States v. Davis*, 28 F.3d 1214 (Tbl.), 1994 WL 362061, *4 (6th Cir. 1994).

Defendants next argue that this evidence is unfairly prejudicial. A Rule 403 violation only occurs if we are convinced that the evidence would "result in 'unfair prejudice.'" *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993) (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988)). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *Id*. The discretion granted to the district court in analyzing evidence under Rule 403 is "very broad." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.1989); *see United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006).

Defendants' misrepresentation of where QM—a global magnetic company with affiliates around the world—magnetized its products is not the kind of inflammatory fact that would tend to prejudice a defendant. More than negligible, the probative value of such evidence is extremely high. Allegations that Defendants misrepresented where the magnets were magnetized and the "country of origin of the manufacture and smelting of magnets" go directly to elements of the wire fraud and conspiracy offenses—that Defendants devised a scheme to defraud with the intent to defraud—and several overt acts in furtherance thereof, including materially false statements in the GIDEP Problem Advisories. Even if the allegation that QM misrepresented that it magnetized products in Louisville as opposed to its facility in China does not directly (if proved) establish an

6

element of a charged offense, it is nonetheless relevant to prove Defendants' scheme and intent. Defendants have failed to demonstrate how this probative value is substantially outweighed by a danger of unfair prejudice. *See United States v. Baez*, 349 F.3d 90, 94 (2d Cir. 2003) (finding language not overly prejudicial where "it did not involve conduct more inflammatory than the charged crime").

WHEREFORE, the United States requests that defendant's Motion *in Limine*, ECF 139, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |

| | |
|---|---|
| s/ *Joshua D. Judd* | s/ *Alex Wharton* |
| Joshua D. Judd | Alex Wharton |
| Christopher C. Tieke | Leslie Esbrook |
| Assistant U.S. Attorneys | Trial Attorneys |
| 717 W. Broadway | 950 Pennsylvania Ave., NW |
| Louisville, KY 40202 | Washington, DC 20530 |
| (502) 582-5911 | (202) 514-4523 |
| joshua.judd@usdoj.gov | alexander.wharton@usdoj.gov |
| christopher.tieke@usdoj.gov | leslie.esbrook@usdoj.gov |

CERTIFICATE OF SERVICE

      On March 11, 2024 I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

       s/ *Joshua D. Judd*
      Assistant United States Attorney