UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                          CRIMINAL NO. 3:22-CR-88-DJH
                                                     *Filed Electronically*

QUADRANT MAGNETICS, LLC et al.                               DEFENDANTS

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OR ARGUMENT THAT DEFENDANTS POSED A
NATIONAL SECURITY THREAT**

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") move *in limine* to broadly prohibit the government from making "references or argument that Defendants or their activities posed a threat to national security, compromised U.S. military capabilities, helped the Chinese government, disadvantaged U.S. securities interests, or the like." DN 142, at 1. Defendants assert that references or argument in this regard are irrelevant under Federal Rule of Evidence 401 and, even if relevant, unfairly prejudicial under Rule 403. *Id.* The government alleges that Defendants violated a statute that protects the United States' national security. For that reason alone, the Court should deny Defendants' motion.

**ARGUMENT**

Among other criminal conduct, the government alleges that Defendants conspired to violate and violated the Arms Export Control Act ("AECA") and the International Traffic in Arms Regulations ("ITAR"). Second Superseding Indictment ("Indictment"), DN 73 ¶¶ 16(a), 21-28. Congress enacted the AECA to control the import and export of defense articles and services. *See United States v. Durrani*, 835 F.2d 410, 421 (2d Cir.1987). Specifically, the AECA was "designed

1

to protect against the national security threat created by the unrestricted flow of military information abroad." *United States v. Posey*, 864 F.2d 1487, 1495 (9th Cir.1989). The AECA's purpose is set forth in the statute, which states: "[i]n furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles." 22 U.S.C. § 2778(a)(1). In other words, the security of the United States is an underlying objective of the AECA.

The government also alleges that Defendants conspired to and committed wire fraud by devising a scheme to misrepresent and conceal the country of origin of Quadrant Magnetics' magnets in violation of the specialty metal provision of the Defense Federal Acquisition Regulation Supplement ("DFARS"), 48 C.F.R. § 252.225-7009. *See* DN 73 ¶¶ 16(c), 19-20. The DFARS protect the integrity of the Department of Defense's ("DOD") supply chain. The United States' defense acquisition system "achieve[s] the national security strategy prescribed by the President pursuant to section 108 of the National Security Act of 1947 (50 U.S.C. § 3043) and . . . support[s] the United States Armed Forces." 48 C.F.R. § 201.101; *see also* 83 Fed. Reg. 19641 (May 4, 2018) (setting forth statement of purpose for DFARS); 50 U.S.C. § 3043 ("The President shall transmit to Congress each year a comprehensive report on the national security strategy of the United States."). Indeed, the specialty metal clause itself was added to the DFARS pursuant to Section 842 of the National Defense Authorization Act for Fiscal Year 2007. *See* 74 Fed. Reg. 37626-01, 37626 (July 29, 2009). And courts have recognized that defense procurement regulations "promote economic and national security . . . and support the American manufacturing and defense industrial bases." *See United States v. Kim*, 2021 WL 2955903, at *10 (E.D. Va. July 14, 2021) (discussing Buy American Act, Berry Amendment, and Trade Agreement Act). As with

the AECA, the security of the United States likewise is plainly an underlying objective of the DFARS.[1]

To prove Defendants exported a defense article in violation of the AECA and ITAR, the government must prove, among other elements, that the item Defendants exported was a defense article on the United States Munitions List ("USML"). *See* 22 U.S.C. §§ 2778(b)(2)-(c). In this case, the government must prove that drawings that Defendants exported were technical data directly related to a part specially designed for use in or with a defense article. *See, e.g.*, 22 C.F.R. § 121.1, Category XX(e)-(f); 22 C.F.R. § 120.41. To prove the technical data was directly related to a part specially designed for a defense article, the government must present evidence regarding the article's military and defense nature and end use, which necessarily implicates the United States' national security interests.

Defendants argue that the Indictment "solely alleges Defendants violated U.S. export laws by emailing ITAR-controlled technical drawings out of the country." DN 142, at 4. By Defendants' own reading of the Indictment, allegations of emailing ITAR-controlled technical drawings requires evidence of and testimony related to the specific military end use for each charged magnet. Even if the Court were to credit Defendants' efforts to minimize the seriousness of their conduct, however, the law criminalizes such conduct because of the national security threat it poses. Indeed, "[t]echnical data that is relatively harmless and even socially valuable when available domestically may, when sent abroad, pose unique threats to national security." *Posey*, 864 F.2d at 1497.

