# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**United States of America**

v.

No. 3:22-CR-88-DJH

**Quadrant Magnetics, LLC et al.**

### DEFENDANTS' RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF THOMAS J. MCCARTHY

The government seeks a double-standard in requesting exclusion of Defendants' ITAR expert Tom McCarthy. The government argues that his testimony opining that Quadrant's magnets are not ITAR-controlled constitutes an inadmissible legal conclusion. That is exactly the testimony that the government seeks to introduce through its own experts. Steven Burton "will testify that the drawings in the Indictment and involved in the case are technical data, as defined by 22 C.F.R. 120.33, and that a Department of State export license is required to export the technical data." (D.N. 91-2, PageID.1065.) Alex Douville "will testify as to why the articles at issue in the case met descriptions in the U.S. Munitions List ("USML") in 22 C.F.R. § 121.1, and were thus controlled under the ITAR, 22 C.F.R. Parts 120-130." (D.N. 91-1, PageID.1057.) If Mr. McCarthy's testimony is objectionable, then so is the testimony of these government witnesses. Mr. McCarthy's testimony is admissible to the same extent as that of the government's experts, and the Court—at trial—can ensure that testimony does not veer into prohibited legal conclusions on guilt or innocence or otherwise.

As for the government's other qualms about Mr. McCarthy's testimony related to foundation and reliability, those are untimely *Daubert* criticisms against him and Defendants' other expert, Dr. Trout, and meritless besides.

## LEGAL STANDARD FOR MOTIONS *IN LIMINE*

Whether to grant a motion *in limine* is a matter within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citation omitted). *In limine* rulings are preliminary, and the Court may change its ruling on a particular matter at trial as warranted. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## ARGUMENT

### 1. Mr. McCarthy's testimony is admissible to the same extent as the government's experts' testimony.

The gravamen of the government's argument is that Mr. McCarthy's testimony is inadmissible because it offers a legal conclusion that the Quadrant magnet drawings he reviewed are not ITAR-controlled. (*See* D.N. 134, PageID.1807 ("Defendants hired Mr. McCarthy as an expert to tell the jury the magnets . . . are not on the USML. But Mr. McCarthy's testimony would improperly wrest an ultimate issue from the jury and usurp the Court's role in instructing the jury how to apply the law."), PageID.1809 ("Defendants seek to have Mr. McCarthy not only embrace an ultimate issue in this case—i.e., whether the items Defendants exported as charged … were defense articles on the USML—but decide it for the jury."), PageID.1811 ("Mr. McCarthy's testimony would communicate to the jury his conclusion on a dispositive issue—whether the technical data Defendants willfully exported to China were defense articles on the USML. The law does not permit such conclusory testimony on an ultimate issue.").)

Mr. McCarthy's proffered testimony—that Quadrant's magnets are not on the USML—is indistinguishable from the government's experts'—that Quadrant's magnets *are* on the USML. For Mr. Burton's expert disclosure testimony, literally the first words are that he "will testify that the drawings in the Indictment and involved in the case are technical data, as defined by 22 CFR 120.33, and that a Department of State export license is required to export the technical data."

(D.N. 91-2, PageID.1065.) Mr. Burton will testify that he reviewed the Department of State's commodity-jurisdiction determinations for each of the parts in the indictment's ITAR counts, among others. (*Id.*, PageID.1066.) He "confirms that the parts listed above are specially designed (22 CFR 120.41) for ITAR-controlled defense articles and that the associated manufacturing drawings are ITAR-controlled technical data . . . ." (*Id.*) He will testify using the example of the magnet FP24018P1, which ultimately goes into the F/A-18 fighter jet: since the magnet "is specially designed for the [F/A-18's generator converter unit] the manufactured magnet is controlled by USML VIII(h)(1) and the magnet drawing is controlled by USML VIII(i), Technical data." (*Id.*) Mr. Burton's supplemental disclosure says much the same. Referring again to the same magnet, he will testify "Part Number FP24018P1 technical data, including drawings and schematics, are controlled by USML Category VIII(i)." (D.N. 143-1, PageID.1954.) He would also testify as to the applicability of the commercial-equivalence provision, and testify that "all the QM Magnets are specially designed defense articles controlled by the USML, as well as any related technical data." (*Id.*, PageID.1955.)

