UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA     PLAINTIFF

v.     CRIMINAL NO. 3:22-CR-88-DJH
*Filed Electronically*

QUADRANT MAGNETICS, LLC et al.     DEFENDANTS

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE UNTIMELY AND UNRELIABLE NEW EXPERT TESTIMONY

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") have filed yet another motion *in limine* seeking to exclude testimony from the government's expert witnesses. This time, they move *in limine* to exclude the "supplemental disclosures of government expert witnesses Steven Burton and Alex Douville in whole, and in part for Dr. Scott McCall." DN 143, at 1. Like their other motions, DN 91, 92, the Court should deny Defendants' motion.

### ARGUMENT

Defendants ask the Court to do three things. First, Defendants ask the Court to parse the government's supplemental expert reports and rule that portions of each are "in the nature of rebuttal reports" and therefore untimely. DN 143, at 3. Second, Defendants ask the Court to find that the new testimony Mr. Burton disclosed in his supplemental report is "inappropriate for a jury" because it sets forth his "personal view of what the commercial-equivalent provision means." *Id.* at 4. Third, Defendants ask the Court to find that Mr. Douville's supplemental disclosure is unreliable. *Id.* at 1, 4-5.

I.  **The Reports Are Supplemental Disclosures that Do Not Prejudice Defendants**

   A. **Mr. Douville, Mr. Burton, and Dr. McCall's Reports are Supplemental, Not Rebuttal**

Defendants assert that portions of all three supplemental disclosures are untimely. Take Defendants' arguments with respect to Burton's supplemental disclosure to start. Defendants assert that, "[f]rom halfway through the second page of his supplemental report to its end, Mr. Burton adds an entirely new area of testimony, editorializing on what 'commercially equivalent' means in his view." DN 143, at 4. Defendants argue this is "clearly in rebuttal of Defendants' experts' principal points" and thus untimely. *Id.* Not so. The distinction between supplemental and rebuttal testimony hinges on whether testimony is "correcting inaccuracies" or "filling interstices" in an initial disclosure. *Bentley v. Highlands Hosp. Corp.*, 2016 WL 5867496, at *4-5 (E.D. Ky. Oct. 6, 2016) (quoting *Munchkin, Inc. v. Playtext Prods., LLC*, 600 Fed. App'x 537, 538 (9th Cir. 2015)). If it is, the testimony is considered supplemental and "[c]ourts have therefore permitted parties to fill gaps in initial reports when they later learn of the missing information." *Id.* (citing *Dunning v. Bush*, 536 F.3d 879, 889-90 (8th Cir. 2008)); *cf. Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (approving supplementation of sworn affidavit because it "fills a gap left open" and "provides the district court with more information, rather than less," at a "crucial" stage in the case). If, however, the testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party," it is considered rebuttal. *Parsons v. Chafin*, 2020 WL 4890046, at *2 (E.D. Ky. Aug. 19, 2020) (quotation omitted).

In this case, Mr. Burton's additional expert testimony is supplemental and is "filling interstices" in his earlier testimony. In Mr. Burton's initial disclosure, he repeatedly states his opinion that the parts at issue are specially designed and goes through an example of one part, FP24018P1, discussing how it is specially designed for purposes of the United States Munitions

List ("USML"). DN 91 Ex. 2, at 2-3. Mr. Burton's supplemental disclosure elaborates on the regulatory definition of specially designed and further explains the opinion he introduced in his initial disclosure, discussing each element of the regulation's specially designed test as it applies to Quadrant Magnetics' magnet parts, and elaborating on what he considered for the specially designed analysis beyond the existence of commercial off the shelf equivalents stated in his initial disclosure. DN 143 Ex. 1, at 3-4; *see* DN 91 Ex. 2, at 3. This subject matter was not "identified by" Defendants' experts. Nor is it intended "solely to contradict or rebut" Defendants' experts' testimony. Mr. Burton's supplemental disclosure provides additional background on the meaning of the specially designed provision and elaborates upon a conclusion and opinion that Mr. Burton had already formed and disclosed in his initial disclosure. This is properly considered supplemental expert testimony because it "fills in a gap left by the first report." *MV Louisville, LLC v. Frankenmuth Mut. Ins. Co.*, 2022 WL 3362280, at *5 (W.D. Ky. Aug. 15, 2022); *see id.* at *3-4 (finding second disclosure supplemental where initial and supplemental both discuss when damage occurred, when loss occurred, opine on the same causation, and the "second report does not try to slip in any new theories of liability; it's all about the same theory of liability found in the initial report").

