UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 3:22-CR-88-DJH |
| | *Filed Electronically* |
| QUADRANT MAGNETICS, LLC et al. | DEFENDANTS |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY ON SIXTH AMENDMENT GROUNDS**

Defendants Quadrant Magnetics, LLC ("Quadrant Magnetics"), Phil Pascoe, Scott Tubbs, and Monica Pascoe (collectively, "Defendants") move *in limine* to exclude the opinions of the government's experts Alex Douville and Steven Burton on Sixth Amendment grounds. DN 144, at 1. Defendants claim that Douville and Burton's expert testimony is "predicated on State Department commodity-jurisdiction determinations (CJDs) in which they had no involvement and which were signed by other government employees." *Id*. Douville and Burton's expected testimony is admissible, however, because (i) it is broader than Defendants claim; (ii) the commodity jurisdiction determinations are not testimonial in nature; (iii) Defendants will be afforded the opportunity to cross-examine witnesses with knowledge of the determinations; and (iv) Douville and Burton's testimony is ultimately based on their own independent review and judgment and is not dependent on the commodity jurisdiction determinations.

   I. *Defendants Do Not Contest That the Majority of Mr. Douville and Mr. Burton's Testimony Is Admissible*

*Douville's Testimony:* As the government stated in its response to one of Defendants' earlier motions *in limine* to exclude Douville and Burton's testimony (*see* DN 91 (Motion); DN 107 (Government's Response)), Douville will testify to, *inter alia*, the regulatory scheme for the

Arms Export Control Act ("AECA"), the International Traffic in Arms Regulation ("ITAR"), and the registration, licensing, and export process for the U.S. Department of State's Directorate of Defense Trade Controls ("DDTC"). DN 107 at 3. He is further expected to testify to the definition of technical data, the importance of technical data controls, the importance of the ITAR in export controls to prevent unauthorized dissemination of technical data, how the DDTC makes United States Munitions List ("USML") determinations and assists prospective exporters through the commodity jurisdiction process, the registration, licensing, and checks for registration and licensing for Defendants in this case, and his experience regarding the thoroughness of DDTC's review of information when issuing a commodity jurisdiction determination. *Id.* at 3-4. In addition, he will testify that "any person or exporter similarly situated would have likely thought that the items were controlled [by the USML], or exercised diligence to refer to the USML or the [commodity jurisdiction] process if they had any doubt." *Id.* at 5-6. Defendants do not challenge Douville's testimony as to those subjects. *See* DN 144 at 3-4 (reciting without argument that Douville "would cover broadly the AECA legal regime and its administration by DDTC," including "how the USML works, how technical data is controlled, how DDTC issues licenses, business registration requirements, and the commodity jurisdiction process").

*Burton's Testimony*: As the government stated in its response to Defendants' earlier motion *in limine* to exclude Douville and Burton's testimony (*see* DN 91 (Motion); DN 107 (Government's Response)), Burton is expected to testify that, *inter alia*, the magnets related to the Indictment are mission critical for defense platforms and defense articles, that some part numbers have been identified as unique and essential in the manufacturing bill of materials for the related defense article, and that several U.S. Department of Defense ("DOD") manufacturing bills of materials uniquely identify these specially designed magnet parts. DN 107 at 4-5. In addition,

2

Burton is expected to testify that the magnets are the only source for the required magnetic field in military electric generators and electric motors to enable mechanical to electrical conversion and vice versa, and that, if the magnets were defective or unavailable, defense platforms would be non-mission capable and unable to perform their military mission. *Id.* Defendants do not challenge Burton's testimony as to those subjects. *See* DN 144 at 11 (reciting without argument that Burton would "cover how the ITAR works, as well as how the [DOD] works with the State Department on ITAR issues," and "would testify about the importance of magnets to the military and the military supply chain" as well as "the [commodity jurisdiction process generally]"). Because there is no dispute as to these subjects of Burton and Douville's testimony, their testimony on these matters should be admitted.

