UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                            PLAINTIFF

v.                            CRIMINAL NO. 3:22-CR-88-DJH
                                         ***Filed Electronically***

QUADRANT MAGNETICS, LLC et al.                  DEFENDANTS

## UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF EXCULPATORY EVIDENCE

On March 13, 2024, Defendants moved the Court to compel the government to produce the names of individuals from government agencies who participated in the commodity-jurisdiction process that were previously produced in redacted form. *See* DN 162 (requesting unredacted copies of documents produced by the government on February 1 and February 22, 2024). On March 27, 2024, the government produced unredacted versions of the documents requested from its February 22, 2024 production. Likewise, the government imminently will produce unredacted versions of the documents requested from its February 1, 2024 production once it receives those documents from the State Department. Therefore, Defendants' motion to compel is moot.

Nevertheless, the government briefly responds to Defendants' motion to contest the assertion that the government suppressed any *Brady* material, an assertion with which the government strongly disagrees.

### ARGUMENT

Defendants argue that the names of government agency witnesses who participated in the interagency commodity jurisdiction process are "exculpatory" evidence under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See* DN 162 at 5. Alternatively, Defendants argue that "denying

Defendants access to this evidence would deprive them of due process and result in an unfair trial." *Id*. Defendants' arguments are easily dispatched.

## I.      The Government Has Not Suppressed *Brady* Material

First and foremost, the government has not suppressed *Brady* material. Until it produced a set of the names to Defendants on March 27, 2024, the government did not have "control" over them. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). The information Defendants sought resides in databases over which the State Department has control, as Defendants are aware.[1] Contrary to Defendants' suggestion, *see* DN 162 at 9-10, the government twice previously requested unredacted versions of the documents or the witness names from the State Department, which declined to provide that information absent legal authority demonstrating it was required to do so. The government requested such authority from Defendants during the meet and confer preceding their motion. Defendants provided none. The government also asked the agent from the Department of Homeland Security ("DHS"), Homeland Security Investigations who submitted the requests for commodity jurisdiction determinations if he had access to the unredacted names, and he stated that he did not. *Contra id.* at 10 (arguing that the DHS agent "may have" the material unredacted or have "the practical ability to obtain it"). Had the government been in control of these names, it would have produced them. Indeed, in the one instance where the government possessed

---

[1] Where, as here, a non-prosecuting agency has information that a defendant seeks, "Rule 17 remains an appropriate avenue for the defense to exercise its own discovery rights . . . ." *United States v. Etienne*, 2018 WL 6305614, at *3 (N.D. Cal. Dec. 2, 2018); *see United States v. Boutte*, 2019 WL 885935, at *3 (D.N.M. Feb. 22, 2019) (holding defendant may "utilize [Rule] 17 to subpoena documents from government agencies that are not a part of the prosecution team," in accordance with *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Defendants in this matter have already subpoenaed agencies whose employees were involved in the commodity jurisdiction process (i.e., Army, Navy, State, and Commerce), *see* DN 126 at 4, and may supplement those subpoenas with the desired information they seek, to the extent they have not already done so.

an unredacted version of a commodity jurisdiction determination file, relating to CJ-0512-17 (Part FP24018P1), the government produced that file unredacted. *See* USA-076856 to USA-076866.[2]

Nor is the State Department's Directorate of Defense Trade Controls ("DDTC") "an arm of the prosecution." DN 162 at 10. This case has never been "investigated" by the State Department, as Defendants claim. *Id.* The State Department was asked to make commodity jurisdiction determinations pursuant to requests from a law enforcement agent (as well as a request from General Electric Aviation Systems ("GE Aviation")), a routine part of DDTC's responsibilities. *See* 22 C.F.R. § 120.12 ("Upon electronic submission of a Commodity Jurisdiction Determination Form [], [DDTC] shall provide a determination of whether a particular article or service is covered by the U.S. Munitions List [USML]."). Defendants cite an out-of-circuit, unpublished case, *United States v. Pierre*, for the proposition that a joint investigation triggers disclosure responsibilities. DN 162 at 10 (citing 2023 U.S. Dist. LEXIS 220058 (S.D.N.Y. Dec. 11, 2023)). In fact, that case held that an insurance company and the National Insurance Crime Bureau were *not* members of the prosecution team. *See* 2023 U.S. Dist. LEXIS 220058, at *31.[3]

