UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**United States of America**

v.

**Quadrant Magnetics LLC et al.**

No. 3:22-CR-88-DJH

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS DUE TO GOVERNMENT'S PUBLIC RELEASE OF ALLEGED ITAR INFORMATION

The government has acknowledged that it posted sensitive information from drawings for five of Quadrant's magnets, which under the regulations is necessary for the development and production of the magnets, on the court's *Public* Access to Court Electronic Records (PACER) system. The government left this information accessible to all the world, including our nation's adversaries, for nine days. This has left the government in its present bind: if the government claims the released information is not technical data, then the indictment's ITAR allegations collapse; if it is technical data, then the prosecutors are in the difficult position of having done what Defendants are accused of doing. The government has attempted to escape this Hobson's choice three ways. None work.

The government argues that placing the information on PACER for nine days did not release it into the public domain. (*See* D.N. 170, PageID.2350–52.) This is nonsense. "PACER provides the public with instantaneous access to more than 1 billion documents filed at all federal courts." *PACER*, https://pacer.uscourts.gov. And the Department of Justice's Office of Legal Counsel (OLC) decades ago rejected the government's position. "If the information is publicly released by any agency of the Government, we do not know how that information could be 'recaptured' by the Government." OLC, *Revised Proposed International Traffic in Arms Regulations* at 10 n.10 (July 5, 1984).

1

Recognizing the weakness in their "not in the public domain" argument, the government also argues that the released information, which it refers to as "certain magnetic properties that are found on the magnet drawings" (D.N. 170, PageID.2348–49.), might not be technical data. Here, we agree that none of the drawings, nor any of the information included on them, is ITAR-controlled technical data. The *government's* concession, however, is fatal to its ability to prosecute the indictment's ITAR and ITAR-related counts. If information concerning the magnets' composition and magnetic properties is *not* technical data per that concession, then none of Quadrant's magnets have ever been ITAR-controlled.[1]

The government's final argument is that none of that matters because it does not change whether the magnets were ITAR-controlled during the indictment's time period of 2012–2018. That does not respond to the problem above. If the released information was not technical data on March 8, then it was not technical data in the past either, and the government's ITAR and ITAR-related counts must be dismissed. The bottom line is this: if the government did not release technical data, then neither did Defendants.

## ARGUMENT

1. **If the released information is technical data for the magnets at issue in this case then the government placed that technical data in the public domain by publishing Dr. Trout's unredacted report on PACER.**

The information the government disclosed is among the same alleged technical data that Defendants are charged with exporting. Here is the data from Dr. Trout's report that the government released to PACER (in redacted form):[2]

---

[1] The Department of State has the exclusive authority to define defense articles, and thus technical data, under ITAR's controls. *See* 22 U.S.C. § 2778(a)(1); 22 C.F.R. §§ 120.1(a), 120.2, Here, prosecutors appear to be attempting to redefine the released information as not technical data for their own personal reasons and have not provided any evidence that its position has been approved by the State Department.

[2] These five magnet drawings serve as the basis for the five overt acts in support of the government's ITAR-related allegations in the indictment's conspiracy count.

> I have reviewed the five QM Magnet drawings supplied to me. I have summarized their principal characteristics below:
>
> | Drawing | Composition | $(BH)_{max}$ (MGOe) | $B_r$ Min (G) | $B_r$ Nom (G) | $H_c$ Min (Oe) | $H_c$ Nom (Oe) | $H_{ci}$ Min (Oe) |
> |---|---|---|---|---|---|---|---|
> | 3730D-1012 | | | | | | | |
> | 100101 | | | | | | | |
> | 10500B-1022 | | | | | | | |
> | 6000U-1002 | | | | | | | |
> | 1500P-1002 | | | | | | | |

Despite its indictment, the government now declines to take a position on whether this information is indeed technical data, instead describing it as "certain magnetic properties" and "untethered from the drawings themselves," (D.N. 170, PageID.2348–49.), thereby suggesting that other information in the drawings is either the only technical data relevant to this action or is needed in conjunction with the information the government disclosed to constitute technical data for the design, development, production, or manufacture of the magnets. *See* 22 C.F.R. § 120.33(a). Although the government asserts the drawings also contain the "magnet's size and dimensions as well as other processes needed for production" and "certain additional magnetic properties" (D.N. 170, PageID.2349), that does not mean that the information disclosed is not *also* "information . . . required for the design, development, production manufacture, assembly, operation, repair, testing, maintenance, or modification of defense articles." 22 C.F.R. § 120.33(a)(1). To qualify as technical data, the information need only be necessary, not sufficient, for the design (etc.) of a defense article. This information is. It concerns the magnets' "principal properties," which "do not change with the size or shape of a magnet." (D.N. 134-3, PageID.1847.) The government's proposed experts support this point. (*See* D.N. 147, PageID.2037–39 (referencing reports of government's proposed experts Alex Douville and Scott McCall).).[3]

---

[3] Again, Defendants' position is that none of the so-called technical data contained in the drawings was ever ITAR-controlled.