---

[1] Defendants' motion focuses on the alleged violations of U.S. export laws, and the government responds accordingly. But the United States' national security interests are equally relevant to the conspiracy and wire fraud charges. Defendants scheme and artifice to defraud was to obtain money from DOD and its subcontractors by concealing and misrepresenting where Quadrant Magnetics produced its magnets. Quadrant Magnetics produced its magnets in China, in violation of the DFARS, which set forth regulations requiring those procuring defense items to do so within national security parameters. National security in this context is highly relevant and not prejudicial.

Likewise, an obvious nexus exists between national security and the export of defense articles, including technical data sent to China without a license. *See Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016) ("[T]he State Department's stated interest in preventing foreign nationals . . . from obtaining technical data on how to produce weapons and weapon parts is not merely tangentially related to national defense and national security; it lies squarely within that interest."); *see also* 22 C.F.R. §§ 126.1(a)(1), (d)(1) (setting forth State Department's policy of denial regarding license requests for export of defense articles to China); *cf. Kim*, 2021 WL 2955903, at *10 (finding government procurement regulations "prevent[] American tax dollars from being directed to economic rivals, such as China" and, in so doing "promote and protect another vital concern—the national security of this country"). Defendants may not view their actions as posing a threat to national security—and they are free to argue and present evidence at trial on their view—but the United States government does.

Defendants assert that none of the Indictment's "allegations expressly state or even imply that [Defendants'] actions had any consequences for U.S. security interests." DN 142, at 1. Not so. Indeed, the allegations that Defendants violated the AECA themselves are an implicit (if not explicit) allegation that Defendants acted contrary to U.S. security interests. *See United States v. Boumelhem*, 339 F.3d 414, 423 (6th Cir. 2003) ("The government's control and regulation of the export of weapons implicates significant government interests in the realms of national security and relations with other nations."). That is the bedrock of the statutory framework under which Defendants acted unlawfully. Defendants attempt to cabin their broad ask of the Court by again arguing that the government's experts should not be permitted to testify regarding the quality of Quadrant Magnetics' magnets and the downstream effects such quality might have had on U.S. military capabilities. DN 142, at 2. The government has responded to these arguments elsewhere.

*See* DNs 107, 109, Govt.'s Resp. to Defs.' Mot. in Lim. to Exclude Evidence Related to the Quality of Quadrant's Magnets, DN 137 (filed contemporaneously herewith). It notes here that national security of course will come up in Dr. McCall's expert testimony—he was asked to opine on the technical properties of magnets that were promised to DOD and its subcontractors for use in military items. These magnets were placed in military equipment vital to the nation's national security. Even if Defendants' arguments in this regard had merit, however, the arguments cannot extend to prohibit "any other evidence, or government argument, that Defendants' actions compromised U.S. security interests, advanced foreign adversaries, or the like." DN 142, at 2.[2] Evidence or argument that Defendants compromised U.S. security interests by exporting ITAR-controlled technical data to China to produce magnets for military end use would not "create 'an undue tendency to suggest a decision based on improper considerations,' and specifically, 'an emotional one.'" DN 142, at 4 (quoting *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018), *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Rather, the harm to United States security interests is the gravamen of the offense.

Defendants' cited authorities are unavailing. Neither *Asher* nor *Old Chief* involved a national security offense. *Asher* concerned prior-act evidence against a jailor who abused an inmate and filed a false report to cover it up. 910 F.3d at 857-58. The Sixth Circuit found reversible error where the district court admitted defendant's prior abuse of a different prisoner and subsequent cover up, because the risk of prejudice outweighed the incremental probative value of the evidence. *Id.* at 863-64. Likewise, in *Old Chief*, the Supreme Court reversed the lower court's decision in a felon-in-possession case to admit the full record of the defendant's prior judgment of

---

[2] The government does not, as Defendants suggest, intend to present evidence or argue that Defendants intended to help the Chinese government. DN 142, at 1.

conviction rather than defendant's admission to the prior conviction. 519 U.S. at 655-56. Defendants' reliance on cases involving prejudicial propensity evidence are misguided. Here, references or argument by the government concerning the United States' security interests would not be "[e]vidence of other crimes, wrongs, or acts," under Rule 404(b), or unfairly prejudicial under Rule 403. References and evidence related to the national security interests that the AECA exists to protect are vital contextual evidence for the jury to understand why the law prohibits Defendants' conduct. And evidence that Defendants produced specially designed magnets for use in military items literally is something the government must prove.[3] Military items do not exist in the abstract; in this case, they are at the end of a supply chain of which Quadrant Magnetics was a key part.