Mr. Douville's testimony is the same in this regard. As with Mr. Burton, literally the first sentence of his anticipated testimony is that he "will testify as to why the articles at issue in the case met descriptions in Categories in the [USML] in 22 C.F.R. § 121.1, and were thus controlled under the ITAR, 22 C.F.R. Parts 120-130." (D.N. 91-1, PageID.1057.) He "is expected to elaborate as to how the articles at issue are described on the USML." (*Id.*) "Based on the parts and commodity jurisdiction determinations in this case, Mr. Douville will testify that DDTC would not have issued export licenses, because of the policy of denial set forth in 22 C.F.R. § 126.1." (*Id.*, PageID.1059.) "Also, based on Mr. Douville's training and experience, Mr. Douville will testify that based on his own independent review of defense articles at issue, he agrees with the DDTC's

3

assessment and rationales made therein [in the CJDs]. For instance, magnets that go into submersible submarines or the F-18 fighter jet, and other similar military items, are described on the USML and hence their related technical data would be also described on the USML as a defense article and are controlled for export, requiring a license or other approval." (*Id.*, PageID.1060.)

> Mr. Douville's testimony in previous cases offers the same sorts of legal conclusions:
>
> Q. . . . Do you know if M. 4 bolt gas rings were contained on the United States Munitions List in 2016?
>
> A. Yes.
>
> Q. How do you know?
>
> A. Because they were found under category 1 H., which is parts and components of weapons contained under 1 B., which is a fully automatic.
>
> Q. How about firing pin retainers? Were they controlled on the United States Munitions List in 2016?
>
> A. Yes.
>
> Q. How do you know that?
>
> A. Because they are contained under category 1 H., which is also the same as parts and components of articles under 1 B.
>
> . . . .
>
> Q. Have you formed an opinion as to whether . . . the gas rings and the firing pin retainers, required a license to export to Iraq in 2016?
>
> A. Yes.
>
> Q. What's that opinion?
>
> A. That they would require a license to be exported from the country.

Ex. 1 at 8:12–9:11.[1]

> Q. And were you able to make any determination from the list of items on Attachment 1 of the superseding indictment as to whether those were items that were on the USML at any time between 2017 and 2019?
>
> A. Yes.
>
> Q. And what did you find?

---

[1] Transcript available at D.N. 327 at 8:12–9:11, *United States v. Ross Roggio*, No. 3:18-cr-97 (M.D. Pa. May 11, 2023).

4

> A. Most of those articles were Category 1A. There was one category for ammunition which was category 3A and the magazines were category 1A.

Ex. 2 at 96:12–20.[2]

We do not disagree with the government as to the basic principle that an expert witness cannot offer legal conclusions, such as that a defendant is guilty or not guilty. *See, e.g.*, *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). But if the government believes that rule applies to bar an expert opinion that an article is on the USML or requires a license to export, then it applies equally to Mr. Burton and Mr. Douville, and their opinions on those subjects should be barred too.

The government's position is akin to that in *United States v. Van Dyke*, 14 F.3d 415 (8th Cir. 1994). There, the defendant had been indicted for various fraud offenses related to activities involving a bank, where he was an officer, and as a trustee. In that case, "there was substantial interplay about 'Regulation O,' a lengthy and detailed provision which governs (among other things) transactions wherein a bank lends money to one of its own officers." *Id.* at 422. "[C]ounsel for defendant attempted to have [his expert, Ms. Curtin] explain or clarify the significance of a provision" in the regulation. *Id.* "Based in part on objections by counsel for the government, the district court refused to allow Ms. Curtin to give opinion or explanation of the regulation." *Id.* "Rather, her testimony was limited almost exclusively to word-for-word recitation of the regulation's provisions. In contrast, the government's first witness, FDIC bank examiner Mike Nelson, had been allowed to testify regarding Regulation O, how its insider loan limitations can be violated, and his opinion that defendant had committed violations." *Id.* This was reversible error:

---

[2] Transcript available at D.N. 131 at 96:12–20, *United States v. Wilson Nuyila Tita,* No. l:21-cr-334 (D. Md. Apr. 29, 2022).

5

> It is well settled that an expert may express an opinion even if it embraces an ultimate issue to be decided by the fact finder. Here, we are convinced that elaboration by Ms. Curtin would clearly have assisted the jury in understanding the regulation and defendant's reasons for asserting that he had not violated its provisions. This would have especially been appropriate and fair given Mr. Nelson's prior unequivocal assertion that defendant had violated Regulation O and other laws.