      While Mr. Burton possessed the information contained in the supplemental disclosure at the time of his initial disclosure, "the fact that a party may have possessed the information underlying the supplement throughout the litigation is relevant, [but] it is not dispositive." *Am. Municipal Power, Inc. v. Voith Hydro, Inc.*, 2021 WL 9964417, at *5 (S.D. Ohio May 18, 2021). This is not a case where a party "disregarded an initial duty to disclose and sought to 'evade the resulting consequences by asserting supplementation of reasoning that was never there to begin with.'" *Id.* (quoting *Ullman v. Auto-Owners Mut. Ins. Co.*, 2007 WL 1057397, at *5 (S.D. Ohio

Apr. 5, 2007)). It is also not a case where a party was "'lying in wait' to express new opinions at the last minute." *Id.* (quoting *Ullman*, 2007 WL 1057397, at *5). In a complex case with voluminous discovery, Mr. Burton's initial disclosure did not fully flesh out the complex topics he planned to opine on and the conclusions he had drawn, and a timely supplemental disclosure was provided to the Defendants over two months prior to trial. *See id.* ("[T]he sheer scope of the discovery and complexity of this litigation *does* matter." (emphasis in original)). Mr. Burton supplemented his disclosure with sufficient time to allow Defendants to challenge the disclosure and to prepare to cross-examine Mr. Burton on these topics at trial, in accordance with this Court's orders and the Federal Rules of Criminal Procedure. *See* Notes of Advisory Committee on Rules – 2022 Amendment, Fed. R. Crim. P. 16 (stating rule requiring parties to supplement expert disclosures "is intended to ensure that, if there is any modification of a party's expert testimony . . . after the initial disclosure, the other party will receive prompt notice of that modification").

The same reasoning holds true for Mr. Douville and Dr. McCall's supplemental reports. Defendants challenge those reports as improper rebuttal reports. *See* DN 143, at 5 (arguing Mr. Douville's report is rebuttal because "[i]t is devoted entirely to the commercial-equivalent issue, which was the central point raised in Defendants' initial expert disclosures"); *id.* at 5-6 (arguing Dr. McCall's report "is proffered to directly rebut Dr. Trout's opinion that commercial equivalents existed to the Quadrant magnet drawings"). For Mr. Douville, however, he stated in his initial report that he would testify that, "based on his own independent review of defense articles at issue, he agrees with the [Directorate of Defense Trade Controls'] DDTC's assessment and rationales made therein." DN 91 Ex. 1, at 5; *id.* at 2 (Mr. Douville "will testify as to why the articles at issue in the case met description in Categories in the U.S. Munitions List . . . and were thus controlled under the ITAR"). Again, after better comprehending the complexity of the case and following

additional discovery, Mr. Douville supplemented his disclosure to direct Defendants to more particular aspects of his testimony encompassed within the broader statements in his initial disclosure. Mr. Douville has filled a gap in his initial disclosure, as he is required to do pursuant to the Federal Rules of Criminal Procedure. *MV Louisville, LLC*, 2022 WL 3362280, at *5; Fed. R. Crim. P. 16(a)(1).