## II. The Commodity Jurisdiction Determinations are Non-Testimonial

Defendants challenge Douville and Burton's testimony setting forth their opinion that Quadrant Magnetics' magnets and underlying technical drawings are ITAR-controlled. Their opinions as to whether the specific items at issue are ITAR-controlled are admissible because the commodity jurisdiction determinations are not testimonial in nature. In *Melendez-Diaz v. Massachusetts*, the Supreme Court re-iterated its earlier holding that testimonial statements covered by the Confrontation Clause included "*ex parte* in-court testimony or its functional equivalent . . . that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials . . . ; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 557 U.S. 305, 309-10 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)). Statements have been found testimonial where they "hav[e] the primary purpose of accusing a targeted individual of engaging in criminal

3

conduct" and "involve[] formalized statements such as affidavits, depositions, prior testimony, or confessions." *Williams v. United States*, 567 U.S. 50, 82 (2012) (citing in part *Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011); *Melendez-Diaz*, 557 U.S. at 308).

The commodity jurisdiction determinations do not meet these requirements. Most importantly, they did not have the primary purpose of accusing a targeted individual of engaging in criminal conduct. As the government has argued in earlier briefing, the determinations are admissible as business records or public records pursuant to Federal Rule of Evidence 803(6) or 803(8). *See* DN 110.[1] "'Business records' covered by the traditional hearsay exception are 'by their nature' not testimonial." *United States v. Smith-Kilpatrick*, 942 F.3d 734, 740 (6th Cir. 2019) (quoting *Crawford*, 541 U.S. at 56); *see Bullcoming*, 564 U.S. at 670 (Sotomayor, J., concurring) ("[B]usiness and public records 'are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.'" (quoting *Melendez-Diaz*, 557 U.S. at 324)).

Defendants claim that the determinations are made for prosecutorial purposes because they were made in aid of a Department of Homeland Security, Homeland Security Investigations ("HSI") law enforcement investigation. *See* DN 144 at 7-8. But DDTC witnesses will testify that they generally speaking do not treat commodity jurisdiction determination requests from law

---

[1] As also stated in the government's response to Defendants' motion to exclude the commodity jurisdiction determinations (DN 110 at 6), the Court should defer ruling on these questions until it has heard the government's witnesses (both expert and fact witnesses with first-hand knowledge of the commodity jurisdiction determinations at issue) explain the commodity jurisdiction determination process and determined whether cross-examination of these witnesses satisfies the Confrontation Clause's requirements. *See Gresh v Waste Servs of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (unless evidence has no legitimate use at trial "rulings [on evidence] should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context").

enforcement any differently than requests from private industry actors. General Dynamics could have submitted an identical request (and, as discussed below, General Electric Aviation Systems ("GE Aviation") *did* submit a near-identical request in 2017), and DDTC would have made the same analysis. While the commodity jurisdiction determination requests were submitted to the Department of State by an HSI Special Agent, the Agent relied on information kept in the ordinary course of business submitted to him by the magnet drawings' owner, General Dynamics, for information to populate the request. Indeed, the Agent told employees at DDTC to reach out directly to General Dynamics (the original equipment manufacturer, or "OEM," for the drawings) with any additional questions related to the drawings. *See* DN 144 at Ex. 6, Fig. 8.[2]  Further, General Dynamics employees were not "required by law to assist in [the DHS] investigation." *Garlick v. Lee*, 1 F.4th 122, 134 (2d Cir. 2021).[3]

Indeed, State Department documents nearly identical to the challenged determinations were admitted in *United States v. Roth*, leading to the Sixth Circuit's decision in that case. *See* 2009 WL 1748748, at *3 (E.D. Tenn. June 19, 2009), *aff'd*, 628 F.3d 827 (6th Cir. 2011) ("Exhibit 46A is a document from the Department of State in which Robert S. Kovac, Managing Director or the Directorate of Defense Trade Controls, Bureau of Political–Military Affairs certifies that each of the items and documents named in the indictment are defense articles and technical data as defined by the ITAR."); *see also United States v. Piquet*, 372 Fed. App'x 42, 46 (11th Cir. 2010) (discussing admitted State Department certification with attached form signed by Secretary of

---

[2] In certain instances in this case, DDTC determined that they had insufficient information from the OEM to make a determination, further supporting the legitimacy and validity of the determinations that they did reach and distancing the process from any perceived improper prosecutorial purpose.

[3] In that scenario, the Department of State is de facto not required to assist because it bases its determination in part on information provided by the OEM.