---

[2] The government provides this Bates range for Defendants' reference. It can provide the Court a copy of this unredacted document if the Court wishes to review it. The government notes that Defendants filed a redacted version of this document in support of their motion, *see* DN 162-2 at 2-14, even though they possess an unredacted version. The government further notes that Defendants' as-filed version (filed publicly and then sealed upon consent motion following the government's request) contained unredacted discussion of many of the same specific magnetic properties about which Defendants' expert Dr. Trout opined in his report. *Compare* DN 162-2 at 4, *with* DN 134-3 at 6-8 (provisionally sealed). The government's temporary public filing of similar information in Dr. Trout's expert report was the subject of Defendants' recent motion to dismiss. *See* DN 147.

[3] Defendants' other cited cases (*see* DN 162 at 10-11) also do not support their argument. *See Moldowan v. City of Warren*, 573 F.3d 309, 335-36 (6th Cir. 2009), *amended and superseded by* 578 F.3d 351, 377-78 (6th Cir. 2009) (police were members of the prosecution team); *Commonwealth v. Cotto*, 27 N.E.3d 1213, 1217 & n.6 (Mass. 2015) (drug lab analyst at lab "with the primary function of analyzing suspected controlled substances for law enforcement agencies involved in the prosecution of criminal cases" that was overseen by State police was member of prosecution team); *United States v. Spencer*, 2015 U.S. Dist. LEXIS 189672, at *26-27 (D. Mass.

Moreover, as *Pierre* demonstrates, the test for whether agencies have conducted a joint investigation is not met here. There, the court stated that a "joint investigation" occurs when

> the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings.

*Id.* at *31 (quoting *United States v. Middendorf*, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018)). That test is evaluated "under the totality of the circumstances," and "no single factor is the touchstone for imputation." *United States v. Meregildo*, 920 F. Supp. 2d 434, 442 (S.D.N.Y. 2013) (citations omitted). The Sixth Circuit has recently suggested that it would use a similar standard to evaluate who is a member of the prosecution team. *See Colemon v. City of Cincinnati*, 2023 WL 5095804, at *5-6 (6th Cir. Aug. 9, 2023) (stating that "Sixth Circuit precedent suggests that *Brady*'s application to [members of non-prosecuting agencies] depends on the level of the jurisdiction's involvement in the joint investigation," which might include "perform[ing] investigative duties and mak[ing] strategic decisions," "work[ing] as a team and shar[ing] resources" with prosecutors, "jurisdictional overlap," acting "under the prosecutor's authority or control," or "participat[ing] in developing a case for trial") (quotations and citations omitted).

Defendants make no argument that State has met any of these criteria. While the State Department has given the government certain materials (which the government has then produced to Defendants), providing "limited information to the Government upon request . . . [does] not transform the relationship" into a joint investigation. *Pierre*, 2023 U.S. Dist. LEXIS 220058, at *31-32. And the designation of a State Department employee as a fact and expert witness in a case

---

Oct. 8, 2015) (state drug lab chemist part of prosecution team where individual's "level of responsiveness leaves no doubt that if the AUSA had asked for the call log, he would have received it").

involving whether Defendants willfully violated a statute and regulations administered by the State Department similarly does not make the State Department part of the prosecution team. *Contra* DN 162 at 11.

## II.    The Evidence in Question Is Not Favorable to Defendants

Second, the evidence in question is not favorable to Defendants. The main thrust of Defendants' argument is that the commodity jurisdiction information indicates disagreement between the Departments of State, Commerce, and Defense as to whether specific magnets were on the USML.[4] In Defendants' view, having the names of analysts who voiced an opinion that a drawing was not on the USML during the interagency review would allow Defendants to put on and cross-examine these witnesses to demonstrate that "reasonable minds within the government differed as to how to classify the drawings," which suggests that the drawings were not ITAR-controlled and that Defendants "were less likely to have knowingly violated the ITAR." DN 162 at 7-8.[5] Defendants similarly argue that the content of the commodity jurisdiction files

---

[4] Multiple of the commodity jurisdiction files that Defendants seek in unredacted form relate to part numbers that are not charged. *See, e.g.*, DN 162-2 at 15-31 (attaching portions of the file for CJ0004702 (evaluating part number 1375-1121 and related technical data)).