3

**2. Because the government put the alleged technical data on PACER, it is in the public domain and removed from ITAR control.**

Once technical data is placed in the public domain, it is no longer ITAR-controlled. 22 C.F.R. § 120.33(b); *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 603 (2d Cir. 2020); *United States v. Roth*, No. 3:08-CR-69, 2009 WL 1748748, *4 (E.D. Tenn. June 19, 2009) ("[D]ata that is in the public domain is not technical data and not export-controlled."). Under the ITAR, information is placed in the public domain when it is "published" and "generally accessible or available to the public through" at least one of eight enumerated channels. 22 C.F.R. § 120.34(a);[4] *see Stagg*, 983 F.3d at 603 ("[W]e conclude Stagg is not subject to a licensing requirement under the ITAR for use of 'information that is available from bookstores and libraries'" because "[t]hat information is in the 'public domain,' and therefore is not subject to the ITAR.").[5] Notably missing from the regulation is a temporal component, or that the information be available in perpetuity. No court has written in any such requirements either. Thus all that matters to remove technical data from ITAR control is that it be publicly available through, here, a subscription, library, or government release in the manners described in 22 C.F.R. § 120.34(a).

The government attempts to amend the regulation by primarily focusing on how long information must be publicly available before it may be considered generally accessible and thus in the public domain. (*See* D.N. 170, PageID.2350–51.) The government provides *no* legal support for this argument. It has agreed to at least one protective order stating the opposite. *See United*

---

[4] Information publicly released by the government need not be published. *Id.* § 120.34(a)(7).

[5] Otherwise, there would be no need for the regulation to define what constitutes a "generally accessible or available" subscription—one "available without restriction to any individual who desires to obtain or purchase the published information"; a library—"open to the public of from which the public can obtain documents"; etc. The government also seemingly concedes this point when it equates "generally accessible" to "unlimited distribution," which is the accessibility level required for a disclosure to qualify as a "public release" by the government. (*See* D.N. 170, PageID.2351 ("Of course, as explained above [in discussing general accessibility], there has not been 'unlimited distribution' of Dr. Trout's report.").); 22 C.F.R. § 120.34(a)(7).

*States v. Latifi*, No. 5:07-cr-98, 2007 U.S. Dist. LEXIS 97554, *5 (N.D. Ala. June 11, 2017) ("Any item filed with the Court, including all documents, motions, exhibits, and other items which include the technical data, or a portion of the technical data, will be sealed to prevent the data from entering the public domain."). And its position has been rejected by the Department of Justice's Office of Legal Counsel (OLC). OLC was asked decades ago to review the constitutionality of proposed revisions to the ITAR, including an exemption from ITAR control for "information approved for public release by the federal department or agency which originated or developed the information." *See* OLC, *Revised Proposed International Traffic in Arms Regulations* at 10 (July 5, 1984), *available at* https://www.justice.gov/olc/page/file/936161/dl?inline. OLC was dubious of the exemption's restriction to only the department or agency that created the information. "This change was designed to prevent a situation in which the action by one agency of releasing to the public information of another agency, even if not authorized to do so, would have the consequence of not only putting that information into the public domain but also triggering the exemption and thereby allowing export of that information without a license. We must caution, however, that we are not sure that this revision will have the intended effect." *Id.* OLC then explained why. "If the information is publicly released by *any* agency of the Government, *we do not know how that information could be 'recaptured' by the Government*. Once the information is in the public domain, we cannot conceive of circumstances in which its export could be constitutionally restricted." *Id.* (second emphasis added).

      The correct inquiry is whether the information was made public through one of the eight enumerated channels, not for how long. Here, the information was made public when the government published the information on PACER. PACER qualifies as a subscription service and as a library, and because the government's actions constitute a public release. *See* 22 C.F.R.

§ 120.34(a)(2), (4), (7). Tellingly, the government *never* contests that PACER qualifies as a subscription or a library—and, indeed, it could not do so as PACER falls squarely within those categories. (*See* D.N. 147, PageID.2041–42.) Further, the information need only be available "*at* libraries open to the public," 22 C.F.R. § 120.34(a)(4) (emphasis added), and even traditional brick-and-mortar libraries typically have publicly available computer terminals with internet access from which PACER can be accessed.