Defendants also argue that any reference or evidence concerning threats to national security would be "highly speculative and highly inflammatory." DN 142, at 4. Not so. In a case alleging that Defendants sent technical data to China to produce parts that ended up in U.S. military items, such references and evidence are routine, expected, and necessary. Indeed, prohibiting the United States from referencing the national security threat such conduct posed would confuse the jury and unfairly prejudice the government, not Defendants, under Rule 403.

As Defendants anticipated, *see* DN 142, at 4, the government notes that the district court in *United States v. Roth* rejected the same argument that Defendants advance here, writing:

> Based upon a review of the items on the USML and the policy statement regarding designation of future defense articles, the Court agrees with the government that whether an item is considered a defense article is at least in part related to its role in military operations and therefore references to the threat to national security

---

[3] As set forth in its Trial Brief, DN 129, and Proposed Jury Instructions, DN 130, however, the government need not prove that an exported item was on the USML to prove Defendants are guilty of the conspiracy or attempt to export offenses charged in Counts One and Five through Eight, respectively. *See, e.g.*, *United States v. Schaffer*, 586 F.3d 414, 422-23 (6th Cir. 2009), *cert. denied*, 559 U.S. 1021 (2010) (conspiracy); *United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (citing *United States v. Shelton*, 30 F.3d 702, 705 (6th Cir. 1994)) (attempt).

> caused by disclosure of the alleged technical data at issue in this case is relevant to
> the charges in the Indictment. Because of this relevance, the Court will not exclude
> all references to threats to national security, however, defendant may object at trial
> to any references that he believes are irrelevant to the charged crimes.

2008 WL 4137814, at *1-*2 (E.D. Tenn. Aug. 22, 2008), *aff'd*, 628 F.3d 827 (6th Cir. 2011). This Court should apply the same rationale. Defendants attempt to sidestep this precedent by suggesting that the district court "determined only that references to national security could be relevant in the narrow context of explaining what constitutes a defense article." DN 142, at 2. But the district court's ruling was not as narrow as Defendants suggest, as the language the government quotes in full above demonstrates—e.g., "references to the threat of national security caused by disclosure of the alleged technical data at issue in this case is relevant to the charges." *Roth*, 2008 WL 4137814, at *1. Also contrary to Defendants' suggestion, while the district court in *Roth* ruled on relevancy grounds explicitly, necessary to the court's decision was its rejection of defendant's argument that "evidence suggesting defendant's actions threatened national security, including testimony on the purpose of the [AECA] . . . will likely unfairly prejudice the jury." *Id.*

Finally, the government's proposed jury instructions set forth the elements of the offenses that the government is required to prove beyond a reasonable doubt. DN 130. They should allay any purported concern about the jury reaching an "emotional" consideration. *See* DN 142, at 4. If the Court has any doubt after the close of evidence, however, it could consider issuing a limiting instruction. *See, e.g.*, *United States v. Whitt*, 752 Fed. App'x 300, 307-08 (6th Cir. 2018).

### CONCLUSION

For the reasons stated herein, the government requests that Defendants' Motion *in Limine*, DN 142, be DENIED.


 Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney
Western District of Kentucky

JENNIFER KENNEDY GELLIE
Executive Deputy Chief
Counterintelligence and Export Control Section
National Security Division


 s/ Joshua D. Judd
Joshua D. Judd
Christopher C. Tieke
Assistant U.S. Attorneys
717 W. Broadway
Louisville, KY  40202
(502) 582-5911
joshua.judd@usdoj.gov
christopher.tieke@usdoj.gov

 s/ Alex Wharton
Alex Wharton
Leslie C. Esbrook
Trial Attorneys
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-4523
alexander.wharton@usdoj.gov
leslie.esbrook@usdoj.gov

8

<u>CERTIFICATE OF SERVICE</u>

On March 11, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.


 s/ *Joshua J. Judd*
Assistant United States Attorney