*Id.* (citations omitted). Equal treatment for the defense here means that, to whatever extent the Court views opinions on Quadrant's magnets being ITAR-controlled, or a license being required for their export, as admissible or inadmissible expert testimony (it would not embrace the *ultimate* legal conclusion of guilt or innocence), that standard must apply to all the experts.[3]

### 2. The government's other objections to Mr. McCarthy are untimely *Daubert* objections.

The government's other chief objection to Mr. McCarthy's testimony is that his "uncritical reliance on Dr. Trout's opinions demonstrates that his testimony would confuse the jury and be unreliable." (D.N. 134, PageID.1812.) The government argues that Mr. McCarthy's assumptions and lack of expertise about magnets mean his testimony would be unreliable and irrelevant. (*See id.*, PageID.1812–13.) Further, the government argues, the magnet comparisons made by Dr. Trout do not meet the criteria of the commercial-equivalence provision because he disregarded what the government views as important properties of the magnets, because some of the comparator magnets post-date indictment conduct, and because one of them is titled a prototype. (*See id.*, PageID.1813–14.) In actuality, the government takes issue that Dr. Trout did not have sufficient

---

[3] Defendants have not filed a motion *in limine* to restrict the government's witnesses from testifying to these issues. However, they certainly will object at trial consistent with Sixth Circuit precedent and the Court's guidance. After all, "a motion *in limine* constitutes a preliminary opinion which allows the parties to better formulate their trial strategy," and an *in limine* determination can be changed at trial. *United States v. Weinland*, Crim. No. 2:11-70-DCR, 2012 U.S. Dist. LEXIS 73026, *1 n.1 (E.D. Ky. May 25, 2012); *see In re Welding Fume Prods. Litig.*, No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164, *44–45 (N.D. Ohio Aug. 8, 2005) ("That plaintiffs did not file a Daubert motion regarding Dr. Krenek, however, does not leave him without testimonial restriction. All of the evidence rules still apply, and the Court will sustain any well-taken objection to questions soliciting Dr. Krenek's testimony on matters that are without foundation, premised upon the wrong legal standard, or outside his area of expertise.").

basis from his comparisons to opine, as he did based on his nearly five decades in the magnets and rare-earth private-sector industry, that other commercially available and commercially equivalent magnets existed at the time of the alleged exports. (*See* D.N. 134-3, PageID.1851 ("Those comparator magnets are in all respects unremarkable, standard, and fungible. Therefore, it is my opinion that these comparator magnets were on the market from 2016 to 2018."); *id.* ("[T]here is nothing in the specifications for the magnet that suggest it is special in any way; it has common, standard, fungible principal characteristics. Therefore, it is my opinion that at least one magnet possessing these same principal characteristics existed on the commercial market from 2016 to 2018.").)

These concerns all go to reliability and expert relevance and thus are in the vein of a *Daubert* motion. The government admits as much. It describes Mr. McCarthy's testimony as *unreliable*, an expert buzzword. *See* Fed. R. Evid. 702(c) (testimony must more likely than not be "the product of reliable principles and methods"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (expert testimony must "both rest[] on a reliable foundation and [be] relevant to the task at hand"). The government's Legal Principles section of its motion cites Rule 702 and the three-part admissibility test for experts from *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008), which the court derived from Rule 702, which "reflects the Supreme Court's decisions in *Daubert*[] and *Kumho*." *Id.* at 528. The government takes issue with Mr. McCarthy's assumptions, including what the government views as a lack of requisite expertise in magnets. And the government especially takes issue with his assumptions being based on Dr. Trout's opinions, for, says the government, Dr. Trout's opinions glossed over important magnetic properties and Dr. Trout (and Mr. McCarthy too) cannot or do not opine as to the controlled status of the magnets at the time of their export. These are concerns that go to the "scientific validity—and thus the

evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert*, 509 U.S. at 594–95. They are *Daubert* concerns.