In Dr. McCall's initial reports, he gave technical specification results following tests to "compare empirical data [from Quadrant Magnetics' magnets] with specified acceptance parameters indicative of reliable magnet composition and performance." DN 93 Ex. 2, at 3; *see id.* Ex. 2 (Dr. McCall's 2021 report, similar).[1] These included magnet shape (linear mensuration result, *see* DN 93 Ex. 3, at 1), and properties related to magnetization of the magnets (measured magnetic properties, *id.*). Dr. McCall's initial reports also included technical terms, such as "chamfered edges," *id.* at 4, and use of technical tools such as "fluxmeters," *id.* at 3; that factored into Dr. McCall's analysis. Dr. McCall submitted a supplemental disclosure to provide additional details on the meaning and significance of his testing and the technical terminology used in the initial reports. *See* DN 143 Ex. 3, at 4-5 (discussing significance of "magnet shape" and "magnetic properties," including relevance of the "chamfer on the magnet" and "flux density"). Contrary to Defendants' assertions, this supplemental report is not seeking to directly rebut Dr. Trout's opinion, nor does it ever discuss the "intended function" of magnets or otherwise include new opinions that were not within the scope of Dr. McCall's initial disclosures. DN 143, at 5. Dr. McCall's disclosure is supplemental and properly considered as such.

---

[1] Defendants have filed Dr. McCall's initial disclosures (though not his supplemental disclosure, *see* DN 143 Ex. 3) provisionally under seal. *See* DN 92, 93. The government does not believe that any of the quotations or generalized references to Dr. McCall's initial reports discussed in this response require sealing.

Out of an abundance of caution, the government chose to have its experts supplement their disclosures. The government's decision is all the more reasonable given that the Court likely would have required that of the government had the Court agreed with Defendants' first motion *in limine* to exclude the experts' testimony. In that scenario, the proper remedy would have been for the Court "to direct supplementation, not to exclude testimony." *United States v. Tao*, 2022 WL 252019, at *14 (D. Kan. Jan. 27, 2022); *see id.* ("There is no evidence that the inadequacies in the Government's expert disclosures were the result of bad faith, and exclusion is unnecessary to remedy any prejudice."); *see also United States v. Brock*, 2007 WL 1041309, at *3 (E.D. Tenn. Apr. 2, 2007) (court holding that, where question of sufficiency of underlying basis and reasoning of expert opinion arose, "the Court believes that this matter can best be resolved by the government supplementing its expert disclosures in a timely fashion").

### B. Regardless of Their Classification, the Reports Are Not Prejudicial

Even if the Court were to find that portions of the supplemental reports are more in the nature of rebuttal testimony, however, the Court should allow them. The purpose of Rule 16(a)(1)(G)'s expert disclosure requirement is "'to minimize surprise that often results from unexpected expert testimony . . . and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007) (quoting Notes of Advisory Committee on Rules – 1993 Amendment, Fed. R. Crim. P. 16). Rule 16(a)(1)(G) was amended in 2022 to "clarif[y] the scope and timing of the parties' obligations to disclose expert testimony that intend to present at trial." Notes of Advisory Committee on Rules – 2022 Amendment, Fed. R. Crim. P. 16. The rationale for disclosure under the amended Rule remains the same: "to facilitate trial preparation, allowing

the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.*

Excluding expert testimony remains the exception. Indeed, "courts should embrace the 'least severe sanction necessary' doctrine and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *See United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006) (quoting *United States v. Maples*, 60 F.3d 244, 247-48 (6th Cir. 1995)) (finding district court abused discretion by excluding proposed testimony from government witness). Excluding expert testimony may serve remedial objectives where the government has acted in bad faith and the defendant has been subjected to an uncurable prejudice. *Ganier*, 468 F.3d at 927-28. Neither remedial objective is implicated here.

The government's supplemental reports do not identify new experts or new opinions. Rather, they merely clarify that the experts "meaningfully" applied the (b)(3) analysis. *See* DN 143, at 4. The supplemental reports again provide the underlying bases and reasons for the experts' opinions. Defendants disagree with those opinions and with how the experts applied the commercial-equivalent provision, but that remains a matter for cross-examination, not exclusion. *See Reynolds v. Freightliner LLC*, 2006 WL 5249847, at *5 (E.D. Ky. Sept. 18, 2006) (challenge to expert's credibility cannot be basis for exclusion); *Louderback v. Orkin Exterminating Co.*, 26 F. Supp. 2d 1298, 1307 (D. Kan. 1998) (issues of credibility are for cross-examination).