State "certifying [DDTC's Managing Director's] authority to make such a declaration"). The Sixth and Eleventh Circuit opinions in those cases were issued after the Supreme Court issued its opinion in *Melendez-Diaz*. While the Sixth Circuit's *Roth* decision leaves Defendants free to argue that the data they exported falls outside the ITAR's definition of technical data, it does not allow them to prevent the government from offering evidence that the data is on the USML.[4]

In addition, Defendants' arguments overlook the 2017 commodity jurisdiction determination made at the request of GE Aviation, not HSI, which was issued *during* Defendants' scheme at the request of an industry participant and *before* the charged AECA and wire fraud offenses. *But see* DN 144 at 6 ("CJD requests typically come from industry participants seeking guidance. But here, they came from [a] Special Agent."). GE Aviation submitted its application for a commodity jurisdiction determination after it grew concerned that Quadrant Magnetics might have sent certain technical data to China related to magnets subcontracted to Quadrant Magnetics, and sent the determination to Quadrant Magnetics in early 2018. *See* Ex. 8 to Gov't AECA Response, DN 111. The 2017 commodity jurisdiction determination, which covers part FP24018P1 (specifically noted by Defendants in their briefing as a part and determination that Burton will discuss in his expert testimony, *see* DN 144, at 12), is not testimonial and is otherwise admissible, both as a public record or business record, and as evidence of Defendants' knowledge and willfulness.

---

[4] Defendants' additional arguments on indicators that the commodity jurisdiction determinations were for prosecution are equally unavailing. *See* DN 144 at 8. Defendants provide no evidence or law to support their assertions that the "sheer number" of determination requests, the "retrospective[ness]" of requests, or the "specificity" of the requests would give the individuals preparing the determinations any indication that they were to be used in prosecution. *Id.*

6

### III. Defendants will have Adequate Opportunity to Assert their Sixth Amendment Confrontation Clause Rights

Even if the commodity jurisdiction determinations or the content that forms the bases of those determinations are held to be testimonial, Defendants will be able to confront the relevant witnesses' testimony against them. *See Melendez-Diaz*, 557 U.S. at 309 (stating the Sixth Amendment guarantees a defendant the right to confront those "who 'bear testimony against'" him) (quoting *Crawford*, 541 U.S. at 51). The government intends to introduce testimony of a DDTC fact witness in its case in chief who has sufficient firsthand knowledge of the determinations reached by DDTC in CJ0003927 and CJ0003928 (among others) to admit those determinations. This witness can testify about the contents of the commodity jurisdiction determinations. Specifically, this individual took part in the determination processes that the government intends to introduce at trial, and can speak firsthand to the determination process and results for the magnet drawings at issue in this case. *See, e.g.*, *Bullcoming*, 564 U.S. at 673 (Sotomayor, J., concurring) (contrasting Court's decision that testimony violated Sixth Amendment with case where "a supervisor who observed an analyst conducting a test testified about the results or a report about such results"). The government also intends to introduce evidence from at least one witness from General Dynamics, the company that owned the drawings at issue, who has firsthand knowledge of how information given to the Department of State for the commodity jurisdiction determinations was gathered and produced to the Department of State. In addition, Defendants have subpoenaed Special Agent Michael Zanghi, who can also speak to how information was gathered from General Dynamics and transmitted to the Department of State.

This information enabled DDTC to make determinations "on a case-by-case basis, taking into account: (1) The form and fit of the article; (2) The function and performance capability of the article; and (3) Other applicant-provided information, to include a history of the product's

design, development, and use, as well as specifications and any other relevant data." 22 C.F.R. § 120.12(b). Because Defendants will have an opportunity to cross-examine witnesses who can speak to the commodity jurisdiction determinations made in this case, any expert testimony based on those determinations will not run afoul of the Sixth Amendment. Indeed, "the Sixth Amendment 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Zhen Zhou Wu*, 711 F.3d 1, 33 n.17 (1st Cir. 2013) (citing *Stephens v. Hall*, 294 F.3d 210, 226 (1st Cir. 2002) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))).

Defendants insist that only testimony from the Director (Sarah Heidema) or Acting Director (Richard Koelling) of the DDTC Office of Policy Trade Controls, who signed the determinations, will satisfy Defendants' Sixth Amendment confrontation rights.[5] But as the Supreme Court stated in *Melendez-Diaz*, "it is not the case[] that anyone whose testimony may be relevant in establishing the . . . authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case . . . . it is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence," and any gaps "go to the weight of the evidence rather than its admissibility." 557 U.S. at 311 n.1 (quotation omitted); *see United States v. Maga*, 475 Fed. App'x 538, 542 (6th Cir. 2012) ("In the context of a confrontation challenge, the document's authorship, rather than its certification, matters."); *cf. Williams*, 567