[5] The DDTC is responsible for providing the final determination of whether an article is covered by the USML. *See* 22 C.F.R. §§ 120.2, 120.12. Accordingly, it is not clear that preliminary disagreement from other government agencies about whether an item was ITAR-controlled during the commodity jurisdiction process is relevant. Moreover, even where an agency initially concluded that a part number was controlled under Commerce's export regulations, *see* DN 162 at 3, or under a different USML category, *id.* at 7-8, such evidence nevertheless may be inculpatory because unlicensed exports to China of technical data controlled under the State or Commerce Department's regulations is unlawful and would demonstrate that Defendants willfully violated the Arms Export Control Act ("AECA"). *See* 50 U.S.C. § 4819(a)(1)-(2); 15 C.F.R. § 774 Supplement 1 (controlling the Commerce category cited by Defendants); *United States v. Roth*, 628 F.3d 827, 835 (6th Cir. 2011) (requiring government to establish that defendant knew conduct was unlawful, not that the item exported was on the USML). Finally, even if the items at issue were not on the USML, Defendants could still be found to have violated Count 1's conspiracy to violate the AECA and the substantive AECA charges in Counts 5 through 8 for willful attempt. *See, e.g.*, DN 129 at 12-13, 16-17 (Gov'ts Pre-Trial Brief explaining that impossibility is not a defense to conspiracy or attempt to violate the AECA). As the government will demonstrate at

demonstrates that the government "gave only perfunctory attention" to the commercial-equivalent analysis. *Id.* at 6. Defendants have the information they need to make these arguments, as evidenced by the fact that they have penned this very motion. What they are looking for is additional testimony in support from government employees. Any subpoenas for these witnesses' testimony, however, would need to be submitted through each agency's *Touhy* procedures, a process with which Defendants are familiar and which they have already invoked for multiple agencies. *See* DN 126 at 4 (Ex. Nos. 48 (Navy), 49 (Commerce), 50 (Army), 51 (State)). Defendants can submit additional *Touhy* requests to applicable agencies without the names of the analysts.

Defendants also argue that they need the names of government analysts to confirm their view that the commodity jurisdiction process is flawed because it "rel[ies] on [a DHS agent] as the principal source of information about the articles examined." DN 162 at 6; *see id.* at 7.[6] Those arguments are based on the faulty assumption that the DHS agent was the principal source of information provided, when in fact, the principal source was the owners of the technical drawings, GE Aviation and General Dynamics. The documents attached to Defendants' motion and others produced in discovery make that clear. For example, for each of the part numbers charged in Counts Five through Eight of the Indictment, a senior manager in General Dynamics' regulatory

---

trial, there is no evidence that Defendants believed the technical data they are charged with unlawfully exporting was not on the USML.

[6] Reading Defendants' motion, one might think that the DHS agent's name has been redacted from the documents. In fact, it has not, *see e.g.*, DN 162-2 at 15-16, 20, and Defendants have already subpoenaed the agent as a witness for trial. In addition, Defendants cite to nothing on record for their argument that the commodity jurisdiction process relies on information submitted through the filer (here, a DHS agent) as the "principal source of information." *Id.* at 6. Indeed, the language Defendants *do* cite, from the government's earlier briefing detailing anticipated testimony from a DDTC witness, states that the State Department, in consideration of the § 120.41(b)(3) release specifically, may consider evidence submitted to DDTC along with "a reasonable search under the circumstances." *Id.* (quoting DN 111, PageID.1456).

compliance department certified that the information submitted to DDTC was accurate. These PM/DDTC Technical Data Certification Forms were part of the commodity jurisdiction files and were produced multiple times in unredacted form. In addition, the DHS agent who transmitted this information to DDTC authorized DDTC to "contact the OEM [the original equipment manufacturer for the drawings, General Dynamics] directly for any follow up or additional questions." DN 162-2 at 21. Defendants are free to ask the DHS agent, and the government's witnesses from GE Aviation, General Dynamics, DDTC, and its experts, about the sources of information DDTC relied upon in reaching its determinations.[7]