Even if there were some timing component, the information was available for a prolonged period here of nine days, rather than a day or less. (*See* D.N. 170, PageID.2348–49 (noting the government filed the unredacted report on March 4, and it was sealed on March 12).)[6] As explained in Defendants' motion and as undisputed by the government, PACER grants the public with "instantaneous access" to federal court filings, which can include automatic notifications to *anyone* who signs up to receive them. (*See* D.N. 170, PageID.2041.) Members of the general public had the opportunity—and did—view the information published to this Court's public docket including publishing it more widely and on different websites.[7] Moreover, if instantaneous access for over a week is not sufficient, it is unclear what would be, and the government has provided no case law or principle for a dividing line between an acceptable and an unacceptable time period.

3. **The government's disclosure of the alleged technical data on PACER and subsequent actions are highly relevant to the ITAR allegations against Defendants.**

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the government's disclosure of the alleged technical data on PACER, its recent

---

[6] The information has been sealed as a functional matter, but the Court has yet to issue any sealing order.

[7] *See* Dorothy Atkins, *Magnet Co. Says Feds' Leak on PACER Bars ITAR Charges*, Law360, Mar. 11, 2024 ("As of Monday afternoon, the documents at issue were still publicly available on the court docket.").

6

refusal to say whether it *is* technical data despite its indictment, and its delay in moving to seal it are all highly relevant to the ITAR allegations against Defendants.

Whether the information Defendants are charged with exporting is correctly characterized as "technical data" under the ITAR is central to this case. The government previously alleged, in its indictment and other filings, that the released information was ITAR-controlled and has proposed testimony that the data Defendants allegedly exported is among the "crown jewels" of our nation's national security and military technology. (*See* D.N. 144-1, PageID.2003.) It now refuses to say whether the information is ITAR-controlled. If it is not, Defendants cannot be liable for disclosing the principal qualities of those five magnets—what they are made of, and their magnetic strength and properties. All that is left for ITAR control are the magnets' dimensions and, in various cases, minor specifications like coatings and how they should be machined.

That leads to three problems. First, the grand jury surely was never charged with determining whether an export of a drawing with those remaining characteristics *alone* would violate the Arms Export Control Act, nor did the State Department and its collaborating agencies ever prepare their commodity-jurisdiction determinations on that more limited basis. Second, a drawing with only those characteristics would not have sufficient information for manufacturing, so it could not even exist, much less be "specially designed . . . for use in or with a defense article." 22 C.F.R. § 120.41(a)(2). To that point, the mere dimensions of an object are not technical data. As the State Department has explained in response to concerns that mere observation of a defense article could be considered an ITAR release—after all, a top-of-the-line X-35 fighter jet with Sparrow missile is on public display at the National Air and Space Museum[8]—"the [State] Department confirms

---

[8] *See* Smithsonian Inst., Nat'l Air & Space Museum, *Lockheed Martin X-35B STOVL*, https://airandspace.si.edu/collection-objects/lockheed-martin-x-35b-stovl/nasm_A20030172000.

7

that the information about the defense article must be technical data and *not simply attributes, such as size or weight.*" 81 Fed. Reg. 35611, 35614 (June 3, 2016) (emphasis added). Third, a magnet drawing that is essentially an empty rectangle—it can be made of anything and have any properties whatsoever—would *always* have a commercial equivalent. This is because it would have no meaningful characteristics to speak of, so any magnet (or really, any solid matter, from a Lego block to a kitchen sponge) could have its form changed for fit purposes without altering its function or performance capabilities. *See* 22 C.F.R. §§ 120.41(b)(3), 120.42.

Additionally, as Defendants previously argued, the government's own actions demonstrate that it views the released information as *never* being ITAR-controlled and that the government's definition of technical data is inaccurate. As these propositions go to the heart of this case, the government's releasing the alleged technical data and subsequent conduct are highly relevant.

4. **Dismissal is appropriate because the government's relevant conduct demonstrates that the alleged technical data is not ITAR-controlled as a matter of law.**

In responding to Defendants' motion to dismiss, the government's primary argument is that Defendants' motion concerns the sufficiency of the evidence by presenting a fact issue on whether the alleged technical data is ITAR-controlled.[9] While the government's public release of the alleged technical data may raise a sufficiency issue on whether the data Defendants allegedly exported still is ITAR-controlled, that is not why Defendants are seeking dismissal at this juncture. Defendants are seeking dismissal as a matter of law for the reasons above—because the government's own conduct demonstrates that the government does not view the publicly disclosed information as ITAR-controlled technical data and never viewed the information as ITAR-controlled.

---

[9] If the Court determines Defendants' motion to dismiss does present a fact issue, as the government contends, then Defendants should be permitted to introduce evidence and elicit testimony regarding these pertinent facts at trial. It goes directly to the credibility of every government witness who would seek to testify that the information is ITAR-controlled or that, for instance, its disclosure raises national security concerns.