Courts routinely deny motions characterized as *in limine* but are in fact *Daubert* motions, and it should do so here. *See, e.g.*, *Bedingfield v. Deen*, 487 F. App'x 224 (5th Cir. 2012) (motion *in limine* arguing that expert's "medical opinions had 'no basis in fact or science'" was "in actuality, a veiled *Daubert* motion" and denied as untimely); *Williams v. Delta Bus. Lines, Inc.*, No. 4:22-CV-87-DMB-JMV, 2024 U.S. Dist. LEXIS 24883, *18 (N.D. Miss. Feb. 13, 2024) ("Because the memorandum brief cites *Daubert* and argues Tanner should be excluded as unreliable, the Court construes this current request . . . as a veiled *Daubert* motion. For this reason, the motion is denied as untimely." (footnotes omitted)); *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706-LPS, 2021 U.S. Dist. LEXIS 145721, *11 (D. Del. Aug. 4, 2021) (denying motion *in limine* "to exclude supposedly unsupported expert opinions"; the motion "is fairly characterized as an untimely *Daubert* motion and may be denied on that ground alone"); *Goode v. City of Southaven*, No. 3:17-CV-60-MPM-RP, 2019 U.S. Dist. LEXIS 36828, *34 (N.D. Miss. Mar. 7, 2018) ("The first three exclusions . . . are thus untimely because . . . they are in substance *Daubert* challenges to 'the methodology and conclusions reached by Plaintiffs' experts, including testimony that Defendant contends is unreliable, outside the scope of []witness[] expertise, or unsupported by the facts of this case."); *Robinson v. Colucci*, No. 3:16CV687TSL-RHW, 2018 U.S. Dist. LEXIS 230355, *8–9 (S.D. Miss. July 11, 2018) ("Plaintiff's motion would qualify as a *Daubert* motion. Although plaintiff does not challenge Smith's qualifications or the reliability of his opinions, he argues that Smith's opinions would not be helpful to the jury (i.e., are not relevant) since it does not bear on whether plaintiff's claimed injuries were caused by the accident. The motion therefore could be denied as untimely. However, even considered on the merits, the

motion should be denied."); *Wiedeman v. Canal Ins. Co.*, No. 1:15-cv-4182-WSD, 2017 U.S. Dist. LEXIS 191286, *8–9 (N.D. Ga. Nov. 20, 2017) ("Defendants' Request 3 . . . is more properly characterized as a *Daubert* motion. . . . [T]hey may not now attempt to seek exclusion of Morgan's testimony based on its alleged flawed methodology or reliability."); *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 2004 U.S. Dist. LEXIS 31532, *5 & n.1 (S.D. Tex. June 10, 2004) (motion to preclude expert testimony because, among other things, it was "not based on sufficient facts or data" and "is actually a belated *Daubert* motion"); *Bedingfield v. Deen*, Civ. No. 09-369, 2011 U.S. Dist. LEXIS 73625, *3–4 (W.D. La. July 8, 2011) ("The Court agrees that the instant Motion in Limine is, in actuality, a veiled *Daubert* motion. The motion clearly challenges the qualifications of Dr. Grosbach and the reliability of his opinions, both issues a party properly challenges via a *Daubert* motion. . . . The instant motion . . . is thus[] untimely.").

Therefore the government's cited case of *In re Commercial Money Center, Inc.*, 737 F. Supp. 2d 815 (N.D. Ohio 2010), is distinguishable. While the government's first argument, addressed above, regards "allegedly improper legal opinions," so it perhaps may be characterized as a "motion[] in limine rather than [a] true *Daubert* motion[]," *id.* at 822, the same is not true of the government's qualms over Mr. McCarthy's assumptions, or how they are based on what the government views as shortcomings in Dr. Trout's opinions. The deadline for *Daubert* motions has passed, so the Court should not entertain those arguments for exclusion. (*See* D.N. 37, PageID.128 ¶ 4; D.N. 98, PageID.1306 ¶ 9.)

### 3. Mr. McCarthy's testimony is otherwise admissible.

Mr. McCarthy's testimony is admissible regardless. He is not relying on mere say-so to formulate his opinions, as the government contends. He has uncontested expertise in the field of international trade law, including the details and nuances of the ITAR regulations, including the commercial-equivalent provision, and how companies are regulated in practice under the ITAR.

9

(*See* D.N. 134-1, PageID.1819–20.) He also has Dr. Trout's scientific expert report, assumed to be correct, on which to base his opinions. That is sufficient. "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citing *Shaw v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990). "[M]ere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *Id.* (ellipsis in original) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)).

Indeed, Mr. McCarthy's assumption of the correctness of Dr. Trout's report is essentially the same as him being posed with a hypothetical question and giving his answer within his own area of expertise—and "hypothetical questions to an expert witness are permissible." *United States v. Coffman*, 574 F. App'x 541, 553 (6th Cir. 2014) (citing *United States v. Collins*, 78 F.3d 1021, 1037 (6th Cir. 1996)); *see also Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 852 (6th Cir. 1981) ("[t]he Advisory Committee's notes to Rule 703 emphasize that the facts and data upon which expert opinion is based may be derived from," among other things, "the use of the familiar hypothetical question"); *cf. United States v. Monus*, 128 F.3d 376, 386 (6th Cir. 1997) (approving series of "if you assume" questions to IRS agent expert witness to elicit his opinion that a transaction was taxable).