Moreover, the government provided the supplemental reports to Defendants more than eight weeks prior to trial. The government provided the original reports for the same three experts seventeen weeks before trial. The government has not acted in bad faith (Defendants do not even whisper otherwise); rather, it had its experts supplement their reports in a good faith effort to clarify

that subsumed within their opinions was consideration of the narrow commercial-equivalent exception of the specially designed provision. Likewise, Defendants fail to raise any prejudice that would result if the Court were to treat them as supplemental reports. Defendants will have had access to the reports for more than four months before the trial date. They will have had ample time to prepare cross-examination—which is the proper forum in which to demonstrate the purported flaws in the government's expert witnesses' application of the ITAR's specially designed provision. Under these circumstances, precluding the government's expert witness testimony is not the most appropriate sanction. *United States v. Sampson*, 2024 WL 199546, at *5 (E.D. Mich. Jan. 18, 2024) (denying motion to preclude government expert witness where defendant did not suffer surprise despite government's inadequate disclosures); *cf. United States v. Rodgers*, 2009 WL 3498801, at *6 (W.D. Mich. Oct. 26, 2009) (citing *United States v. Henderson*, 1995 WL 122785, at *11 (6th Cir. Mar. 21, 1995)) (permitting defendant's untimely supplemental notices under Fed. R. Crim. P. 12.1(e) where notices cured defects in prior notices).

## II. Neither Mr. Burton's Nor Mr. Douville's Supplemental Testimony is Otherwise Inadmissible

### A. Mr. Burton's Testimony Is Admissible

Defendants claim that new testimony from Mr. Burton's supplemental disclosure is "inappropriate to be heard by a jury." DN 143, at 4. They argue that "his personal view of what the commercial-equivalent provision means" is merely a "'convenient litigating position' or 'post hoc rationalization' advanced to 'defend past agency action against attack.'" DN 143, at 4 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019)). Defendants made the same argument in their Reply in Support of their Motion *in Limine* to Exclude Expert Testimony from Alex Douville and Steven Burton. DN 119, at 8. It was as unavailing there as it is here.

Defendants' concern that Mr. Burton is injecting his 'personal view' into his expert testimony is not grounds for exclusion of his disclosure. *Kisor*'s discussion of post-hoc rationalization and convenient litigation positions has nothing to do with admission of expert testimony—those statements were made in the context of whether an agency's reading of a regulatory rule can receive *Auer* deference. *See* 139 S. Ct. at 2417. Defendants cite no case law holding that an expert's 'erroneous' view is inadmissible. Indeed, they cannot. Either their claims go to the weight afforded to expert testimony, not admissibility, or they are making the same argument they made previously, which again highlights the lack of prejudice in this disclosure. *See* DNs 37, 98. Experts may testify to "their personal knowledge and experience as it relates to the opinions they ultimately render[]." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). Mr. Burton participates in assessments for ITAR-controlled defense articles "[d]aily." DN 91 Ex. 2, at 3. It is within his personal specialized knowledge and experience to opine on how he understands the (b)(3) exception to work in practice. Defendants also take issue with the phrasing of Mr. Burton's statement that the definition of "fit" "should be interpreted" in a certain manner. DN 143, at 4 (quoting *id.* Ex. 1, at 4).[2] But Mr. Burton's proposed testimony is

---

[2] In Defendants' Reply to their Motion to Exclude the Expert Testimony of Burton and Douville, DN 119, Defendants made a similar argument that Mr. Burton's initial disclosure "applied the wrong legal test for whether an item is 'specially designed.'" DN 119, at 5-7. Defendants misread Mr. Burton's testimony. In his initial disclosure, Mr. Burton stated that he "confirms that the parts listed above are specially designed (22 CFR 120.41)." In his next sentence, he stated: "It should be noted that these magnets are not commercial-off-the-shelf (COTS). No existing COTS magnets met DoD requirements so new magnets were specially designed to meet the military requirement." Mr. Burton has never stated that the specially designed analysis for determining whether the magnet drawings are on the USML is a question of whether a magnet is COTS or not, and in his supplemental disclosure, he expounds upon the more fulsome analysis that comprises the specially designed analysis and that he took to reach his conclusions as to Quadrant Magnetics' magnets. In that way, and again contrary to Defendants' assertion, his testimony is consistent with the legislative history to which Defendants direct the Court. DN 119, at 6-7 (citing 78 Fed. Reg. 22740, 22746 (Apr. 16, 2013)).