---

[5] Similar to Defendants' arguments in their motion to exclude expert testimony (DN 91), Defendants assume that the DDTC Director and Acting Director simply signed the commodity jurisdiction determinations immediately upon receiving an application. *But see* 22 C.F.R. § 120.12 (outlining the information DDTC actually relies on in making a commodity jurisdiction determination). This speculation—contradicted by information the government has obtained and produced to Defendants in discovery—reinforces that a ruling on Defendants' motions "should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Locke v. Swift Transportation Co. of Arizona, LLC*, 2019 WL 6037666, at *1 (W.D. Ky. Nov. 14, 2019) (quotation marks omitted).

U.S. at 89 (Breyer, J., concurring) (questioning how to determine sufficient grant of Confrontation Clause rights because "[t]he reality of the matter is that the introduction of a laboratory report involves layer upon layer of technical statements (express or implied) made by one expert and relied upon by another."). The witnesses who the government intends to introduce will satisfy Defendants' right to cross-examine testimony on the commodity jurisdiction determination processes and results, and will therefore obviate any challenge to the government's experts' consideration of the determinations.

### IV. Douville and Burton's Testimony Is Based on Independent Judgment and Not Solely on the Commodity Jurisdiction Determinations

Defendants assert that Burton and Douville are "simply conduit[s] for other people who made th[e] [commodity jurisdiction] determination[s]," those being the DDTC Director and Acting Director who signed the commodity jurisdiction determination forms, and that Burton and Douville are "exercising no independent judgment or analysis." DN 144 at 4 (as to Douville); *id.* at 12 (similar as to Burton). Defendants claim that because Douville and Burton will rely *only* on the commodity jurisdiction determinations to assess whether the drawings at issue are ITAR-controlled, and those determinations are testimonial, their testimony violates the Sixth Amendment because Defendants will not have the right to confront the witness whose statement is being introduced. *Id.* at 5-11.

Defendants are incorrect because, even assuming *arguendo* that the commodity jurisdiction determinations are testimonial and Defendants will not have adequate opportunity to cross-examine their authors, Douville and Burton's opinions are not solely based on the information on the face of the commodity jurisdiction determinations. As the Sixth Circuit has explained, the Confrontation Clause right of the accused to be confronted with the witnesses against him "is in some tension with [FRE] 703, which permits an expert witness to base an opinion on inadmissible

9

evidence '[i]f experts in the field would reasonably rely on those kinds of fact or data in forming an opinion on the subject.'" *United States v. Rios*, 830 F.3d 403, 417 (6th Cir. 2016). But "[t]his conflict is not insurmountable. '[T]he Rule and the Clause can be reconciled if the expert exercises 'independent judgment' in assessing and using the hearsay (and other sources) to reach an expert opinion.'" *Id.* (quoting *United States v. Garcia*, 793 F.3d 1194, 1212 (10th Cir. 2015)). Justice Alito's plurality opinion in *Williams v. United States* similarly states that "[i]t has long been accepted that an expert witness may voice an opinion based on facts concerning the events at issue in a particular case even if the expert lacks first-hand knowledge of those facts." 567 U.S. at 67; *see id.* at 88 (Breyer, J., concurring) ("[U]nder well-established principles of evidence, experts may rely on otherwise inadmissible out-of-court statements as a basis for forming an expert opinion if they are of a kind that experts in the field normally rely upon." (citing Fed. R. Evid. 703)). In other words, "merely basing an expert opinion on testimonial statements is not problematic." *Rios*, 830 F.3d at 418.

      Here, as explained further below, the experts are basing their opinions as to the fact that the drawings at issue are on the USML on their review of the articles at issue, their understanding of the general rigor and processes of determination reviews, and in Burton's case, review of underlying facts and analysis within the jurisdiction determination files and the technical specifications of the drawings. Their independent assessment and conclusion that the magnet part drawings are on the USML is not based solely on the information reflected on the face of the commodity jurisdiction determinations, and accordingly their testimony is admissible. Burton and Douville's review of the commodity jurisdiction determinations is the type of evidence that "can help the factfinder understand the expert's thought process and determine what weight to give to the expert's opinion"—it would not be admitted "to prove the truth of the underlying facts."