Defendants also lament that they cannot assess "any basic information about [the analysts] such as their titles, qualifications, professional history, [or] connections to the prosecution." DN 162 at 2. Defendants' theory of materiality is too speculative. *See id.* at 8-9 (asserting that the names may allow Defendants to find evidence of "impaired credibility"). The kind of job qualification evidence Defendants seek is akin to asking for personnel file details, which, in the Sixth Circuit, defendants are not entitled to "absent some support" that the files "will contain exculpatory information." *United States v. Palazzola*, 2020 WL 4474147, at *6 (E.D. Mich. Aug. 4, 2020) (citing *United States v. Driscoll*, 970 F.2d 1472, 1482 (1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999)).[8] It is equally speculative to suggest that evidence "would also be exculpatory" if it showed that any participants "betrayed [sic] bias

---

[7] By the same token, Defendants are free to ask *any* government witness about their involvement in the commodity jurisdiction process and their understanding of the DHS agent's role in that process, refuting Defendants' claim that, "if the government has any of these participants [whose names have been redacted] take the stand, Defendants [] will not even know that they can be impeached." DN 162 at 6-7. And, of course, to the extent that any government witness has statements in the commodity jurisdiction files, the government would produce those statements with the witness' identity as *Jencks* material.

[8] This information is also not in the possession, custody, or control of the government, but rather held by the relevant agencies, who are not members of the prosecution team.

such as through other communications with the prosecution team" or by showing "preference to designating items as ITAR-controlled beyond what the law allows." DN 162 at 9. The government has provided Defendants with all communications it has been given related to the commodity jurisdiction process. It is not required to direct Defendants to exculpatory evidence within the discovery provided. *See United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010); *see also United States v. Newman*, 2020 WL 7294644, at *5 (E.D. Tenn. Dec. 10, 2020) ("Even when discovery is voluminous, the Government has no duty to isolate the particular items or documents that are relevant to each count of an indictment." (citation omitted)).

### III.    Defendants Would Not Have Been Prejudiced Had They Not Received Analyst Names

Third and finally, Defendants cannot show a "reasonable probability" that the evidence would change the outcome at trial. *United States v. Bagley*, 473 U.S. 667, 684 (1985). As explained, with the unredacted names, Defendants still must invoke each agency's *Touhy* process, as they have already done. Defendants are not prejudiced by having to ask Commerce, for example, to provide a witness who can testify about "Commerce's position on CJ0003925 set forth on February 10, 2021." *See e.g.*, DN 162-1 at 2.[9]

### CONCLUSION

For the reasons stated herein, the government requests that Defendants' Motion to Compel, DN 162, be DENIED.

---

[9] For these reasons and those explained above, Defendants' cursory nod to deprivation of due process and unfair trial that would result from failure to disclose any names is meritless. The cases Defendants cite, moreover, concern the use of the informer's privilege ("the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law"), which is inapplicable here. *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *see* DN 162 at 5 (citing *Roviaro* and *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015)).

Respectfully submitted,

MICHAEL A. BENNETT                      JENNIFER KENNEDY GELLIE
United States Attorney                  Executive Deputy Chief
Western District of Kentucky            Counterintelligence and Export Control Section
                                        National Security Division


 s/ *Joshua D. Judd*_____       s/ *Alex Wharton*_____
Joshua D. Judd                          Alex Wharton
Christopher C. Tieke                    Leslie C. Esbrook
Assistant U.S. Attorneys                Trial Attorneys
717 W. Broadway                         950 Pennsylvania Ave., NW
Louisville, KY  40202                   Washington, DC 20530
(502) 582-5911                          (202) 514-4523
joshua.judd@usdoj.gov                   alexander.wharton@usdoj.gov
christopher.tieke@usdoj.gov             leslie.esbrook@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On March 27, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel for the defendants.


 s/ *Joshua Judd*
Assistant United States Attorney