These actions demonstrate that the information allegedly exported is not ITAR-controlled as a matter of law. If it is not controlled for these five magnets, which serve as the basis for the indictment's ITAR-related overt acts, then it is not controlled for any others that the government might seek to present in the case.

Moreover, contrary to the government's contention, a finding that the information is not ITAR-controlled as a matter of law compels dismissal of all ITAR allegations and ITAR-related counts from the indictment. The government argues that it need not prove the information is ITAR-controlled to prove conspiracy and attempt to export the information. Putting aside the manifest injustice and immorality of that statement, it is also legally wrong. If all Defendants ever conspired or attempted to do was export non-ITAR controlled technical data, then they never even conspired or attempted to do something illegal, even if they thought it was. It is a classic case of *pure* legal impossibility, for which Defendants cannot be prosecuted. *See United States v. Peete*, 919 F.2d 1168, 1176 (6th Cir. 1990); *see, e.g., United States v. Hsu*, 155 F.3d 189, 199 & n.16 (3d Cir. 1998); *United States v. Fernandez*, 722 F.3d 1, 31 (1st Cir. 2013). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 51 (D.D.C. 2018) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). (Defendants anticipate developing this argument more fulsomely in future briefing and argument as permitted by the Court.)

Lastly, the government's reference to *United States v. Talbot*, 825 F.2d 991 (6th Cir. 1987) for the proposition that Defendants are not entitled to dismissal because they are not "demonstrably prejudiced" by the government's conduct (*see* D.N. 170, PageID.2354), has no bearing on this case. First, they *are* prejudiced. If the information released is not technical data, then Defendants were subjected to grand-jury and commodity-jurisdiction processes that misapprehended the

nature of what Defendants exported. Second, *Talbot* is distinguishable on its facts. In *Talbot*, the district court had dismissed the indictment as a speedy-trial violation under the Rules for Courts-Martial and because military authorities had "intentionally acted in bad faith by deferring jurisdiction" to the United States Attorneys' Office. *Id.* at 996. The government appealed, and on appeal the defendant argued that the military authorities' actions had constituted a due-process violation. *Id.* at 997–98. In evaluating whether the defendant had shown a due process violation, the Sixth Circuit noted that "*where a constitutional right of the defendant has been violated* . . . the defendant is entitled to the extreme sanction of dismissal of the indictment only where he can prove that he was demonstrably prejudiced by the violation." *Id.* at 998 (emphasis added). The court found that the defendant had "failed to articulate any substantial actual prejudice . . . *as a result of the procedural course of the action*." *Id.* at 1000 (emphasis added). Thus, dismissal of the indictment based on "*public policy, supervisory, or other considerations* to assertedly bolster future compliance with pertinent time requirements imposed in *the context of the independent military court system*" was inappropriate. *Id.* (emphasis added). This case is nothing like *Talbot*. This case does not involve the independent military court system, and Defendants seek dismissal of ITAR allegations based on the government's inability to prove its case as a matter of law, not a procedural due process violation. Thus Defendants need not demonstrate prejudice for dismissal of the ITAR allegations.

## CONCLUSION

For the reasons stated in Defendants' motion and in this reply, the Court should grant Defendants' motion to dismiss the indictment's ITAR and ITAR-related counts due to the government's public release of alleged ITAR information.

Dated: April 2, 2024                                             Respectfully submitted,

*/s/ John Brownlee*
John L. Brownlee (*pro hac vice*)
William F. Gould *(pro hac vice)*
Timothy Taylor *(pro hac vice)*
Caitlin Eberhardt *(pro hac vice)*
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1600
Tysons, VA 22201
T: 703.720.8053
F: 703.720.8610
John.Brownlee@hklaw.com
William.Gould@hklaw.com
Timothy.Taylor@hklaw.com
Caitlin.Eberhardt@hklaw.com
*Counsel for Quadrant Magnetics, LLC*

*/s/ Kent Wicker (with permission)*
Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 541-5533
Kent@wickerbramel.com
*Counsel for Phil Pascoe*

*/s/ Patrick Renn (with permission)*
Patrick J. Renn
Smith & Helman
600 W. Main Street, Suite 100
Louisville, KY 40202
502-540-5700
Fax: 502-568-3600
prenn@600westmain.com
*Counsel for Scott Tubbs*

*/s/ Scott Cox (with permission)*
Scott C. Cox
Cox & Mazzoli, PLLC
600 W. Main Street, Suite 300
Louisville, KY 40202
502-589-6190
502-584-1744
CoxECF@aol.com
*Counsel for Monica Pascoe*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 2, 2024, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

                                                                   /s/ *John Brownlee*