Further, it does not matter whether Mr. McCarthy is himself a magnets expert that can independently assess Dr. Trout's scientific conclusions.[4] He is following the methodology used by practitioners in his field. An attorney who represents companies in ITAR regulatory investigations or the like, just like an attorney assisting a client in any other highly technical and scientific field—

---

[4] Though we do note that this provides far more of a foundation for Mr. McCarthy to opine on the magnets than the *ipse dixit* on the face of the CJDs relied upon by government experts Mr. Douville and Mr. Burton. (*See* D.N. 91, PageID.1049–52; D.N. 119, PageID.1574–77; D.N. 144 *passim*.)

10

for instance, a patent or medical matter—will necessarily and regularly rely on scientific expertise beyond his general understanding as an attorney. An attorney will then use his or her own specialized knowledge of complex laws and regulations to make sense of that scientific information for their own purposes. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (expert testimony is admissible when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field"). Mr. McCarthy need not himself be a PhD metallurgist. *His* methodology is taking scientific information as it applies to his expertise of the ITAR regulations. He is not "pulling [his] notions from thin air"; he is basing his "opinions on the facts with which [he was] presented." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 391 (6th Cir. 2000).

The government also argues that Mr. McCarthy's testimony should not be admitted because the regulatory framework in the case is not contested, so his testimony generally on how the ITAR works and is administered would be irrelevant and cumulative. (*See* D.N. 134, PageID.1812.) This is incorrect. Defendants certainly disagree with the governments' experts as to their counter-textual understanding and application of the specially designed provision in particular (*see* D.N. 91, 119, 143), and Mr. McCarthy's expert rebuttal report specifically took issue with the governments' equation of commercial equivalence with commercial-off-the-shelf items. (*See* D.N. 134-2.) Further, the government cannot deny Defendants their defense on grounds that the government will represent their interests in how to describe the regulatory framework and enforcement mechanisms of the ITAR to the jury. Even to the extent that both sides' experts agree as to how the ITAR regulations work generally, their views may differ in more subtle ways as to the details of those provisions and how they are implemented in practice. Further, each side's

experts will also differ in their tone, emphases, and presentation, which may provide subtle indicia to the jury as to the witnesses' credibility and the importance or indifference they should attribute to different aspects of their testimony.

The government lastly argues that Mr. McCarthy's testimony should be excluded for unfair prejudice because he would be *too* persuasive to the jury. (D.N. 134, PageID.1815.) In the first instance, this argument is indistinguishable from an argument to exclude the government's experts. They may not be attorneys, but they have decades of experience in government service, including in the very offices that run the ITAR program, and the jury may just as well be over-awed by their credentials. Further, the government's cases are distinguishable. In *United States v. Zipkin*, the danger was the jury giving "special credence" not to a lawyer, but to a testifying *judge*, and in particular to his inadmissible parole-evidence testimony on the meaning of an order he *himself* had issued years earlier. 729 F.2d 384, 387 (6th Cir. 1984). There were two attorneys who would have testified as to legal conclusions and their opinion was thus improper on those grounds—a different point, and one addressed *supra*—but the special prejudice the government argues for here was attributable only to the witness "cloaked with the authority of his position as a bankruptcy judge." *Id.* at 387 n.2. As for the out-of-circuit case of *Specht v. Jenson*, 853 F.2d 805 (10th Cir. 1988) (en banc), it stands for that same basic point addressed *supra* that an attorney may not "state his views of the law which governs the verdict and opine whether defendants' conduct violated that law." *Id.* at 806. The solution here is not exclusion, but the traditional tools for evaluating a battle of the experts: "juror common sense, cross-examination, argument by the party-opponent's attorneys, the testimony of the party-opponent's own expert witnesses, and a cautionary instruction from the Court, if required, will normally assure that the jury fairly evaluates the expert's testimony." *Olszeski v. Ethicon Women's Health & Urology*, No. 5:19CV1787, 2022 U.S. Dist. LEXIS 65956,

*8 (N.D. Ohio Apr. 8, 2022) (quoting *Younglove Constr., LLC v. PSD Dev., LLC*, 782 F. Supp. 2d 457, 465 (N.D. Ohio 2011)).

## CONCLUSION

For these reasons, the Court should deny the government's motion *in limine* to exclude expert testimony of Thomas J. McCarthy.

Dated: March 11, 2024                                  Respectfully submitted,

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould *(pro hac vice)*
Caitlin Eberhardt *(pro hac vice)*
Timothy Taylor *(pro hac vice)*
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2024, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*