no different than Defendants' expert's proposed testimony, when Dr. Trout opines as to the meaning of the (b)(3) terminology. *See* DN 143 Ex. 4, at 9 (applying the regulations to explain that form of magnets ("size and shape") *could* be altered and still meet the requirement to have the same fit (to "be incorporated into [the magnet's] system or assembly"). Defendants may disagree with Mr. Burton's expert testimony, and they are entitled to challenge it during trial, but they offer no reason why his testimony would be inadmissible.

### B. Mr. Douville's Testimony is Admissible

Defendants assert that new testimony from Mr. Douville's supplemental disclosure is unreliable and should be excluded. DN 143, at 5. They present no argument, but rather incorporate by reference their argument from earlier briefing. *Id.* (citing DN 119, at 4-5). That earlier reply brief restates arguments that Defendants made in their initial Motion *in Limine* to Exclude the Expert Testimony of Douville and Burton (*see* DN 91, at 11-13), to which the government has responded (*see* DN 107, at 8-10), and restates arguments Defendants made in their Motion *in Limine* to Exclude Expert Testimony on Sixth Amendment Grounds (*see* DN 144, at 3-8), to which the government responds contemporaneously herewith. In brief, Defendants continue to claim that Mr. Douville's testimony is inadmissible on reliability grounds because "he did not do any such analysis himself, nor did he have anything beyond the [commodity jurisdiction] determination itself to determine [what] occurred here." DN 119, at 5. The government has now explained multiple times why that argument is flawed, and respectfully refers the Court to its earlier briefing. With respect to Mr. Douville's supplemental testimony in particular, the face of the testimony shows the faultiness of Defendants' claim. Mr. Douville states that he relies on "personal knowledge and experience, as well as [] my official position in the agency," "independent[]" review of the USML, along with "the [commodity jurisdiction] determination." DN 143 Ex. 1, at

10

1. This is the same methodology used by Defendants' expert in their disclosures to assess whether technical data should be included on the USML.

Defendants challenge remains one not to the test to apply to determine whether a part is on the USML, but rather the application of the test by the government's experts and their ultimate findings. For example, Defendants appear to take issue with Mr. Douville's conclusion that "same" actually means "same" under 120.41(b)(3). *See* DN 143, at 5. While they are free to do so, Defendants' challenge to Mr. Douville's knowledge of the definition of "same" as used in the ITAR is best left for trial. As the government noted in its prior response, Defendants and the government agree on the relevant test here—it is application of 22 C.F.R. § 120.41 to each part in question. DN 107, at 8. Where challenges to experts are grounded in issues related to credibility and weight of witness testimony, however, those issues are appropriately challenged not by motion in limine, but at trial. *See Louderback*, 26 F. Supp. 2d at 1307 (issues of credibility are for cross-examination); *accord Reynolds*, 2006 WL 5249847, at *5.

## CONCLUSION

For the reasons stated herein, the government requests that Defendants' Motion *in Limine*, DN 143, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |

| | |
|---|---|
| s/ *Joshua D. Judd* | s/ *Alex Wharton* |
| Joshua D. Judd | Alex Wharton |
| Christopher C. Tieke | Leslie C. Esbrook |
| Assistant U.S. Attorneys | Trial Attorneys |
| 717 W. Broadway | 950 Pennsylvania Ave., NW |
| Louisville, KY  40202 | Washington, DC 20530 |
| (502) 582-5911 | (202) 514-4523 |
| joshua.judd@usdoj.gov | alexander.wharton@usdoj.gov |
| christopher.tieke@usdoj.gov | leslie.esbrook@usdoj.gov |

CERTIFICATE OF SERVICE

On March 11, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

 s/ *Joshua J. Judd*
Trial Attorney