*Williams*, 567 U.S. at 78; *see King v. Brown*, 2021 WL 3417921, at *2 (6th Cir. Apr. 20, 2021) (denying certificate of appealability from denial of petition for writ of habeas based on alleged improper testimonial evidence because "neither the Supreme Court nor this Court has held that an expert may not testify about her own opinions if she reached them using an autopsy and related materials that she did not author"); *see also United States v. Turner*, 708 F.3d 1187, 1196 (7th Cir. 2013) (laboratory employee may "permissibly testify" that substances were "submitted to the state crime laboratory for testing" and that "the data produced by [colleague]'s testing of those substances indicated, in his expert opinion, that they contained cocaine base").[6]

Douville is expected to testify as to his opinion that Quadrant Magnetics' magnets are ITAR-controlled "[b]ased on the parts *and* commodity jurisdiction determinations in this case." DN 144 Ex. 1, at 4. Douville has conducted "his own independent review of the defense articles," and he will base his understanding of the significance of commodity jurisdiction determinations on his thirteen years' of experience at the DDTC from analyst to Division Chief, and his experience reviewing and assessing tens of thousands of ITAR licenses and commodity jurisdiction determinations. *Id.* at 1, 4. In his supplemental witness disclosure, Douville additionally stated that he would base his opinion that the exported magnet drawings were ITAR-controlled on his review and analysis of the specially designed § 120.41(b)(3) provision and application of that provision

---

[6] The government separately intends to introduce evidence to establish the provenance of the determinations, as explained above. Any issue related to provenance goes to probative value of the determination, not admissibility. *Williams*, 567 U.S. at 77. Even if the determinations themselves are not admitted into evidence, the experts should still be permitted to rely on their prior review of the determinations—and, in Burton's case, the extensive files and analysis underlying the determinations—to inform their opinions that the magnets drawings at issue are ITAR-controlled and that their opinions match determinations made by the Department of State pursuant to authority duly delegated by the President to DDTC under the AECA and its implementing regulations. *Id.* at 79 (discussion of testimonial report admissible by expert for "distinctive and limited purpose" of seeing that it matched something else, where relevance of the match was established by independent evidence related to the report).

11

to the magnets at issue. DN 144 Ex. 2, at 1.[7] Far from being a conduit for others' opinions, Douville has made his assessment that the magnets at issue are ITAR-controlled based on his own observation and expertise. While Defendants may challenge the weight of those observations and the bases for his testimony on cross-examination, they have provided no reason to exclude the testimony wholesale as a matter of law.

As for Burton, Defendants themselves reluctantly admit that Burton also reviewed "end uses for the items reviewed" in the commodity jurisdiction determinations, which were not in the determinations themselves, and that "he might have at least looked at the drawing for one part." DN 144 at 12. More than those tepid descriptions, Burton's analysis of the parts at issue was fulsome and went far beyond review of the commodity jurisdiction determinations. Burton is a senior electronics engineer who has independent knowledge of the military equipment and military contracting relevant to the end use items that Quadrant Magnetics' magnets went into. He also understands how to make a commodity jurisdiction analysis based on the fact that he participates in assessments for ITAR-controlled articles and data "[d]aily." DN 144 Ex. 3, at 3, 4; *see id.* at 6-7. Burton reviewed the interagency files underlying the commodity jurisdiction determinations for thirteen parts listed in his initial disclosure. *Id.* at 3. Those underlying materials have been disclosed to Defendants in the fashion that the government received them and in which Burton reviewed them. Burton made his assessment that the magnet drawings that Quadrant Magnetics exported were ITAR-controlled based on review and independent analysis of the underlying commodity jurisdiction determination files, which explain the reasoning for the proposed

---

[7] Defendants have challenged the admission of Douville's supplemental witness disclosure in a separate motion *in limine*. *See* DN 143. The government responds to that motion *in limine* contemporaneously herewith. The government maintains that, even absent consideration of Douville's supplemental witness disclosure, Douville's testimony based on his initial disclosure is admissible and not violative of Defendants' Sixth Amendment Confrontation Clause rights.

classifications, the information relied upon, and interagency positions. Burton also relied on his knowledge of military end use of products into which Quadrant Magnetics' magnets went, and his knowledge that "these magnets are not commercial-off-the-shelf (COTS)" for purposes of analyzing the specially-designed provision requirements. *Id.* at 3-4. He also reviewed the manufacturing bills of materials for the related end use defense articles in determining whether the drawings were on the USML and were or were not specially designed. *See id.* at 4 (stating that "the magnets have part numbers that identify them as unique and essential in the manufacturing bill of materials . . . [which] is a centralized source of information used to manufacture a product (defense article)"). In his supplemental disclosure, Burton further stated that he would provide additional detail on his (b)(3) specially designed analysis for the magnets at issue, specifically, that the forms of Quadrant Magnetics' magnets are different from all known comparable commercial magnets, making them controlled under the USML. DN 144 Ex. 4, at 4.[8] In short, Burton's expert opinion is based on much more than review of the commodity jurisdiction determinations.

Moreover, courts have a longstanding and routine practice of permitting Department of Defense employees to testify for purposes of classifying items as defense articles controlled by the USML in export control cases. *See Roth*, 2009 WL 1748748, at *3 (discussing testimony from Department of State employee as to whether items at issue were on the USML), *aff'd*, 628 F.3d 827 (6th Cir. 2011); *United States v. Pulungan*, 561 F. Supp. 2d 1019, 1023 (W.D. Wis. 2008) (discussing admission of Department of State representative's testimony "that the riflescope was manufactured to military specifications and that it had been designed as a defense article since 2003 under category 1(f) on the Munitions List"), *rev'd on other grounds*, 569 F.3d 326 (7th Cir.

---

[8] For the same reasons as explained above with respect to Douville's supplemental testimony, the government submits that Burton's testimony is admissible irrespective of whether it is considered with or without his supplemental disclosure.

13

2009); *cf. Zhen Zhou Wu*, 711 F.3d at 22 (discussing, in a case involving both the USML's prior "specifically designed" framework and Department of Commerce's similar classification control scheme, expert testimony from "witness from the Commerce Department" who "walked the jury through the steps involved in determining whether a particular part requires a license for export under the [Commerce Control List]" and the "expert's analysis" on same); *Piquet*, 372 Fed. App'x at 46 (discussing admission of testimony from division chief of DDTC who "testified that a 'technical review' by the [DOD] indicated that the [item] was a defense article" and who further testified regarding a Department of State certification form signed by the Managing Director of the DDTC certifying that the item was on the USML). This admissible testimony included testimony from government employees who did not themselves sign the Department of State documents making final determinations as to USML classification of items. In *Roth*, for example, the government offered and the court allowed into evidence testimony of Anthony Dearth of the Department of State, along with a Department of State certification that items named in the indictment were defense articles as defined by the ITAR signed by Robert S. Kovac, Managing Director of the DDTC. *See* 2009 WL 1748748, at *3; *see also Piquet*, 382 Fed. App'x at 46.

Courts have also permitted expert testimony in export control cases from U.S. government employees who work with the interagency process for commodity jurisdiction review, including employees of the Department of Defense. *See Roth*, 2009 WL 1748748, at *3; *see also United States v. Tsai*, 954 F.2d 155, 158-59 (3d Cir. 1992) (discussing government witness from U.S. Naval Weapons Center who testified that defense items "were military and not commercial in nature" based on items' characteristics). For example, in *Roth*, the government presented testimony from a Department of Defense employee "who recommended that the State Department conclude that the data and other items were defense articles." 2009 WL 1748748, at *3. Admission of

14

Douville and Burton's testimony is not novel or extraordinary; it is part of the ordinary course of export control cases where the government must prove beyond a reasonable doubt that an item is controlled on the USML or through a similar statutory regime.

## CONCLUSION

WHEREFORE, the United States requests that the Defendants' Motion *in Limine*, DN 144, be DENIED.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | JENNIFER KENNEDY GELLIE |
| United States Attorney | Executive Deputy Chief |
| Western District of Kentucky | Counterintelligence and Export Control Section |
| | National Security Division |
| | |
| s/ *Joshua D. Judd* | s/ *Alex Wharton* |
| Joshua D. Judd | Alex Wharton |
| Christopher C. Tieke | Leslie Esbrook |
| Assistant U.S. Attorneys | Trial Attorneys |
| 717 W. Broadway | 950 Pennsylvania Ave., NW |
| Louisville, KY 40202 | Washington, DC 20530 |
| (502) 582-5911 | (202) 514-4523 |
| joshua.judd@usdoj.gov | alexander.wharton@usdoj.gov |
| christopher.tieke@usdoj.gov | leslie.esbrook@usdoj.gov |

CERTIFICATE OF SERVICE

On March 11, 2024 I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.

 s/ *Leslie Esbrook*
Trial Attorney